# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DEBBIE L. TREZVANT, TIMOTHY CAHILL, DEBORAH CHERYL ARCH, and MARY-CATHERINE PICHE, each of them individually and on behalf of all others similarly situated and similarly situated current and former employees of Defendants,<br><br>        Plaintiffs,<br><br>v.<br><br>FIDELITY EMPLOYER SERVICES CORPORATION, FIDELITY EMPLOYER SERVICES COMPANY LLC, and FMR CORP.,<br><br>        Defendants. | CIVIL ACTION NO.  05-10673 WGY |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS COUNT II OF PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendants Fidelity Employer Services Corporation,[1] Fidelity Employer Services Company LLC, and FMR Corp. (collectively, "Defendants") move to dismiss Count II of the First Amended Complaint ("Amended Complaint") filed by Plaintiffs Debbie L. Trezvant, Timothy Cahill, Deborah Cheryl Arch, and Mary-Catherine Piche (collectively "Plaintiffs") for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6).  In the alternative, Defendants move to strike Count II of the Amended Complaint pursuant to Fed.R.Civ.P. 12(f) to the extent that Plaintiffs purport to assert New Hampshire state law claims

---

[1] By referencing "Fidelity Employer Services Corporation," as named in the Amended Complaint, Defendants do not waive any defenses based on the fact that such an entity no longer exists.

on a class action basis.[2]  Defendants also move to dismiss the claims brought by Mary-Catherine

Piche ("Piche") because all of her claims are barred by the applicable statutes of limitations.

## PROCEDURAL HISTORY

Plaintiffs filed their one-count Complaint with this Court on April 5, 2005, alleging that

Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA"), by

misclassifying them as exempt from the FLSA's overtime compensation requirements and

failing to pay them time and one-half for hours worked in excess of forty per work week.

Plaintiffs asserted these claims on their own behalf and as a putative opt-in collective action

pursuant to 29 U.S.C. § 216(b).[3]

On June 22, 2005, Plaintiffs filed their Amended Complaint, adding a second count

asserting claims under New Hampshire law.[4]  Plaintiffs do not assert a claim under New

Hampshire's overtime pay statute because it is inapplicable to Defendants for the reasons

discussed below.  Instead, Plaintiffs claim that by failing to pay them overtime compensation

allegedly required by federal law, Defendants violated unspecified New Hampshire laws

requiring prompt payment of wages.[5]  Plaintiffs assert their claims under New Hampshire law as

a putative opt-out class action pursuant to Fed.R.Civ.P. 23.

---

[2] The Court may, pursuant to Fed.R.Civ.P. 12(f), strike paragraphs from a complaint seeking relief that is not recoverable as a matter of law.  *Sony Pictures Entm't, Inc. v. Fireworks Entm't Group, Inc.*, 156 F. Supp. 2d 1148, 1154 (C.D. Cal. 2001); *Lazar v. Trans Union LLC*, 195 F.R.D. 665, 668 (C.D. Cal. 2000); *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1459 n. 34 (C.D. Cal. 1996).

[3] Defendants vigorously dispute Plaintiffs' claims that they were misclassified as FLSA exempt, but do not move at this time to dismiss Count I.

[4] Pursuant to a joint motion, the Court granted Defendants an extension of time in which to respond to the original Complaint through June 24, 2005.  After Plaintiffs filed their Amended Complaint, the Court granted Defendants an extension of time in which to respond to the Amended Complaint through August 26, 2005, again pursuant to a joint motion.

[5] Copies of all New Hampshire statutes cited in this memorandum are attached at Tab A.

<u>**ARGUMENT**</u>

**I.      Introduction**

Plaintiffs attempt to use New Hampshire's payment of wages statutes to bootstrap their FLSA overtime claim into a state law cause of action that they assert as a Rule 23 opt-out class action.  This state law claim fails for two reasons.  First, federally mandated overtime is not "wages" for purposes of New Hampshire's payment of wages statutes.  Second, claims under New Hampshire's wage and hour statutes, like FLSA claims, require the express consent of each employee to participate in the case and are not amenable to treatment as opt-out class actions under Rule 23.

The Court should also dismiss all claims brought by Plaintiff Piche, who last worked for Defendants more than three years before this case was brought, because her claims are barred by whatever statutes of limitations may apply.

**II.     Plaintiffs Cannot Recover Overtime Compensation Under New Hampshire Law.**

New Hampshire law provides no basis for Plaintiffs to recover overtime compensation from Defendants.  Plaintiffs do not and cannot assert claims against Defendants under New Hampshire's overtime pay statute because that law expressly exempts Defendants from its coverage because they are covered by the FLSA.[6]  Faced with the obvious inapplicability of New Hampshire's overtime statute, Plaintiffs attempt to assert their federal overtime claims through two other state statutes (in addition to their FLSA claim, itself, set forth in Count I) requiring the

---

[6] The New Hampshire overtime pay statute requires that employers pay employees "at the rate of time and one-half for all time worked in excess of 40 hours in any one week."  N.H. Rev. Stat. Ann. § 279:21(VIII).  However, that statute does not apply to employers that, like Defendants, are covered by the FLSA.  N.H. Rev. Stat. Ann. § 279:21(VIII)(b) (exempting from its coverage "[a]ny employee of employers covered under the provisions of the federal Fair Labor Standards Act of 1938, as amended (29 U.S.C. section 201, *et seq.*)").  As Plaintiffs point out, Defendants are subject to the FLSA as enterprises engaged in commerce within the meaning of the statute.  *See* Amended Complaint, ¶ 14.  They are, therefore, not subject to New Hampshire's overtime statute.

weekly payment of wages and the prompt payment of wages to terminated employees.[7]

Plaintiffs cannot recover overtime pay through either of these statutes because FLSA-mandated

overtime is not "wages" for purposes of state law.

Under New Hampshire law, "wages" refers to compensation owed pursuant to a contract

or agreement between an employer and its employee. N.H. Rev. Stat. Ann. § 275:42(III)

(defining "wages" as compensation due to employees pursuant to agreement between employer

and employee); *Ives v. Manchester Subaru, Inc.*, 126 N.H. 796, 800 (1985) (construing "wages"

under New Hampshire law to be sums owed pursuant to agreement between employer and

employee); *Gilman v. County of Cheshire*, 126 N.H. 445, 450-51 (1985) (construing "wages"

under § 275:43 to be compensation owed pursuant to agreement between employer and

employee); N.H. Code Admin. R. Ann. 803.02(g) (stating New Hampshire Department of

Labor's interpretation that amount of wages owed for purposes of New Hampshire's payment of

wages laws is to be determined "in accordance with written or verbal agreements between the

parties. . .") (copy attached at Tab B).[8] Moreover, the New Hampshire legislature has

demonstrated an intent to separate the state from enforcement of federal laws, and courts

interpreting New Hampshire's payment of wages laws have respected the legislature's intent by

preventing the state's statutes from interfering with the enforcement of federal law. *See, e.g.,*

*Chandler v. Perini Power Constructors, Inc.*, 520 F. Supp. 1152, 1154 (D. N.H. 1981) (declining

---

[7] Plaintiffs cite no New Hampshire statutes in their Amended Complaint, and instead make vague references to "the laws of New Hampshire." *See, e.g.*, Amended Complaint, ¶¶ 25, 28, 30. However, the language Plaintiffs use in Count II appears to describe New Hampshire's weekly payment of wages statute and its termination pay statute. *Compare* Amended Complaint, ¶¶ 25-26 *with* N.H. Rev. Stat. Ann. § 275:43(I) (requiring employers to pay all wages due within 8 days after expiration of week in which work is performed) *and* N.H. Rev. Stat. Ann. § 275:44(I-II) (requiring employers to pay wages due to employees with 72 hours of discharge or at next regular payday after resignation).

[8] Unsurprisingly, Defendants' research reveals no case in which an employee has attempted to recover federally mandated payments through New Hampshire's wage and hour laws.

to apply New Hampshire's payment of wages laws to dispute involving withholdings mandated by federal law). Against this background, it is clear that "wages" for purposes of New Hampshire law does not include any sums that an employee alleges an employer is obligated to pay under a federal statute such as the FLSA. Plaintiffs' claims under New Hampshire law, therefore, to recover overtime compensation allegedly due under the FLSA fails and should be dismissed.

### III.    The Court Should Strike Plaintiffs' Class Action Claims.

Plaintiffs seek to assert their New Hampshire claims as a Rule 23 opt-out class action on behalf of a broad class of employees. Even if the Court were to decide not to dismiss Count II in its entirety, it should strike Plaintiffs' class allegations. Like the FLSA, the New Hampshire statutes on which Count II is based permit a plaintiff to assert claims on behalf of other individuals only if they affirmatively consent to be represented by the plaintiff. Moreover, Plaintiffs' attempt to bring Count II as an opt-out class, despite the fact that the New Hampshire claims are derived from an alleged violation of federal overtime pay requirements, subverts the opt-in collective action procedures that Congress designed for FLSA cases and should be rejected.

### A.    New Hampshire Wage Claims Cannot Be Asserted As Opt-Out Class Actions.

Plaintiffs seek to bring the New Hampshire state law claims in Count II on behalf of a class of "Covered Employees" who held a position with Defendants in any of five job categories.[9] *See* Amended Complaint, ¶¶ 2, 30, 31. Like the FLSA's § 216(b), the New Hampshire statute authorizing individuals to bring civil actions to collect unpaid wages allows

---

[9] Plaintiffs place no geographic restrictions on the class of Covered Employees they purport to represent. Amended Complaint, ¶ 2. To the extent that Plaintiffs purport to bring New Hampshire state law claims on behalf of any person who worked for Defendants outside of New Hampshire, the Court should also dismiss or strike those allegations pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Plaintiffs to bring claims only on behalf of themselves and other individuals, if any, who expressly consent to participate in the litigation.[10] N.H. Rev. Stat. Ann. § 275:53(I) ("Action by an employee to recover unpaid wages and/or liquidated damages may be maintained in any court of competent jurisdiction *by any one or more employees for and in behalf of himself or themselves*, or such employee or employees may designate an agent or representative to maintain such action.") (emphasis added).

The Supreme Court of New Hampshire has clarified that this statute does not authorize representative actions on behalf of individuals who have not expressly consented to participate in the litigation.[11] *Labor Ready Northeast, Inc. v. New Hampshire Dep't of Labor*, 147 N.H. 721, 723 (2002) (dismissing claims brought by commissioner of labor on behalf of employees who did not expressly consent to such representation). In reaching this conclusion, the Court applied familiar principles of statutory construction and concluded that the legislature did not intend to create any cause of action that is not expressly enumerated in the statute.[12] *Id*. Plaintiffs, therefore, lack standing to bring suit under New Hampshire law on behalf of anyone other than themselves and individuals who expressly consent to join this litigation.

---

[10] Although the courts have not specified the procedure by which other employees might consent to join litigation involving claims under New Hampshire wage and hour law, that exact procedure does not affect this motion to dismiss.

[11] Unsurprisingly, Defendants' research reveals no case in any state or federal court in which a plaintiff has attempted to bring claims under New Hampshire's weekly payment of wages statute (§ 275:43) or the state statute requiring prompt payment of wages to terminated employees (§ 275:44) as a class action under Rule 23.

[12] The Supreme Court of New Hampshire has consistently adhered to the maxim *expressio unius est exclusio alterius* (the express mention of one thing implies the exclusion of others) in interpreting statutes granting standing to sue, and has repeatedly held that standing is limited to the individuals enumerated in the governing statute. *See, e.g., St. Joseph Hosp. of Nashua v. Rizzo*, 141 N.H. 9, 11-12 (1996) (holding third party creditors lack standing to sue to enforce spousal support obligations because they are not among parties enumerated in governing statue); *In re Guardianship of Raymond E.*, 135 N.H. 688, 691 (1992) (holding individuals not listed in statute authorizing petition for guardianship proceedings lack standing to initiate such proceedings).

6

## B.    The Court Should Not Permit Plaintiffs To Subvert The FLSA's Collective Action Procedure.

Plaintiffs' claims under New Hampshire's prompt payment of wages laws are transparently designed to evade the FLSA's congressionally mandated opt-in collective action procedure and allow them to represent individuals who have not consented to join (opted-in) this litigation.  The Court should prevent Plaintiffs from subverting Congress' intent by asserting their essentially federal claims through an inappropriate state law vehicle.

Congress intended claims for FLSA-mandated overtime to be brought exclusively on an opt-in basis.  FLSA claims are governed by the statute's collective action provisions, which require each member of the class to file a consent to participate in the litigation.  *See* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").  Numerous courts have recognized that FLSA's collective action procedures are consequently incompatible with the Rule 23 opt-out class action device.[13]  Courts have also recognized that the FLSA's opt-in procedure is not an accident, but is the result of conscientious federal policy making.[14]  By requiring each class member in an FLSA collective action to

---

[13] *See LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975) ("There is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided for by FLSA § 16(b)."); *Jackson v. City of San Antonio*, 220 F.R.D. 55, 58 (W.D. Tex. 2003) ("Rule 23 and § 216(b) class actions are mutually exclusive and irreconcilable. . .") (citation and internal quotation omitted); *Heagney v. European Am. Bank*, 122 F.R.D. 125, 127 n. 1 (E.D. N.Y. 1988) ("Section 216(b) displaces the class action devices of Fed.R.Civ.P. 23, which are accordingly unavailable in [cases governed by that section.]"); *Sims v. Parke Davis & Co.*, 334 F. Supp. 774, 780-81 (E.D. Mich. 1971) *aff'd* 453 F. 2d 1259 (6th Cir. 1971) ("Claims . . . under the Fair Labor Standards Act . . . cannot be maintained as a class action under Rule 23.").

[14] *See, e.g., De Ascencio v. Tyson Foods, Inc.*, 342 F.3d 301, 311 (3d Cir. 2003) ("[M]andating an opt-in class or an opt-out class is a crucial policy decision.  Congress has selected an opt-in class for FLSA actions.") (citations omitted); *Lindsay v. Gov't Employees Ins. Co.*, 355 F. Supp. 2d 119, 121 (D. D.C. 2004) ("There are powerful policy considerations that led Congress to amend the FLSA to require employees wishing to join FLSA actions to affirmatively opt-in via individual written consents.") (citation and internal quotations omitted); *McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574, 577 (N.D. Ill. 2004) ("Mandating an opt-in class or an opt-out class is a crucial policy decision . . . [and] Congress created the opt-in procedure for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers from the burden of representative actions.") (citations and internal quotations omitted); *Rodriguez v. The Texan, Inc.*, 2001 WL 1829490, *2 (N.D. Ill.

affirmatively opt-in to the litigation, the legislature intended to limit employers' exposure to representative actions under the FLSA. *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 173 (1989) (Congress created FLSA opt-in procedure "for the purpose of limiting private FLSA plaintiffs to employees who asserted claims in their own right and freeing employers from the burden of representative actions."); *De Ascencio v. Tyson Foods, Inc.*, 342 F.3d 301, 306 (3d Cir. 2003) (Congress enacted FLSA opt-in procedure "to define and limit the jurisdiction of the courts" and "curb the number of [FLSA] lawsuits") (citations and internal quotations omitted). Congress, therefore, by adopting the § 216(b) opt-in procedure intentionally exempted FLSA claims like those Plaintiffs assert in Count I of the Amended Complaint from the Rule 23 class action mechanism.

To avoid the congressional mandate that members of the putative FLSA Class affirmatively opt-in to the case, Plaintiffs seek to bring Count II as an opt-out class action on behalf of a subset of the "Covered Employees"[15] in the FLSA Class who worked for Defendants in New Hampshire during the past three years. Allowing Plaintiffs to bring claims for federally mandated overtime compensation under state law using the Rule 23 opt-out mechanism would obviate the opt-in procedure of the FLSA's collective action provisions. Many states have prompt payment of wages laws like New Hampshire's.[16] If employees were allowed to assert claims for FLSA-mandated overtime under state payment of wages statutes, as Plaintiffs seek to do in Count II of their Amended Complaint, the FLSA's collective action procedures would be

---

2001) ("There are powerful public policy considerations that led Congress to . . . require the opt-in procedure via individualized written consents by employees wishing to join such actions.") (citation omitted).

[15] Plaintiffs use the same definition of "Covered Employees" for purposes of both the FLSA Class and the New Hampshire Class. *See* Amended Complaint, ¶¶ 2, 20, 31.

[16] *See, e.g.*, Cal. Lab. Code §§ 201-204; Conn. Gen. Stat. §§31-71b, 31-71c; Ind. Code § 22-2-5-1; Mass. Gen. Laws ch. 149, § 148; Minn. Stat. §§ 181.101, 181.13; N.Y. Lab. Law § 191; S.D. Codified Laws §§ 60-11-10, 60-11-11; Wis. Stat. § 109.03; Va. Code Ann. § 40.1-29; Wash. Rev. Code § 49.48.010.

eviscerated and the congressional intent underlying those procedures would be defeated.  For this reason, many courts have recognized that plaintiffs should be prohibited from using state law claims under Rule 23 to expand the scope of federal FLSA cases.[17]  For these reasons, in the event that the Court does not dismiss Count II in its entirety, it should strike the Rule 23 class action claims contained therein.

### IV.     The Court Should Dismiss Piche's Claims As Untimely.

Piche's claims are time barred because she does not allege to have worked for Defendants during the statute of limitations period applicable to her FLSA or New Hampshire state law claims.  An action for unpaid overtime compensation under the FLSA is barred unless commenced within two years after the cause of action accrued, except that an action arising out of a willful violation may be commenced within three years after the cause of action accrued.  29 U.S.C. § 255(a).  The statute of limitations period applicable to Piche's claims is measured from the date when the complaint naming her as a party plaintiff and her written consent to join the suit were filed with the Court.  29 U.S.C. §256(a); *El v. Potter*, 2004 U.S. Dist. LEXIS 24447, *24 (S.D.N.Y. 2004); *Soler v. G & U, Inc.*, 86 F.R.D. 524, 528-529 (S.D.N.Y. 1980).  Plaintiffs

---

[17] *See, e.g., De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, (3d Cir. 2003) (holding trial court erred in allowing plaintiffs to proceed with payment of wages claims under state law as Rule 23 class action because this expanded number of class members in FLSA case and caused "a federal tail to wag what is in substance a state dog"); *Lindsay*, 355 F. Supp. 2d at 121 (allowing plaintiffs to proceed with state law claims under Rule 23 "would circumvent the opt-in requirement mandated by Congress in federal FLSA actions."); *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 470 (N.D. Cal. 2004) ("the policy behind requiring FLSA plaintiffs to opt in to the class would largely be thwarted if a plaintiff were permitted to back door the shoehorning in of unnamed parties through the vehicle of calling upon similar state statutes that lack such an opt-in requirement.") (citation and internal quotations omitted); *McClain*, 222 F.R.D. at 577 (plaintiffs "cannot circumvent the [FLSA's] opt-in requirement and bring unnamed parties into federal court by calling upon state statutes . . ."); *Harper v. Yale Int'l Ins. Agency, Inc.*, 2004 WL 1080193, *5 (N.D. Ill.) (dismissing state law claims where plaintiffs subverted congressional intent by seeking to expand FLSA class by asserting state law claims under Rule 23); *Bartleson v. Winnebago Indus., Inc.*, 219 F.R.D. 629, 637-38 (N.D. Iowa 2003) (prohibiting plaintiffs from asserting state law claims under Rule 23 on behalf of individuals who did not affirmatively consent to join FLSA class as inappropriate attempt to circumvent FLSA opt-in procedure); *Jackson v. City of San Antonio*, 220 F.R.D. 55, 60 (W.D. Tex. 2003) (allowing plaintiffs to use state law claims under Rule 23 to expand scope of class "would flaunt the Congressional intention that FLSA claims proceed as an opt-in scheme"); *Muecke v. A-Reliable Auto Parts & Wreckers, Inc.*, 2002 WL 1359411, *2 (N.D. Ill. 2002) (in an FLSA collective action "it makes no real sense . . . to certify a [state law Rule 23] class that will *automatically* include all of the employees unless they opt out") (emphasis in original).

9

filed their Complaint on April 5, 2005. Piche did not file a written consent to join this lawsuit at that time, but the Complaint alleged that "Ms. Piche's signed consent will be filed shortly." Complaint, ¶ 16. Piche actually filed her consent to be a plaintiff on May 26, 2005.[18] The earliest date for which she can assert FLSA claims against Defendants was, therefore, May 26, 2002. Piche alleges that she last worked for Defendants on "approximately January 15, 2002," more than four months before the earliest date for which she could assert timely FLSA claims.[19] Amended Complaint, ¶ 11. Piche's claims against Defendants under the FLSA are, therefore, time barred.

A three-year statute of limitations also applies to Plaintiffs' claims for violations of New Hampshire's wage and hour laws. N.H. Rev. Stat. Ann. § 508:4(I); *Rosenzweig v. Morton*, 144 N.H. 9, 12 (1999) (dismissing claims for unpaid wages as untimely because they were brought more than three years after wages were allegedly due); *Scacchi v. Dycom Indus., Inc.*, 297 F. Supp. 406, 408 (D. N.H. 2004) (applying three-year statute of limitations to wage claims under New Hampshire law). Even if the filing of the Complaint tolled the statute of limitations on Plaintiffs' New Hampshire state law claims (which were not included in the original Complaint), Piche's claims under New Hampshire law are untimely. Plaintiffs filed their Complaint on April 5, 2005, three years and three months after Piche claims to have last worked for Defendants. Her claims under New Hampshire law are, therefore, also time barred.

---

[18] Piche's consent to join was backdated to February 14, 2005, almost two months before the Complaint was filed. Even if this date were assumed to be accurate and were given effect for statute of limitations purposes, which would not be correct, Piche's claims would still be untimely. Piche's ability to assert FLSA (and New Hampshire state law) claims against Defendants expired on January 15, 2005, three years after she claims to have last worked for Defendants and one month before she claims to have signed her backdated consent to join this litigation.

[19] Defendants do not concede that Piche last worked for Defendants as late as January 2002, but accept her allegation as true for purposes of this motion only. *Cooperman*, 171 F.3d at 46.

<u>CONCLUSION</u>

WHEREFORE, Defendants request that Count II of the Amended Complaint be

dismissed.  In the alternative, Defendants request that the Court strike paragraphs 30-37 of the

Amended Complaint, and all other paragraphs of the Amended Complaint to the extent that they

purport to assert a claim under New Hampshire state law on behalf of any person other than

Plaintiffs Debbie L. Trezvant, Timothy Cahill, Deborah Cheryl Arch, Mary-Catherine Piche or

any other individual who affirmatively assents to participate in this litigation.  Finally,

Defendants request that the Court dismiss all claims brought on behalf of Plaintiff Piche as

barred by the applicable statutes of limitations.

Respectfully submitted,

FIDELITY EMPLOYER SERVICES
CORPORATION, FIDELITY EMPLOYER
SERVICES COMPANY LLC and
FMR CORP.,
By their attorneys,

_____/s/ Richard L. Alfred_____
Richard L. Alfred (BBO # 015000)
Krista G. Pratt (BBO # 644741)
Barry J. Miller (BBO # 661596)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:     (617) 946-4800
Telecopier:     (617) 946-4801

Brett C. Bartlett (admitted to practice *pro hac vice*)
SEYFARTH SHAW LLP
1545 Peachtree Street, N.E., Suite 700
Atlanta, GA  30309-2401
Telephone:     (404) 892-6412
Telecopier:     (404) 892-7056

Dated:  August 26, 2005

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served
on Thomas E. Kenney, Pierce & Mandell, P.C., 11 Beacon St.,
Suite 800, Boston, MA 02108 by first class mail, postage prepaid,
on August 26, 2005.

_____/s/ Barry J. Miller_____
Barry J. Miller

BO1 15728477.6

# TITLE XXIII
# LABOR

## CHAPTER 275
## PROTECTIVE LEGISLATION

### Payment of Wages

#### Section 275:42

**275:42 Definitions.** – Whenever used in this subdivision:

I. The term "employer" includes any individual, partnership, association, joint stock company, trust, corporation, the administrator or executor of the estate of a deceased individual, or the receiver, trustee, or successor of any of the same, employing any person, except employers of domestic labor in the home of the employer, or farm labor where less than 5 persons are employed.

II. "Employee" means and includes every person who may be permitted, required, or directed by any employer, in consideration of direct or indirect gain or profit, to engage in any employment, but shall not include any person exempted from the definition of employee as stated in RSA 281-A:2, VII(b) or any person who meets all of the following criteria:

(a) The person possesses or has applied for a federal employer identification number or social security number, or in the alternative, has agreed in writing to carry out the responsibilities imposed on employers under this chapter.

(b) The person has control and discretion over the means and manner of performance of the work in achieving the result of the work.

(c) The person has control over the time when the work is performed, and the time of performance is not dictated by the employer. However, this criterion does not prohibit the employer from reaching agreement with the person as to completion schedule, range of work hours, and maximum number of work hours to be provided by the person, and in the case of entertainment, the time such entertainment is to be presented.

(d) The person holds himself or herself out to be in business for himself or herself.

(e) The person is not required to work exclusively for the employer.

III. The term "wages" means compensation, including hourly health and welfare, and pension fund contributions required pursuant to a health and welfare trust agreement, pension fund trust agreement, collective bargaining agreement, or other agreement adopted for the benefit of an employee and agreed to by his employer, for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission, or other basis of calculation.

IV. The term "commissioner" means the labor commissioner.

V. For the purposes of this subdivision the officers of a corporation and any agents having the management of such corporation who knowingly permit the corporation to violate the provisions of RSA 275:43, 44 shall be deemed to be the employers of the employees of the corporation.

VI. The term "salaried employee" means any employee who under an employment agreement or as a matter of policy or practice, regularly receives each pay period a predetermined or fixed amount of money constituting compensation, based on a predetermined amount of wages to be paid as determined by a daily rate, weekly rate, bi-weekly rate, semi-monthly rate or monthly rate, and which amount is not subject to reduction because of variations in the quality or quantity of the work performed and regardless of the hours or days worked except as otherwise provided in RSA 275:43-b.

VII. The term "draw against commission" means a compensation method under which an employee

receives, at least once each month, a draw payment of not less than the minimum wage, representing an advance against anticipated commission earnings. Draws shall be reconciled against commissions monthly unless otherwise agreed, in writing, by employer and employee. If the reconciliation results in an amount payable to the employee, payment shall be made in accordance with this chapter. If the reconciliation results in a negative balance, the balance may, by written agreement between employer and employee, be carried over into ensuing time periods; however, if a final reconciliation results in a negative balance, it shall not be recoverable from the employee.

**Source.** 1887, 26:1. PS 180:21. 1909, 134:1. 1919, 6:1. 1921, 68:1. PL 176:25. 1935, 69:1. RL 212:14. 1951, 124:1. RSA 275:42. 1957, 187:15. 1963, 237:3. 1967, 398:1. 1975, 335:1. 1994, 290:2, eff. Aug. 5, 1994. 1999, 279:2, eff. Sept. 14, 1999.

# TITLE XXIII
# LABOR

## CHAPTER 275
## PROTECTIVE LEGISLATION

### Payment of Wages

#### Section 275:43

**275:43 Weekly. –**

I. Every employer shall pay all wages due to employees within 8 days including Sunday after expiration of the week in which the work is performed, except when permitted to pay wages less frequently as authorized by the commissioner pursuant to paragraph II, on regular paydays designated in advance by the employer:

    (a) In lawful money of the United States,

    (b) By electronic fund transfer at no cost to the employee,

    (c) By direct deposit with written authorization of the employee to banks of the employee's choice, or

    (d) With checks on banks convenient to the place of employment where suitable arrangements are made for the cashing of such checks by employees for the full amount of the wages due;
provided, however, that if an employer elects to pay employees as specified in subparagraphs (b) or (c), the employer shall offer employees the option of being paid as specified in subparagraph (d), and further provided that all wages in the nature of health and welfare fund or pension fund contributions required pursuant to a health and welfare fund trust agreement, pension fund trust agreement, collective bargaining agreement, or other agreement, adopted for the benefit of employees and agreed to by the employer shall be paid by every such employer within 30 days of the date of demand for such payment, the payment to be made to the administrator or other designated official of the applicable health and welfare or pension trust fund.

I-a. If a subcontractor who is responsible for making health and welfare fund or pension fund contributions fails to make such contributions within the 30-day requirement of paragraph I, the person designated to receive such contributions shall, within 15 days of the date the contributions became due, notify in writing the labor commissioner that the contributions are overdue. The labor commissioner shall notify the prime or general contractor within 15 days from the date of receipt of such notice that such contributions are overdue. The department of labor may pursue the general or prime contractor for such contributions only after all reasonable efforts have been made to secure the contributions from the subcontractor.

II. The commissioner may, upon written petition showing good and sufficient reason, permit payment of wages less frequently than weekly, except that it shall be at least once each calendar month. In all instances, payment shall be made regularly on a predesignated date. The commissioner may prescribe the terms and conditions of such permission, and limit the duration thereof.

III. Vacation pay, severance pay, personal days, holiday pay, sick pay and payment of employee expenses, when such benefits are a matter of employment practice or policy, or both, shall be considered wages pursuant to RSA 275:42, III, when due.

IV. Nothing in this section shall prevent an employer from compensating an employee on a draw against commission basis as defined in RSA 275:42, VII.

V. This section shall not be construed to preclude the use of compensatory time off as compensation.

(a) This paragraph applies to:

(1) Governmental entities.

(2) Public sector employees who are under a collective bargaining employment agreement or, if not negotiated through a union or other designated employee representatives, that the agreement or understanding must be reached between employer and employee before the performance of any work.

(b)(1) When the employee requests the use of accrued compensatory time, the request shall be honored within a reasonable period of time unless to do so would unduly disrupt the operation of the employing agency. Mere inconvenience to the employer is an insufficient basis for denial of a request for compensatory time off.

(2) The employer shall not have a policy of requiring the use of compensatory time within a certain period or else the employee will lose it.

(3) Upon termination of employment for any reason, an employee shall be paid for unused compensatory time at the final regular rate received by such employee.

(c)(1) Limitations concerning the ceiling of accrual of compensatory time are as follows:

(A) Public safety, emergency response, or seasonal activity employees may accrue no more than 480 hours of compensatory time for 320 actual overtime hours worked. This limitation shall not apply to office personnel or civilian employees who may perform public safety activities on an emergency basis, even if such employees spend substantially all of their time in a particular work week engaged in such activities.

(B) Other public sector employees may accrue no more than 240 hours of compensatory time for 160 hours of actual time worked.

(2) If an employee has accrued more than the applicable ceiling for compensatory time, such employee shall be paid overtime pay at time and one half of the employee's regular rate of pay on the designated pay day.

(d) For the purposes of this paragraph:

(1) "Governmental entity" means any branch, department, commission, bureau, agency, or agent of the government of this state or a political subdivision of this state.

(2) "Public safety activities" includes law enforcement, firefighting, or related duties.

(3) "Emergency response activities" includes dispatching of emergency vehicles and personnel, rescue work and ambulance services.

(4) "Seasonal activity" includes duties performed by employees assigned to work during periods of significantly increased demands on a regular and recurring basis and during this period protected overtime may result in the accumulation of more than 240 compensatory time hours. These periods of short but intense activity shall not qualify as seasonal.

(e) Nothing in this paragraph modifies or affects any federal law regarding compensatory time off including the Fair Labor Standards Act of 1938, 29 USC section 207. The purpose of this paragraph is to make compensatory time off available as set forth above under New Hampshire law and not to limit already existing rights and protection. An employer shall provide compensatory time off under whichever statutory provision provides greater rights to employees.

**Source.** 1911, 78:1, 2. 1921, 68:3. PL 176:26. RL 212:15. RSA 275:43. 1963, 237:3. 1967, 398:2. 1971, 71:1. 1975, 355:2, 3. 1976, 48:1. 1983, 364:1. 1987, 100:1. 1994, 290:3. 1995, 102:1, eff. May 16, 1995. 1997, 226:1, 2, eff. Aug. 17, 1997.

Case 1:05-cv-10673-WGY    Document 17-2    Filed 08/26/2005    Page 5 of 9

# TITLE XXIII
# LABOR

## CHAPTER 275
## PROTECTIVE LEGISLATION

### Payment of Wages

#### Section 275:44

**275:44 Employees Separated From Payroll Before Pay Days. –**

I. Whenever an employer discharges an employee, the employer shall pay the employee's wages in full within 72 hours.

II. Whenever an employee quits or resigns, the employer shall pay the employee's wages no later than the next regular payday, as provided under RSA 275:43, either through the regular pay channels or by mail if requested by the employee, except that if the employee gives at least one pay period's notice of intention to quit the employer shall pay all wages earned by the employee within 72 hours.

III. When work of an employee is suspended as a result of a labor dispute, or when an employee for any reason whatsoever is laid off, the employer shall pay in full to such employee not later than the next regular payday, as designated under RSA 275:43, either through the regular pay channels or by mail if requested by the employee, wages earned at the time of suspension or layoff.

IV. If an employer willfully and without good cause fails to pay an employee wages as required under paragraphs I, II or III of this section, such employer shall be additionally liable to the employee for liquidated damages in the amount of 10 percent of the unpaid wages for each day except Sunday and legal holidays upon which such failure continues after the day upon which payment is required or in an amount equal to the unpaid wages, whichever is smaller; except that, for the purpose of such liquidated damages such failure shall not be deemed to continue after the date of filing of a petition in bankruptcy with respect to the employer if he is adjudicated bankrupt upon such petition.

V. Regardless of the reason for an employee's termination of employment the employer shall pay to the appropriate administrator or other designated officials all wages in the nature of hourly health and welfare fund or pension fund contributions due with respect to such employee at the time of the next succeeding payment date applicable to such contributions.

**Source.** 1887, 26:4. PS 180:23. PL 176:27. RL 212:16. RSA 275:44. 1963, 237:3. 1967, 398:3, eff. Sept. 1, 1967.

# TITLE XXIII
# LABOR

## CHAPTER 275
## PROTECTIVE LEGISLATION

## Payment of Wages

### Section 275:53

**275:53 Employees' Remedies. –**

I. Action by an employee to recover unpaid wages and/or liquidated damages may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves, or such employee or employees may designate an agent or representative to maintain such action.

II. Whenever the commissioner determines that wages have not been paid, and that such unpaid wages constitute an enforceable claim, the commissioner may upon the request of the employee take an assignment in trust for such wages and/or any claim for liquidated damages, without being bound by any of the technical rules respecting the validity of any such assignments and may bring any legal action necessary to collect such claim. With the consent of the assigning employee at the time of the assignment the commissioner shall have the power to settle and adjust any such claim to the same extent as might the assigning employee.

III. The court in any action brought under this subsection may, in addition to any judgment awarded to the plaintiff or plaintiffs, allow costs of the action, and reasonable attorney's fees, to be paid by the defendant. Such attorney's fees in the case of actions brought under this subsection by the commissioner shall be remitted by the commissioner to the state treasurer. The commissioner shall not be required to pay the filing fee or other costs or fees of any nature or to file bond or other security of any nature in connection with such action or proceedings supplementary thereto, or as a condition precedent to the availability to the commissioner of any process in aid of such action or proceedings. The commissioner shall have power to join various claimants in one preferred claim or lien, and in case of suit to join them in one cause of action.

**Source.** 1963, 237:4. 1975, 355:7, eff. Aug. 6, 1975.

# TITLE XXIII
# LABOR

## CHAPTER 279
## MINIMUM WAGE LAW

### Hourly Rate

#### Section 279:21

**279:21 Minimum Hourly Rate.** – Unless otherwise provided by statute, no person, firm, or corporation shall employ any employee at an hourly rate lower than that set forth in the federal minimum wage law, as amended, or as follows, whichever is higher:

| Date | Hourly Rate |
| --- | --- |
| April 1, 1991 to September 30, 1996 | $4.25 |
| October 1, 1996 to August 31, 1997 | $4.75 |
| On and after September 1, 1997 | $5.15 |

Tipped employees of a restaurant, hotel, motel, inn or cabin, who customarily and regularly receive more than $20 a month in tips directly from the customers will receive a base rate from the employer of not less than $2.38 per hour. With any change to the minimum wage after the effective date of this section, the employer is responsible to pay employees $2.38 per hour or 45 percent of the applicable minimum wage whichever is higher. If an employee shows to the satisfaction of the commissioner that the actual amount of wages received at the end of each pay period did not equal the minimum wage for all hours worked, the employer shall pay the employee the difference to guarantee the applicable minimum wage. The limitations imposed hereby shall be subject to the following exceptions:

I. These limitations shall not apply to employees engaged in household labor, domestic labor, farm labor, nor to outside salesmen, nor to employees of summer camps for minors.

II. These limitations shall not apply to employees engaged as newsboys, non-professional ski patrolmen or golf caddies.

III. [Repealed.]

IV. These limitations shall not apply to a person with less than 6 months' experience in an occupation; provided, however, such person shall not be paid less than 75 percent of applicable statutory minimum wage in an occupation, after application is filed by the employer with the labor commissioner within 10 days after hire.

V. These limitations shall not apply to a person 16 years of age or under; provided, however, such person shall not be paid less than 75 percent of applicable statutory minimum wage rate and evidence of such person is kept on file by the employer.

VI, VII. [Repealed.]

VIII. Those employees covered by the introductory paragraph of this section, with the following exceptions, shall, in addition to their regular compensation, be paid at the rate of time and one-half for all time worked in excess of 40 hours in any one week:

(a) Any employee employed by an amusement, seasonal, or recreational establishment if:

(1) It does not operate for more than 7 months in any calendar year; or

(2) During the preceding calendar year, its average receipts for any 6 months of such year were

Section 279:21 Minimum Hourly Rate.                                    Page 2 of 2

Case 1:05-cv-10673-WGY    Document 17-2    Filed 08/26/2005    Page 8 of 9

not more than 33- 1/3 percent of its average receipts for the other 6 months of such year. In order to meet the requirements of this subparagraph, the establishment in the previous year shall have received at least 75 percent of its income within 6 months. The 6 months, however, need not be 6 consecutive months.

(b) Any employee of employers covered under the provisions of the federal Fair Labor Standards Act of 1938, as amended (29 U.S.C. section 201, et seq.).

**Source.** 1949, 310:1, par. 25. 1953, 232:1, par. 25. RSA 279:21. 1955, 288:1, par. 25. 1957, 311:1. 1959, 275:1. 1963, 203:1. 1967, 440:10. 1971, 494:1, 2; 552:1, 2. 1973, 350:1. 1977, 234:1. 1983, 267:1. 1985, 83:1. 1986, 63:1; 64:1. 1989, 86:1, 4. 1990, 198:3. 1995, 94:7, XXI, eff. July 15, 1995. 1997, 226:5, eff. Aug. 17, 1997.

Section 508:4 Personal Actions.                                                                          Page 1 of 1

Case 1:05-cv-10673-WGY      Document 17-2      Filed 08/26/2005      Page 9 of 9

# TITLE LII
# ACTIONS, PROCESS, AND SERVICE OF PROCESS

## CHAPTER 508
## LIMITATION OF ACTIONS

### Section 508:4

**508:4 Personal Actions. –**

I. Except as otherwise provided by law, all personal actions, except actions for slander or libel, may be brought only within 3 years of the act or omission complained of, except that when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission, the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of.

II. Personal actions for slander or libel, unless otherwise provided by law, may be brought only within 3 years of the time the cause of action accrued.

**Source.** RS 181:3, 4. CS 192:3, 4. GS 202:3. GL 221:3. PS 217:3. PL 329:3. 1937, 21:1. RL 385:3. RSA 508:4. 1969, 378:1. 1981, 514:1. 1986, 227:12, eff. July 1, 1986.

Lab 803.02 Payment of Wages.

(a) Pursuant to RSA 275:43, I and II, every employer shall pay all wages due to his/her employees within 8 days, including Sundays, after the expiration of the workweek on regular paydays designated in advance. Biweekly payments of wages shall meet the foregoing requirement if the last day of the second week falls on the day immediately preceding the day of payment. Payment in advance and in full of the work period, even though less frequently than biweekly, also meets the foregoing requirement.

(b) Every employer who requests permission to pay less frequently than required by RSA 275:43, I, shall supply the department with the following:

> (1) Method of payment;
>
> (2) Whether biweekly; or semi-monthly or monthly;
>
> (3) When each pay period begins and when each pay period ends;
>
> (4) Designated payday;
>
> (5) Classification of employees;
>
> (6) The salary range of the employees involved; and
>
> (7) The employers' federal identification number.

(c) Permission shall be granted pursuant to RSA 275:43, II on a case by case basis provided the following terms and conditions are met:

> (1) The information supplied pursuant to Lab 803.02(b), above, is complete;
>
> (2) The designated payday is on a regular schedule which is no less frequent than monthly for employees classified as salaried and no less frequent than bi-weekly for employees classified as hourly;
>
> (3) The employer has no history of wage and hour violations; and
>
> (4) The employees of the employer making such request will not endure financial hardship by a decrease in pay frequency.

(d) If permission is granted pursuant to Lab 803.02(c) above, the permission shall be valid for an indefinite period of time, provided that:

> (1) No complaints are received from the employees involved;
>
> (2) Payroll is regularly satisfied on the designated payday; and
>
> (3) The information provided pursuant to 803.02(b) does not change.

(e) Pursuant to RSA 275:44, I and II, every employer who discharges an employee shall pay all wages owed within 72 hours either by physically giving payment to the employee or by mailing the payment to

the employee, at the discretion of the employee. The employer shall pay in full the wages of an employee who quits no later than the next regular payday, except when he/she will not permit the employee to work the period of notice, in which event he/she shall make payment within 72 hours.

(f) Every employer shall pay without condition and within the time set forth in Lab 803.02(a), and (e) all wages or parts thereof conceded by him/her to be due.

(g) In determining what wages are owed and in making payment thereof, the employer shall:

> (1) Pay wages based upon required records of hours worked per RSA 279:27 and RSA 275:49, VI, and in accordance with written or verbal agreements between the parties per RSA 275:49, I-III; and

> (2) Require no release as a condition of payment per RSA 275:50, although a receipt may be requested

(h) Tips are wages pursuant to RSA 279:21 and RSA 275:42, II and shall be the property of the employee(s) receiving tips and shall be retained by the employee receiving the tip unless the employee voluntarily and without coercion agrees to participate in a tip pool which is not required and not controlled in any manner by the employer.

(i) If the employee(s) pursuant to Lab 803.02(h) above agrees to participate, the employer is not precluded from administering a valid tip pool in which participation is voluntary, not coerced, and the employer exercises no control over the manner in which tips are pooled other than for accounting and bookkeeping purposes.

Source. #2515, eff 10-25-83; ss by #4017, eff 3-21-86; EXPIRED 3-21-92

New. #5491, eff 10-20-92, EXPIRED 10-20-98

New. #7007, eff 5-26-99