## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DEBBIE L. TREZVANT, TIMOTHY CAHILL, DEBORAH CHERYL ARCH, and MARY-CATHERINE PICHE, each of them individually and on behalf of all others similarly situated and similarly situated current and former employees of Defendant | Case No. 05-10673 (WGY) |
| Plaintiffs, | |
| v. | |
| FIDELITY EMPLOYER SERVICES CORPORATION, FIDELITY EMPLOYER SERVICES COMPANY, LLC, and FMR CORP., | |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION AND FOR COURT FACILITATION OF NOTICE PURSUANT TO 29 U.S.C. § 216(b)
### Affidavits and Exhibits in Support of Motion Filed Concurrently

## TABLE OF CONTENTS

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION
FOR CONDITIONAL COLLECTIVE CERTIFICATION AND FOR
COURT FACILITATION OF NOTICE PURSUANT TO
29 U.S.C. SECTION 216(b)...................................................................1

I.    RELIEF SOUGHT BY THIS MOTION...........................................1

II.   THE SOLE ISSUE ON THIS MOTION IS WHETHER THE
      COVERED EMPLOYEES ARE SIMILARLY SITUATED
      WITHIN THE MEANING OF THE FLSA......................................2

III.  STATEMENT OF FACTS..............................................................4

IV.   THIS MOTION IS AN ORDINARY PRELIMINARY
      STEP IN AN FLSA COLLECTIVE ACTION, IS TO BE
      DECIDED UNDER A LENIENT STANDARD, AND
      SERVES THE PUBLIC POLICY OF THE FLSA ...........................6

      A.   FLSA Collective Actions Are "Opt-In" Actions, Not
           Opt-Out Class Actions Under F.R.C.P. 23..............................6
      B.   Conditional Certification and Notice to Collective
           Members Is Vital To Protect FLSA Collective Action
           Members From The Statute of Limitations............................7
      C.   Granting This Motion Is Necessary In Order To
           Promote The Legislative Purpose Of The FLSA......................8
      D.   This Court is to Apply A Lenient Standard In Deciding
           This Motion.......................................................................10
      E.   On This Motion, The Court Does Not Decide The
           Merits Of The Claims Or Defenses......................................13
      F.   The Motion Should Not Be Delayed For Discovery...................13

V.    PLAINTIFFS HAVE MORE THAN SATISFIED THE
      STANDARD FOR GRANTING THIS MOTION..............................14

VI.   NOTICE IS PROPERLY ACCOMPANIED BY CONDITIONAL
      CERTIFICATION.......................................................................17

VII.  DISCOVERY OF NAMES, ADDRESSES AND TELEPHONE
      NUMBERS IS PROPER AND NECESSARY UNDER HOFFMAN-
      LAROCHE.................................................................................17

VIII. THE PROPOSED NOTICE IS FAIR AND ADEQUATE....................18

IX.   CONCLUSION............................................................................18

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR
CONDITIONAL COLLECTIVE CERTIFICATION AND FOR COURT
FACILITATION OF NOTICE PURSUANT TO 29 U.S.C. § 216(b)**
Affidavits and Exhibits in Support of Motion Filed Concurrently

## I.    <u>RELIEF SOUGHT BY THIS MOTION</u>

Pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"),

Plaintiffs bring this case against Defendants Fidelity Employer Services Corporation

("FESCO") and FMR Corp. to recover unpaid overtime compensation for themselves and

other employees and former employees of Defendants with the job titles, "Business

Analyst," "Technical Analyst," "Configuration Analyst," "Project Analyst," and

"Reporting Analyst." (These employees and former employees are collectively referred

to herein as the "Covered Employees").

By this motion, Plaintiffs seek an Order for the following:

(1)    Pursuant to the FLSA and cases interpreting it, that the Court facilitate and

authorize notice of this action to the Covered Employees.  The notice is to include a

consent form (opt-in form) authorized by the FLSA.  (This is far different from notice of

pendency of a class action under Fed. Rule of Civ. Proced., Rule 23.  Rule 23 applies to

the separate state law claim for relief in this case, not the FLSA claim for relief.

Plaintiffs will seek Rule 23 notice for the state law claim for relief at a later time.)

(2)    That the Court approve the proposed FLSA Notice of this action (Exhibit

A) and the consent form (Exhibit B).

(3)    That the Court conditionally certify this action as a representative

collective action pursuant to the FLSA, 29 U.S.C. § 216(b).  (This, too, is far different

1

from certification of a class action under Fed. Rule of Civ. Proced., Rule 23. That rule

does not apply to certification under the FLSA.)

(4)    That the Court order Defendants to produce forthwith to Plaintiffs the

names, addresses, alternate addresses, and all telephone numbers of all Covered

Employees.

(5)    That the Court order Defendants to post the Notice, along with the consent

forms, in each of Defendants' offices where Covered Employees are employed.

## II.    THE SOLE ISSUE ON THIS MOTION IS WHETHER THE COVERED EMPLOYEES ARE SIMILARLY SITUATED WITHIN THE MEANING OF THE FLSA.

The sole requirement for granting this motion is that the employees are, in the

words of the FLSA, 29 U.S.C. § 216(b), "similarly situated."

That they are similarly situated can be established by the complaint alone. Reeves

v. Alliant Techsystems, Inc., 77 F.Supp.2d 242, 247 (D.R.I. 1999), citing Mooney v.

Aramco Services Co., 54 F.3d 1207, 1214 (5th Cir.1995) n. 8.

Here, no only the first amended complaint, but also affidavits submitted with this

motion also demonstrate that the Covered Employees are similarly situated.

The FLSA requires employees to be paid at time and a half their regular rate for

hours worked in excess of 40 in a week, unless they fall under one of the overtime

exemptions of the FLSA. 29 U.S.C. § 297(a)(1).

The Covered Employees are obviously similarly situated in that they were all

classified by Defendants as exempt from the overtime pay requirements of the FLSA and

thus denied overtime pay. It is uncontested that they were not paid at overtime rates for

overtime work.  They were paid a straight salary regardless of how many hours they worked.

The Covered Employees are similarly situated in another sense.  Defendants will undoubtedly attempt to assert that the FLSA's administrative exemption from overtime pay requirements applies to the Covered Employees.  That exemption has many requirements.  One absolutely essential one is that the employees must "customarily and regularly [exercise] discretion and independent judgment."  29 C.F.R. 541.2.  The first amended complaint and the affidavits filed herewith demonstrate that the Covered Employees duties and tasks are all similar, essentially the same, with respect to whether they exercised discretion and independent judgment in their work.  Arch Affidavit, ¶¶1, 3-4; Cahill Affidavit, ¶¶1, 3-8; Piche Affidavit, ¶¶1, 3-4; Trezvant Affidavit, ¶¶1, 3-7.  In fact, the affidavits show their duties and tasks are all similar, essentially the same, for any purpose relevant to this motion.  Thus the Covered Employees are all similarly situated with respect to the FLSA's overtime requirements and any exemption therefrom.

On this motion, the Court does not decide the merits of the claims or defenses, including any exemption from overtime.  Severtson v. Phillips Beverage Co., 137 F.R.D. 264, 267 (D. Minn. 1991); Garner v. G.D. Searle Pharmaceuticals & Co., 802 F.Supp. 418, 423 fns.3 & 4 (M.D. Ala. 1991); Roebuck v. Hudson Valley Farms, Inc., 239 F.Supp.2d 234, 238 (N.D.N.Y. 2002); Grayson v. K Mart Corporation, 79 F.3d 1086, 1099, n.17 (11th Cir. 1996); and see section IV.E. below.

Rather, the Court decides only whether the employees are similarly situated with respect to the merits, or in some other significant way, such as with respect to the right to

overtime or any exemption from it. As shown below, it is quite obvious that the Covered Employees are similarly situated.

### III.    STATEMENT OF FACTS

It is undisputed that the Covered Employees were not paid overtime wages for overtime hours (hours in excess of 40 in a week). They were paid on the basis of salaries, i.e. the same amount per pay period regardless of how many hours they worked.

Their working hours averaged upwards of 50 hours per week, sometimes over 70 in a week. Arch Affidavit, ¶¶6-7; Cahill Affidavit, ¶¶11-12; Piche Affidavit, ¶¶5-6; Trezvant Affidavit, ¶¶10-11.

Defendants are in the business of providing to their corporate customers throughout the United States services for the handling of the customers' employee benefits and other human resources functions.

Although the job titles given to the Covered Employees use the word "analyst," these are data entry and clerical jobs. In the modern business world, in which even the most routine and rote work, such as a cashier at a supermarket, is done by computer, the fact that an employee uses a computer has nothing to do with the sophistication of the job. Also, it is commonplace for employers to lend a false cachet of sophistication to a job by giving it a title, such as "analyst," when there is no actual analysis involved, and no such sophistication.

The fact is that the work of these Covered Employees consists of routine tasks that rarely, if ever, involved the exercise of discretion or independent judgment. Arch Affidavit, ¶¶1, 3-4; Cahill Affidavit, ¶¶1, 3-8; Piche Affidavit, ¶¶1, 3-4; Trezvant Affidavit, ¶¶1, 3-7.

4

As stated in two of the affidavits, supervisors told the affiants, and many other Covered Employees present, that they were "paid to work, not to think." Cahill Affidavit, ¶9; Trezvant Affidavit, ¶8.

The work of the Covered Employees consisted of receiving information from other employees and sources, entering the information into Defendants' computer network, looking at computer screens to see if the data appeared where it was supposed to appear, and reporting information to supervisors. Arch Affidavit, ¶3; Cahill Affidavit, ¶3; Piche Affidavit, ¶3; Trezvant Affidavit, ¶3. These tasks are unsophisticated and essentially clerical. This was true whether the employees were working on Defendants' computer program conversion project, or on other projects and functions. Cahill Affidavit, ¶4; Trezvant Affidavit, ¶7.

Also, the Covered Employees were supplied with specific written guidelines and rules to follow in performing their work duties. Arch Affidavit, ¶4; Cahill Affidavit, ¶7; Trezvant Affidavit, ¶4.

There were between 200 and 380 Covered Employees employed while the plaintiffs were employed as Covered Employees, and this does not include Covered Employees hired later, or ones plaintiffs did not know about. Arch Affidavit, ¶5; Cahill Affidavit, ¶10.

IV.    **THIS MOTION IS AN ORDINARY PRELIMINARY STEP IN AN FLSA COLLECTIVE ACTION, IS TO BE DECIDED UNDER A LENIENT STANDARD, AND SERVES THE PUBLIC POLICY OF THE FLSA.**

A.    **FLSA Collective Actions Are "Opt-In" Actions, Not Opt-Out Class Actions Under F.R.C.P. 23.**

The FLSA itself provides for collective actions.  It authorizes employees to bring an action for violation of the provisions of the Act "for and in behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b).  See also <u>Kane v. Gage Merchandising Services, Inc.</u>, 138 F.Supp.2d 212, 213-214 (D. Mass.2001); <u>Reeves v. Alliant Techsystems, Inc.</u>, 77 F.Supp.2d 242, 246 (D.R.I. 1999); <u>Ballaris v. Wacker Siltronic Corporation</u>, 370 F.3d 901, 907, n.9 (9th Cir. 2004).

The leading case on this type of motion is <u>Hoffmann-LaRoche Inc. v. Sperling</u>, 493 U.S. 165, 170-171 (1989).  The motion is commonly referred to as a <u>Hoffmann-LaRoche</u> motion.  <u>Hoffmann-LaRoche</u> was a case under the Age Discrimination in Employment Act ("ADEA").  When the ADEA was enacted, Congress expressly made the FLSA's collective action procedures applicable to ADEA collective actions.  Thus, on issues collective action procedure, ADEA cases are normally applicable to FLSA cases.

A collective action has important procedural distinctions from a class action brought under Fed. Rule of Civ. Proced., Rule 23.  For example, unlike Rule 23 class actions, under the FLSA "no employee shall be a party plaintiff to [a collective action] unless he gives his consent in writing . . . and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).  Thus, a collective action is an opt-in procedure whereby employees must affirmatively file a document in order to be included

in the class.  But a Rule 23 class action is an opt-out procedure: once notice of the action is given, class members must affirmatively elect to opt out in order not to be included in the action.  The first claim for relief here is an opt-in FLSA collective action.

There is a related and vital difference between FLSA collective actions and Rule 23 class actions -- the statute of limitations, discussed in the next section below.

**B.**     **Conditional Certification and Notice to Collective Members Is Vital to Protect FLSA Collective Action Members from the Statute of Limitations.**

It is critical to provide early notice to potential collective members under the FLSA because the statute of limitations for each collective member's FLSA claims continues to run until he or she files a written consent to join the action.  Except by happenstance, he or she will have no way of knowing about the action or how to prepare and file a consent form.  Thus, for all but the tiny fraction of the collective members who have already filed consents, the notice is their opportunity to receive and file the consent, and thereby present and protect their claims.

The statute of limitations for FLSA claims provides that the action must be "commenced" within two years after the violation, or three years after a "willful violation."  29 U.S.C. § 255(a).  However, 29 U.S.C. § 256 provides that if the FLSA action is a collective action, as this one is, the action "shall be considered to be commenced in the case of any individual claimant" only when the claimant files a "written consent" with the court.  Accord, Kane v. Gage Merchandising Services, Inc., 138 F.Supp.2d 212, 213-214 (D. Mass. 2001); Does I through XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1064 (9th Cir. 2000).

Therefore, every payday that passes will result in a progressive loss of claims for overtime wages owed to collective members more than three or two years earlier. The only way to prevent that prejudice is to grant this motion, which will result in sending them notice and a consent form, and thus an opportunity to file the form and stop the running of their statutes of limitations.

**C.**     **Granting this Motion Is Necessary in Order to Promote the Legislative Purpose of the FLSA.**

The United States Supreme Court has emphasized the importance of motions such as this one. Bearing in mind that the ADEA incorporates the collective action provisions of the FLSA, the strong language in the leading case, Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170-171 (1989) supports collective action notice (in the quotation below, we add the material in brackets):

"Congress has stated its policy that ADEA plaintiffs [and thus FLSA plaintiffs, because their collective action is brought under the same FLSA provisions] should have the opportunity to proceed collectively. A collective action allows age discrimination [and wage] plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity.

"These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate. [FLSA] Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly

situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure. *See* Fed.Rule Civ.Proc. 83. It follows that, once an ADEA action [and thus necessarily an FLSA action, which is brought under the same FLSA provisions as an ADEA action] is filed, the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way."

Following Hoffman-LaRoche, a host of district courts have ordered early notice to potential opt-in members in FLSA actions.

For example, in Roebuck v. Hudson Valley Farms, Inc., 239 F.Supp.2d 234, 241 (N.D.N.Y. 2002), an FLSA action, the district court ordered court-authorized notice, and ordered the Defendanat to provide the names and last known addresses of employees during the preceding three year period, based upon the affidavits of only three employees. Roebuck emphasized the "'broad remedial purpose of the Act, which should be given a liberal construction . . .'" Id. at 238, quoting Braunstein v. Eastern Photographic Labs, Inc., 600 F.2d 335, 336 (2nd Cir. 1978), emph. added.

Pirrone v. North Hotel Associates, 108 F.R.D. 78, 82 (E.D. Pa. 1985), held that notice to all similarly-situated employees was appropriate "in light of the broad remedial purpose of the FLSA, . . . [T]he FLSA was enacted to protect employees. . . The class action procedure, however, would have little or no significance if notice was not permitted in some form." Lambert v. Ackerley, 180 F.3d 997, 1003 (9th Cir. 1999) held that because the FLSA is remedial and humanitarian, it must be interpreted broadly.

**D.**    <u>**This Court Is to Apply a Lenient Standard in Deciding This Motion.**</u>

In order to maintain a collective action under the FLSA, plaintiffs need only demonstrate that "other employees [are] similarly situated." 29 U.S.C. § 216(b).  The cases uniformly hold that a lenient standard is to be applied in making the "similarly situated" determination.  That makes sense, given that the motion is for conditional certification only, not final certification, nor any merits determination, as explained in Subsection E. below.  It also makes sense in that the motion is so important in preserving the rights of the collective members, particularly against the statute of limitations.

In <u>Kane v. Gage Merchandising Services, Inc.</u>, 138 F.Supp.2d 212 (D. Mass. 2001), this court granted plaintiff's motion for court-facilitated notice to the potential class.  The court explained, at p. 214 (emph. added):

> "At this initial 'notice stage', the court usually relies 'only on the pleadings and any affidavits which have been submitted…' [Citation] '**Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class.**' [Citation]  Indeed, some courts have held that, at the 'notice' stage, plaintiffs need only make substantial allegations that the putative class members were subject to a single decision, policy, or plan that violated the law. [Citation]"

The plaintiff in <u>Kane</u> submitted an affidavit declaring that a manager had stated that the employees in question would never be paid overtime.  The court applied the "lenient" standard to find sufficient evidence of similarly situated employees, and ordered conditional certification, notice, and production of names and addresses.  <u>Id</u>. at 215.

District courts in the First Circuit have held that plaintiffs can meet the lenient

standard "by simply alleging that the putative class members were together the victims of

a single decision, policy, or plan' that violated the law." Reeves v. Alliant Techsystems,

Inc., 77 F.Supp.2d 242, 247 (D. R.I. 1999).

Here, Paragraph 1 of the First Amended Complaint alleges: "Pursuant to a

decision, policy and plan, these employees were unlawfully classified by Defendants as

exempt from laws requiring overtime pay, but actually were and are non-exempt and

entitled to overtime pay." Under Reeves, this pleading alone should suffice to order the

notice sought here.

In addition, plaintiffs submit affidavits that they and hundreds of others  are

similarly situated employees.  These affidavits set forth that the primary duties and tasks

of all the Covered Employees were essentially the same.  Arch Affidavit, ¶5; Cahill

Affidavit, ¶¶3-5, 7, 10; Piche Affidavit, ¶3; Trezvant Affidavit, ¶¶3-4, 6-7.

Realite v. Ark Restaurants Corp., 7 F.Supp.2d 303, 306 (S.D.N.Y. 1998) held:

"Neither the FLSA nor its implementing regulations define the term

'similarly situated.'  However, courts have held that plaintiffs can meet this

burden by making a modest factual showing sufficient to demonstrate that they

and potential plaintiffs together were victims of a common policy or plan that

violated the law. See Jackson v. New York Telephone Co., 163 F.R.D. 429, 431

(S.D.N.Y.1995) (at the preliminary notice stage, 'plaintiffs are only required to

demonstrate a factual nexus that supports a finding that potential plaintiffs were

subjected to a common discriminatory scheme'); Krueger v. New York Telephone

Co., 1993 WL 276058 (S.D.N.Y. July 21, 1993) (when the litigation is in its early

stages, plaintiffs need only provide 'some factual basis from which the court can determine if similarly situated plaintiffs exist'); *Schwed v. General Electric Co.*, 159 F.R.D. 373, 375-76 (N.D.N.Y.1995) ('plaintiffs need only describe the potential class within reasonable limits and provide some factual basis from which the court can determine if similarly situated potential plaintiffs exist'); *Heagney v. European American Bank*, 122 F.R.D. 125, 127 (E.D.N.Y.1988) (requiring 'some identifiable factual nexus which binds the named plaintiffs and potential class members together as victims of a particular alleged discrimination') (quoting *Palmer v. Reader's Digest Ass'n*, 42 Fair Empl. Prac. Cas. (BNA) 212, 1986 WL 11458 (S.D.N.Y.1986)). The burden on plaintiffs is not a stringent one, and the Court need only reach a preliminary determination that potential plaintiffs are "similarly situated." *See, e.g., Jackson*, 163 F.R.D. at 431 ('The inquiry at the inception of the lawsuit is less stringent than the ultimate determination that the class is properly constituted.')"

Belcher v. Shoney's, Inc., 927 F.Supp. 249, 251 (M.D.Tenn. 1996, emph. added), citing and supported by Allen v. Marshall Field & Co., 93 F.R.D. 438, 442-45 (N.D.Ill.1982), describes two standards for showing that the collective members are similarly situated. Under both, the required showing is quite relaxed:

"Some courts hold that a plaintiff can demonstrate that potential class members are 'similarly situated,' for purposes of receiving notice, based solely upon allegations in a complaint of class-wide illegal practices. *See, e.g., Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 442-45 (N.D.Ill.1982). Other courts hold that a plaintiff meets this burden by demonstrating some factual support for the

allegations before issuance of notice.  *See, e.g., Jackson v. New York Telephone Co.*, 163 F.R.D. 429, 431 (S.D.N.Y.1995)."

**E.**      **On This Motion, The Court Does Not Decide The Merits of the Claims or Defenses.**

Because in this type of motion, the "similarly situated" determination is preliminary only, notice "need not await a final determination that the 'similarly situated' requirement is satisfied.  Such a requirement would indeed place an ADEA [and FLSA] action in the 'chicken and egg limbo'..." Severtson v. Phillips Beverage Co., 137 F.R.D. 264, 267 (D. Minn. 1991).  Accord, Garner v. G.D. Searle Pharmaceuticals & Co., 802 F.Supp. 418, 423 nn.3 & 4 (M.D. Ala. 1991); Roebuck v. Hudson Valley Farms, Inc., 239 F.Supp.2d 234, 238 (N.D.N.Y. 2002); Grayson v. K Mart Corporation, 79 F.3d 1086, 1099 n.17 (11th Cir. 1996).

Garner, supra, held "The court is not required, nor would it be well-advised, to adjudicate this case on its merits before resolving the issue of class notification.  A primary purpose of notification is to locate other similarly-situated employees who may wish to bring their claims to the court's attention before this litigation is resolved."

**F.**      **The Motion Should Not Be Delayed for Discovery.**

The very nature of the motion dictates that it should not be delayed for Defendants to obtain discovery.  The purpose of discovery by Defendants is to develop evidence to rebut plaintiffs' claims.  However, on a motion for conditional certification under the FLSA, the Court does not resolve conflicts in the evidence.  Even if Defendanat submits evidence to attempt to contradict plaintiffs' evidence, that makes no difference in this motion.  Plaintiffs' burden is only to submit "substantial allegations" to contradict

whatever evidence Defendants submit. <u>Grayson v. K Mart Corporation</u>, 79 F.3d 1086, 1099, n.17 (11th Cir. 1996). That evidence has already been submitted by plaintiffs in the accompanying affidavits.

<u>Realite v. Ark Restaurants Corp.</u>, 7 F.Supp.2d 303, 306 (S.D.N.Y. 1998), held:

> "Nor must this Court wait for Defendanat to complete its discovery before authorizing class notice. To the contrary, [where, as here, the "similarly situated" requirement has been met], courts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management. . . . *Schwed*, 159 F.R.D. at 375 ('[E]ven where later discovery proves the putative class members to be dissimilarly situated, notice ... prior to full discovery is appropriate as it may further the remedial purpose of the [FLSA].') . . .; *Krueger*, 1993 WL 276058 at 2 ('[E]ven if plaintiffs' claims turn out to be meritless or, in fact, all the plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in this case.')."

## V.     <u>PLAINTIFFS HAVE MORE THAN SATISFIED THE STANDARD FOR GRANTING THIS MOTION.</u>

A.      In <u>Kane v. Gage Merchandising Services, Inc.</u>, 138 F.Supp.2d 212, 214 (D. Mass. 2001), this Court held:

> "Indeed, some courts have held that, at the 'notice' stage, plaintiffs need only make substantial allegations that the putative class members were subject to a single decision, policy, or plan that violated the law. [Citation]"

Similarly,

We repeat: "Courts have held that plaintiffs can meet this ["similarly situated"] burden by simply alleging "that the putative class members were together the victims of a single decision, policy, or plan" that violated the law. Reeves v. Alliant Techsystems, Inc., 77 F.Supp.2d 242, 247 (D.R.I. 1999), citing Mooney v. Aramco Services Co., 54 F.3d 1207, 1214 (5th Cir.1995) n. 8.

The affidavits and the first amended complaint show that the Covered Employees are similarly situated because they are all subject to the same wage policy of Defendants: they are treated as exempt from overtime pay and they are not paid overtime. Arch Affidavit, ¶¶3-4, 7; Cahill Affidavit, ¶¶3-8, 12; Piche Affidavit, ¶¶3-4, 6; Trezvant Affidavit, ¶¶3-4, 6-7; 11. The first amended complaint alleges: "Pursuant to a decision, policy and plan, these employees were unlawfully classified by Defendants as exempt from laws requiring overtime pay, but actually were and are non-exempt and entitled to overtime pay." (¶1). See also ¶ 16.

B.    The Covered Employees also are similarly situated with respect to the only defense Defendants could proffer, an exemption to the overtime requirements of the FLSA. In order for an employee to qualify for the "administrative" exemption, he or she must at a minimum "customarily and regularly [exercise] discretion and independent judgment."

The affidavits and the first amended complaint demonstrate that the Covered Employees are similarly situated with regard to whether they did or did not exercise discretion and independent judgment (and that they did not). Arch Affidavit, ¶¶1, 3-4; Cahill Affidavit, ¶¶1, 3-8; Piche Affidavit, ¶¶1, 3-4; Trezvant Affidavit, ¶¶1, 3-7.

C.    The "similarly situated" standard is met where the collective members share similar job requirements and pay provisions. <u>Dybach v. Florida Department of Corrections</u>, 942 F.2d 1562, 1567-1568 (11th Cir. 1991); <u>Belcher v. Shoney's, Inc.</u>, 927 F.Supp. 249, 251 (M.D. Tenn. 1996). Here, pay provisions were the same for all: all were paid on a salary. Also, the affidavits show that the job requirements were all the same.

All four job positions of the Covered Employees are similarly situated. Plaintiff Cahill states in his affidavit, ¶¶1 & 3, that he held all four positions and that the primary duties and tasks of all of them were "essentially the same."

In <u>Realite v. Ark Restaurants Corp.</u>, 7 F.Supp.2d 303, 308 (S.D.N.Y. 1998), the court ordered conditional certification and collective notice in an FLSA action, finding that plaintiffs met the similarly situated standard. Plaintiffs were current and former nonmanagerial employees in a variety of positions including waiter, dishwasher, cook, and security guard, working at 15 different restaurants with different names, menus and atmospheres. Plaintiffs alleged a scheme to avoid paying minimum wage and overtime. In approving notice to the collective members, the court noted the "modest factual showing" that is adequate at the preliminary notice stage. <u>Id.</u> at 306. <u>See also Roebuck v. Hudson Valley Farms, Inc.</u>, 239 F.Supp.2d 234, 238 (N.D.N.Y. 2002); <u>Hipp v. Liberty National Life Ins. Co.</u>, 252 F.3d 1208, 1219 (11th Cir. 2001) ("different geographical locations" immaterial to similarly situated determination); <u>Belcher v. Shoney's, Inc.</u>, 927 F.Supp. 249, 252 ("similarly situated" despite working in at least 22 states and 200 cities); <u>Allen v. Marshall Field & Co.</u>, 93 F.R.D. 438, 442 (N.D. Ill. 1982) (certification and notice appropriate in ADEA action even though plaintiffs "occupied varying

positions in its corporate hierarchy, worked in different stores in various geographic

locations, and allege[d] discriminatory actions occurring on vastly different dates").

## VI.  NOTICE IS PROPERLY ACCOMPANIED BY CONDITIONAL CERTIFICATION.

In Hipp v. Liberty National Life Ins. Co., 252 F.3d 1208, 1218-1220 (11th Cir.

2001), accord, Kane v. Gage Merchandising Services, Inc., 138 F.Supp.2d 212 (D. Mass.

2001), the appellate court affirmed certification, along with notice of an "opt-in" class

under the collective action provisions of the FLSA.  The court noted that the preferred

approach for class certification issues in suits under the ADEA (which incorporate the

collective action provisions of the FLSA) follows a two-tiered approach:

(1)    At the notice stage, the court makes a decision, usually based on the

pleadings and affidavits, whether notice should be given. using a "fairly lenient

standard," which "typically results in "conditional certification of a representative class."

(Hipp at 1218).  If the court conditionally certifies the class, the putative class members

are given notice and the opportunity to opt-in.

(2)    Defendants may later file a motion for decertification after discovery is

largely complete.  If the claimants then are determined to be similarly situated, the court

allows the representative action to proceed to trial.

## VII.  DISCOVERY OF NAMES, ADDRESSES AND TELEPHONE NUMBERS IS PROPER AND NECESSARY UNDER HOFFMANN-LAROCHE.

Hoffmann-LaRoche sustained the district court's discovery order of names and

addresses.  It is important that the discovery was by way of motion, not by way of

interrogatories, requests for production, or any of the other means provided for in the

17

discovery rules of the Federal Rules of Civil Procedure. <u>Hoffmann-La Roche</u>, supra, 493 U.S. at 168, 169, 170 (1989).

**VIII.    <u>THE PROPOSED NOTICE IS FAIR AND ADEQUATE.</u>**

The proposed Notice provides clear instructions on how to opt-in, and accurately states the prohibition against retaliation or discrimination for participation in an FLSA action. Such retaliation is prohibited by law. 29 U.S.C. § 215(a)(3); <u>Reich v. Davis</u>, 50 F.3d 962, 964 (11th Cir. 1995).

**IX.    <u>CONCLUSION</u>**

There is no doubt that plaintiffs have established a class of similarly situated employees, including themselves, employees who have the same claims, the same jobs, the same job tasks, the same pay structure. The class should promptly be notified that

this case is pending so they have the opportunity to decide whether to "opt-in" to the

case, and to protect their claims against the statute of limitations.


DEBBIE L. TREZVANT, TIMOTHY CAHILL, DEBORAH
CHERYL ARCH, and MARY-CATHERINE PICHE, each
of them individually and on behalf of all others similarly situated
and similarly situated current and former employees of Defendants,

**By their attorneys:**

Dated:  September 12, 2005         By:_____/tek/_____
                                         Thomas E. Kenney (BBO#516590)
                                   Pierce & Mandell, P.C.
                                   11 Beacon Street, Suite 800
                                   Boston, MA 02108
                                   (617) 720-2444




Dated:  September 12, 2005         By:_____
                                         Ira Spiro (CA State Bar No. 67641)
                                   Dennis F. Moss (CA State Bar No. 77512)
                                   Rebecca J Sobie (CA State Bar No. 179562)
                                   Spiro Moss Barness Harrison & Barge LLP
                                   11377 W. Olympic Blvd., 5th Floor
                                   Las Angeles, CA 90063-1683
                                   (310) 235-2468




Dated:  September 12, 2005         By:_____
                                         Charles Joseph (NY State Bar No. CJ-9442)
                                   Joseph & Herzfeld LLP
                                   757 Third Avenue, 25th Floor
                                   New York, NY 10017

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DEBBIE L. TREZVANT, TIMOTHY CAHILL, DEBORAH CHERYL ARCH, and MARY-CATHERINE PICHE, each of them individually and on behalf of all others similarly situated and similarly situated current and former employees of Defendant<br><br>                    Plaintiffs,<br><br>          v.<br><br>FIDELITY EMPLOYER SERVICES CORPORATION, FIDELITY EMPLOYER SERVICES COMPANY, LLC, and FMR CORP.,<br><br>                    Defendants. | Case No.  05-10673 (WGY) |

**PLAINTIFFS' EXHIBITS IN SUPPORT OF MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION AND FOR COURT FACILITATION OF NOTICE PURSUANT TO 29 U.S.C. § 216(b)**

**EXHIBIT A**

NOTICE OF PENDENCY OF FLSA LAWSUIT

From:      Pierce & Mandell, P.C., Attorneys at Law

              Joseph & Herzfeld, LLP, Attorneys at Law

              Spiro Moss Barness Harrison & Barge LLP, Attorneys at Law

To:      All current and former employees of Fidelity Employer Services Corporation and/or Fidelity Employer Services Company, LLC and/or FMR Corp. (all are referred to collectively below as "Fidelity") who were or are employed as a "Business Analyst," "Technical Analyst," "Configuration Analyst," "Project Analyst" and/or "Reporting Analyst" any time on or after April 5, 2002.

Re:      Collective action lawsuit against Fidelity under the federal Fair Labor Standards Act (FLSA).

The purpose of this Notice is to advise you of a lawsuit under the federal Fair Labor Standards Act that has been filed against Fidelity and to advise you of the legal rights you have in connection with that suit.

1.      DESCRIPTION OF THE LAWSUIT.

Debbie L. Trezvant, Timothy Cahill, Deborah Cheryl Arch, and Mary-Catherine Piche, former employees of Fidelity, filed this lawsuit on April 5, 2005. The law firms of Pierce & Mandell, P.C., Spiro Moss Barness Harrison & Barge LLP and Joseph & Herzfeld LLP represent the plaintiffs in the lawsuit.

The claims in the lawsuit made under the federal Fair Labor Standards Act allege primarily that Fidelity misclassified its employees in the job positions above as "exempt" from overtime pay, whereas they should have been classified as "non-exempt" employees who were entitled to receive pay for overtime hours worked (time worked over forty (40) hours in one week). Fidelity denies that it misclassified "non-exempt" employees as "exempt" from overtime pay.

2.      YOUR RIGHT MAKE A CLAIM IN THIS LAWSUIT.

If at any time since April 5, 2002, you worked as a "Business Analyst," "Technical Analyst," "Configuration Analyst," "Project Analyst" and/or "Reporting Analyst" with Fidelity and you believe you worked more than forty (40) hours in one workweek without being paid overtime (time and a half), you have the right to assert a claim for overtime under the federal Fair Labor Standards Act (FLSA) in this lawsuit.

To assert the FLSA claim you must sign a written Consent to be a "party-plaintiff" in the lawsuit. This form will be filed in the Court. It is entirely your own voluntary decision whether or not to

sign and file the consent.  Please be advised that, if you do file the consent and thus make an FLSA claim, it is against the law for Fidelity to retaliate against you for doing so.

3.    HOW TO MAKE A CLAIM IN THIS LAWSUIT.

Attached to this Notice is a form entitled "Consent to Make a Claim in Lawsuit Under Federal Fair Labor Standards Act (FLSA)."  In order to make an FLSA claim in the lawsuit, fill out the form, sign it, and mail or overnight it to:

Rebecca Sobie
Spiro Moss Barness Harrison & Barge LLP
Attorneys at Law
11377 West Olympic Boulevard, 5th Floor
Los Angeles, CA 90064
Phone (310) 235-2468
Fax (310) 235-2456

If you sign and mail the form, it will be filed with the court and you will become a "party plaintiff."  Thus, you will become a client of the above attorneys, who represent the plaintiffs in the lawsuit.  Also enclosed is a form entitled "Client Information."  It is to enable these attorneys to contact you.  To furnish this information to the attorneys, fill out the form and mail it to the attorneys at the above address.

For your convenience, a self-addressed, postage paid envelope is enclosed.  If you have any questions with respect to this suit, you may call Ira Spiro or Rebecca Sobie at Spiro Moss Barness Harrison & Barge LLP, phone number (310) 235-2468.

4.    THE LEGAL EFFECT OF FILING OR NOT FILING THE CONSENT FORM.

If you do not file a consent form, you will not receive any money or other relief for FLSA claims in the lawsuit.  If you do file a consent form, you will be bound by the judgment of the court on all FLSA issues in the case, win or lose.

5.    ALTHOUGH THE COURT HAS APPROVED THE SENDING OF THIS NOTICE, THE COURT EXPRESSES NO OPINION ON THE MERITS OF THIS LAWSUIT.

**PLEASE DO NOT CALL OR WRITE THE COURT ABOUT THIS NOTICE.**

| Dated: | | Spiro Moss Barness Harrison Barge LLP Attorneys at Law 11377 West Olympic Boulevard, 5th Floor Los Angeles, CA 90064 Phone (310) 235-2468 Facsimile (310) 235-2456 |
| --- | --- | --- |

EXHIBIT B

## **CONSENT TO BE "PARTY PLAINTIFF" UNDER FEDERAL FAIR LABOR STANDARDS ACT**

I am a former or current employee of Fidelity Employer Services Corporation (FESCO) and, as I understand it, of FMR Corp. and Fidelity Employer Services Company, LLC (Collectively "FESCO").

I consent to become a "party plaintiff" in a Fair Labor Standards Act (FLSA) lawsuit, seeking payment of unpaid wages, including overtime wages, and related relief against FESCO on behalf of me and other former and current employees of FESCO including employees and former employees in any of the following job titles: business analyst, technical analyst, configuration analyst, project analyst.

Signature:                    X_____

Print Name:                    _____