## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DEBBIE L. TREZVANT, TIMOTHY CAHILL, DEBORAH CHERYL ARCH, and MARY-CATHERINE PICHE, each of them individually and on behalf of all others similarly situated and similarly situated current and former employees of Defendant<br><br>  Plaintiffs,<br><br>  v.<br><br>FIDELITY EMPLOYER SERVICES CORPORATION, FIDELITY EMPLOYER SERVICES COMPANY, LLC, and FMR CORP.,<br><br>  Defendants. | Case No.  05-10673 (WGY) |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS'
## MOTION FOR EXTENSION OF TIME TO OPPOSE PLAINTIFFS'
## MOTION FOR CONDITIONAL CERTIFICATION
Affidavit of Ira Spiro in Support of Opposition Filed Concurrently

Plaintiffs, Debbie L. Trezvant, Timothy Cahill, Deborah Cheryl Arch, and

Mary-Catherine Piche (collectively, "Plaintiffs") respectfully submit this

memorandum of law in opposition to the motion by Fidelity Employer Services

Corporation, Fidelity Employer Services Company LLC and FMR Corp.

(collectively, "Defendants" or "Fidelity") seeking an extension of time in which to

respond to Plaintiffs' Motion for Conditional Collective Certification and for

Court Facilitation of Notice Pursuant to 29 U.S.C. § 216(b) ("Certification

Motion").[1]

Plaintiffs have brought this action for violations of the Fair Labor Standards

Act ("FLSA") on behalf of certain current and former Fidelity employees. In their

Certification Motion, Plaintiffs seek to have notice sent to all potential collective

members so that they may opt-in to this action pursuant to FLSA Section 16(b), 29

U.S.C. § 216(b). At this time, almost none of the potential collective members

have any knowledge of this lawsuit or their right opt-in.

By way of motion, Defendants have requested more time to respond to the

Certification Motion, and under their proposed briefing schedule, the motion

would not be heard until mid-December (based upon the current briefing

schedule). Defendants' demand that consideration of the Certification Motion be

delayed for two months is both unreasonable and prejudicial to the potential

collective members and should be denied for the following reasons.


## I.      Defendants Do Not Need Additional Time

First, Plaintiffs have been more than generous with Defendants' requests

for extensions since the initial filing of this action. Plaintiffs gave Defendants an

additional month to respond to the original complaint. Plaintiffs then gave

---

[1] To assist this Court in considering their opposition, Plaintiffs attach hereto the
Affidavit of Ira Spiro ("Spiro Aff.").

2

Defendants nearly two months in which to respond to the amended complaint.[2] Plaintiffs even agreed to an extension of time for Defendants to respond to the Certification Motion (the very relief Defendants here seek), on the condition that there be a commensurate tolling of the FLSA's statute of limitations. *See* Spiro Aff., ¶3 and Exhibit "A." Defendants refused. *Id.*

Defendants have had the complaint since May 4, 2005 and the amended complaint since June 2005. Thus, Defendants' assertion − that they "require additional time" to research complex legal and factual issues raised in the motion, *i.e.*, obtaining witness affidavits from members of the potential class (Def. Mem., ¶6), is a smokescreen. The potential class was fully identified in the complaint and amended complaint. Defendants have had close to half a year to investigate and conduct research. Defendants have filed an eleventh hour motion for an extension for no apparent purpose other than to delay these proceedings and, as explained below, reduce their potential liability by reason of such delay.

If more time to investigate and research was what Defendants truly wanted, they should have agreed to the extension offered. Having refused, their request for yet more time should be denied.

---

[2]    Plaintiffs filed their original complaint on April 5, 2005 and served it on May 4, 2005. Under the Federal Rules, defendants were to answer or respond to the complaint on or before May 20, 2005. Fed. R. Civ. P. 12(a)(1). Plaintiffs agreed to an extension to June 24, 2005. Plaintiffs then filed an amended complaint to which an answer or response was due on or before July 5, 2005. Fed. R. Civ. P. 15(a). Defendants' filed a Motion to Dismiss count two of the amended complaint (plaintiffs' state law claims under New Hampshire law) on August 26, 2005, again based on Plaintiffs' agreement to an extension.

## II.    An Extension Would Create Prejudice

Second, an extension would unduly prejudice potential collective members. The outside statute of limitations for an FLSA violation is three years pursuant to 29 U.S.C. § 255(a), and the limitation period for each potential collective member runs until such time as his or her consent is on file with the Court.[3]  29 U.S.C. § 216(b).

Each day that Defendants seek to delay consideration of the Certification Motion translates to a forfeiture of entitlement to money due and owing to potential collective members.  The primary purpose of the Certification Motion is to provide notice to potential collective members so as to apprise them of this lawsuit and give them the opportunity to opt-in to the FLSA claim for relief. Thus, it is of utmost importance that this issue be heard as soon as possible.  With each passing day, there are former Fidelity employees whose claims diminish and may be lost altogether under the statute of limitations.  Defendants should not be entitled to benefit financially from an extension of time to oppose the motion, which will act to decrease the amount of past wages recoverable for almost all of

---

[3]  Thus, if a person who worked for Defendants in one of the positions at issue from September 15, 2002 through the present did not have his or her consent filed with the Court until December 15, 2005, that employee would be time-barred from recovering for unpaid overtime worked during the period of September 15, 2002 to December 15, 2002, because of the statute of limitations.  29 U.S.C. § 255(a).

4

the potential collective members (*i.e.,* those who have not yet had the opportunity to file consent forms because they have not received notice).

## III.    Defendants Cannot Bootstrap Their Choice to Not Answer into a Reason for Delay

Third, Defendants' proffered legal argument that an answer is a condition precedent to a Certification Motion is unavailing and unsupported by their cited authority. Defendants argue that this Court cannot decide the Certification Motion until they have filed an answer enumerating their defenses to the action. Defendants offer no law or argument in support of this theory other than that they have not found any cases in support of another theory. Defendants' own cases show this to be false; defendants' assertion that "to Defendants' knowledge" no court has ever certified or considered certifying a collective action prior to the filing of an answer is both misleading and irrelevant. Indeed, Defendants have blithely mischaracterized the holdings of the cases they cite; not one of them in any way indicates that an answer must be filed before a motion for conditional certification and notice.

In fact, the cases cited by Defendants, to the extent relevant, support the filing and consideration of such a motion prior to an answer. In Kane v. Gage Merchandising Services, 138 F. Supp. 2d 212 (D. Mass. 2001) (Def. Mem., ¶5), the court indicated that at the notice stage, it usually relies only on the pleadings and affidavits submitted. Id. at 214. The court in Kane granted the motion for

5

court-facilitated notice to the potential class, which was filed a mere three months after the complaint was filed. Here, Plaintiffs waited more than five months after filing the initial complaint before moving for conditional certification and notice.

Defendants' reliance on Reeves v. Alliant Techsystems, Inc., 77 F.Supp.2d 242 (D. R.I. 1999), is similarly confused. Contrary to Defendants' contention, Reeves (Def. Mem., ¶5) involved no discussion of an answer as a pre-requisite for conditional certification or opt-in notice. The court stated that the decision regarding whether notice should be given is "'usually based only on the pleadings and any other affidavits that have been submitted' during the initial stages of litigation . . . . Because the court has minimal evidence at the 'notice stage,' this determination 'is made using a fairly lenient standard, and typically results in conditional certification.'" Id. at 246 (citations omitted).[4]

---

[4] *See also* Dietrich v. Liberty Square, L.L.C., 10 Wage & Hour Cas.2d (BNA) 1488 (N.D. Iowa. 2005) (To establish that conditional certification is appropriate in FLSA collective action, plaintiffs need merely provide some factual basis from which court can determine if similarly situated potential plaintiffs exist; they can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs were victims of common policy or plan that violated the law, and a more stringent factual inquiry as to whether plaintiffs are similarly situated is made only after a more substantial record has been amassed) (attached); Bell v. Mynt Entertainment, LLC, 223 F.R.D. 680 (S.D.Fla.2004) (In determining whether to certify an opt-in class in an FLSA action, in the first stage, the notice stage, the class certification determination is made using a fairly lenient standard, based primarily on the pleadings and any affidavits which have been submitted; the first stage typically results in conditional certification of a representative class); Roebuck v. Hudson Valley Farms, Inc., 239 F. Supp. 2d 234, 238, 239 (N.D.N.Y. 2002) (relying only on plaintiffs' affidavits, court-authorized notice on motion filed approximately four months after filing the complaint. "A Court should not evaluate the merits of Plaintiffs' claims in determining whether class notice is warranted.").

Most shocking, and simply unfathomable, is Defendants' reliance on and citation of <u>Dionne v. Ground Round</u>, Civ. No. 93-11083, 1994 U.S. Dist. LEXIS 21641 (D. Mass. July 6, 1994) (attached) (cited by Defendants (Def. Mem., ¶5, but not attached to their memorandum). Defendants neglect to mention that <u>Dionne</u> involved an age discrimination case that was factually inapposite. Defendants also ignore the heart of the court's holding in <u>Dionne</u>: the court adopted the view that "in addition to the requirements of § 216(b) [*i.e.,* the FLSA], the proponents of an ADEA class action must comply with provisions of Rule 23." <u>Id</u>. at *6.

The standard for Rule 23 class action certification is unrelated to the FLSA conditional certification standard at issue here, and <u>Dionne</u> is therefore wholly irrelevant. Indeed, this was the very point the court in <u>Dionne</u> took pains to make: ADEA, unlike FLSA, uses Rule 23 standards. <u>Id</u>. In any event, <u>Dionne</u> does not discuss the filing of an answer, and did not involve a motion for conditional certification, but rather ordinary Rule 23 class certification.

Moreover, there is no logic or policy reason – and Defendants have not attempted to offer any – behind the idea that filing an answer has anything to do with the Court's consideration of conditional certification and opt-in notice. Defendants have the ability to make their arguments (whether based on affirmative defenses, denials, witness statements, or otherwise) in their response to the Certification Motion. An answer adds zero to the equation. Were the rule as Defendants wish, any defendant in an FLSA collective action could move to

7

dismiss an unrelated part of the claim, as Defendants here have done, and delay indefinitely notice to potential plaintiffs, thus gaining time and reducing liability. This, Plaintiffs respectfully submit, is precisely the gamesmanship Defendants are attempting here, and the Court should flatly reject it.

Plaintiffs and potential collective members should not be penalized (and in some cases, entirely disenfranchised) by Defendants' decision to first file a motion to dismiss rather than an answer. This fact is particularly compelling since the motion to dismiss does not in any way address Plaintiffs' federal claims under the FLSA, but instead challenges only Plaintiffs' state law claims under New Hampshire law and has no bearing on the Certification Motion.

## IV.    Defendants Merits Based Defenses Are Not Relevant at This Stage

Fourth, as noted in the Certification Motion, a conditional certification and notice motion is not the time for the Court to decide the merits of the claims or defenses; the only proper inquiry is whether the potential collective members are "similarly situated" under Hoffmann-LaRoche Inc. v. Sperling, 493 U.S. 165, 170-171 (1989) and its progeny of cases. *See* Certification Motion at 3, 13 (citing Severtson v. Phillips Beverage Co., 137 F.R.D. 264, 267 (D. Minn. 1991); Garner v. G.D. Searle Pharmaceuticals & Co., 802 F. Supp. 418, 423 nn.3 & 4 (M.D. Ala. 1991) ("The court is not required, nor would it be well-advised, to adjudicate this case on its merits before resolving the issue of class notification. A primary

purpose of notification is to locate other similarly-situated employees who may wish to bring their claims to the court's attention before this litigation is resolved."); Roebuck v. Hudson Valley Farms, Inc., 239 F. Supp. 2d 234, 238 (N.D.N.Y. 2002); Grayson v. K Mart Corp., 79 F.3d 1086, 1099 n.17 (11th Cir. 1996)).

Thus, Defendants' argument that they have not yet asserted defenses – and need more time to find out what their defenses are through investigation and research – fails. In any event, to the extent Defendants' nonetheless want to assert arguments or defenses in response to the Certification Motion, there is nothing stopping them from including them in their opposition papers. Defendants will have many further chances to assert their defenses (once they ascertain what they are) including at the appropriate time, in opposition to Plaintiffs' anticipated motion for actual, not conditional, certification.

## V.    Defendants Have Invoked the Wrong Standard

Finally, contrary to Defendants' contention, Plaintiffs have done all that is necessary at this stage to satisfy their burden of showing that the potential class members are interested in participating in the litigation in order to justify conditional certification. Plaintiffs have submitted four affidavits that identify 200 to 380 "similarly situated" Fidelity current and former employees. Even Defendants' precedent makes clear that the burden at this early stage – pre-

discovery – is "fairly lenient" because the court's determination is "based on the pleadings and any affidavits that have been submitted as to whether the class should be certified." <u>Pfohl v. Farmers Ins. Group</u>, Civ. No. 03-3080, 2004 U.S. Dist. LEXIS 6447, at *9 (C.D. Cal. March 1, 2004) (attached) (cited, but not attached, by Defendants at ¶8).[5]

That Defendants rely on and cite <u>Pfohl</u> demonstrates the frivolity of their arguments. In <u>Pfohl</u>, the court was at the second-stage determination – a more stringent test – explicitly basing its decision on a critical factor not present here, *i.e.,* that discovery already had been "undertaken relating to the issues of certification." <u>Pfohl</u> at *10.[6] Thus, as in their in their invocation of *Dionne*, Defendants have here asked this Court to use the wrong standard – second-stage, as opposed to first-stage, analysis.

_____

[5] *See also* <u>Reeves v. Alliant Techsystems, Inc.</u>, 77 F. Supp. 2d 242, 247 (D. R.I. 1999) (finding that plaintiff had met burden for conditional certification through the allegations of the complaint alone).

[6] The court in <u>Pfohl</u> relied on additional grounds also irrelevant here; (i) that the plaintiff engaged in solicitations on a national insurance adjuster's website and failed to find significant numbers of allegedly similarly situated employees and (ii) that the complaint "failed to allege an inability to contact collective action members." <u>Id.</u> at *31-*32. Here, (i) Plaintiffs have not engaged in solicitation (Spiro Aff., ¶4) and (ii) both the complaint and the Certification Motion allege the inability to contact collective action members. *See* Amended Compl., ¶22 ("For purpose of notice ... [potential collective action plaintiffs'] names and addresses are readily available from Defendants. Notice can be provided to the FLSA Collective Plaintiffs . . . . to the last address known to their employer(s)"); *see also* Certification Motion, Section IV(B) at 7 ("Without notice, except by happenstance, [potential collective action plaintiffs] will have no way of knowing about the action").

## VI.    Defendants Motion for an Extension is Untimely, and Defendants are in Default

Defendants filed their Motion for Extension on September 20, 2005. The due date for their opposition to the Certification Motion was September 26, 2005. Under the rules of this Court, Plaintiffs have 14 days (*i.e.,* until October 4, 2005) to respond to the Motion for Extension. The time for Defendants' Opposition has come and gone, and Defendants are in default, and Defendants knew they would be when they decided to move for an extension of time a mere 6 days before their opposition was due.

Thus, Defendants have delivered to Plaintiffs and the Court a *fait accompli, i.e.,* an automatic self-generated extension of some period of time unless the Court determines *sua sponte* to grant the Certification Motion because of Defendants' default, a result Plaintiffs do not urge. Plaintiffs, however, urge that the Court order Defendants' default if they do not submit their opposition immediately.

### Conclusion

For the foregoing reasons, Defendants' motion is lacking in merit and should be denied. In the alternative, if Defendants are permitted an extension of time to respond, Plaintiffs respectfully request that the Court condition the extension on Defendants' agreement to toll the statute of limitations under the

FLSA for all potential collective members who have not filed opt-in forms for a period of time equivalent to the length of the extension.

Respectfully submitted,

DEBBIE L. TREZVANT, TIMOTHY CAHILL, DEBORAH CHERYL ARCH, and MARY-CATHERINE PICHE, each of them individually and on behalf of all others similarly situated and similarly situated current and former employees of Defendants,
By their attorneys,


_____/s/_____
Ira Spiro (CA State Bar No. 67641)
Rebecca J Sobie (CA State Bar No. 179562)
Spiro Moss Barness Harrison & Barge LLP
11377 W. Olympic Blvd., 5th Floor
Las Angeles, CA 90063-1683
(310) 235-2468

Thomas E. Kenney (BBO No. 516590)
Pierce & Mandell, P.C.
11 Beacon Street, Suite 800
Boston, MA 02108
(617) 720-2444

Charles Joseph (CJ-9442)
Joseph & Herzfeld LLP
757 Third Avenue, 25th Floor
New York, NY 10017


Dated:        Boston, Massachusetts
              September 30, 2005

## AFFIDAVIT OF IRA SPIRO, ATTORNEY FOR PLAINTIFFS

I, Ira Spiro, state under penalty of perjury, as follows:

1.      I am an attorney at law in good standing with the State Bar of California, and licensed to practice law in all state and federal courts in the State of California.  I am admitted on a *pro hac vice* basis to this Court to appear and practice in this action.  I am a partner with Spiro Moss Barness Harrison & Barge LLP, co-counsel of record for Plaintiffs in this action.  This declaration is made of my own personal knowledge, and if called upon to testify to the contents hereof, I could and would do so competently.

2.      This declaration is submitted as part of Plaintiffs' Opposition to Defendants' Motion for Extension of Time to Oppose Plaintiffs' Motion for Conditional Certification.

3.      On September 14, 2005, I spoke with one of the attorneys of record for Defendants, Krista Pratt, returning her telephone call.  She asked for an extension from September 26, 2005 to November 13, 2005, for Defendants to respond to Plaintiffs' Motion for Conditional Certification.  I told her that Plaintiffs could agree to the extension she requested if Defendants would agree to toll (suspend) the Fair Labor Standards Act (FLSA) statute of limitations for the same amount of time as the extension. I explained that ordinarily, if the interests of our clients or the potential class were not adversely affected, counsel for Plaintiffs would, and as a matter of course do, agree to extensions of time as professional courtesy to opposing counsel, but that the extension she was requesting would be significantly adverse to the potential class because the motion is the only practical or realistic way they can be informed of their rights and means to file consent (opt-in) forms with the Court and thereby stop the running of the

statute of limitations on their FLSA claims. (In an FLSA collective action, which the First Claim for Relief in this case is, the only way for potential class members to stop the running of the statute of limitations on their FLSA claims is to file consent forms with the Court.) I asked Ms. Pratt if she wished to discuss the tolling matter with her clients. She told me she knew Defendants would not agree to the tolling, and thus I told her Plaintiffs could not agree to the extension she requested.

4.    Ms. Pratt asked if there were any shorter period of time counsel for Plaintiffs would agree to for an extension of the opposition to the motion without making tolling of the statute of limitations a condition of the extension. I told her counsel for Plaintiffs would agree, without the statute of limitations tolling condition, to the following briefing schedule: the time for opposition to the motion to be extended from September 26 to October 7, 2005, the reply to be due October 18, and the hearing to remain on the same date.

5.    Attached hereto as Exhibit "A" is a true and correct copy of my e-mail correspondence to Ms. Pratt, dated September 14, 2005, confirming this conversation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Los Angeles, California on September 27, 2005.

Ira Spiro

EXHIBIT "A"

**Rebecca Sobie**

| | |
|---|---|
| **From:** | Ira Spiro [ispiro@smbhblaw.com] |
| **Sent:** | Wednesday, September 14, 2005 1:22 PM |
| **To:** | 'Pratt, Krista' |
| **Cc:** | Sobie Rebecca; Hester Diane; 1 - Ira Spiro (home); Charles Joseph; Kenney Tom; Kirschenbaum Maimon; Palmer Michael |
| **Subject:** | RE: Fidelity |

Krista . . .

Thought it best to put in writing the gist of our telephone conversations just now.  Tom Kenney was in on the second one.  (TOM, I DID NOT HAVE THE ORDER IN FRONT OF ME, SO PLEASE CORRECT ME IN ANOTHER EMAIL IF I HAVE THE DATES IN THE ORDER WRONG.)

We determined from the court's very recent order that the opposition to the Hoffman-LaRoche motion is due September 26, the reply is due October 7, and the hearing is set for October 26.

Your request below would be for your opposition to be due November 13.  I said plaintiffs could agree to that if defendants would agree to toll the statute of limitations for the same amount of time as the extension.  You explained that defendants would not agree to that.

You asked if there was a shorter time plaintiffs would agree to without defendants agreeing to tolling.  Tom and said the without tolling we would agree to a much shorter time, namely, opposition due October 7, reply due October 18, hearing date to remain the same.

You and Tom will be discussing this further, given that I am leaving on a vacation very soon.

Ira Spiro
Spiro Moss Barness Harrison & Barge LLP
310-235-2468, fax 310-235-2456
11377 W. Olympic Blvd., 5th Floor
Los Angeles, CA 90064

-----Original Message-----
From: Pratt, Krista [mailto:KPratt@seyfarth.com]
Sent: Wednesday, September 14, 2005 11:32 AM
To: Ira Spiro
Cc: Alfred, Richard
Subject: Fidelity

Ira: Per my voicemail message to you yesterday, I would like to discuss whether you will agree to an extension of time for our opposition to your motion to certify.  Obviously, the motion raises a number of complex legal issues and we will need more time to respond. We believe that two weeks after the current deadline for your opposition to our motion to dismiss is reasonable.  We hope you will extend the same courtesy to us as we did regarding your extension for the motion to dismiss.  Please let me know as soon as possible if you will assent to our extension and I will prepare the motion papers. Thanks, Krista

Krista Green Pratt, Esq.
Seyfarth Shaw LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
(617) 946-4850
(617) 946-4801 (fax)
kpratt@seyfarth.com

1

EXHIBIT ___A___

Any tax information or written tax advice contained herein (including any attachments) is not intended to be and cannot be used by any taxpayer for the purpose of avoiding tax penalties that may be imposed on the taxpayer. (The foregoing legend has been affixed pursuant to U.S. Treasury Regulations governing tax practice.)

The information contained in this transmission is attorney privileged and/or confidential information intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.

Pfohl vs. Farmers Insurance

THOMAS **PFOHL**, et al, Plaintiffs, vs **FARMERS INSURANCE** GROUP, Defendant.

CASE NO. CV 03-3080 DT (RCx)

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF
CALIFORNIA

2004 U.S. Dist. LEXIS 6447

March 1, 2004, Decided
March 1, 2004, Filed; March 5, 2004, Docketed

**PRIOR HISTORY:** Pfohl v. Farmers Ins. Group, 2004 U.S. Dist. LEXIS 6446 (C.D.
Cal., Mar. 1, 2004).

**DISPOSITION:** [*1] Amended motion for certification of collective acation denied.
Case allowed to proceed on individual claims of Plaintiff Pfohl only.

**COUNSEL:** For Thomas Pfohl, Joe Ferro, Billy Myers, Richard Reed, Charles Erhardt,
Monte Cannon, William Keith, Gary C Odem, William F Moore, David Powell, Bruno
Plocharczyk, Rick Andrews, Christopher J Hudson, Larry Hall, Raoul Rico, Dowlin
Mayfield, Kenneth Ray Haraughty, Chris Macey, Richard Boblitz, Plaintiffs: Derrick
Fisher, LEAD ATTORNEY, Derrick Fisher Law Offices, Pasadena, CA.

For Thomas Pfohl, Joe Ferro, Billy Myers, Richard Reed, Charles Erhardt, Monte
Cannon, William Keith, Gary C Odem, William F Moore, David Powell, Bruno
Plocharczyk, Rick Andrews, Christopher J Hudson, Larry Hall, Raoul Rico, Dowlin
Mayfield, Kenneth Ray Haraughty, Chris Macey, Richard Boblitz, Plaintiffs: Joseph E
Fieschko, Jr, LEAD ATTORNEY, Joseph E Fieschko Jr & Associates, Pittsburgh, PA.

For Thomas Pfohl, Plaintiff: Stephen C Ball, LEAD ATTORNEY, Stephen C Ball Law
Offices, Pasadena, CA.

For Farmers Insurance Group, Defendant: Jessie Ann Kohler, [*2] Lee T Paterson,
LEAD ATTORNEYS, Winston & Strawn, Los Angeles, CA.

**JUDGES:** Dickran Tevrizian, Judge, United States District Court.

**OPINIONBY:** Dickran Tevrizian

**OPINION:** ORDER **DENYING** PLAINTIFF THOMAS PFOHL'S AMENDED
MOTION FOR CERTIFICATION OF COLLECTIVE ACTION UNDER SECTION

216(B) OF THE FAIR LABOR STANDARDS ACT

## I. Background

This action is brought by Plaintiff Thomas Pfohl ("Plaintiff") against Defendant Farmers Insurance Exchange, erroneously sued as Farmers Insurance Group ("Farmers"), for overtime wages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Plaintiff brings this action on behalf of himself and all other similarly situated employees who were employed by Farmers as temporary full-time insurance adjusters. Presently before this Court is Plaintiff's Amended Motion for Certification of Collection Action Under Section 216(b) of the FLSA.

### A. Factual Summary

The following facts are alleged in the Complaint:

Plaintiff was employed by Farmers from February 26, 2002 until October 11, 2002. (Complaint, P 8.) He was paid $ 40.00 per hour, with no minimum salary, worked approximately seventy hours per week and was not [*3] paid at a rate one and a half times his normal rate for hours worked in excess of forty hours per week. (See id.) His duties consisted of working on Farmers' files involving claims submitted to Farmers for property damage and other damages alleged to be caused by the formation of mold in residential and commercial buildings. (See id.)

Plaintiff brings this action as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b). (See id. at P 3.) All Plaintiffs were "employees" of Farmers because they were required to comply with Farmers' instructions about when, where and how they were expected to work. (See id. at P 6.) Plaintiffs have a right of recovery under the FLSA for unpaid overtime wages owed to them for hours worked in excess of forty hours per week in which their compensation was based upon the number of hours they worked each week, but they were not paid an amount equal to one and a half times their normal hourly rate for all hours worked in excess of forty hours per week. (See id. at P 5.)

### B. Procedural Summary

On January 6, 2003, Plaintiff filed the Complaint in the United States District Court for [*4] the Northern District of California ("Northern District").

On February 3, 2003, Farmers filed its Answer in the Northern District.

On March 10, 2003, Farmers filed a Motion to Transfer Venue in the Northern District.

On April 14, 2003, the Northern District filed an Order of Transfer, transferring this action to the Central District of California. Upon receipt of this action, the action was assigned to this Court.

On August 11, 2003, this Court held a Scheduling Conference and set the following dates: Phase I discovery cutoff on November 28, 2003 and status conference on December 8, 2003.

On September 8, 2003, Plaintiff filed a Motion for Certification of Collective Action Under Section 216(b) of the FLSA.

On September 15, 2003, a Consent to Opt In as Class Member was filed.

On September 23, 2003, three Consents to Opt In as Class Member were filed.

On November 23, 2003, Plaintiff filed an Amended Motion for Certification of Collective Action Under Section 216(b) of the Fair Labor Standards Act, which is currently before this Court. n1 The previously set Status Conference was also continued to this date.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Farmers filed an Opposition to this Motion, and Plaintiff filed a Reply. However, because Plaintiff submitted new evidence and raised new arguments in his Reply, Farmers was permitted to file a Sur-Reply.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*5]

On February 10, 2004, six Consents to Opt In as Class Member were filed.

On February 12, 2004, Plaintiff filed a "Hearing Date on Motion to Amend Complaint In Action At Law March 8, 2004 at 10:00 A.M." n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Plaintiff attempted to file a Motion to Amend Complaint on January 30, 2004; however, a Notice of Document Discrepancy was issued whereby said Motion was ordered not to be filed but instead rejected because written notice of motion was lacking or the timeliness of notice was incorrect and because the proposed order was not a separate document. On February 12, 2004, Plaintiff filed this document entitled "Hearing Date on Motion to Amend Complaint in Action at Law March 8, 2004 at 10:00 A.M," and he lodged a Proposed Order. Apparently, these documents were filed in response to the Notice of Document Discrepancy; however, the Motion to Amend itself was never filed with the Court. As such, the hearing date of March 8, 2004 does not exist because no "Motion to Amend Complaint" has been properly filed with the Court. Unfortunately, it appears that Plaintiff served a Motion to Amend on Farmers, even though such motion was not properly filed, because Farmers filed an opposition to such motion.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*6]

On February 24, 2004, three Consents to Opt In as Class Member were filed.

## II. Discussion

### A. Standard

The FLSA provides an "employee" with a private right of action against his "employer" when that employer fails to pay overtime wages, i.e., one and one-half times the regular rate of pay per hour, when the employee works in excess of forty hours per week. See 29 U.S.C. §§ 203, 207. An employee is also authorized to bring an action on behalf of similarly situated employees. Id. at § 216(b); Doe v. Advanced Textile Corp., 214 F.3d 1058, 1064 (9th Cir. 2000). Such an action is a type of class action, known as a "collective action," for employees who are "similarly situated" to the plaintiffs and who opt-in to the suit by filing a consent in writing with the court. 29 U.S.C. § 216(b). If employees do not optin by filing a written consent, they are not bound by the outcome of the collective action and may bring a subsequent private action. EEOC v. Pan Am. Work Airways, Inc., 897 F.2d 1499, 1508 n. 11 (9th Cir. 1990). A district court may authorize the named plaintiffs in a FLSA [*7] collective action to send notice to all potential plaintiffs and may set a deadline for plaintiffs to join the suit by filing consents to sue. Does I through XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1064 (9th Cir. 2000)(citing Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 169, 172, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)).

### B. Analysis n3

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Rulings to the objections asserted by the parties shall be deemed consistent with the analysis set forth herein.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

### 1. Plaintiff must show that he is "similarly situated" to the purported collective action group he wishes to represent

Based on the Standard set forth above, at issue here is whether Plaintiff and the proposed collective action group are "similarly situated" for purposes of Section 216(b). "A plaintiff bears the burden of establishing that he and the class he wishes to represent are similarly situated." White v. Osmose, Inc., 204 F. Supp. 2d 1309, 1313 (M.D. Ala. 2002). Section 216(b) [*8] does not define "similarly situated," and the Ninth Circuit has not defined it either. The Tenth Circuit has noted that various approaches have been taken in

determining whether plaintiffs are "similarly situated." See Thiessen v. General Electric Capital Corp., 267 F.3d 1095, 1102-03 (10th Cir. 2001)(discussing three possible approaches to the "similarly situated" analysis). As another district court in this district observed, of these approaches, the majority of courts prefer the *ad hoc,* two-tiered approach. Wynn v. National Broadcasting Company, Inc., 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002). Under this approach, the district court makes two determinations, on an *ad hoc,* case-by-case basis. See id. The first determination is made based on the pleadings and any affidavits that have been submitted as to whether the class should be certified. See id. Because of the minimal evidence at this stage, this determination is made based on a fairly lenient standard. See id. The second determination is made after discovery is largely complete. See id. There, the court weighs various factors in making a factual determination as to [*9] whether the plaintiffs are similarly situated. See id. Such factors include (1) the disparate factual and employment settings of the individual plaintiffs, (2) the various defenses available to the defendant which appeared to be individual to each plaintiff, and (3) fairness and procedural considerations. Thiessen, 267 F.3d at 1103.

In this case, the parties do not dispute that discovery has been undertaken relating to the issues of certification of this action as a collective action. As such, the Court can proceed to the second determination discussed above and weigh relevant factors to determine whether the plaintiffs are similarly situated.

## 2. The parties' contentions

In his Motion, Plaintiff explains that an inordinate number of "mold claims" were submitted to Farmers by its policyholders during the years 2000 and 2001, and that in order to deal with this dramatic and sudden increase in this type of claim, Farmers contracted with outside personnel companies, including Continental Staffing, Inc. ("Continental"), and outside adjusting companies, including Wardlaw Claims Service, LLP ("Wardlaw"), NCA and Eberls, to hire additional adjusters on a full-time [*10] temporary basis to help Farmers' own adjusters handle this sudden influx of claims. Plaintiff himself was hired through Continental.

Plaintiff defines the class as follows:
All those individuals who were paid on an hourly basis and who were not paid overtime wages at the rate of one and one-half times their regular rate. They were generally hired in December of 2001 and thereafter. They were hired as temporary full time adjusters through personnel companies (such as Continental) or adjusting companies (such as Wardlaw, NCA or Eberls). They usually worked on mold claim files. They generally worked in the states of Texas or California. They generally worked in (or out of) permanent Farmers offices, under the direction of Farmers supervisors, the Farmers supervisors approved their time cards, and they generally performed the same tasks that permanent Farmers employees performed.

In opposition, Farmers contends that Plaintiff has presented no evidence to support his contention that he is "similarly situated" to the other individuals he seeks to represent.

Specifically, it argues that there are three primary issues in which Plaintiff must demonstrate that he is "similarly situated" [*11] to the proposed collective group before a collective action may proceed in this case: (1) that Farmers was a joint employer; (2) that each of the putative plaintiffs was not paid according to the "salary basis test" or applicable fee-based regulations; and (3) that the putative plaintiffs did not meet the "duties test" of the administrative exemption. It argues that each of these requires a fact-intensive inquiry that, in this case, is not suitable to the collective action proposed by Plaintiff.

This Court examines each of these issues below.

### 3. Farmers is not the joint employer of Plaintiff and even if it was, Plaintiff has not shown that he is similarly situated to the other members of the proposed collective action group with respect to each member's employment relationship with Farmers

Independent contractors are not covered by the FLSA; that is, there must be an employer-employee relationship for liability to accrue for alleged unpaid overtime. See Chao v. A-One Med. Servs., 346 F.3d 908, 917-18 (9th Cir. 2003).

Under the FLSA, "employer" includes: any person acting directly or indirectly in the interest of an employer in relation to an employee [*12] and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.

29 U.S.C. § 203(d). Plaintiff admits that Farmers was not his direct employer. Instead, he claims that Farmers was a joint employer. Two or more employers may jointly employ someone for the purposes of the FLSA. Bonnette v. California Health and Welfare Agency, 704 F.2d 1465, 1469 (9th Cir. 1983). Joint employers are individually responsible for compliance with the FLSA. 29 C.F.R. § 791.2(a). Determining whether the two entities may be considered "joint employers" requires consideration of the total employment situation, but should focus on four primary factors: "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of payment, (3) determined the rate and method of payment, and (4) maintained employment records." Bonnette, 704 F.2d at 1470.

Farmers contends that Plaintiff fails to provide evidence to show that Farmers [*13] was a joint employer of Plaintiff or that Plaintiff is "similarly situated" to the other individuals he seeks to represent with regard to any alleged employment relationship with Farmers. As such, this Court examines the above factors to determine whether Farmers was a joint employer of Plaintiff and whether Plaintiff is "similarly situated" to the other members of the proposed collective group with respect to the employment relationship with Farmers.

### a. power to hire and fire employees

Farmers provides evidence that its contracts with insurance adjusting companies to provide independent contractor adjusters, such as with Wardlaw and Pilot Catastrophe Services, Inc., specifically state that the adjusters provided are independent contractors, not employee of Farmers. (Kohler Decl., Exhs. A and B at Article 6.) With respect to Continental, Farmers provides evidence that Continental required its employees to sign an employment agreement specifying that the adjusters were employees of Continental and that they had no rights or claims to employment with the client with which they worked. (See id. at P 4; Exh. C.)

In his Reply, Plaintiff contends that Farmers had the absolute [*14] power to hire and fire him. He relies on the December 20, 2001 engagement letter which specifically provides that Farmers had the option to hire the adjusters permanently at any time. He also claims that he was fired by his Farmers' supervisor. In response, Farmers disputes Plaintiff's interpretation of the evidence and further argues that Plaintiff has not shown that he is similarly situated with regard to adjusters from other companies, or even with adjusters from Continental. This Court agrees with Farmers.

The letter relied upon by Plaintiff gives Farmers the authority to hire Continental-provided workers without incurring a fee. (Reply Brief, Exh. A.) However, it is not relevant to whether Farmers had the ability to hire or fire Continental adjusters while they were employed by Continental. In fact, as stated above, the independent contractor adjusters signed contracts with Continental specifying that they had no rights or claims to employment with the client to whom they were assigned. (See Kohler Decl., P 4, Exh. C.) Furthermore, Plaintiff has presented no evidence in regard to the other contracting companies. By contrast, Farmers has shown that independent contractor adjusters [*15] from the other contracting companies Plaintiff seeks to represent were selected and assigned by those other adjusting companies, not by Farmers. (See, e.g., Bishop Decl., P 6; Kainer Decl., P9.)

With respect to Plaintiff's claim that he was fired by his Farmers' supervisor, Farmers point to Plaintiff's deposition testimony wherein he states the reason he stopped working for Farmers was because Farmers was downsizing, and he was offered a job by Continental to work on a Farmers' project in Texas which he refused. (Plaintiff Depo. at pp. 58, 61, 64-65, 81-82 and Exh. 8, attached to Warren Decl. as Exh. A.) Plaintiff admitted in his deposition that he would contact Continental, and Continental would tell him what work was available. (Id. at 56.) Moreover, even if Farmers did control the hiring and firing of Plaintiff, then Plaintiff is not similarly situated to other Continental adjusters who worked in other locations because the evidence shows that on-site Continental managers handled personnel matters at those other locations. (Nguyen Decl., P 10, Shaver Decl., PP8, 10-11.)

**b. supervise and control employee work schedules or conditions of payment**

Farmers presents evidence [*16] that the Continental employees acknowledged that their employment agreement with Continental had no effect on the terms, conditions and

limitations agreed to between Continental and the client (Farmers). (Kohler Decl., P 4; Exh. C.) It states that it did not have the authority to control the terms and conditions of the Continental workers' employment. (See id. at P 6; Exh. E; Shaver Decl., P 11.) It states that Farmers managers could not make personnel changes. (Shaver Decl., P 1; Kainer Decl., P 9.)

In support of his contention that Farmers had the absolute power to supervise the adjusters' work schedules and conditions of employment, Plaintiff generally states that he was supervised by Farmers' supervisors at certain assignments. He offers no specific facts whether this "supervision" related to work schedules or conditions of payment. Plaintiff attempts to meet this requirement by stating that the adjusters were only paid if their time sheets were approved and signed by their Farmers' supervisor; however, again, the approval of time sheets bears no relation to the initial setting of work schedules or the terms for payment. Plaintiff also relies on the engagement letter which [*17] states, "As a temporary employee you are expected to follow the rules, regulations, procedures and dress code of the client company to which you are assigned." Again, this general statement in the engagement letter says nothing about the control of work schedules or conditions of payment.

Moreover, even assuming Farmers had the requisite supervision and control over Plaintiff, Plaintiff presents no evidence that Farmers had the same requisite supervision and control of adjusters from other agencies. By contrast, Farmers presents evidence that it did not exercise such supervision and control, as the other contracting entities had their own supervisors on-site. (Bishop Decl., P 6; Kainer Decl., P 9; Nguyen Decl., P 6.) It also presents evidence that Continental provided supervisors who would determine the schedules and working conditions) at sites other than those at which Plaintiff worked. (Nguyen Decl., P 10; Shaver Decl., PP 8, 10-11.)

**c. determine rate and method of payment**

Farmers shows that its agreements with the entities which provide the independent contractor adjusters do not specify how the contracting entity is to pay these independent contractor adjusters, as that [*18] is a matter between the adjusting company and its workers. (Kohler Decl., Exhs. A and B at Article 4.) It states that it does not control the rate of pay or method of payment from the contracting entity to the worker. (See Smith Decl., P 8; Martin Decl., P 6; Shaver Decl., P 11.) It does not prepare the payroll or pay wages to the adjusters. (See Hongsdusit Decl., P 8; Martin Decl., P 6.) Similarly, Farmers did not determine the pay rates to Continental workers and did not determine the method of payment to Continental workers. (Shaver Decl., P 11.)

In support of his contention that Farmers determined the rate and method of payment, Plaintiff relies on Continental's proposal to Farmers in which Continental proposed, and Farmers accepted, the $ 40.00 per hour wage rate. However, while Farmers agreed to pay Continental on an hourly rate, such agreement did not determine the payment relationship between Continental and its employees. In fact, Plaintiff admits that Continental changed its rate and method of payment to its employees, by guaranteeing a minimum weekly

salary of $ 250, then going to a $ 2,650 weekly salary, then to a $ 2,250 weekly salary, then to a hourly rate with [*19] overtime. (Kohler Decl., Exhs. G-K; Reply Brief, Exh. G.) There is simply no evidence that Farmers and not Continental changed these rates. Furthermore, Plaintiff admits he does not know how adjusters from other companies were paid. (Plaintiff Depo. at 85-87.)

### d. maintain employment records

With respect to the maintenance of employment records, Plaintiff contends that Farmers had turned over two storage boxes of employment records on these individuals to Plaintiff's counsel through discovery. In response, Farmers states that these "employment records" consisted of nothing more than timesheets and invoices used to determine the appropriate payment to Continental, and regardless, Farmers obtained many of these records from Continental in order to respond to Plaintiff's discovery request. This Court agrees with Farmers that the factthat it obtained records at Plaintiff's request is not evidence that Farmers itself maintained or controlled them. Furthermore, Plaintiff again fails to offer any evidence to show that Farmers maintained similar so-called "employment records" for adjusters supplied by other companies and therefore has not shown he is similarly situated to them in this [*20] regard.

### e. conclusion

Thus, based on the foregoing factors, this Court finds that Plaintiff has failed to show that Farmers together with Continental was his joint employer, and even if Plaintiff were able to establish this, he has failed to show that he is similarly situated to the other members of the proposed collective group consisting of adjusters from Wardlaw, NCA and Eberls with respect to the members' employment relationship with Farmers. On this basis alone, then, denial of certification of this action as a collective action is warranted.

### 4. Plaintiff has not shown that he is similarly situated to the other members with respect to the elements of the administrative exemption

Although an employer-employee relationship may exist for liability purposes, the FLSA exempts bona fide administrative employees from its overtime pay requirements. See 29 U.S.C. § 213(a)(1). The administrative exemption is comprised of two parts: (1) whether the employee was paid on an appropriate salary or fee basis; and (2) whether the employee's duties satisfy the "duties test" set forth in the regulations.

Farmers argues that even if an employment relationship [*21] exists, Plaintiff has not shown that the putative collective action group is similarly situated to him in regard to the form or method of wages paid to them, and that he has not shown that the job duties of the putative collective group are sufficiently similar to his. This Court agrees that these are essential elements for determining the administrative exemption. As such, this Court must examine Farmers' contentions regarding these issues. However, before proceeding, this Court notes Plaintiff's claim that it is Farmers which must show that the employees meet the administrative exemption. While this is ultimately true, this substantive issue is

not now before this Court. Instead, the issue presently before this Court is whether this case should proceed as a collective action. Plaintiff bears the burden of proving this, and it is for him to present evidence that all putative members were paid similarly and performed similar job duties. In other words, since Plaintiff alleges in his Complaint that he was not exempt from overtime pay requirements because he was paid on an hourly basis, he must demonstrate that he is similarly situated to the other adjusters he seeks to represent with [*22] regard to this issue.

**a. whether the employee was paid on a salary or fee basis**

To meet the requirements of the administrative exemption, the employee must have received a salary. See 29 C.F.R. §§ 541.211-213. In lieu of being paid on a salary basis, an exempt administrative employee may receive his or her compensation on a fee basis. See id. at §§ 541.213, 541.313(c). Fee basis compensation is "the payment of an agreed upon sum for a single job regardless of the time required for its completion." See id. at § 541.313(b).

Farmers contends that the wage payments made to the proposed collective action group differed, not only as between Continental and the other companies, but also between the Continental workers themselves. While Farmers' evidence supports this contention, this Court agrees that, at a minimum that Plaintiff has failed to show otherwise.

Plaintiff alleges he was paid by the hour by Continental, yet another Continental worker, a putative opt-in, Bill Myers, was paid in 2003 a guaranteed $ 250 base salary or a percentage of fees billed, whichever was greater; later, he was paid a flat salary of $ 2650 per week and then [*23] $ 2250 per week. (Kohler Decl., Exhs. F-J.) In August 2003, Continental again changed its method of payment to its workers - it went back to paying its adjusters by the hour, including overtime for hours worked over 40 in a week. (See id. at P 8, Exh. K.) With respect to how adjusters for other companies were paid, Plaintiff admits that he does not know how they were paid. (Plaintiff Depo. at 85-87.)

In his Reply, Plaintiff submits new affidavits; however, these affidavits state in a conclusory fashion that the individual worked for Farmers and was paid by the hour. None of them indicate for which contracting entity he/she worked. Without basic facts as to which contracting entity employed each affiant, Plaintiff has not shown that he is similarly situated to any adjuster from any company other than Continental. With respect to adjusters with Continental, Plaintiff's own evidence is in conflict. In his Reply, Plaintiff states that Continental adjusters were paid a regular flat salary rate in 2003 (Reply, pp. 3-4), but he then submits affidavits wherein each Continental worker states he worked in 2003 and was paid by the hour. (See Cannon, Capone, Erhardt, Ferro and Jackson [*24] Affidavits.) Since Plaintiff was paid by the hour while other Continental adjusters were paid on a salary basis, then he cannot represent them as being similarly situated. n4

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 Recognizing the problem, Plaintiff suggests that he wants to send notice only to those individuals who were paid by the hour. However, such a suggestion highlights that certification is not proper here. To determine who was actually paid by the hour would require an individualized determination and review of pay records, and such an individualized inquiry is not the purpose of a collective action.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**b. whether the employee's duties satisfy the "duties test"**

To meet the administrative exemption, the employee's primary duties must consist of (a) the performance of office work directly related to the general business operations of the employer; and (b) duties that require the exercise of discretion and independent judgment. 29 C.F.R. § 541.2(a)(1). The federal regulations expressly include "claim agents and [*25] adjusters" as employees who perform duties relating to the administrative operations of a business. Id. at § 541.205(c)(5).

Farmers contends that job assignments and duties of independent contractor claims representatives vary widely, even among the adjusters provided by the same company. It provides evidence that Plaintiff's own job assignments and duties varied. For example, Plaintiff was employed by Continental in February 2002, when he first began work on mold claims for Farmers." (Plaintiff Depo. at pp. 9, 27.) His initial job responsibilities were as a "file examiner." (Id.) When Plaintiff moved to adjust mold claims in Sacramento, he became a "lead adjuster," which meant he generally supervised the work of several Wardlaw independent adjusters, who performed the initial field inspections and made the initial claim valuation. (Id. at 39, 43-44, 47.) Plaintiff then worked in Oklahoma City for about four weeks as a file examiner on mold files. (Id. at 53.) After that, he worked in Sacramento as a lead adjuster, and then Continental offered Plaintiff a job assignment in Texas, but Plaintiff rejected it. (Id. at 45-58, 61-82.)

Farmers also provides evidence [*26] demonstrating that the adjusters perform widely varying job duties. (See Bishop Decl., PP 5, 10 (describing different duties of "field adjusters" provided by Wardlaw, NCA and Eberls, with duties of "office adjusters" provided by Continental); Kainer Decl., PP 6-8 (stating that Continental adjusters "were assigned duties not performed by any other independent adjusters working mold claims at that time" and describing their job duties as "lead" adjusters, while other company adjusters had different job duties); Nguyen Decl., PP 4-9 (describing that Continental adjuster duties differed in that some Continental adjusters worked as "leads," while others worked as "office adjusters," which all differed from the "field adjusting" work performed by other company adjusters); Smith Decl., P 11 (stating that some Continental adjusters were assigned to the Complex Claims Unit and made presentations with recommendations during Legal Round Table meetings with Farmers' counsel; "No other independent adjusters from other agencies had duties at all similar to this duty.")).

Plaintiff offers no details of what the individuals in the putative collective action group actually did on the job. He merely [*27] states that they all were hired to work on "the mold claims project," and then he admits that "their duties may have varied to some extent." (Reply, p. 12.) In fact, some of the affidavits filed with his Reply reveal that the putative collective action members worked on different types of claims other than mold claims. (See, e.g., Reed Affidavit, Exh. E to Reply (stating that he worked on storm claims, not just mold claims); Roy Affidavit (stating he worked as a lead adjuster in the litigated claims section)). In sum, Plaintiff fails to rebut the evidence Farmers submitted demonstrating that the adjusters perform widely varying job duties. n5 The differing job duties and the individualized inquiry to determine whether these varying duties meet the administrative exemption preclude a collective action in this case.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n5 In his Reply, Plaintiff argues that Farmers' claims adjusters are production workers not covered by the FLSA administrative exemption. Farmers responds that this argument is incorrect and, in any event, irrelevant to a determination of whether they are similarly situated. This Court agrees with this latter argument; it does not need to address the issue of whether the insurance claims adjusters are exempt administrative employees or production workers at this time.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*28]

## c. The existence of an alleged common plan or policy is not dispositive

Plaintiff argues that the proposed collective action group is similarly situated because there is "clear evidence of a single decision, policy or plan which affected all of them." He specifically states that such plan was Farmers' decision "to hire numerous independent adjusters to work on mold claims and to pay them an hourly wage, but would not pay them overtime wages in clear violation of the overtime provisions of the FLSA." Plaintiff relies on the case of Pines v. State Farm Ins. Co., 1992 U.S. Dist. LEXIS 6972 (C.D. Cal. 1992).

This Court finds that Plaintiff's reliance on Pines is misplaced. In Pines, the plaintiff sought court facilitation of the opt-in procedure based upon the plaintiff's claim under the Age Discrimination in Employment Act ("ADEA") that defendants denied her, and other similarly situated persons, employment on the basis of age. n6 The Court granted plaintiffs' motion for court facilitation of the opt-in procedure because plaintiffs produced substantial allegations that the defendants participated in a plan of age discrimination that affected many similarly [*29] situated people. Thus, while the Court did focus on evidence of a plan of discrimination, the issue before it did not involve the need for individualized inquiries. By contrast, in this case, the issues of the joint employer test and the administrative exemption tests of the FLSA require such individualized inquiries. As another court stated, "unlike in a discrimination case, the focus [in FLSA cases] is not on

[the employer's] action, but instead on the nature of the employee's job duties in the context of the relevant exemption criteria." Morisky v. Public Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 498; Pfaahler, 2000 U.S. Dist. LEXIS 1772, *9 (refusing to authorize FLSA collective action; distinguishing ADEA cases because, unlike FLSA cases, "in a discrimination case, it is relatively easy to satisfy the similarly situated standard [because] a discrimination case focuses on whether the defendant had a policy of discriminating against its employees."). In sum, while a policy or plan may be relevant to the inquiry of certification, it cannot be the sole factor in light of the other issues under the FLSA.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 A collective action under the ADEA incorporates the standards for a collective action under the FLSA. Pines, 1992 U.S. Dist. LEXIS 6972, * 19.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*30]

### d. conclusion

Because Plaintiff has failed to show that he is similarly situated to the other members with respect to the payment of a salary and the performance of duties, the exempt or non-exempt status of hundreds of independent contractor adjusters would need to be determined on an employee-by-employee basis. This would be inefficient and impractical, thereby defeating the purpose of a collective action. See Mike v. Safeco Insurance Co., 274 F. Supp. 2d 216, 2003 U.S. Dist. LEXIS 21438 (D. Conn. 2003)(denying collective action certification in FLSA overtime case because plaintiff did not show similarity in job duties and job duties test would require individualized facts). This Court therefore finds that certification of a collective action is not warranted on this additional basis.

### 5. Additional reasons exist for denying certification

Farmers offers additional arguments why a 216(b) collective action would not be appropriate. This Court agrees with these arguments. First, distinct defenses available to Farmers that would apply to disparately situated individuals do not allow for a manageable case. See Lusardi v. Xerox Corp., 118 F.R.D. 351, 370 (D. N. J. 1987) [*31] ("consolidation of these claims into a representative class with the attendant defenses would not provide for an efficient proceeding"). Further, all of the issues discussed so far highlight that allowing this proposed collective action is contrary to the purpose of allowing notice and a collective action to proceed - to allow "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [conduct]." Hoffmann-La Roche, 493 U.S. at 170. Additionally, as Farmers states, notice should be denied because Plaintiff has engaged in solicitation and has failed to come up with significant numbers of allegedly similarly situated employees who are likely to assert

similar claims. See, e.g., Bernard v. Household International, Inc., 231 F. Supp. 2d 433, 436 (E.D. Va. 2002)(collective action notice denied, in part, because there had been ads in local papers regarding the case); Michaelson v. Arrow Transport Co., 1997 U.S. Dist. LEXIS 23665 (D. Or. 1997)(denying notice to potential collective action members in a FLSA case where complaint failed to allege an inability to contact collective action members [*32] in the absence of court-authorized notice). Here, Plaintiff's attorneys have posted a solicitation on a nationwide independent adjusters' website. (See Warren Decl., Exh. A - Plaintiff Depo., Exh. 10.) While "Consents to Opt In as Class Member" have been filed, no information is provided regarding these purported members, and even when affidavits have been provided, the affidavits lack the requisite information regarding the issues before the Court, as explained above.

Finally, Farmers argues that the Court should deny Plaintiff's motion because Plaintiff cannot show that either he or his attorney can adequately represent the proposed collective action members. Specifically, it claims that Plaintiff has a fundamental conflict with other potential collective action members in that Plaintiff supervised the adjusters he seeks to represent and approved their time records and denied payment for work performed by them. It also claims that Plaintiff's counsel, Mr. Fisher, has a client relationship with Wardlaw and Isabelle Arnold, a potential defendant and witness in this case who is Farmers' former mold claims manager primarily responsible for the relationship with Continental. These [*33] arguments are based upon Federal Rule of Civil Procedure 23 class action issues. While such class action issues are arguably relevant here, this Court finds that it need not make such determination in light of the analysis set forth above. Because Plaintiff has failed to show that a collective action is warranted here, issues as to his or his counsel's ability to represent such collective group are essentially moot.

## III. Conclusion

Plaintiff has failed to show that a collective action of temporary contractor adjusters supplied to Farmers through different agencies to work on mold claims is warranted here. Instead, diverse individualized factors among the proposed collective group members exist, including the factors necessary to conclude that Farmers is a "joint employer" with a number of temporary agencies, the variety of methods of payment to the proposed collective group members who were paid by flat fee, by the hour and by salary by the same and by different employers while Plaintiff allegedly was paid by the hour, and the differences between Plaintiff and each of proposed collective group members in their actual job duties [*34] and the degree to which any one individual exercised independent judgment and discretion in carrying out their varying duties.

Accordingly, this Court **denies** Plaintiff Thomas Pfohl's Amended Motion for Certification of Collective Action Under Section 216(b) of the Fair Labor Standards Act. n7 As such, this Court will allow this case to proceed on the individual claims of this Plaintiff, Thomas Pfohl, only. This Court orders counsel for Plaintiff Thomas Pfohl to notify, in writing, all persons that have attempted to file to opt in to this purported collective action of this Court's decision to deny class certification. This will enable said

parties to file their own individual lawsuits to protect whatever rights they may have.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n7 As explained above, Plaintiff has attempted to file a Motion to Amend Complaint which he desires to be heard on March 8, 2004. However, no such Motion was properly filed. According to Farmers' opposition to the Motion to Amend, Plaintiff seeks to add three state law class claims under the California Labor Code and California Business and Professions Code, to add two additional named plaintiffs, to add two additional defendants, Wardlaw Adjusting and Continental Staffing, Inc., and to add two new FLSA collective action claims against the proposed new defendants. This Court notes that in light of this Court's determination to deny this instant motion for certification of collective action, any purported Motion to Amend may be moot, or at a minimum, require revision in light of this current Order before any attempt to refile.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*35]

IT IS SO ORDERED.

DATED: 3-1-04

Dickran Tevrizian, Judge

United States District Court

Dionne vs. The Ground Round, Inc.

ROGER **DIONNE** and WILLIAM HAYDEN v. THE **GROUND ROUND,** INC.

CIVIL ACTION NO. 93-11083 RGS

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

1994 U.S. Dist. LEXIS 21641

July 6, 1994, Decided

**SUBSEQUENT HISTORY:** Motion denied by Dionne v. The Ground Round, Inc., 1994 U.S. Dist. LEXIS 21640 (D. Mass., Oct. 31, 1994)

**DISPOSITION:** Plaintiffs' motion for class certification was denied without prejudice.

**COUNSEL:** [*1]  For Roger Dionne, William Hayden, PLAINTIFFS: Sara Fleschner, Kushner & Sanders, Wellesley MA, USA. Jonathan J Margolis, Rodgers, Powers & Schwartz, Boston MA, USA.

For Ground Round, Inc, DEFENDANT: Edward P Leibensperger, Nutter, McClennen & Fish, Boston MA, USA. Ronald M Jacobs, Stoneham, Chandler & Miller, Boston MA, USA.

**JUDGES:** Richard G. Stearns, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Richard G. Stearns

**OPINION: MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

STERNS, D.J.

This action arises from allegations of age discrimination by the plaintiffs, Roger Dionne and William Hayden, against their former employer, The Ground Round, Inc. ("Ground Round"). Dionne and Hayden were employed as restaurant managers for the Ground Round for ten and fourteen years respectively. Both men claim that they were fired pursuant to a Ground Round company policy of terminating older, more highly compensated managers and replacing them with younger, lower paid employees. Dionne and Hayden ask to represent a class of past and present managerial employees of the Ground Round whom they claim have been or will be similarly affected.

**FACTS**

The material facts, viewed [*2]  in the light most favorable to the plaintiffs, are as follows. Ground Round operates franchises for casual dining restaurants in the North-

East, Mid-Atlantic and Midwest regions of the United States. At the time this dispute arose, the management of Ground Round's approximately 210 restaurants resided largely with its restaurant operations and corporate services divisions. Ground Round employed roughly 10,000 persons, approximately 500 of whom were restaurant managers or trainees, and 100 of whom worked in corporate services. n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The past tense is used as Ground Round has apparently undergone a corporate reorganization since the events that precipitated Dionne and Hayden's Complaint.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Restaurant operations in turn was divided into eastern, central and western divisions. Each region was managed by a division vice president to whom seven or eight regional directors reported. Each regional director oversaw from five to sixteen restaurants. n2 Each restaurant was run by a general manager who supervised an assistant [*3] general manager and two shift managers.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 The regional directors are responsible for hiring or terminating restaurant general managers. See Affidavit of Frank M. Puthoff at PP 5.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Corporate services was responsible for financial operations and was headed by Ground Round's chief financial officer. The employees in corporate services produced the company's financial statements and tax reports and performed internal auditing, risk management assessment, controller functions, construction contract administration, and corporate office administration.

Dionne worked for Ground Round in restaurant operations from May 1982 until he was fired in November 1992. Prior to his termination, Dionne was the general manager of a Ground Round Restaurant in Natick, Massachusetts, and a regional training manager. During his ten years of employment with Ground Round, Dionne received consistently outstanding work ratings. In the fall of 1992, Dionne's immediate supervisor significantly increased his sales volume and profit quotas. [*4] Dionne claims that his requirements were markedly higher than those of managers at comparable Ground Round restaurants. While Dionne met his assigned profit objectives, he narrowly missed the sales target. Dionne was fired by Ground Round on November 3, 1992. Dionne contends that Ground Round escalated his sales and profit quotas to camouflage a discriminatory motive.

Dionne was 54 when he was fired.

Hayden was also employed by Ground Round in restaurant operations. Hayden worked for Ground Round from April 1978 until July 1992. Hayden, like Dionne, was a restaurant manager who was unable to meet augmented sales and profit quotas. Hayden, like Dionne, had outstanding job ratings from Ground Round, and blames the same alleged discriminatory policy for his discharge. Hayden was 53 when he was fired.

Attached to Dionne and Hayden's motion for class certification are thirteen additional complaints filed with the EEOC or analog state agencies by terminated Ground Round employees claiming age discrimination. The additional complainants were all managerial" employees working either in restaurant operations or at corporate services. Dionne and Hayden propose to represent in this action "all [*5] managerial and supervisory employees of Ground Round who are either currently employed or whose employment has been terminated by Ground Round since January 1, 1990, and who are or were over 40 years of age at material times." See Plaintiffs' Motion For Class Certification at 1.

## DISCUSSION

Procedural Requirements for Class Action

Dionne and Hayden's Complaint alleges that Ground Round discriminated against them in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") n3 and seeks to certify a class of other Ground Round employees allegedly terminated (or presumably about to be so) for reasons of age. Litigants filing under the ADEA are directed to follow the "power, remedies and procedures" set out in the Fair Labor Standards Act ("FLSA"). See 29 U.S.C. § 626(b). The FLSA permits class certification for persons claiming violations of the Act if each member of the class is "similarly situated" and opts-in to the lawsuit by filing a written consent. See 29 U.S.C. § 216(b). Unlike Fed. R. Civ. P. 23, a class action under the ADEA contemplates the affirmative affiliation of all putative plaintiffs with the [*6] lawsuit. n4 Anderson v. Montgomery Ward & Co., Inc., 852 F.2d 1008, 1016 (7th Cir. 1988); LaChapelle v. Owens-Illinois, Inc., 513 F.2d 286, 288 (5th Cir. 1975); Owens v. Bethlehem Mines Corp., 108 F.R.D. 207, 209 (S.D. W. Va. 1985). Several courts have held that, in addition to the requirements of § 216(b), the proponents of an ADEA class action must comply with the provisions of Rule 23. See Shushan v. University of Colorado at Boulder, 132 F.R.D. 263, 265 (D. Cob. 1990). Rule 23 imposes considerations of numerosity (i.e., the impracticability of joinder), the appropriateness of the plaintiffs as representatives of the class, the applicability of injunctive relief to the class as a whole, and the predominance of common questions of fact and law affecting the class as a whole. Although the issue does not appear to have been addressed by the First Circuit, I am persuaded by the holding in Shushan, supra, that Rule 23 insofar as it is consistent with § 216(b), provides a useful set of criteria for evaluating the propriety of an ADEA class action distilled from a long history of judicial experience. [*7] n5

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Both plaintiffs have brought pendent state law claims based on the same facts.

n4 Rule 23 provides that certification of a class action is appropriate if:
(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

n5 The parties, I note, seem to agree, as both devote considerable discussion to the issue of whether the requirements of Rule 23 have been met.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Administrative Claims

Prior to filing a civil action claiming age discrimination, a plaintiff is required to file an administrative charge with either the Equal Employment Opportunity Commission ("EEOC") or an equivalent state agency (in Massachusetts, the Massachusetts Commission Against Discrimination ("MCAD")). Jurisdictions [*8] differ regarding potential class plaintiffs' administrative filing requirements. Some courts dismiss from the class individual plaintiffs who either fail to file, or cannot file, timely administrative claims. n6 See McCorstin v. United States Steel Corp., 621 F.2d 749, 755 (5th Cir. 1980) (only persons filing a timely discrimination charge admitted to class); Walker v. Mountain States Tel. & Tel. Co., 112 F.R.D. 44, 47 (D. Colo. 1986) (limiting opt-in plaintiffs to those persons who could have filed an EEOC charge as of the filing date of the representative plaintiffs EEOC charge); Pandis v. Sikorsky Aircraft Div. of United Technologies Corp., 431 F. Supp. 793, 797-798 (D. Conn. 1977) (same).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 A plaintiff is ordinarily required to file with the EEOC within 300 days of the

unlawful act. See 29 U.S.C. § 626(d)(2).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

If filing requirements are strictly observed, three of the fifteen proposed plaintiffs have claims that would be precluded [*9] as untimely. n7 The majority of jurisdictions, however, permit "piggybacking" of claims so long as at least one timely EEOC charge puts the employer on notice that a potential class of claimants exists. See Kloos v. Carter-Day Co., 799 F.2d 397, 400 (8th Cir. 1986). See also Tolliver v. Xerox Corp., 918 F.2d 1052, 1058-1059 (2d. Cir. 1990); Lusardi v. Lechner, 855 F.2d 1062, 1077-1078 (3d. Cir. 1988); Naton v. Bank of California, 649 F.2d 691, 697 (9th Cir. 1981); Mistretta v. Sandia Corp., 639 F.2d 588, 593-595 (10th Cir. 1980); Levine v. Bryant, 700 F. Supp. 949, 954-956 (N.D. Ill. 1988). These courts require, however, that the wording of the seminal filing provide the employer with sufficient notice to explore conciliation with the affected group. See Tolliver, supra at 1058. While allowing plaintiffs to "piggyback" their claims, these courts, consistent with a policy of encouraging conciliation, typically limit the class claims to those articulated in the representative plaintiffs EEOC filing. See Burt v. Manville Sales Corp., 116 F.R.D. 276, 277-278 (D. Cob. 1987) [*10] and cases cited.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 William Connelly, Robert Eisenberg and Jeffrey Eymer filed administrative charges beyond the requisite 300 days.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

While the First Circuit has not explicitly addressed this issue, both the weight of authority and the policy underlying it, as articulated by Kloos, supra at 400, persuade me that the law in this Circuit should (and would) follow the lead of the majority. n8

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n8 In Foster v. Gueory, 211 U.S. App. D.C. 89, 655 F.2d 1319, 1322 (D.C. Cir. 1981), the court held that for purposes of assessing the adequacy of the single filing rule, the pivotal question to ask is whether "it can fairly be said that no conciliatory purpose would be served by filing separate EEOC charges . . . ."

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

None of the individual administrative charges attached to plaintiffs' memorandum of law allude [*11] to the existence of a class of claimants against Ground Round. Plaintiffs' counsel point to cover letters accompanying the Dionne and Hayden EEOC Complaints as constituting constructive notice to Ground Round that a class of potential plaintiffs have common claims of age discrimination. n9 It is at least debatable whether these letters served adequately to alert Ground Round to the extent of its employees' claims or the possibility of a class action law suit, or complied with the administrative requirements of the ADEA. See 29 U.S.C. § 626(d); H.R. Conf. Rep. No. 950, 95th Cong., 2d Sess. 12, reprinted in 1978 U.S. Code Cong. & Admin. News, 504, 534. See also Bean v. Crocker Nat'l Bank, 600 F.2d 754, 760 (9th Cir. 1979); Burt v. Manville Sales Corp., supra.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n9 In pertinent part, counsel's letter of January 8, 1992 to Mr. Charles Looney, area director of the EEOC, states that "this office represents Mr. William Hayden and others in a claim against their former employer, The Ground Round, Inc., for age discrimination. . . . We expect to be filing a class action suit in federal court on behalf of Mr. Hayden and others similarly situated and would like to do so as soon as possible. . . . In addition to my request that you forward a copy of the complaint to the MCAD, I am requesting from you a 'right to sue' letter, at your earliest convenience, so that we may file Mr. Hayden's claim directly in federal court." The MCAD dismissed Mr. Hayden's complaint without prejudice on February 18, 1993. Mr. Hayden received a "right to sue" letter from the EEOC on March 22, 1993, and commenced this action on April 20, 1993.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*12]

"Similarly Situated"

In order to certify a class, the court must also find that the proposed ADEA plaintiffs are similarly situated. n10 The cases define "similarly situated" employees as those who occupy like positions in the corporate hierarchy, work in the same office or division, share a geographic location, or have comparable job descriptions. See e.g., Ulvin v. Northwestern Nat. Life Ins. Co., 141 F.R.D. 130, 131 (D. Minn. 1991) (denying class certification because of disparities among the opt-in plaintiffs); Lusardi v. Xerox Corp., 122 F.R.D. 463 (D.N.J. 1988) (reaffirming decertification because of variation among class members as to employment status, age, and circumstances of termination). That is the case here. The fifteen nominees in this action worked in different states, for various supervisors, at different job levels, in different divisions and departments, were terminated for purportedly different reasons, and in several cases are pursuing individual remedies against Ground Round. n11 Hayden and Dionne are the only plaintiffs in the proposed class who were terminated by the same regional director. None of the current employees [*13] who are proposed as members of the class have filed allegations of age discrimination against Ground Round. Cf. General Telephone Co. of Southwest v.



Falcon, 457 U.S. 147, 157-158, 72 L. Ed. 2d 740, 102 S. Ct. 2364 (1982).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n10 See 29 U.S.C. § 216(b) (stating "[am action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer, (including a public agency) in any Federal or State court of competent jurisdiction by any one or more of the employees for and in behalf of himself or themselves and other employees similarly situated.").

n11 David Halligan and Robert Whitelaw have an action pending in this court (93-CV-12558-REK). Jeffrey Eymer has an ongoing suit against Ground Round in the Northern District of New York. Hugo Wallgren executed a release of all claims against Ground Round. Susan Winspeer was laid off because the restaurant she managed was closed. Peter Coutu resigned his position as assistant general manager. See Affidavit of Frank M. Puthoff at P 6.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*14]

The plaintiffs have not pointed to any overriding commonality suggesting that a class joinder of these claims is necessary and appropriate other than the allegation that each member of the proposed class has been (or will be) the victim of a company policy of age discrimination. This assertion is based on several affidavits attributing statements to various company executives extolling the virtues of younger workers. Appreciation of youth is not evidence of distaste for age and experience, much less is it evidence of a "company-wide" policy to give riddance to older workers. Only one statement, allegedly made by Tony Santarelli, the Vice-President of the Eastern Division of restaurant operations, is overtly suggestive of a discriminatory intent. I doubt that a "company-wide" policy can be inferred from the hearsay account of an isolated statement by one corporate executive. This is not to say, that in the course of discovery, plaintiffs might not uncover evidence that such a policy was in fact in place at Ground Round, and that plaintiffs and others were victimized accordingly. There may be enough in the plaintiffs' submissions to date to cause the Court to permit more liberal discovery [*15] than might ordinarily be warranted in an action of this type. Compare Responses of the Ground Round, Inc. to Plaintiffs' First Set of Interrogatories, July 26, 1993. But at this juncture, the case for certification of a class action has simply not been made.

## ORDER

For the foregoing reasons, Plaintiffs' Motion for Class Certification is DENIED without prejudice.

SO ORDERED.

Richard G. Stearns

UNITED STATES DISTRICT JUDGE

Dietrich vs. Liberty Square, LLC, et al.

Westlaw.

2005 WL 2065136                                                                Page 1

--- F.R.D. ----, 2005 WL 2065136 (N.D.Iowa), 10 Wage & Hour Cas.2d (BNA) 1488

**(Cite as: 2005 WL 2065136 (N.D.Iowa))**

United States District Court,
N.D. Iowa,
Eastern Division.
Tivie DIETRICH, individually, and all other
similarly situated employees,
Plaintiff,
v.
LIBERTY SQUARE, L.L.C., and AMERICAN
HEALTHCARE MANAGEMENT SERVICES,
L.L.C.,
Defendant.
No. C05-2037.

Aug. 29, 2005.

**Background:** Employee commenced action in state
court on behalf of herself and all other similarly
situated employees who were allegedly denied
overtime wages in violation of Fair Labor Standards
Act (FLSA) and Iowa Wage Payment Collection
Act (IWPCA). Action was removed to federal court.
Employees moved for leave to notify potential
plaintiffs of action, and to compel discovery.

**Holdings:** The District Court, Jarvey, United
States Magistrate Judge, held that:
(1) leave would be granted to notify potential
plaintiffs of action, as minimal burden necessary for
conditional class certification was satisfied by
allegations set forth in motion for such leave and
supporting affidavits of two employees;
(2) proposed notification letter would be revised to
include additional factors and language;
(3) defendants would be compelled to respond to
interrogatory requesting, inter alia, allegedly
irrelevant information about employees' birthdates;
but
(4) in complying with order compelling discovery,
defendants were to identify by position salaried
managerial employees they claimed representation
of for whom contact from plaintiffs' counsel would
implicate professional conduct rule prohibiting
communication with persons represented by counsel.

Motions granted.

**[1] Federal Civil Procedure** ☞177.1

170Ak177.1 Most Cited Cases
District courts have discretion, in appropriate cases,
to implement provision requiring employee to give
consent in writing to become party plaintiff in
FLSA collective actions and ADEA class actions by
facilitating notice to potential plaintiffs. Fair Labor
Standards Act of 1938, § 16(b), 29 U.S.C.A. §
216(b); Age Discrimination in Employment Act of
1967, § 7(b), 29 U.S.C.A. § 626(b).

**[1] Labor and Employment** ☞2377.5
231Hk2377.5 Most Cited Cases
District courts have discretion, in appropriate cases,
to implement provision requiring employee to give
consent in writing to become party plaintiff in
FLSA collective actions and ADEA class actions by
facilitating notice to potential plaintiffs. Fair Labor
Standards Act of 1938, § 16(b), 29 U.S.C.A. §
216(b); Age Discrimination in Employment Act of
1967, § 7(b), 29 U.S.C.A. § 626(b).

**[2] Labor and Employment** ☞2375
231Hk2375 Most Cited Cases
To establish that conditional certification is
appropriate in FLSA collective action, plaintiffs
need merely provide some factual basis from which
court can determine if similarly situated potential
plaintiffs exist; they can meet this burden by making
modest factual showing sufficient to demonstrate
that they and potential plaintiffs were victims of
common policy or plan that violated the law, and
more stringent factual inquiry as to whether
plaintiffs are similarly situated is made only after
more substantial record has been amassed. Fair
Labor Standards Act of 1938, § 16(b), 29 U.S.C.A.
§ 216(b).

**[3] Labor and Employment** ☞2377.5
231Hk2377.5 Most Cited Cases

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005 WL 2065136
Page 2

--- F.R.D. ----, 2005 WL 2065136 (N.D.Iowa), 10 Wage & Hour Cas.2d (BNA) 1488

**(Cite as: 2005 WL 2065136 (N.D.Iowa))**

Leave would be granted to notify potential plaintiffs of FLSA collective action, as minimal burden necessary for conditional class certification was satisfied by allegations set forth in motion for such leave and supporting affidavits of two employees. Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b).

**[4] Labor and Employment ☞2377.5**
231Hk2377.5 Most Cited Cases
Requirements of class action rule for notice of potential plaintiffs are not applicable to FLSA collective actions which, like class actions under ADEA, require that plaintiffs opt in to lawsuit, rather than usual scenario in which plaintiffs must affirmatively opt out of lawsuit. Fed.Rules Civ.Proc. Rule 23(c)(2)(B), 28 U.S.C.A.; Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b); Age Discrimination in Employment Act of 1967, § 7(b), 29 U.S.C.A. § 626(b).

**[5] Labor and Employment ☞2377.5**
231Hk2377.5 Most Cited Cases
Proposed notification letter in FLSA collective action would be revised to include additional factors and language regarding any fees or advances that plaintiff would be obligated to pay at any stage of litigation, that court has expressed no opinion as to merits of plaintiffs' FLSA claims, and specified language in first paragraph. Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b).

**[6] Federal Civil Procedure ☞1538**
170Ak1538 Most Cited Cases
Defendants in FLSA collective action would be compelled to respond to interrogatory requesting, inter alia, allegedly irrelevant information about employees' birthdates. Fed.Rules Civ.Proc. Rules 26(b)(1), 37(a), 28 U.S.C.A.; Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b).

**[7] Federal Civil Procedure ☞1512**
170Ak1512 Most Cited Cases

**[7] Federal Civil Procedure ☞1538**
170Ak1538 Most Cited Cases
In complying with court order compelling response to interrogatory in FLSA collective action with information regarding employees, defendants were to identify by position those salaried managerial employees they claimed representation of so as to provide notice to plaintiffs of those employees for whom contact from plaintiffs' counsel would implicate Iowa Rule of Professional Conduct prohibiting communication with persons represented by counsel. Fed.Rules Civ.Proc. Rule 37(a), 28 U.S.C.A.; Fair Labor Standards Act of 1938, § 16(b), 29 U.S.C.A. § 216(b); I.C.A. Rule 32:4.2.

Mark D. Sherinian, Jill M. Zwagerman, Sherinian & Walker, PC, West Des Moines, IA, for Plaintiff.

Stephanie Lynn Marett, Mary E. Funk, Nyemaster, Goode, Voigts, West, Hansell & O'Brien, P.C., Des Moines, IA, for Defendant.

ORDER

JARVEY, Magistrate J.

**\*1** This matter comes before the court pursuant to the plaintiffs' June 10, 2005 motion for leave to notify potential plaintiffs of action [FN1] and motion compelling discovery (within docket number 16) [FN2]. For the reasons set forth below, the plaintiffs' motion for leave to notify potential plaintiffs of action (docket number 16) is granted as set forth in this Order, the plaintiffs' motion for leave to file a supplemental motion to notify potential plaintiffs (docket number 27) is granted, and the plaintiffs' motion to compel discovery (within docket number 16) is granted as set forth in this Order.

Procedural Background
Plaintiff Tivie Dietrich, commenced an action on March 8, 2005, in the Iowa District Court for Floyd County, on behalf of herself and all other similarly situated employees who were allegedly denied overtime wages in violation of the Fair Labor Standards Act (FLSA) under 29 U.S.C. § 201 et seq. and the Iowa Wage Payment Collection Act pursuant to Iowa Code Chapter 91A. The defendants, Liberty Square, LLC, and American Healthcare Management Services (AHMS), LLC, filed a notice of removal to this court on March 31,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.R.D. ----, 2005 WL 2065136 (N.D.Iowa), 10 Wage & Hour Cas.2d (BNA) 1488

**(Cite as: 2005 WL 2065136 (N.D.Iowa))**

2005. Defendant AHMS filed a motion to dismiss on April 15, 2005, asserting that the plaintiffs had failed to state a claim against AHMS because AHMS is not the plaintiffs' "employer" as that term is construed under both the FLSA and the Iowa Wage Payment Collection Act. Defendant AHMS's motion to dismiss has not been ruled on as of the date of this Order. By Order dated June 15, 2005, the court granted the plaintiffs' motion to amend or correct the Complaint to add Andrew Burgin as a plaintiff in this matter (docket number 18).

Plaintiffs' Motion to Notify Potential Plaintiffs

29 U.S.C. § 216(b) provides, in relevant part, as follows:

No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

[1] "[D]istrict courts have discretion, 'in appropriate cases,' to facilitate notice to potential plaintiffs." *Campbell v. Amana Company, L.P.,* 2001 WL 34152094 at *2 (N.D.Iowa Jan.4, 2001) (citing *Hoffman-La Roche Inc. v. Sperling,* 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989); *see also Brooks v. BellSouth Telecommunications, Inc.,* 164 F.R.D. 561, 570 (N.D.Ala.1995) (stating that *Hoffman-La Roche Inc.* "found that district courts have the authority to permit the discovery of the names and addresses of potential class members."). The Supreme Court, in *Hoffman-La Roche Inc.,* held that the class action mechanism set forth in 29 U.S.C. § 216(b):

must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure. It follows that, once [a FLSA] claim is filed, the court has a managerial responsibility to oversee the joinder of additional parties to assure the task is accomplished in an efficient and proper way.

*2 *Campbell,* 2001 WL at *2 (citing *Hoffman-La Roche Inc.,* 493 U.S. at 170-71 (internal citations omitted)). By the court's monitoring the preparation and distribution of the notice to potential plaintiffs,

the court "can ensure that it is timely, accurate, and informative." *Id.* (citing *Hoffman-La Roche Inc.,* 493 U.S. at 172). "Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed" to potential plaintiffs. *Id.*

[2] Both 29 U.S.C. § 216(b) and its precedent are "largely silent as to how the class certification issue should be analyzed." *Id.* (citing *Hoffman-La Roche Inc.,* 493 U.S. at 170). "A two-tiered analysis distinguishes between conditional class certification, generally made at the 'notice stage,' and a final class certification determination made after discovery is largely completed." *Id.* (citing *Thiessen v. General Elec. Capital Corp.,* 996 F.Supp. 1071, 1080 (D.Kan.1998)). Because the initial stage of conditional certification is "based on little or no discovery, the 'burden on plaintiffs is not a stringent one.' " *Id.* (quoting *Hoffman v. Sbarro. Inc.,* 982 F.Supp. 249, 261 (S.D.N.Y.1997)). Accordingly, "conditional certification of a representative class is generally granted." *Id.* (citing *Thiessen,* 996 F.Supp. at 1080). To establish that conditional certification is appropriate, the plaintiffs "need merely provide 'some factual basis from which the court can determine if similarly situated potential plaintiffs exist.' " *Id.* (quoting *Jackson v. New York Tel. Co.,* 163 F.R.D. 429, 431 (S.D.N.Y.1995)). "Courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs were victims of a common policy or plan that violated the law." *Id.* (citing *Hoffman,* 982 F.Supp. at 261; accord *Jackson,* 163 F.R.D. at 432). "The more stringent factual inquiry as to whether the plaintiffs are 'similarly situated' is made only after a more substantial record has been amassed." *Id.* (citing *Id.*).

The plaintiffs move for conditional certification and permission to notify potential plaintiffs of their pending FLSA claim against the defendants, thereby enabling potential plaintiffs to "opt in" to the law suit as required by 29 U.S.C. § 216(b). In support of the plaintiffs' motion to notify potential plaintiffs, the plaintiffs allege the following:

(1) Hourly employees were often forced to work

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.R.D. ----, 2005 WL 2065136 (N.D.Iowa), 10 Wage & Hour Cas.2d (BNA) 1488

**(Cite as: 2005 WL 2065136 (N.D.Iowa))**

off the clock at the [defendants'] Liberty Square location.

(2) Hourly employees were also told that if they worked in a department at Liberty Square, other than the one to which they were assigned, they would not be eligible for overtime.

(3) Hourly employees were also required to work in other buildings besides the Liberty Square facility. However, they were told that because it was a different building they would not be eligible for overtime wages.

*3 (4) Hourly employees were also told that because of the date the pay period started or ended, they were not entitled to overtime.

(5) Many hourly employees were forced to clock out at their scheduled time, but continue to work until all of their duties were finished.

(6) Some salaried employees were misclassified as exempt employees when in fact they were hourly employees and not paid overtime.

In support of these allegations, the plaintiffs have provided the affidavits of Plaintiff Andrew Burgin and Plaintiff Tivie Dietrich. [FN3] Mr. Burgin's affidavit states, in relevant part, as follows:

I began my employment with [the defendants] in April 2002, in the maintenance department. My title is and has been Maintenance Supervisor and Driver. I was a salaried employee ... I was contracted to work 43 hours a week, but generally worked at least 50 hours a week. I was on call 24 hours a day, including weekends, and never compensated for the additional days I was required to come into work .... [The defendants] classified me as an administrative employee, but I never supervised any employees or had administrative duties. In fact, on approximately May 3, 2005, Linda Weaver told me I was incorrectly classified as an administrative employee and from then on would be considered an hourly wage employee .... I do believe there may be additional employees who are in the same position that I am in who were denied overtime benefits because they were misclassified as salaried employees.

Ms. Dietrich's affidavit provides, in relevant part:

I began my employment with [the defendants] in February 2004, as an aide .... I was moved to housekeeping in March 2004, until August of that year when I became the Activities Director at the facility. I resigned in April 2005. I was always paid as an hourly employee in all three positions. My duties varied on a daily basis, and I often was responsible for helping out in other departments .... In order for the facility to run smoothly, many employees were required to work in departments other than the one to which they were assigned. Whenever I worked in another department, I was told that because it was not my 'assigned' department, I was not eligible for overtime. I frequently worked over 40 hours a week between two departments and was not paid overtime for the hours over 40. I was told on several occasions that I had to 'punch out,' even though I was not finished with my work. Ron Walls, my Administrator, told me that I had to clock out at my shift ending time, and then finish my duties before going home for the day. I know that these same instructions, were given to other employees as well. Additionally, some of the other employees confided in me that they were not paid overtime when they worked in other departments or even other buildings .... Whenever employees were assigned to work at the other buildings, they were not given overtime compensation for their time worked over 40 hours.

*4 Based upon these allegations and supporting affidavits, the plaintiffs request court authorization to notify other potential plaintiffs about the pending action by way of mailing a letter and consent form.

The defendants resist conditional certification for notification and discovery purposes, arguing that the plaintiffs have failed to set forth "substantial allegations" that the potential plaintiffs "were together the victims of a single decision, policy, or plan." [FN4] The defendants assert that although the plaintiffs' burden at the conditional certification stage is less stringent than the standard which the court would apply at the later decertification stage, the plaintiffs nevertheless have failed to satisfy their burden for conditional certification. Specifically, the defendants argue that the plaintiffs have failed to assert "substantial allegations" for conditional certification because (1) the plaintiffs' "assertions that 'salaried employees were misclassified as exempt employees when in fact they were hourly

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.R.D. ----, 2005 WL 2065136 (N.D.Iowa), 10 Wage & Hour Cas.2d (BNA) 1488

**(Cite as: 2005 WL 2065136 (N.D.Iowa))**

employees' suggests that all Liberty Square employees are similarly situated no matter what the nature of their duties, simply because they claim violations of the same law by the same employer"; (2) the two named plaintiffs, Ms. Dietrich and Mr. Burgin, hold positions that are not "similarly situated" with other employees of the defendants as the plaintiffs have "failed to demonstrate that their actual job duties are similar to those of the putative class consisting of a wide variety of positions"; (3) when the nature of an employee's job duties are at issue, [FN5] as in this case, the court "cannot conclude that [the plaintiffs] are similarly situated to all employees [of the defendants] and/or that all claims have common questions of fact and are typical of one another"; (4) given the nature of the plaintiffs' allegations in this case, the defendants anticipate that defending the matter will require "individualized evidence concerning each employee or former employee" and that such "[d]isparate individual defenses heighten the individuality of the claims, and provide for denying conditional certification"; and (5) before allowing for conditional certification of the plaintiffs' action, the court should conduct a preliminary inquiry to determine "whether a manageable class exists" because by granting the plaintiffs' motion, the court is in effect expanding the scope of this litigation.

[3] The plaintiffs' motion for leave to notify potential plaintiffs of this action is granted. The court finds that the plaintiffs have satisfied the minimal burden necessary for conditional class certification so as to notify potential class members. Based upon the allegations set forth in the plaintiffs' motion and the two supporting affidavits, the court finds that the plaintiffs have provided "some factual basis from which the court can determine if similarly situated potential plaintiffs exist." *Campbell,* 2001 WL at *2 (quoting *Jackson v. New York Tel. Co.,* 163 F.R.D. 429, 431 (S.D.N.Y.1995) ). The defendants' concerns, while valid, are more appropriate for the later decertification stage, after more discovery has taken place.

Plaintiffs' Proposed Notification and Consent Forms
[FN6]
**\*5** *Fed.R.Civ.P.* 23(c)(2)(A) provides, "[f]or any

class certified under Rule 23(b)(1) or (2), the court may direct appropriate notice to the class." *Fed.R.Civ.P.* 23(2)(B) sets forth the requirements for notice of potential plaintiffs as follows [FN7]:

For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language:
• the nature of the action,
• the definition of the class certified,
• the class claims, issues, or defenses,
• that a class member may enter an appearance through counsel if the member so desires,
• that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and
• the binding effect of a class judgment on class members under Rule 23(c)(3).

The plaintiffs have attached to their supplemental motion for leave to notify potential plaintiffs a proposed notification letter. The letter explains that counsel for the plaintiffs have been authorized by the United States District Court for the Northern District of Iowa to notify potential plaintiffs, those who are current or former employees of the defendants, that they may ben entitled to overtime wages. The letter goes on to explain what the FLSA is and how it works, and sets forth the plaintiffs' theory of recovery. The letter then indicates to potential plaintiffs that in order to benefit from "any ruling that may be entered in this matter," that the FLSA requires that plaintiffs "opt in" to the class by signing a consent form. The letter explains that any potential plaintiffs may choose to take no action, or contact independent counsel to pursue claims independently. The letter further indicates that the potential plaintiff must sign the consent form and return it to counsel for the plaintiffs in order to become a participant, and that any potential plaintiff who chooses to join the action will accordingly be bound by the court's final judgment in this matter. Finally, the letter sets forth the statute of limitations for FLSA claims for the benefit of those plaintiffs who choose not to participate in this action.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.R.D. ----, 2005 WL 2065136 (N.D.Iowa), 10 Wage & Hour Cas.2d (BNA) 1488

**(Cite as: 2005 WL 2065136 (N.D.Iowa))**

The defendants argue that the plaintiffs' proposed notification letter is deficient in both scope and form. Specifically, the defendants assert that the proposed notification letter is inadequate because (1) the letter does not "advise potential plaintiffs of any fees or advances they may be obligated to pay at any stage of the litigation"; (2) the letter does not advise that this action "only deals with (or should only deal with) employees working at Liberty Square in Nora Springs, not employees in any way affiliated with American Healthcare Management Services, L.L.C. (AHMS) or other properties manages by AHMS"; (3) the letter does not advise as to the number of individuals who have already submitted signed consent forms as of the date of the mailing; (4) the letter does not indicate that the court "has expressed no opinion as to the merits of [the plaintiffs'] claims." [FN8] The defendants further take issue with the scope of recipients of the notification letter. Specifically, the defendants assert that the plaintiffs request to notify all employees of the defendants should be denied as overbroad. The defendants argue that (1) if the court requires the defendants to provide the plaintiffs with "the names of all employees, particularly current employees [that the defendants have] identified as management, who are most likely exempt [from the FLSA], the [c]ourt would essentially be allowing [the plaintiffs] counsel ex parte communication with [the defendants'] management employees," and such communication would be "unethical"; and (2) if the court orders the defendants to provide information concerning all employees and allows the plaintiffs to send notification to all employees, such notice could encompass employees who are represented by counsel in this matter, thereby violating Rule 32:4.2 of Iowa's Rules of Professional Conduct, which prohibits an attorney from communicating concerning the subject matter of known representation with a party known to be represented by a lawyer in that matter.

*6 [4][5] The court finds that while the plaintiffs' notification sufficiently complies with *Fed.R.Civ.P.* 23(2)(B), Rule 23(2)(B) is not directly applicable to this case because this case is an action brought pursuant to the FLSA. Actions under the FLSA, like

those under the ADEA, require that plaintiffs "opt-in" to the lawsuit, rather than the usual scenario in which plaintiffs must affirmatively "opt-out" of the lawsuit. *Krueger,* 1993 WL at *3 n. 2. Accordingly, the *Krueger* case, cited by the defendants, is appropriately considered by this court in determining the sufficiency of the plaintiffs' proposed notification because the *Krueger* case concerned an ADEA claim which, as in the instant case, required that the potential plaintiffs "opt-in" rather than "opt-out" of the lawsuit. Considering those factors deemed necessary by the *Krueger* court for proper notification, the court finds that the plaintiffs should revise the plaintiffs' notification letter to include the following additional factors and language:

(1) any fees or advances that a plaintiff would be obligated to pay at any stage of the litigation;

(2) that the court has expressed no opinion as to the merits of the plaintiffs' FLSA claims.

(3) The first paragraph of the plaintiffs' notification letter shall be amended to read as follows: "We have been authorized by the United States District Court for the Northern District of Iowa to notify you, as a current or former employee of Liberty Square, L.L.C. (Liberty Square), Nora Springs location, and American Healthcare Management Services, L.L.C. (American Healthcare), that we have brought an action seeking overtime wages from Liberty Square and you may join it. The court has expressed no opinion on the merits of the case."

Plaintiffs' Motion to Compel Discovery

The plaintiffs served the following Interrogatory to the defendants on May 25, 2005:

INTERROGATORY NO. 1. State the name, birthdate, position, dates of employment, telephone number, and last known address of each and every hourly employee who has worked for Liberty Square/American Healthcare Management Services, L.L.C. at the Nora Springs locations since January 1, 2002.

On June 9, 2005, the defendants notified the plaintiffs by letter that they would not respond to the Interrogatory request until after a *Fed.R.Civ.P.* 26(f) conference had been held. The parties held a *Fed.R.Civ.P.* 26(f) conference and entered into a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.R.D. ----, 2005 WL 2065136 (N.D.Iowa), 10 Wage & Hour Cas.2d (BNA) 1488

**(Cite as: 2005 WL 2065136 (N.D.Iowa))**

scheduling order and discovery plan on June 13, 2005. The plaintiffs served a second Interrogatory to the defendants on July 5, 2005, asking for the same kind of information sought in Interrogatory No. 1, but pertaining to non-hourly, salaried employees.

The plaintiffs request that "[b]ecause the statute of limitations is running for each potential claimant, under the [FLSA], [the plaintiffs move] that the [c]ourt order the [d]efendants provide the information requested [in the plaintiffs' first] Interrogatory ... within 10 days of this motion." [FN9]

*7 The defendants resist, arguing that "the date [that] the [c]ourt approved the proposed scheduling order, June 13, 2005, should be the date on which the 30-day discovery clock started ticking, making [the defendants'] response not due until at least July 13, 2005." The defendants further raise two substantive objections to the plaintiffs' first Interrogatory. [FN10] First, the defendants argue that the requested information concerning the employees' birthdates is "wholly irrelevant" as the plaintiffs have "not asserted an age discrimination claim." Second, the defendants argue that the plaintiffs' first Interrogatory "arguably requests information for employees AHMS," which is improper because "AHMS was not [the plaintiffs'] employer and is not the employer of any Liberty Square employee who works at Liberty Square's Nora Springs location."

[6][7] The plaintiffs' motion to compel that information requested in the plaintiffs' first Interrogatory is granted. First, the defendants' objection to identifying employees' birthdates is without merit. Relevance, per se, is not the applicable test for discovery. Pursuant to *Fed.R.Civ.P.* 26(b)(1), parties may obtain information that may not be admissible at trial so long as that information appears reasonably calculated to lead to the discovery of admissible evidence. Further, the defendants have neither indicated nor established that any of the concerns set forth in *Fed.R.Civ.P.* 26(b)(2) and which would support the court placing limitations on the

requested discovery, are here present. In complying with the court's order compelling this discovery, however, the defendants should identify by position those salaried managerial employees for whom the defendants claim representation of in this matter, so as to provide notice to the plaintiffs of those employees for whom contact from plaintiffs' counsel would implicate Rule 32:4.2 of Iowa's Rules of Professional Conduct. In so doing, the defendants are cautioned against any wholesale assertions that somehow every salaried employee is a managerial employee for whom the defendants are providing representation in this matter. Finally, the court finds that the record is not developed such that this court can determine, based on nothing more than the defendants' assertions, that AHMS is not a proper party to this lawsuit and that information concerning AHMS is therefore not discoverable. [FN11]

Upon the foregoing,

IT IS ORDERED that the plaintiffs' motion for leave to notify potential plaintiffs of action (docket number 16) is granted as set forth in the body of this Order. The plaintiffs' motion for leave to file supplemental motion to notify potential plaintiffs (docket number 27) is likewise granted. The plaintiffs' motion to compel discovery in regard to responses to the plaintiffs' first and second Interrogatories (within docket number 16) is granted. The defendants, in complying with this Order compelling discovery, shall timely identify for the plaintiffs, by position, those salaried employees for whom the defendants claim representation of in this matter.

> FN1. The plaintiffs also filed a motion for leave to file a supplemental motion to notify potential plaintiffs on July 1, 2005 (docket number 27). The defendants assert that the plaintiffs filed this "supplemental motion," rather than filing a reply to the defendants' resistance, in an attempt to cure the fact that the plaintiffs failed to file a brief in support of the plaintiffs' initial motion to notify potential plaintiffs (docket number 16), as required by Local Rule

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.R.D. ----, 2005 WL 2065136 (N.D.Iowa), 10 Wage & Hour Cas.2d (BNA) 1488

**(Cite as: 2005 WL 2065136 (N.D.Iowa))**

7.1(d). The court grants the plaintiffs' motion for leave to file (docket number 27).

FN2. Although the plaintiffs do not specifically bring a motion to compel discovery, the court finds both that the plaintiffs have substantively brought such a motion within the plaintiffs' motion to notify potential plaintiffs (docket number 16), and that such motion has been properly resisted by the defendants.

FN3. The plaintiffs initially submitted an unsigned, unsworn statement by Tivie Dietrich, to which the defendants objected. The plaintiffs explained that Ms. Dietrich was on bed rest due to complications associated with her pregnancy, and that as soon as she was able, she would provide a signed and sworn affidavit. The plaintiffs subsequently filed Ms. Dietrich's signed and sworn affidavit on July 19, 2005 (docket number 30).

FN4. The defendants cite *Thiessen v. Gen. Elec. Capital Corp.,* 267 F.3d 1095, 1102 (10th Cir.2001) for the proposition that the appropriate conditional certification standard requires the plaintiff to set forth "substantial allegations."

FN5. The defendants argue that there is a wide range of job duties and job titles held by employees of the defendants and that the plaintiffs have set forth no evidence that the potential plaintiffs are similarly situated to the named plaintiffs.

FN6. The defendants do not object to the plaintiffs' proposed consent form. Accordingly, the court considers only the defendants' arguments in regard to the plaintiffs' proposed notification letter.

FN7. As discussed more thoroughly in the court's analysis of this issue, *Fed.R.Civ.P.* 23 is not directly applicable to this case

because in an FLSA action, the parties are required to "opt-in" rather than affirmatively opting-out of the lawsuit.

FN8. In support of the contention that such information is required to be in the notification letter, the defendants cite to *Krueger v. New York Telephone Co.,* 1993 WL 276058 (S.D.N.Y. July 21, 1993).

FN9. The plaintiffs' motion was filed June 10, 2005.

FN10. The defendants concede that a response to the plaintiffs' second Interrogatory would be due on August 5, 2005, but object to the substance of the second Interrogatory on the same grounds as those concerning the first Interrogatory. The court's ruling concerning the defendants' objections to the substance of the plaintiffs' first Interrogatory is therefore equally applicable to the defendants' objections to the plaintiffs' second Interrogatory.

FN11. As of the date of this Order, the court, Hon. Edward J. McManus, Senior District Court Judge, United States District Court for the Northern District of Iowa, has not ruled on the defendants' motion to dismiss AMHS from this lawsuit.

--- F.R.D. ----, 2005 WL 2065136 (N.D.Iowa), 10 Wage & Hour Cas.2d (BNA) 1488

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.