**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DEBBIE L. TREZVANT, TIMOTHY CAHILL, DEBORAH CHERYL ARCH, and MARY-CATHERINE PICHE, each of them individually and on behalf of all others similarly situated and similarly situated current and former employees of Defendant<br><br>                    Plaintiffs,<br><br>        v.<br><br>FIDELITY EMPLOYER SERVICES CORPORATION, FIDELITY EMPLOYER SERVICES COMPANY, LLC, and FMR CORP.,<br><br>                    Defendants. | Case No.  05-10673 (WGY) |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION
FOR CONDITIONAL COLLECTIVE CERTIFICATION AND FOR COURT
FACILITATION OF NOTICE PURSUANT TO 29 U.S.C. § 216(b)**

**Additional Affidavits, and Appendix of Exhibits and Non-Published
Opinions Filed Concurrently**

Plaintiffs, Debbie L. Trezvant, Timothy Cahill, Deborah Cheryl Arch, and Mary-

Catherine Piche (collectively, "Plaintiffs") respectfully submit this memorandum of law

in reply to Defendants' Opposition to Plaintiffs' Motion for Conditional Collective

Certification and for Court Facilitation of Notice Pursuant to 29 U.S.C. § 216(b)

(hereafter, "Certification Motion").

**I.        INTRODUCTION**

Plaintiffs have presented sufficient allegations and evidence to support

conditional certification and court-facilitated notice to the representative class at this

stage of the litigation.  Moreover, notice at this stage is imperative to protect putative

plaintiffs from the statute of limitations, conserve judicial resources, and advance the

"broad, remedial purpose of the FLSA."  Roebuck v. Hudson Valley Farms, Inc., 239

F.Supp.2d 234, 241 (N.D. N.Y. 2002); Certification Motion at 7-9.

Defendants' main argument against notice is that Plaintiffs have failed to

demonstrate that the putative collective [or class] members are "similarly situated."  This

argument fails; Plaintiffs have shown that the putative collective members (also referred

to as "Covered Employees") are "similarly situated" to the named Plaintiffs, pursuant to

the analysis applied by courts in the First Circuit (and other circuits) at this stage of the

litigation.

## II.    NOTICE AND CONDITIONAL CERTIFICATION IS SUPPORTED BY THE AUTHORITY AND FACTS.

### A.    Courts Decide to Conditionally Certify an FLSA Class and Provide Notice to Collective Members Using a Lenient Standard.

In determining whether to conditionally certify an FLSA class and allow notice to

collective members, courts must consider whether potential class members are "similarly

situated."  District Courts in the First Circuit, and a majority of the other Circuits, follow

a "two-tiered" approach, which applies a "lenient" standard to allow early conditional

certification and notice prior to completion of substantial discovery.  Once discovery is

substantially completed, the parties and court are in a better position to analyze the merits

of certification, and defendants can then move to decertify the class.

In Reeves v. Alliant Techsystems, Inc., 77 F.Supp.2d 242, 246 (D.R.I. 1999), the

court confirmed the two-tier method, a "notice stage" and then a "post discovery stage."

Id. at 246- 247. [1]  The court's determination at the notice phase is "usually based only on the pleadings and any affidavits that have been submitted." Id. at 246.  The standard is "fairly lenient" and "conditional certification of a representative class" is typically granted (i.e. potential class members are typically found to be similarly situated.) Id. "[P]laintiffs can meet this burden by simply alleging that the putative class members were together the victims of a single decision, policy, or plan that violated the law." Id. at 247 (internal citation omitted).  After discovery is conducted, the defendants can then move to decertify the class.  It is only at this second stage that a "factual determination on the similarly situation question" is made. Id. (internal citation omitted).

The District Court of Massachusetts applied the same "two-tiered" approach to grant conditional certification in the FLSA misclassification case, Kane v. Gage Merchandising Services, Inc., 138 F.Supp.2d 212 (D. Mass. 2001).  The court emphasized that prior to the completion of discovery (at the "notice stage") there is "minimal evidence," and a court will typically conditionally certify the class based solely on the pleadings and any submitted affidavits. Id. at 214.  Under this "fairly lenient standard…plaintiffs need only make substantial allegations that the putative class members were subject to a single decision, policy, or plan that violated the law." Id.

Based on three affidavits and a list submitted by plaintiff of 51 employees whom he contended were not adequately paid for overtime hours, the Kane court determined that "the Defendants had a policy of treating at least some of a discrete class of employees … as exempt from the FLSA overtime requirements." Id at 215.  This

---

[1] The Reeves court had granted plaintiffs' motion for conditional certification and notice.  After the completion of discovery, the defendants moved for decertification which the district court allowed as to some of the class. Id. at 247-249.

showing was "sufficient to determine that a 'similarly situated' group of potential plaintiffs exists given the adopted lenient standard for court-facilitated notice."  Id.

Here, discovery has yet to be completed and only minimal evidence is available to the Court or the parties.  Defendants offer no legitimate reason why the lenient standard is inapplicable.  Many of the cases cited in Defendants' opposition are inapposite at this stage of the litigation, because they involve cases that are in the "second stage," after discovery has already been substantially completed.  For instance, Morisky v. Public Serv. Elec. & Gas Co., 111 F.Supp.2d 493, 498 (D.N.J. 2000), noted that because discovery had already been completed and there was thus a wealth of evidence, the case was "clearly beyond the first tier of the above analysis," and it was therefore "appropriate… to apply a stricter standard in its analysis."  England v. New Century Financial Corp., 370 F.Supp.2d 504, 507, 509 (M.D. La. 2005), applied the more stringent second-stage analysis because plaintiffs had never brought a formal motion seeking conditional certification, and substantial discovery, including a number of video and written depositions, had already been conducted.[2]  Holt v. Rite-Aid Corp., 333 F.Supp.2d 1265, 1274 (M.D. Ala. 2004), applied the more stringent second-stage analysis because "extensive discovery" had already been conducted and the court was presented with "fairly extensive evidence" at the time of the motion for certification.  Basco v. Wal-

---

[2] This is one of several Fifth Circuit decisions relied on by Defendants.  It is noteworthy that the Fifth Circuit has "one of the most conservative standards for notice certification."  Scott Edward Cole, To Certify or Not to Certify: A Circuit-By-Circuit Primer on the Varying Standards for Class Certification in Actions Under the Federal Labor Standards Act, BOSTON UNIV. PUBLIC INTEREST LAW JOURNAL, Spring 2004.  On the other hand, "[c]ourts within the First Circuit utilize one of the more liberal standards for allowing initial class certification and notice to potential class members."  Cole, p. 4.

Mart Stores, Inc., 2004 WL 1497709 at *7 (E.D. La.),[3] proceeded directly to the more

stringent second-stage analysis because substantial discovery, including video and written

depositions, had already been conducted.[4]  Pfohl v. Farmers Insurance Group, 2004 WL

554834 *3 (C.D. Cal.), proceeded to second-stage analysis because extensive discovery

had already been conducted.[5]  Davis v. Charoen Pokphand (USA), Inc., 303 F.Supp.2d

1272,1276 (M.D. Ala. 2004), applied the second-stage analysis because discovery had

been completed and "a more searching standard of review [was therefore] appropriate."

**B.     Plaintiffs Have Met the Lenient Standard for Notice and Conditional
       Certification.**

> **1.   The Named and Putative Plaintiffs Were Subject to a Single Decision,
>      Policy, or Plan.**

As explained, First Circuit courts will find that the lenient standard is met if

Plaintiffs allege that potential collective members were "subject to a single decision,

policy, or plan that violated the law."  Kane, 138 F. Supp.2d at 214; Reeves, 77

F.Supp.2d at 247.

Here, Plaintiffs have specifically identified Defendants' policy of misclassifying

"analysts" as exempt from overtime, and have described in detail the non-exempt duties

of "analysts."  First Amended Complaint (hereafter, "Complaint") at ¶16; Arch Affidavit

---

[3] This and all other non-published opinions and the law review article cited herein are filed concurrently as Plaintiffs' Appendix of Exhibits and Non-published Opinions.

[4] In addition, there were enormous dissimilarities between this case and Basco, where the proposed class covered approximately 100,000 employees in many different positions and the common thread between the class members was not related to job descriptions or duties, but only to "a corporate policy to keep employee wage costs low," the effects of which were "neither homogenous nor len[t] themselves to collective inquiry."  Id.

[5] Pfohl is also distinguishable from this case because Pfohl was a joint employer case and involved unusually complex issues.  Pfohl v. Farmers Insurance Group, 2004 WL 554834 * 4.  Plaintiffs in that case submitted affidavits that were found to be vague and conclusory, and the potential plaintiffs performed widely varying job duties.  Id. at 7, 9

at ¶¶3-4; Cahill Affidavit at ¶¶3-8; Piche Affidavit at ¶¶3-4; Trezvant Affidavit at ¶¶3-7.
Plaintiffs have identified over 200 misclassified, non-exempt "analysts."  Arch Affidavit
¶5; Cahill Affidavit ¶10.

Plaintiffs allege that "[a]t all relevant times, each Defendant has had, and
continues to operate under a decision, policy and plan, and under common policies,
programs, practices, procedures, protocols, routines, and rules of willfully failing and
refusing to pay the Covered Employees at time and a half rates for work in excess of
forty (40) hours per workweek, and willfully failing to keep records required by the
FLSA, even though the Covered Employees have been and are entitled to overtime pay."
Complaint at ¶16.  Reeves, 77 F.Supp.2d. at 247-248, granted conditional certification
when, in the early stages of the case, plaintiffs alleged that "they and other potential class
members were subject to a series of policies and practices promulgated and enforced by
[defendant's] management, the effect of which was to treat [plaintiffs] as non-exempt
employees under the FLSA."

Defendants claim that Plaintiffs' potential collective action should not be certified
based upon a "simple, unsubstantiated allegation that the defendant-employer
misclassified employees under the FLSA."  Opposition at 9.  As will be discussed below,
Plaintiffs' have submitted significantly more evidence than Defendants suggest.
Moreover, Defendants' case law is weak.  Defendants' cite Hall v. Burk, 2002 WL
413901, *3 (N.D.Tex. 2002), for the proposition that "conditional certification
inappropriate where plaintiffs allege that 'employees are similarly situated simply
because they claim violations of the law by the same employer.'"  Hall does not so hold,

nor is the supposed internal citation even found in the case.  The opinion focuses on the

fact that the existence of potential plaintiffs was questionable because defendant had

reimbursed or attempted to reimburse all current and former employees she had illegally

underpaid.  Id. at 3.  Furthermore, there was only one plaintiff in Hall, and plaintiff

offered no evidence of widespread FLSA violations.  Id.  The proposed class in Dean v.

Priceline.com, Inc., 2001 U.S. Dist. LEXIS 24982 (D.Conn. 2001), included all

employees misclassified as exempt and not paid overtime, without any reference to their

job titles or duties.  Here, Plaintiffs have specifically discussed the duties of the various

analysts and have limited the class to those employees.  Defendants' reference to

Freeman v. Wal-Mart Stores, Inc., 256 F.Supp.2d 941 (W.D. Ark. 2003), is also

inapposite.  In Freeman, the proposed class included "all salaried employees below

officer level… no matter what the nature of their duties," which defendant indicated

would include over 7,000 individuals.  Id. at 945.  By contrast, Plaintiffs here propose a

much more limited class, in which members would be united by a common scheme of

misclassification as well as similar job duties, tasks and titles.  The class is expected to

number only a few hundred.[6]

> **2.  The Affidavits and Evidence Submitted By Plaintiffs Satisfy Their Burden.**

Plaintiffs have submitted sufficient evidence that Covered Employees were

subject to a single decision, policy, or plan that violated the law.

In Roebuck v. Hudson Valley Farms, Inc., 239 F.Supp.2d 234, 239 (N.D.N.Y.

2002),[7] the court allowed early notice based on three affidavits.  The affidavits were

---

[6] See also the discussion of D'Anna v. M/A-COM, Inc., 903 F.Supp. 889 (D. Md. 1995) in the next section.

[7] Like courts in the First Circuit, the Second Circuit applies a lenient standard when determining whether to

similar to Plaintiffs' affidavits here – they alleged that plaintiffs "frequently worked over forty hours per week," were not paid overtime, and observed that other employees performed the "same or similar" work and were not paid overtime.  Id. at 238-239.  The Roebuck defendants submitted affidavits in opposition, claiming that plaintiff could not have observed other employees working more than 40 hours per week and could not have known their rates of pay.  Id. at 239.  Nevertheless, the court found that the plaintiffs' affidavits were "sufficient to constitute a preliminary showing that plaintiffs and the potential plaintiffs together were victims of a common policy or plan that violated the law" and therefore similarly situated.  Id.

Similarly, Kane conditionally certified an FLSA class based on three affidavits and a list submitted by plaintiff of 51 employees whom he contended were not adequately paid for overtime hours.  Kane, 138 F.Supp.2d at 215.

Defendants imply that notice would finance a "fishing expedition," citing D'Anna v. M/A-COM, Inc., 903 F.Supp. 889 (D. Md. 1995), an ADEA case in which plaintiff made only "broad and vague" allegations of class-wide discrimination.  Id. at 894. Plaintiffs here submit detailed and specific affidavits.[8]

Defendants cite Horne v. United Services Automobile Association, 279 F.Supp.2d 1231 (M.D. Ala. 2003), and Pfaahler v. Consultants for Architects, Inc., 2000 WL 198888 (N.D. Ill. 2000), for the proposition that a statement that a plaintiff "believes"

---

grant conditional certification.  See Scholtisek v. Eldre Corp., 229 F.R.D. 381, 388 (W.D.N.Y. 2005).

[8] As set forth in Plaintiffs' Certification Motion, the court does not decide the merits of the claims or defenses, including exemption from overtime, at this time.  Certification Motion at 3.  See Roebuck, 239 F. Supp.2d at 239 (holding that the court could not definitively rule on the possible exemption of certain employees "[a]t this stage of the action and in the absence of a reasonable opportunity for plaintiffs to conduct discovery").  Therefore, Defendants' arguments and affidavits alluding that Plaintiffs and the Covered Employees were properly classified as "exempt" are improper and should be disregarded.

that other similarly situated plaintiffs exist is insufficient.  Opposition at 12.  In this case,

Plaintiffs do not merely "believe" that putative plaintiffs exist; their affidavits are based

on personal knowledge.  Unlike the plaintiffs in <u>Horne</u> and <u>Pfaahler</u>, here multiple

plaintiffs have provided affidavits confirming that multiple employees were subject to the

same policy of unpaid overtime.

  Defendants claim that Plaintiffs must show that other similarly situated

individuals desire to opt into the case; however, courts disagree with this position.  There

is no "independent requirement of proof of desire to join in the action" at the notice stage.

<u>Taillon v. Kohler Rental Power, Inc. ex rel. Kohler Col</u>, 2003 WL 2006593 (N.D. Ill.).

Accord, <u>Kane</u>, 138 F.Supp.2d at 215 (conditionally certifying a class without any

evidence that individuals desired to opt-in.)

  In <u>Reab v. Electronic Arts, Inc.</u>, 214 F.R.D. 623 (D. Colo. 2002), the court

explicitly rejected a requirement that the plaintiffs show evidence that other similarly

situated individuals desire to opt-in, recognizing that

> requiring plaintiffs in § 216(b) actions to have some unknown number of persons
> decide whether to opt in places plaintiffs in the position of communicating with
> potential litigants without court supervision or guidance, leaving plaintiffs subject
> to allegations of improper solicitation and 'tainting' of the putative class.  <u>Id</u>. at
> 629.

  Also, requiring the plaintiff to show that potential class members desire to opt in

"appears to conflict with United States Supreme Court's position that the [FLSA] should

be liberally 'applied to the furtherest reaches consistent with congressional direction.'"

<u>Id</u>. (quoting <u>Alamo Foundation v. Secretary of Labor</u>, 471 U.S. 290, 296 (1985)).

In a footnote, Defendants suggest that putative class members are aware of this action "[i]n light of the media attention that this lawsuit has attracted." Opposition at 15, n.18. Defendants are referring to one small article published in an unknown section of the Boston Business Journal, which mentioned that a lawsuit was filed against Fidelity Employer Services Co. Edward Mason, <u>Fidelity Unit Slapped with $5M Comp. Suit</u>, BOSTON BUSINESS JOURNAL, June 10, 2005 (Exhibit 1). This article certainly did not provide adequate notice to potential collective members.

In fact, the article, if seen, would have misled potential class members. The article inaccurately described the law, stating that "[t]he old guidelines said a worker was eligible for overtime if he or she earned $225 a week or less and was not an executive, professional administrator or outside salesperson…The Bush administration revision bumped the wage threshold to $455 a week[.]" <u>Id</u>. Thus, analysts who make more than $225 (or $455) may incorrectly conclude that they are ineligible for overtime and ineligible to join this suit.

The article was published in a Boston journal of unknown distribution, whereas the putative collective members are current and former employees largely from Merrimack, New Hampshire, and also from Marlborough, Massachusetts. Furthermore, the article does not provide any information about how potential claimants might join the lawsuit, and incorrectly indicates the case involves only business and technical analysts.

Defendant in <u>Allen v. Marshall Field & Co.</u>, 93 F.R.D. 438, 443 (N.D.Ill. 1982), similarly argued that potential claimants already received notice of the action through a series of newspaper articles and television shows in the area. Although the media

attention in that case was more extensive and more accessible than the Boston Business

Journal article here, the court rejected defendants' argument, stating:

> Marshall Field has not pointed to any article which informs other claimants that
> they may be eligible to join in this lawsuit. What the defendant argues for is at
> best a hit-or-miss form of notice. No doubt some potential claimants have learned
> or will learn of this action and their right to opt-in to it through the articles and
> television shows to which the defendant refers, or through the ancient method of
> grapevine communication. That some potential claimants have serendipitously
> learned of their rights under the ADEA and this action is no reason to depend
> upon informal means of communication to get this information to other members
> of the class. Id.

### 3. Although Immaterial At The Notice Stage, Plaintiffs Have Shown Sufficient Factual Similarities.

While the First Circuit courts reserve consideration of the factual similarities of

potential class members until the second stage (Reeves, 77 F.Supp.2d at 246-247; Kane,

138 F.Supp.2d at 214-215), it remains true that Plaintiffs have shown that they are

similarly situated by virtue of Defendants' common policy of misclassification and

failure to pay overtime and that Plaintiffs' circumstances are also factually similar.

#### a) Job Duties

As noted, Defendants' own affidavits show satisfaction of the similarly situated

test. Plaintiffs' affidavits show that Plaintiffs performed "essentially the same" primary

duties and tasks as the other putative collective members, their work "rarely involved

using discretion or independent judgment," they often worked over forty hours per week,

and they were not paid overtime. Arch Affidavit at ¶¶3, 6, 7; Cahill Affidavit at ¶¶3, 8,

11, 12; Piche Affidavit at ¶¶3, 5, 6; Trezvant Affidavit at ¶¶3, 10, 11; Reply Affidavits of

Arch, Cahill, and Trezvant.

Defendants mischaracterize the law by claiming that inquiry into the nature of

Plaintiffs' job duties is so fact-intensive as to make the class inappropriate for a collective

action.[9] Opposition at 9, nn.7, 14. FLSA cases involving overtime misclassification have repeatedly been certified in this and other circuits, even where plaintiffs' job duties were not identical. "[S]everal courts have held that it is appropriate to bring an FLSA exemption claim as a class action with regard to employees who perform similar, but not identical duties, notwithstanding the highly fact-specific nature of the exemption inquiry." Scott v. Aetna Services, Inc., 210 FRD 261, 265 (D. Conn. 2002). See also Kane, 138 F.Supp.2d 212 (conditionally certifying class of "Crew Coordinators," some of whom were treated as exempt and some as non-exempt); Boldozier v. American Family Mutual Ins. Co., 375 F.Supp.2d 1089 (D. Colo. 2005) (conditionally certifying nationwide class of claims adjusters misclassified as exempt); Moss v. Crawford & Co., 201 FRD 398, 410 (W.D. Pa 2000) (class members had different duties, locations, and pay rates, but were found to be similarly situated only because of defendants' common policy of failure to pay overtime or misclassification.); Bradford v. Bed, Bath & Beyond, Inc., 184 F.Supp.2d 1342 (N.D. Ga. 2002) (in second stage analysis, denying motion to decertify class of department managers misclassified as exempt).

    **b)  Job Titles**

    Though it may be that the named and putative Plaintiffs did not have identical job titles, this is irrelevant. Realite v. Ark Restaurants Corp., 7 F.Supp.2d 303, 304-305

---

[9] For this proposition, Defendants cite several cases which can be easily distinguished. Most importantly, both Holt v. Rite-Aid Corp., 333 F.Supp.2d 1265 (M.D. Ala. 2004), and Morisky v. Public Serv. Elec. & Gas Co., 111 F.Supp.2d 493 (D.N.J. 2000), were decided at the stricter, second stage of the two-tier analysis. Moreover, in Morisky, "the proposed class of plaintiffs included a range of administrative, supervisory, and technical employees" whose similarity "lay primarily in their salary grades." Scott v. Aetna Services, Inc., 210 F.R.D. 261, 266 (D. Conn. 2002) (internal citation omitted). Here, Plaintiffs have similar job titles, classifications, and duties. The Holt court did not even address the differences between the two different job titles of employees for which plaintiffs sought class certification. Mike v. Safeco Ins. Co. of America, 274 F.Supp.2d 216 (D. Conn. 2003) involved only one named plaintiff, who provided no evidence that others were similarly situated. In this case, Plaintiffs have provided evidence indicating the existence of over 200 potential class members.

(S.D.N.Y. 1998) (finding potential class members similarly situated and approving notice to "hourly-paid, non-managerial employees" with several different job titles); <u>Boldozier</u>, 375 F.Supp.2d at 1093 (finding all claims adjusters "regardless of …what their specific job title may be, have the same job function" and were therefore similarly situated).

Defendants argue that the positions "may" have changed since Plaintiffs' employment ended and that certain job titles encompass "a variety of distinct jobs." Opposition at 5-6. In <u>Allen v. Marshall Field & Co.,</u> 93 F.R.D. 438, 443 (N.D.Ill. 1982), a case alleging age discrimination under the ADEA, the court allowed certification and notice despite defendants' contention that plaintiffs' "occupied varying positions in its corporate hierarchy, worked in different stores in various geographic locations, and allege discriminatory actions occurring on 'vastly varying dates[.]'" <u>Allen</u>, 93 F.R.D. at 443. The court declined to address these distinctions, noting that "[d]ifferences in the particular adverse consequences…will be relevant primarily to the computation of damages." <u>Id</u>.

### c) Employment Locations

This is one of many examples of Defendants arguing differences among class members that are immaterial, that have no bearing on whether the members are similarly situated with respect to whether they are or are not exempt from overtime or any substantive issue in the case. Such fallacious arguments are commonly made by defendants in class and collective actions -- relying on differences that have no bearing on the case. If employees were denied overtime when they should have been paid it, it does not matter at what location they were denied it. The fact that potential class members worked at different employment locations does not defeat a claim of being

"similarly situated." See e.g. Hipp v. Liberty National Life Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001); Realite, 7 F.Supp.2d 303, 304; Moss, 201 F.R.D. at 410; Boldozier, 375 F.Supp.2d 1089; Allen, 93 F.R.D. 438.

### d)   Compensation

This is another immaterial difference.  Defendants inaccurately cite Sheffield v. Orius Corp., 211 F.R.D. 411 (D. Ore. 2002), for the proposition that differences in compensation grades means that conditional certification is inappropriate.  Sheffield did not discuss compensation grades; it stated that differences in payment structures (piece-work, hourly, and salaried) were relevant to the conditional certification.  Id. at 413, 417. See also Moss, 201 F.R.D. at 410.  This case concerns only salaried employees.

### e)   Class Membership

Defendants argue that Plaintiffs Cahill and Arch "are not members of the proposed class" because Plaintiffs have not established a willful violation of the FLSA. Although Plaintiffs contend that the evidence will support a finding of willfulness, the Court should not determine willfulness at this stage.  Roebuck, 239 F.Supp.2d at 240.  In any event, Defendants' assertion that a named plaintiff in an FLSA claim must be a member of the class (Opposition at 19-20) is unsupported by the relevant case law. Defendants cite Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208 (1974) and Prado-Steiman v. Bush, 221 F.3d 1266 (11th Cir. 2000).  Both cases were class actions under Rule 23, not collective actions under Section 216(b).  Schlesinger pre-dates Hoffmann-La Roche and concerned whether a group and its members had standing to represent all United States citizens.  In Prado-Steinman, the issues were the standing and

14

typicality of the representative parties.[10]  Prado-Steinman at 1279.  Kane, an FLSA

collective action in the First Circuit, is far more similar to this case than either

Schlesinger or Prado-Steinman.  In Kane, the court was uncertain whether the named

plaintiff was treated as exempt (as the rest of the class was), but nonetheless conditionally

certified the class.  Kane, 138 F.Supp.2d at 213, 215 n.1.

### 4. Defendant's Affidavits Are Strong Evidence that the Putative Collective Members and Plaintiffs Are Factually Similar.

Many of the duties and tasks described in Defendants' affidavits are very similar

or the same as those described in Plaintiffs' affidavits.  Nevertheless, it is not material to

this motion whether Defendants or Plaintiffs are correct in their descriptions of the

analysts duties and tasks; this is only pertinent for the later determination of whether the

employee's duties and tasks make them exempt from overtime.

Even if Defendants' descriptions of the analysts' tasks and duties are correct, the

descriptions show that the putative collective members and Plaintiffs are factually

similar.

Defendants' affidavit of Kyle Kane, the first affidavit submitted with Defendants'

opposition, describes the duties and tasks of three of the four Plaintiffs.  The other

affidavits submitted by Defendants describe, in a great many places, the duties and tasks

of the various job positions involved in this case, considered not with respect to what

duties and tasks particular employees in a job position have, but with respect to what

duties and tasks the people in a job position have in common with each other.   That is,

these affidavits describe the duties and tasks of the various job positions in general, each

---

[10] Moreover, the district court of Massachusetts has rejected the Prado-Steiman view that a rule 23 class could not be certified if the named plaintiff was not a member of the class.  In re Relafin Antitrust

position considered as a whole, as a group. It is very telling that the duties and tasks of plaintiffs as described by Mr. Kane are very similar to the duties and tasks of the various job positions as described in the other affidavits. That is, the other affidavits show that the duties and tasks of the job positions in question here are remarkably similar to the duties and tasks of Plaintiffs as described by Mr. Kane. There are some differences, but the similarities are a great many similarities, and many identical duties and tasks.

Defendants' affidavits provide additional strong evidence that the potential collective members are factually similar. The affidavits state that with respect to each of the various jobs, there were common duties and tasks performed by the holders of the jobs.

Moreover, the affidavits show that the respective jobs had many duties and tasks in common with each other. That is, employees in one job were similarly situated to employees in other jobs.

Mr. Kane states that the duties and tasks of Plaintiff Debbie Trezvant included:

(a) "gather[ing] information regarding business requirements" of Defendants' clients (¶12);

(b) working with the systems development group "to ensure that the business requirements were accurately translated into technical requirements" (¶12);

(c) "identifying areas where the requirements were incomplete" (¶13);

(d) "researching and evaluating solutions to complete these missing requirements" (¶13);

(e) determining if problems could be resolved by existing processes (¶13);

---

Litigation, 221 F.R.D. 260, 268-270 (D. Mass. 2004).

(f)  working with the technical team "to create an appropriate solution" (¶13);

(g)  "proposing solutions to functionality gaps" (¶13);

(h)  "overcoming project issues through the application of technical skills: (¶13);

(i)  working with the test team to develop and deploy test case scenarios (¶13);

(j)  "analyz[ing] current processes" (¶13);

(k)  "develop[ing] alternatives" to current processes

(l)  "develop[ing] strong  knowledge of the HOBS system" (¶13).

Mr. Kane states that the duties and tasks of plaintiff Cheryl Arch included:

(m)  "documenting . . . client business requirements into technical design

specifications" (¶30);

(n)  "analyzing . . . client business requirements into technical design

specifications" (¶30);

(o)  "converting client business requirements into technical design specifications"

(¶ 30);

(p)  "evaluating  . . .system configuration issues (¶30);

(q)  "resolving system configuration issues (¶30);

(r)  "integration testing" (¶30);

(s)  "strong research and writing skills (¶30);

(t)  "strong client communication and negotiation skills" (¶30);

(u)  "translate business plans" to others (¶30).

These duties and tasks are remarkably similar to Defendants' affiant Steve

Gilchrist's description of the duties and tasks of Technical Data Analysts, also referred to

as Configuration Analysts (¶6).  Gilchrist's description included the following duties:

17

"analyz[ing] business requirements" (¶7); "design[ing], develop[ing] and test[ing] solutions to [business] requirements" (¶7); "design[ing] solutions to configuration problems" (¶7); "testing solutions." (¶7).

    The duties and tasks are also remarkably similar to Defendants' affiant Paul Lavertu's description of the duties and tasks of Business Analysts (¶5). Lavertu's description included the following duties: "translat[ing] business requirements into functional and technical design documents" (¶6); "determine[ing] the requirements of their clients' benefits and human resources functions" (¶6); "design[ing] and execut[ing] testing" (¶6); "resolv[ing] defects" (¶6); "gather[ing] functionality requirements (¶7); "resolv[ing] any functionality gaps" (¶7); "document[ing] the client requirements" (¶7); "designing and adapting the product to the client's needs" (¶7); "testing and defect resolution" (¶7).

    Similarly, Defendants' affiant Keith Maden describes the duties and tasks of "Configuration Analysts" (¶5) Maden states that Configuration Analysts: "must have a thorough understanding of HOBS functionality and the options available to clients through HOBS" (¶7); "When the available options do not meet the requirements of a client, . . . [they] work with other programming specialists to enhance the functionality of HOBS: (¶7 - compare with paragraph s (e) and (f) above); "document the new specifications" (¶7); "identify problems, map out solutions, test these solutions" (¶7); "make changes, modifications, and fixes to the existing databases (¶7); "[collect] the existing requirements documents from the Project Analysts supporting existing clients" (¶13); "analyzed the information" (¶13); "reworked the requirement so that it could be used to configure the new HOBS platform" (¶13); "[identify] potential functional gaps

between the existing requirement and the new HOBS system functionality" (¶13); "investigated the cause of the problem and developed a solution (¶13).

Defendants' affiant Elise McCaffrey describes duties and tasks of Project Analysts (¶6). McCarffrey states that Project Analysts: "define and document business requirements for existing clients" (¶6); "implement changes to clients' health and other insurance benefit offerings" (¶6); must have "excellent problem-solving and communication skills" (¶ 6); "solve data problems" (¶6); "must have a comprehensive understanding of FESCo's systems" (¶8).

On a different note, Defendants' Steve Gilchrist states that the Business and Project Analysts, "and other business-oriented employees" do not have the same skill set, training, or experience as "Technical Design Analysts" (TDAs), and therefore cannot transfer directly into a TDA position. Gilchrist Affidavit, ¶¶5, 9. He states that the TDAs have "highly technical" positions, as opposed to the "business-oriented" employees such as Business Analysts. Gilchrist Affidavit, ¶6. In other words, Gilchrist is stating that the Business and Project Analysts do <u>not</u> have technical positions, and thus are factually similar to each other.

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that this Court grant their motion for conditional collective certification and for the Court's facilitation of notice to the entire proposed class of Covered Employees, regardless of the locations they were or are employed. The notice should not go into a discussion of discovery -- there are a large number of procedural aspects of the case, but the notice is not the place to expound on

them.  If potential claimants have questions, they can contact class counsel, who will be identified in the notice.

Pirrone v. North Hotel Associates, 108 F.R.D. 78, 82 (E.D. Pa. 1985) stated, "[a]ny attempt by the court to prohibit plaintiffs and their counsel from effecting notice to other potential plaintiffs would raise significant problems with respect to those parties' rights under the first amendment to the Constitution."

The advisability of FLSA conditional certification and notice was established by the Supreme Court years ago in Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165 (1989).  It is quite telling that Defendants do not even mention this fundamental case, much less distinguish it.

Respectfully submitted,

DEBBIE L. TREZVANT, TIMOTHY CAHILL, DEBORAH CHERYL ARCH, and MARY-CATHERINE PICHE, each of them individually and on behalf of all others similarly situated and similarly situated current and former employees of Defendants,
By their attorneys,


_____/s/_____
Ira Spiro (CA State Bar No. 67641)
Rebecca J Sobie (CA State Bar No. 179562)
Spiro Moss Barness Harrison & Barge LLP
11377 W. Olympic Blvd., 5th Floor
Las Angeles, CA 90063-1683
(310) 235-2468

Thomas E. Kenney (BBO No. 516590)
Pierce & Mandell, P.C.
11 Beacon Street, Suite 800
Boston, MA 02108
(617) 720-2444

20

Charles Joseph (CJ-9442)
Joseph & Herzfeld LLP
757 Third Avenue, 25th Floor
New York, NY 10017


Dated:        Los Angeles, California
              October 18, 2005