**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DEBBIE L. TREZVANT, TIMOTHY CAHILL, DEBORAH CHERYL ARCH, and MARY-CATHERINE PICHE, each of them individually and on behalf of all others similarly situated and similarly situated current and former employees of Defendant<br><br>  Plaintiffs,<br><br>  v.<br><br>FIDELITY EMPLOYER SERVICES CORPORATION, FIDELITY EMPLOYER SERVICES COMPANY, LLC, and FMR CORP.,<br><br>  Defendant. | Case No.  05-10673 (WGY) |

**PLAINTIFFS' REPLY AFFIDAVITS IN SUPPORT OF REPLY BRIEF TO MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION AND FOR COURT FACILITATION OF NOTICE PURSUANT TO 29 U.S.C. § 216(b)**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DEBBIE L. TREZVANT, TIMOTHY CAHILL, DEBORAH CHERYL ARCH, and MARY-CATHERINE PICHE, each of them individually and on behalf of all others similarly situated and similarly situated current and former employees of Defendant<br><br>Plaintiffs,<br><br>v.<br><br>FIDELITY EMPLOYER SERVICES CORPORATION, FIDELITY EMPLOYER SERVICES COMPANY, LLC, and FMR CORP.,<br><br>Defendant. | Case No.  05-10673 (WGY)<br><br>**AFFIDAVIT OF REBECCA J SOBIE** |

**AFFIDAVIT**

I, Rebecca J Sobie, state under penalty of perjury, as follows:

1. I am an attorney at law in good standing with the State Bar of California, and licensed to practice law in all state and district courts of the State of California. I am admitted on a *pro hac vice* basis to this Court to appear and practice in the above-captioned case. I am an associate with Spiro Moss Barness Harrison & Barge LLP, co-counsel of record for Plaintiffs herein. This declaration is made of my own personal knowledge, and if called upon to testify to the contents herein, I could and would do so competently.

2. This declaration is submitted in support of Plaintiffs' Reply Brief in Support of Motion for Conditional Collective Certification and for Court Facilitation of Notice Pursuant to 29 U.S.C. § 216(b).

3. Attached to the Appendix of Non-Published Opinions and Exhibits as Exhibit

1 is a true and correct copy of an article from the Boston Business Journal dated June 10, 2005, entitled "Fidelity unit slapped with $5M comp. suit."

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 18, 2005.

_____/s/_____
Rebecca J Sobie

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DEBBIE L. TREZVANT, TIMOTHY CAHILL, DEBORAH CHERYL ARCH, and MARY-CATHERINE PICHE, each of them individually and on behalf of all others similarly situated and similarly situated current and former employees of Defendant<br><br>Plaintiffs,<br><br>v.<br><br>FIDELITY EMPLOYER SERVICES CORPORATION, FIDELITY EMPLOYER SERVICES COMPANY, LLC, and FMR CORP.,<br><br>Defendant. | Case No. 05-10673 (WGY)<br><br>**REPLY AFFIDAVIT OF<br>DEBORAH CHERYL ARCH** |

## AFFIDAVIT

I, Deborah Cheryl Arch, state under penalty of perjury, as follows:

1. This affidavit, as well as my earlier affidavit filed in August or September, 2005, is based on my personal knowledge, unless otherwise stated.

2. In my earlier affidavit, I stated as follows: "My primary duties and tasks as an employee of FESCO were to access information (on FESCO's server) for entry into FESCO's computerized system for management of customers' employee benefits, to enter that information in the computerized system, to observe whether what the items of information that should be shown on the various views/screens in the computerized system were shown there, and to report information to FESCO supervisors and other FESCO employees. The work rarely involved using discretion or independent judgment, as the description of it below shows. The primary duties and tasks of the other analysts employed by FESCO were essentially the same." I have personal knowledge of this in

part because I had much contact with other business analysts in the building where I worked. For one thing, I observed some of them working on the same types of tasks and duties I was working on. Also, they discussed the tasks and duties they were working on. Also, they discussed day-to-day problems they encountered in their work, and asked questions of other people, such as supervisors, about such problems. The problems they were talking about were problems of the same type I encountered, and the questions they asked were of the same type I asked concerning my work.

   3. Regarding analysts who worked in human resources/payroll, defined benefit plans, and defined contribution plans, I personally know facts that reasonably lead me to conclude that their primary duties and tasks were essentially the same as mine and the other analysts who worked in health and welfare. For instance, the human resources/payroll, defined benefit plan, and defined contribution plan divisions of FESCO made use of databases for the customers that were similar to the databases for the customers that were used in health and welfare, the databases I worked on. A customer and its employees were able to access the customer's databases maintained by FESCO, which showed information on the customer's health and welfare benefit plans, human resources/payroll, defined benefit plans, and defined contribution plans, and details particular to each employee regarding the health and welfare benefit plans, human resources/payroll, defined benefit plans, and defined contribution plans. Analysts had to maintain the accuracy of these databases, make changes to them, update them, and convert them from FESCO's old Benesoft computer system to its new Oracle-based computer system (sometimes known as HOBS).

   4. Different people supervised me during the time I was an analyst for FESCO, including direct supervisors and people who supervised them, but changes in

supervisors did not change my primary duties and tasks as described in paragraph 2 above. Also, my primary duties and tasks as described in paragraph 2 did not change depending on which customers I was working on.

5. The analysts I worked with were very dissatisfied with their working conditions, specifically the very long hours they were required to work. We were told by FESCO that we were not entitled to overtime pay, but FESCO told us we would get comp time (compensatory time off) to make up for our long hours, there was very little comp time. This dissatisfaction with the long hours leads me to conclude that many, many analysts will be interested in participating in this lawsuit and making claims in it. I have had very little contact with other analysts since leaving FESCO.

6. I have learned of the statements in FESCO's affidavit of Kyle Kane regarding my primary duties and tasks. There are many inaccuracies in Mr. Kane's statements about my primary duties and tasks. Because, as stated above and in my earlier affidavit, my primary duties and tasks were essentially the same as other analysts, the inaccuracies about the primary duties and tasks in Mr. Kane's affidavit would apply to the other analysts.

7. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 16, 2005

_____/s/_____
Deborah Cheryl Arch

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DEBBIE L. TREZVANT, TIMOTHY CAHILL, DEBORAH CHERYL ARCH, and MARY-CATHERINE PICHE, each of them individually and on behalf of all others similarly situated and similarly situated current and former employees of Defendant<br><br>    Plaintiffs,<br><br> v.<br><br>FIDELITY EMPLOYER SERVICES CORPORATION, FIDELITY EMPLOYER SERVICES COMPANY, LLC, and FMR CORP.,<br><br>    Defendant. | Case No.  05-10673 (WGY)<br><br>**REPLY AFFIDAVIT OF<br>DEBBIE L. TREZVANT** |

**AFFIDAVIT**

I, Debbie L. Trezvant, state under penalty of perjury, as follows:

8. This affidavit, as well as my earlier affidavit filed in August or September, 2005, is based on my personal knowledge, unless otherwise stated.

9. In my earlier affidavit, I stated as follows: "My primary duties and tasks as an employee of FESCO were to receive information from other FESCO employees and other sources, for entry into FESCO's computerized system for management of clients' employee benefits, enter that information in the computer network, and report information back to supervisors. My work rarely involved any discretion or independent judgment. The primary duties and tasks of other business analysts employed by FESCO were essentially the same." I have personal knowledge of this in part because I had much contact with other business

analysts in the building where I worked. For one thing, I observed some of them working on the same types of tasks and duties I was working on. Also, they discussed the tasks and duties they were working on. Also, they discussed day-to-day problems they encountered in their work, and asked questions of other people, such as supervisors, about such problems. The problems they were talking about were problems of the same type I encountered, and the questions they asked were of the same type I asked concerning my work.

10. Regarding analysts who worked in human resources/payroll, defined benefit plans, and defined contribution plans, I personally know facts that reasonably lead me to conclude that their primary duties and tasks were essentially the same as mine and the other analysts who worked in health and welfare. For instance, the human resources/payroll, defined benefit plan, and defined contribution plan divisions of Fidelity made use of databases for the clients that were similar to the databases for the clients that were used in health and welfare, the databases I worked on. FESCO employees were able to access the client's databases maintained by FESCO, which showed details particular to each of the clients employee's regarding their health and welfare benefit plans. Business Analysts had to maintain the accuracy of the database and convert if from FESCO's legacy system Benesoft to its new Oracle-based computer system (sometimes known as HOBS).

11. Different people supervised me during the time I was an analyst for FESCO, including direct supervisors and managers who supervised them,

but changes in supervisors did not change my primary duties and tasks as described in paragraph 2 above. Also, my primary duties and tasks as described in paragraph 2 did not change depending on which clients I was assigned to work on.

12. The Business Analysts I worked with were dissatisfied with their working conditions, specifically the very long hours they were required to work. We were told by FESCO management that we were not entitled to overtime pay, however, we would get comp time (compensatory time off) to make up for our long hours, there was very little comp time. This dissatisfaction with the long hours leads me to conclude that many, many analysts will be interested in participating in this lawsuit and making claims in it. I have had very little contact with other analysts since leaving FESCO. Until October 16, 2005, I did not know that this lawsuit was reported in the Boston Business Journal.

13. I have learned of the statements in FESCO's affidavit of Kyle Kane regarding my primary duties and tasks. There are many inaccuracies in Mr. Kane's statements about my primary duties and tasks. Because, as stated above and in my earlier affidavit, my primary duties and tasks were essentially the same as other analysts, the inaccuracies about the primary duties and tasks in Mr. Kane's affidavit would apply to the other analysts.

14. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 16, 2005

_____/s/_____
Debbie L. Trezvant

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DEBBIE L. TREZVANT, TIMOTHY CAHILL, DEBORAH CHERYL ARCH, and MARY-CATHERINE PICHE, each of them individually and on behalf of all others similarly situated and similarly situated current and former employees of Defendant<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>FIDELITY EMPLOYER SERVICES CORPORATION, FIDELITY EMPLOYER SERVICES COMPANY, LLC, and FMR CORP.,<br><br>　　　　　Defendant. | Case No.  05-10673 (WGY)<br><br>**REPLY AFFIDAVIT OF**<br>**TIMOTHY CAHILL** |

**AFFIDAVIT**

I, Timothy Cahill, state under penalty of perjury, as follows:

15. This affidavit, as well as my earlier affidavit filed in August or September, 2005, is based on my personal knowledge, unless otherwise stated.

16. In my earlier affidavit, I stated as follows: "My primary duties and tasks as an employee of FESCO were to receive information from other FESCO employees and other sources, for entry into FESCO's computerized system for management of customers' employee benefits, to enter that information in the computerized system, to observe whether what the items of information that should be shown on the various views/screens in the computerized system were shown there, and report information to FESCO supervisors and other FESCO employees. The primary duties and tasks of other analysts employed by FESCO were essentially the same.

           The work rarely involved using discretion or independent judgment." I have personal knowledge of this in part because I had much contact with other business analysts in the building where I worked. For one thing, I observed some of them working on the same types of tasks and duties I was working on. Also, they discussed the tasks and duties they were working on. Also, they discussed day-to-day problems they encountered in their work, and asked questions of other people, such as supervisors, about such problems. The problems they were talking about were problems of the same type I encountered, and the questions they asked were of the same type I asked concerning my work.

17. Regarding analysts who worked in human resources/payroll, defined benefit plans, and defined contribution plans, I personally know facts that reasonably lead me to conclude that their primary duties and tasks were essentially the same as mine and the other analysts who worked in health and welfare. For instance, the human resources/payroll, defined benefit plan, and defined contribution plan divisions of FESCO made use of databases for the customers that were similar to the databases for the customers that were used in health and welfare, the databases I worked on. A customer and its employees were able to access the customer's databases maintained by FESCO, which showed information on the customer's health and welfare benefit plans, human resources/payroll, defined benefit plans, and defined contribution plans, and details particular to each employee regarding the health and welfare benefit plans, human resources/payroll, defined benefit plans, and defined contribution plans.

       Analysts had to maintain the accuracy of these databases, make changes to them, update them, and convert them from FESCO's old Benesofft computer system to its new Oracle-based computer system (sometimes known as HOBS).

18. Different people supervised me during the time I was an analyst for FESCO, including direct supervisors and people who supervised them, but changes in supervisors did not change my primary duties and tasks as described in paragraph 2 above. Also, my primary duties and tasks as described in paragraph 2 did not change depending on which customers I was working on.

19. The analysts I worked with were very dissatisfied with their working conditions, specifically the very long hours they were required to work. We were told by FESCO that we were not entitled to overtime pay, but FESCO told us we would get comp time (compensatory time off) to make up for our long hours, there was very little comp time. This dissatisfaction with the long hours leads me to conclude that many, many analysts will be interested in participating in this lawsuit and making claims in it.

20. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 17, 2005     _____/s/_____
                                                                                 Timothy Cahill