# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

DEBBIE L. TREZVANT, TIMOTHY
CAHILL, DEBORAH CHERYL ARCH,
and MARY-CATHERINE PICHE, each of
them individually and on behalf of all
others similarly situated and similarly
situated current and former employees of
Defendant

          Plaintiffs,

   v.

FIDELITY EMPLOYER SERVICES
CORPORATION, FIDELITY
EMPLOYER SERVICES COMPANY,
LLC, and FMR CORP.,

          Defendant.

Case No. 05-10673 (WGY)

**APPENDIX OF EXHIBITS AND NON-PUBLISHED OPINIONS**

(Filed Concurrently With Plaintiffs' Reply Brief
And Additional Affidavits)

Plaintiffs submit the following Non-Published

1. <u>Fidelity Unit Slapped with $5M Comp. Suit</u>, Boston Business Journal, printed June 10, 2005

2. <u>To Certify of Not to Certify: A Circuit-by-Circuit Primer on the Varying Standards for Class Certification in Actions Under the Federal Labor Standards Act</u>, Boston Univ. Public Interest Law Journal, Spring 2004

3. <u>Basco v. Wal-Mart Stores, Inc.</u>, (2004) WL 1497709 at 7 (E.D. La.)

4. <u>Pfohl v. Farmers Insurance Group</u>, 2004 WL 554834 3 (C.D. Cal.)

5. <u>Hall v. Burk</u>, 2002 WL 413901 (N.D. Tex. 2002)

6. <u>Dean. v. Priceline.com, Inc</u>, 2001 U.S. Dist. Lexis 24982 (D.Conn. 2001)

7. <u>Pfaahler v. Consultants for Architects, Inc.</u>, 2000 WL 198888 (N.D. Ill. 2000)

8. <u>Taillon v. Kohler Rental Power, Inc. ex rel. Kohler Col</u>, 2003 WL 2006593 (N.D. Ill.)

DATED: October 18, 2005          SPIRO MOSS BARNESS HARRISON & BARGE LLP

By:_____/s/_____
        Rebecca Sobie
        Attorney for Plaintiffs

Exhibit 1

# Boston Business Journal

From the June 10, 2005 print edition

## Fidelity unit slapped with $5M comp. suit

**More court cases expected to test new overtime rules**

Fidelity Employer Services Co., a human resources outsourcing unit of mutual fund giant Fidelity Investments, is being sued for allegedly failing to pay former employees millions of dollars for overtime labor.

Filed in U.S. District Court in Boston, the lawsuit claims that the Fidelity unit classified workers as ineligible for overtime to avoid paying them for working more than 40 hours a week.

The lawsuit may foreshadow a new wave of court cases arising from a revision of overtime rules last year by the Bush administration. The case involves administrative workers whose entitlement to overtime pay was not adequately addressed by the new rules. Although overtime rules are believed to be clearer in many instances, there is enough uncertainty that lawyers and workers can be expected to continue testing parts of it -- such as administrators' eligibility -- in the courts for years.

The Fidelity lawsuit alleges that four employees were due overtime pay because the company categorized their jobs as exempt from laws requiring overtime pay. The workers, based in Marlborough and Manchester, N.H., were "business" and "technical" analysts at various times between 1996 and 2004, and their tasks involved compiling information about potential business opportunities for the Fidelity unit and putting information into computer databases.

The suit asks for at least $5 million in damages, a figure that includes overtime wages. The former Fidelity workers' attorney Ira Spiro, with Spiro Moss Barness Harrison & Barge LLP in Los Angeles, said that request will change as the case gets closer to trial.

Fidelity spokeswoman Anne Crowley said that, while the company does not comment on lawsuits, it obeys U.S. law on overtime. "We believe we comply with the federal Fair Labor Standards Act," she said.

Overtime rules in the Fair Labor Standards Act were revised by the Bush administration and approved by Congress in August. The rules had remained unchanged since the Great Depression, except for occasional guidance from the U.S. Department of Labor.

Republicans and employer groups said the changes were long overdue, would make it easier to determine eligibility, and would ultimately make 1.3 million more people eligible for overtime. Democrats and labor backers charged the overhaul would reduce overtime entitlement by 6 million.

The old guidelines said a worker was eligible for overtime if he or she earned $225 a week or less and was not an executive, professional, administrator or outside salesperson. They also included a complicated-duties test involving what percentage of a worker's time was spent performing management and nonmanagement tasks.

The Bush administration revision bumped the wage threshold to $455 a week and added computer professionals to the list of ineligible jobs. It also tried to clarify what types of administrators could receive overtime pay.

The new rules were supposed to curtail lawsuits by employees claiming they were cheated out of overtime pay for working more than 40 hours a week. But that hasn't happened.

Instead, overtime suits continue to pile up. The Fidelity suit is one of 16 new cases in U.S. District Court in Boston brought under the Fair Labor Standards Act since September 2004, the first full month after the overtime rules were updated.

The cases will continue as employees resist losing overtime benefits, said Catherine Ruckelshaus, litigation director for the National Employment Law Project, a New York workers' rights group.

"We're hearing of more instances since the regulations changed that employers have required more overtime work, but not more overtime pay," Ruckelshaus said.

Cases will continue testing the new rules, which employer groups say are an improvement but vague in places, said Sandy Reynolds, executive vice president at Associated Industries of Massachusetts. Reynolds, who oversees human resources issues for Associated Industries, said the rule changes improved understanding of eligibility and led to more people earning overtime.

An area of confusion remaining is when an administrator, such as a secretary or the Fidelity analysts, have enough job independence not to be due overtime.

As a result, the courts increasingly will be asked to hash out what type of administrative jobs are paid overtime, said Eileen Appelbaum, director of the Center for Women and Work at Rutgers University. Appelbaum believes the Fidelity lawsuit could signal a spate of litigation because the revised rules weren't sufficiently clear.

Those cases could take years to resolve and could end up in the nation's highest courts.

"A lot of the terms in the regulations will have to be interpreted by the courts," said Richard Seymour, a Washington, D.C., labor attorney. "I expect some of these questions will go to the Supreme Court."

For now, the Fidelity case is in its early stages. Filed as a collective action, it could grow -- along with the request for damages -- if more former and current Fidelity employees join the suit.

*EDWARD MASON can be reached at emason@bizjournals.com.*

Exhibit 2

Westlaw.

13 BUPILJ 167                          FOR EDUCATIONAL USE ONLY                          Page 1
13 B.U. Pub. Int. L.J. 167
**(Cite as: 13 B.U. Pub. Int. L.J. 167)**

Boston University Public Interest Law Journal
Spring, 2004

**Article**

**\*167** TO CERTIFY OR NOT TO CERTIFY: A CIRCUIT-BY-CIRCUIT PRIMER ON THE
VARYING STANDARDS FOR CLASS CERTIFICATION IN ACTIONS UNDER THE FEDERAL LABOR
STANDARDS ACT

Scott Edward Cole [FNa1]
Matthew R. Bainer [FNaa1]

Copyright © 2004 by The Trustees of Boston University; Scott Edward Cole,

Matthew R. Bainer

INTRODUCTION

Among class-action practitioners, there is a virtual consensus that the quest for class certification is the most crucial battle waged in this type of litigation. This is particularly true in actions alleging overtime exemption mis-classifications where, after certification, the primary remaining issue of liability depends entirely on the defendant's ability to prove the exemption as an affirmative defense.

In California state courts, where the authors have litigated many such wage-and-hour class actions, the certification process is well-established, as evidenced by a flurry of recent state trial court certifications. [FN1] Yet, while California state court opinions, such as the decision in Bell v. Farmers Insurance Exchange, [FN2] purport to look fondly on the Federal class action procedures articulated in **\*168** Fed. R. Civ. P. Rule 23 for guidance, the certification prerequisites of nearly identical wage-and-hour claims under the Federal Fair Labor Standards Act of 1938 [FN3] ('FLSA")and the opt-in scheme for claims brought thereunder, vary significantly between Federal circuits and among Federal district courts.

Moreover, even those practitioners who are comfortable navigating the waters of these varied legal standards may be discouraged from pursuing wage-and-hour actions under Section 216(b) procedures once they grasp the enormous risk associated with pursuing costly and time-consuming class litigation only to learn that few putative class members wish to join the action and/or that the victory of "certification" may quickly be rendered hollow by the almost certain subsequent filing by the defendant of a more factually comprehensive, and frequently successful, motion for decertification.

As a result of decades of confusion over the certification methods employed in Section 216(b) actions, and with a paucity of consistent judicial precedent to guide them, state court practitioners have come to view Federal court as tantamount to a forum non conveniens, due largely to the paradoxical result of attempting to litigate class issues (normally governed by the opt-out procedures of Rule 23) under the procedural opt-in scheme mandated by the FLSA, and because of confusion over the degree to which district courts will apply the Rule 23 standards in

FOR EDUCATIONAL USE ONLY                    Page 2
13 B.U. Pub. Int. L.J. 167
**(Cite as: 13 B.U. Pub. Int. L.J. 167)**

collective/class actions. [FN4] Because the United States Supreme Court has yet to issue a clear directive regarding whether FLSA actions are to utilize Rule 23 standards, this Article seeks to summarize the historical development of Federal case law on this issue in the district and courts of appeals. Additionally, this Article examines each Circuit's requirements for the use of plaintiff affidavits as evidentiary support for a finding of a cohesive, "similarly situated," putative class.

THE POLICY BEHIND A LENIENT STANDARD FOR FLSA "CLASS" CERTIFICATION

Unquestionably, 29 U.S.C. § 216(b) is a powerful tool for curbing unlawful wage-and-hour practices. The successful claimant in such actions may recover unpaid regular and overtime wages, an additional amount of liquidated damages equaling the amount of the wages recovered, legal or equitable relief, costs, and mandatory attorneys' fees. [FN5] These remedies may be sought by any number of employees on behalf of other persons "similarly situated" ("opt-ins") who file written consents to participate in the action.

*169 Unlike Rule 23 actions seeking predominantly monetary damages [FN6] or California state court actions, [FN7] "similarly situated" persons under Section 216(b) are not bound by the outcome of FLSA actions (nor are the limitations periods on the filing of their actions tolled) unless and until they file written consents with the court. [FN8] Indeed, the filing of a consent to participate in a FLSA action is a jurisdictional matter. "[A] member of the class who is not named in the complaint is not a party unless he affirmatively "opts in" by filing a written consent-to-join with the court." [FN9]

The unique burden of would-be litigants to affect their own joinder in FLSA collective/class [FN10] actions, and the provision that the tolling of any particular plaintiff's limitations period does not occur until she files a consent, have led Federal courts to adopt a liberal standard for granting certification motions. Since Section 216(b) itself does not provide guidance as to the meaning of "similarly situated," Federal Courts of Appeal have unanimously justified adoption of a low threshold for certification, in no small part on the reasoning that it will allow plaintiffs to achieve certification status earlier in the litigation, if not immediately after filing of a complaint, thereby permitting unwitting plaintiffs discovery of the pendency of the action and the opportunity to toll their actions through the filing of consents. [FN11] Once opt-in plaintiffs file consents, they do not participate fully in the case as the named plaintiffs do. As a representative action, the named plaintiffs prosecute the case on behalf of all claimants who have filed consents with the court.

In order to obtain FLSA class certification status, the plaintiff bears the burden of proving that an adequate number of class members will ultimately opt into the action, and that these class members are likely to satisfy the "similarly situated" *170 standard of the relevant Federal tribunal. However, as discussed in greater detail below, this evidentiary burden is relatively de minimus; the declarations of the representative plaintiffs alone are usually enough for most Federal courts to permit issuance of notice of the action to potential class members. This notice tends to produce an even more robust-sized class and further proof of the class numerosity necessary to withstand decertification efforts after further discovery has been conducted.

The flsa's Past Reliance on The Rule 23 Scheme

Whereas the lenient standard descried above is commonly accepted by Federal tribunals today, opinions in past decades were far from consistent with regard to the test for issuance of class notice. Indeed, historically, distinctions between Section 216(b) actions and Fed. R. Civ. P. Rule 23 matters went far beyond issues such as whether parties were required to opt out or opt in to the action, what events tolled the limitations period, and what variances existed between these rules with regard to the "similarly situated" standard. Even following sweeping amendments to Section 216(b) by the Portal-to-Portal Act of 1947, [FN12] which amended Section 216(b) by requiring named plaintiffs to have a stake in the outcome of the litigation and providing for an "opt-in" scheme, there was no Congressional statement as to the propriety of applying Rule 23 standards to FLSA actions. Moreover, prior to Hoffmann-La Roche, Inc, the Courts of Appeal were divided even as to what authority Federal trial judges had to facilitate class notice.

Before Hoffmann-La Roche, many lower courts refused to sanction court-facilitated notice in FLSA opt-in actions on the basis that, since Congress had not expressly authorized distribution of such notice, the courts' contact of non-parties was tantamount to a solicitation of claims. [FN13] Other courts reasoned that Congress's silence on this issue permitted notice in appropriate cases. [FN14] In Hoffmann, however, the Supreme Court found that lower courts

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FOR EDUCATIONAL USE ONLY
13 B.U. Pub. Int. L.J. 167
**(Cite as: 13 B.U. Pub. Int. L.J. 167)**

had the procedural authority to manage the joinder of multiple parties in Section 216(b) actions. [FN15] For this conclusion, the Court relied on the language of Section 216(b) authorizing representative suits as well as the notice procedure of Fed. R. Civ. P. Rule 83, which vests trial judges with the inherent power to regulate proceedings before them. [FN16] More importantly, however, was the Hoffmann Court's comparison of Section 216(b) to Rule 23. Relying on its 1981 decision in Gulf Oil v. Bernard, [FN17] a Rule 23 case, the Court explained that the trial court not only had the authority to regulate complex *171 proceedings, it had a duty to exercise control in class actions. [FN18] With such language, Hoffmann put to rest any question regarding the district courts' powers to facilitate class notice.

  Following Hoffmann, FLSA practitioners were clear as to the powers of the district courts to facilitate class notice and the mechanics of prosecuting Federal wage claims, but lacked a uniform rule as to whether and to what extent the Rule 23 requirements for numerosity, commonality, typicality, and adequacy of representation applied in Section 216(b) certification motions. Moreover, assuming that these factors were considered, there was no standard for what evidentiary support was required to meet these standards, particularly given other discrepancies between the FLSA and other forms of Federal class actions.

  For years, the question of whether analysis of Section 216(b) certification motions should be tied to Rule 23 standards was answered by reference to one of two seemingly irreconcilable approaches. On the one hand, many of the lower courts followed a pre-Hoffmann line of authority, commencing with the Third Circuit's holding in Lusardi v Xerox Corp, [FN19] which considered Rule 23 and Section 216(b) to be "mutually exclusive" and called for a case-by-case analysis of the "similarly situated" standard at two separate stages of the litigation. [FN20] This approach was quickly dubbed the "ad hoc" approach due to its lack of defined standards, and has been followed even outside the Tenth and Eleventh Circuits with some regularity. [FN21] Because of its lack of direction with regard to the sufficiency of evidence required for certification and its silence on the issue of how to apply the "similarly situated" standard, it is debatable whether this line of cases can even be deemed to have produced a recognizable standard at all.

  The seemingly alternate approach, adopted even by some lower courts within the Tenth Circuit, was set forth in Shushan v. University of Colorado. [FN22] In Shushan, the court's primary inquiry was the question of whether FLSA claimants were required affirmatively to opt-in to the action before they could be bound by the results. Nevertheless, sweeping language in the opinion made clear the court's general discontent with former lines of authority regarding the degree of interrelation between Rule 23 and Section 216(b). [FN23] In rejecting both a categorical approval and rejection of a correlation between these potentially competing schemes, the court in Shushan held that the named plaintiffs there were required to satisfy only those requirements of Rule 23 that did not conflict with Section *172 216(b). [FN24] The court rationalized this approach on the basis that the procedure for the joinder of parties in a FLSA action shared qualities with the permissive joinder procedures of Rule 20 as well as the class action procedures of Rule 23. Shushan, a post-Hoffmann decision, therefore stood for the proposition that at least portions of Rule 23 provided a reasonable framework for evaluating the propriety of class treatment in FLSA actions. As a practical consideration, adoption of this approach permitted the parties more easily to forecast the likelihood of success on a motion for certification.

  Since Shushan, Federal courts across the nation have struggled on a case-by-case basis with the propriety of these two divergent approaches, often with inconsistent results on similar facts. Surprisingly, in that time, in the absence of any guidance from the Supreme Court, the Courts of Appeals and their District Courts have almost unanimously shunned the Rule 23 standards as a bright-line test when analyzing the certification propriety of Section 216(b) actions. Instead they have focused exclusively on the highly-subjective "similarly situated" standard. Moreover, as of the time of publication of this Article, any recognizable debate with regard to the test for "similarly situated" was centered on the sufficiency of plaintiff affidavits, offered near or at the inception of the litigation, to demonstrate a likelihood that the representative plaintiffs are part of a homogeneous group of aggrieved workers.

### A CIRCUIT-BY-CIRCUIT ANALYSIS OF THE AFFIDAVIT REQUIREMENTS FOR CLASS CERTIFICATION

  Within the last ten years, the Courts of Appeals in each Circuit have moved toward allowing early certification as a tool to ensure early dissemination of notice merely on the basis of the representative plaintiff's having demonstrated the existence of a sufficient number of "victims of a single policy or plan." Indeed, no longer do courts wrestle with

13 BUPILJ 167
FOR EDUCATIONAL USE ONLY                                        Page 4
13 B.U. Pub. Int. L.J. 167
(Cite as: 13 B.U. Pub. Int. L.J. 167)

whether the three-step method (initial certification, notice and, ultimately, an in-depth analysis at decertification) for testing the propriety of class treatment should be utilized or whether the standards at the time of certification should be relaxed, relative to the standards imposed at decertification. Each of the Courts of Appeals has answered these inquiries in the affirmative. Moreover, the Federal courts are in agreement that, while initial certification questions should not be answered by reference to the Rule 23 factors, the more exhaustive analysis at the time of decertification can, and probably should, consider Rule 23's more stringent four-prong test.

Despite this migration away from utilizing the bright-line Rule 23 standard at the initial certification stage, the various Circuits still face perhaps their last conflict on the issue of what standard of proof will be required for a plaintiff to make a sufficient "demonstration" of the existence of a sufficient number of "victims of a single policy or plan" for certification purposes. As expected, this conflict exists largely due to the broad discretion Federal District Court judges are granted in *173 determining whether to allow notice and what standards to employ in making that decision. Although the Circuits themselves have yet to agree on these standards, what is clear is that, despite the District Courts' broad discretion to employ the class device, the courts within each Circuit have exhibited a remarkable propensity to consistency within the Circuit.

As the following review attests, the standards employed by Federal judges in approving or rejecting the issuance of class notice run the gamut: the most liberal Circuits require only that the pleadings properly allege a common illegal employment practice, while more conservative Circuits require an actual factual demonstration that such a violation exists. The following discussion therefore examines the development within each Circuit of the threshold requirements for issuance of class notice.

A. First Circuit

Courts within the First Circuit utilize one of the more liberal standards for allowing initial class certification and notice to potential class members. District Courts in the First Circuit have allowed a class to be certified for notice purposes based solely on the plaintiff's allegations contained in the complaint and any supporting evidence provided by plaintiffs.

One of the initial decisions to employ this standard was Reeves v. Alliant Techsystems, Inc. [FN25] In Reeves, the First Circuit approved certification for notice purposes based solely on plaintiffs' "alleging that the putative class members were together the victims of a single decision, policy or plan." [FN26] The Reeves court approved notice based on the mere requirement that "plaintiffs can meet this burden by simply alleging "that the putative class members were together the victims of a single decision, policy, or plan" that violated the law." [FN27]

Although review of a well-plead complaint will generally satisfy First Circuit courts for purposes of class certification, these courts will also look at supporting evidence if presented by the plaintiffs. In Kane v. Gage Merchandising Services, Inc., [FN28] the court looked at the allegations of the plaintiff's pleadings, as well as three affidavits (from the representative plaintiff, his counsel, and one of the defendant's officers) that tended to support those allegations, and found them collectively to constitute "substantial allegations that the putative class members were together the victim of a single decision, policy or plan" and, on that basis, certified the class for notice purposes. [FN29]

B. Second Circuit

The Second Circuit courts have developed what is perhaps the single most *174 lenient standard in the country, with trial courts tending to allow certification based solely on the strength of the plaintiffs' allegations. One of the best examples of this liberalism can be found in Rodolico v. Unysis Corporation. [FN30] In that case, the District Court for the Eastern District of New York made an extensive review of the various judicial standards employed by a range of district courts in determining a 216(b) action's fitness for certification, and then ruled in favor of certification based solely on the strength of the plaintiffs' allegations. In doing so, the Court stated:
    Bearing in mind the broad remedial nature of the ADEA as well as concerns of fairness and judicial economy and the factors set forth in Lusardi and Hyman, the Court finds that the plaintiffs are similarly situated, so that a collective action should proceed on the issue of liability ... Where, as here, the plaintiff alleges a systematic reduction in work force, the decision is one that was obviously made at a high level of the organization. The

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

plaintiffs acknowledge that individual managers had discretion in deciding whom to retain, but argue that a few high level managers were responsible for the ultimate discriminatory plan. In particular, the plaintiffs allege that top Unysis executives determined how many people would be terminated; decided that they would have one RIF instead of two; constructed a plan that was aimed to reach the senior-most engineers at the plant; and assembled the selection process .... Thus, the defendant's alleged conduct supports the authorization of a collective action for the liability phase of the trial. [FN31]

The Second Circuit approach is further explained in Harrington v. Education Management Corp. [FN32] Noting that the relevant analysis is required very early in the litigation process, the court stated "[a]t this juncture, where the parties have yet to engage in any substantial discovery and trial is set for next April, the court need only reach a preliminary determination that potential plaintiffs are similarly situated to permit the opt-in class." [FN33] After reviewing the allegations of the plaintiff, the court ruled that "[the plaintiff had] met his modest preliminary burden. In his affidavit submitted to the court, he claims that in response to his complaints to management that he was regularly denied overtime pay, his supervisors informed him that it was the defendants' policy not to pay assistant directors overtime compensation because the position was classified as exempt." [FN34]

The Second Circuit's utilization of this liberal methodology dates back to at least to Jackson v. New York Telephone Co. In that case, the District Court for the Southern District of New York ruled that the plaintiffs needed only show "substantial allegations that the putative class members were together the victims of a single decision, policy or plan infected by discrimination." In holding that "[u]nquestionably in the present case, the plaintiffs' ample allegations regarding the FMP create a solid factual basis upon which authorization for notice should be **175 granted," [FN35] the Jackson court articulated the lenient approach that prevails in the Second Circuit for achieving class/collective action status.

C. Third Circuit

In sharp contrast to the clear, liberal standards discussed above, the Third Circuit is split over whether to allow certification based on the plaintiff allegations and/or pleadings alone or to demand a heightened evidentiary showing. Indeed, some courts within this jurisdiction have followed the same certification standards of the First and Second Circuits, while the Circuit's most recent District Court decision, Smith v. Sovereign Bancorp, Inc., [FN36] opted without substantial explanation to require that plaintiffs make a more rigorous factual showing before the court would certify a class.

The Smith opinion made the following observation regarding the lack of clear precedent on this issue:
The Third Circuit has not yet determined what standard to apply in considering whether potential class members are "similarly situated" such that FLSA plaintiffs may be entitled to send them notice of the suit. In the absence of appellate guidance, the Court looks to other districts and circuits, which have applied varying standards. Some courts, including two within this District, have held that motions for preliminary certification and notice may be granted as long as the plaintiff merely alleges that the putative class members were injured as a result of a single policy of the defendant employer. Other courts generally apply a more stringent - although nonetheless lenient - test that requires the plaintiff to make a "modest factual showing" that the similarly situated requirement is satisfied. [FN37]

The court then chose to reject the standard based on plaintiff's allegation standing alone, and instead apply the "modest factual showing" test: "[Rather] than following the automatic preliminary certification route, this Court will adopt the reasoning of those courts that have required plaintiffs to make a basic factual showing that the proposed recipients of opt-in notices are similarly situated to the named plaintiffs." [FN38]

Smith, choosing as it does between conflicting standards without articulating a sound reason for the choice, provides little clue as to how courts within the Third Circuit will rule on the requisite standard for notice certification in the future. Practitioners can only take a cautious approach until the Court of Appeals has the opportunity to make a definitive pronouncement on the matter.

D. Fourth Circuit

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

13 B.U. Pub. Int. L.J. 167
**(Cite as: 13 B.U. Pub. Int. L.J. 167)**

Unlike practitioners in the Third Circuit, those in the Fourth Circuit can safely **\*176** assume their District Courts will require that plaintiffs make some factual showing that the class members are similarly situated before granting notice certification, a standard of proof clearly delineated almost a decade ago. Decisions such as D'Anna v. M/A-COM, Inc., [FN39] recognize the different levels of proof required by various courts, then reach their own conclusion on the standard to employ. In considering the alternate approaches to the analysis in D'Anna, the Maryland District Court recognized that:

The courts have uniformly recognized that only a preliminary finding of "similarly situated" potential plaintiffs is necessary to authorize notice to potential class members; nevertheless, they have differed on the appropriate degree of factual support for class allegations prior to authorization of notice. Although court-authorized notice has been issued based solely upon allegations of class-wide discrimination in a complaint, many courts have required some factual support for the allegations prior to authorization of notice. This Court concludes that the better reasoned cases require the plaintiff to make a preliminary factual showing that a similarly situated group of potential plaintiffs exists. [FN40]

D'Anna proceeds to evaluate precisely what evidence would satisfy this burden within the Fourth Circuit:

Although the requirements for court-authorized notice in ADEA class actions are not stringent, the plaintiff has failed to make the relatively modest factual showing required in Schwed, Severtson, and Hoffmann-La Roche. The plaintiff has not pointed to any company plan or policy to target older employees for termination. Plaintiff has done nothing more than identify eleven individuals who are over forty years of age and who may have been terminated during Manno's tenure. The mere listing of names, without more, is insufficient absent a factual showing that the potential plaintiffs are "similarly situated." The plaintiff has the burden of demonstrating that notice is "appropriate." In this case, plaintiff has not met this burden. [FN41]

The D'Anna court, in its interpretation of the plaintiff's burden, and while accepting it as a relatively light burden, remains unwilling to accept plaintiff's allegations as conclusive proof of the propriety of class treatment of FLSA claims without any supporting evidence to corroborate the assertions. While only one opinion among many, D'Anna represents perhaps the best expression of the Fourth Circuit's stance on this issue at the time of publication of this article.

## E. Fifth Circuit

One of the most recent decisions out of the Fifth Circuit expresses that jurisdiction's conservative approach on authorizing notice in Section 216(b) **\*177** collective actions. In Villatoro v. Kim Son Rest., L.P., [FN42] the court required a clear factual demonstration of similarity among the alleged class members before granting notice, stating that plaintiffs in such actions must demonstrate they are

similarly situated with respect to their job requirements and with regard to their pay provisions. Notice is appropriate when there is a demonstrated similarity among the individual situations ... some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]. [FN43]

While the court was unfortunately silent as to what constituted the "demonstrated factual nexus," and while this standard is, obviously, relatively light when compared to the burden for class certification in Rule 23 actions, a cautious reading of the so-called "demonstration" demanded by the Villatoro court compels the Fifth Circuit wage-and-hour practitioner to approach certification motions with more ammunition than simply a well-plead complaint and the strength of the plaintiff's affidavits.

## F. Sixth Circuit

Not unlike the Third Circuit, trial courts in the Sixth Circuit vary widely on the issue of plaintiffs' evidentiary burden, relying on what appears to be a results-oriented approach rather than adhering to a prescribed standard. More problematic for the practitioner is the fact that, since Belcher v. Shoney's Inc. [FN44] first addressed this issue in 1996, little case law has emerged to offer any novel perspective on the proper handling of FLSA motions on the issue of notice imposition.

While the Belcher plaintiffs were successful in obtaining class certification, the court there skillfully side-stepped

13 BUPILJ 167                     FOR EDUCATIONAL USE ONLY                          Page 7
13 B.U. Pub. Int. L.J. 167
**(Cite as: 13 B.U. Pub. Int. L.J. 167)**

imposing any clear standard whatsoever:
    Although it is clear that the court may supervise notice to potential class members, the lower courts have not
agreed as to the factual showing that must be made by a plaintiff to show who is "similarly situated" at the notice
stage. Some courts hold that a plaintiff can demonstrate that potential class members are "similarly situated," for
purposes of receiving notice, based solely upon allegations in a complaint of class-wide illegal practices. Other
courts hold that a plaintiff meets this burden by demonstrating some factual support for the allegations before
issuance of notice. This Court finds it unnecessary to adopt either of the competing standards because the Plaintiffs
have made a sufficient showing under either standard that the individuals to whom they seek to send notice of this
lawsuit are "similarly situated" to them to warrant the issuance of Court-supervised notice. The Court is not holding
at this time, however, that all members of the potential class who will be sent notices are, in fact, similarly situated
to Plaintiffs. [FN45]

    **\*178** Later, when faced with the same issue in Clark v. Dollar General Corporation, [FN46] the Middle District of
Tennessee followed the "lead" of the Belcher court in declining to subscribe to any particular standard, instead
merely repeating much of the text of the Belcher opinion. [FN47]

    Perhaps because of this lack of guidance, the recent decision in Pritchard v. Dent Wizard International Corp.
[FN48] erred on the side of caution, analyzing the certification request under a more rigorous burden:
    In the case sub judice, the Court concludes Plaintiff has sufficiently alleged a collective action under Section
216(b) of the FLSA. Plaintiff meets his burden of showing he is similarly situated to those whom he requests to
represent under either standard set forth above. In the less restrictive standard, i.e., demonstrating "similarly
situated" based upon allegations in the complaint of class-wide illegal practices, the Court concludes that Plaintiff
has set forth allegations of Defendant's class-wide practice of not paying overtime wages to its paintless dent
removal technicians. Under the more restrictive standard, i.e., requiring factual support for the class allegations in
the amended complaint, the Court concludes that Plaintiff has set forth sufficient factual support for his class
allegations in his Amended Complaint. Plaintiff has sufficiently alleged that there were numerous paintless dent
removal technician's [sic] employed by Defendant in Ohio, that all of these technicians were paid on a commission
basis, and Defendant did not pay these technician's [sic] overtime for certain periods of time. Whether many or few
of these technicians choose to opt-in [sic] to this suit, or are capable of opting-in [sic] to this suit, remains to be seen.
At this stage of this stage [sic] of the litigation, however, the Court cannot conclude that Plaintiff can prove no set of
facts that would entitle him, or those he would represent, to relief. [FN49]

    Although Sixth Circuit courts have been careful to avoid articulating any consistent cognizable standard or
otherwise implying a preference for any specific certification standard, practitioners are advised to err on the side of
caution to ensure the best chance of securing class certification.

G. Seventh Circuit

    While a plaintiff's evidentiary burden in Seventh Circuit is less rigorous than in more conservative forums such as
the Fifth Circuit, the Seventh Circuit requires a so-called "demonstration" standard that places it squarely within the
camp of Circuits with more stringent certification standards. Having said this, however, the test in this jurisdiction is
not nearly as demanding as the more difficult Rule 23 standards for class certification

    A clear trend has developed in the Seventh Circuit requiring plaintiffs to meet a "demonstrated" standard to show
they are similarly situated. Among **\*179** other factors, this standard has been interpreted to include a review of the
pleadings, affidavits, and any other evidence (such as statistical data) put forth by the parties.

    In Clausman v. Nortel Networks, [FN50] one of several recent rulings on this issue in the Seventh Circuit, [FN51]
the District Court for the Southern District of Indiana dealt with the question as follows:
    The Seventh Circuit has not specifically addressed a standard for determining whether potential plaintiffs are
similarly-situated [sic]. However, "courts generally do not require prospective class members to be identical."
Although a plaintiff need not meet the Rule 23 standards for class certification, or be identically situated to potential
class members, there should be "a demonstrated similarity among the individuals." At this early stage of the case,
the Court should examine the record and affidavits to determine whether notice should be given to potential
plaintiffs. The standard at this time is "fairly lenient" and often results in the "conditional certification" of the class.

FOR EDUCATIONAL USE ONLY
**(Cite as: 13 B.U. Pub. Int. L.J. 167)**

[FN52]

In articulating the need for a "demonstrated similarity among the individuals," the Clausman court set forth one of the most direct statements of where this Circuit falls on the national spectrum. With this background, attorneys can safely assume that District Courts within this jurisdiction will look beyond the pleadings and bare forms of evidence before them to determine the existence of a "demonstrated similarity" between putative class members.

H. Eighth Circuit

The District Courts of the Eighth Circuit have confidently ruled that plaintiffs must establish a factual basis before any notice certification is entertained. The implementation of this standard seems to lean toward requiring a more developed factual showing than mere allegations of a predominant policy of plan.

This standard is demonstrated in Campbell v. Amana Company, L.C., [FN53] where the Northern District of Iowa indicated that plaintiffs must show "some factual basis from which the Court can determine if similarly situated potential plaintiffs exist." [FN54] The Campbell court found support for its decision in Severtson v. Phillips Beverage Co., [FN55] a 1991 decision of the District of Minnesota, which requires "evidence establishing 'at least a colorable basis' for their claim that a class of similarly *180 situated plaintiffs exist [sic]." [FN56]

Even more recently in the Eighth Circuit, the Western District of Arkansas stated, in Freeman v. Wal-Mart, [FN57] that notice authorization must be based on "substantial allegations of class-wide [violations] supported by affidavits" but may not be based solely on "unsupported allegations of widespread violations." [FN58] For this proposition, the court in Freeman cites to a twenty-year-old decision denying certification in a case where plaintiff's counsel argued his right to classwide notice "as a matter of law" without providing a single factual allegation to support his motion. [FN59]

Clearly, Eighth Circuit judges are inclined to require a more substantial factual showing before authorizing notice. Practitioners in this Circuit can comfortably assume that these courts will rely on the well-settled precedent of the Circuit in requiring an established factual showing before granting notice certification.

I. Ninth Circuit

The Ninth Circuit employs a certification standard on the lenient end of the national scale. This standard requires an extremely light evidentiary showing to support a plaintiff's allegations, one which may be satisfied solely by affidavits from plaintiffs themselves.

In 1999, the District of Nevada, with assistance from "only two Court[s] of Appeals cases reviewing the factors a district court should employ in determining how to 'certify' a Section 216(b) action," looked to Fifth and Third Circuit decisions to blaze a trail toward establishing a litmus test within the Ninth Circuit for evaluating such motions. [FN60]

In doing so, the Nevada District Court in Bonilla gave a disappointed nod to the Third Circuit's Lusardi [FN61] and the Fifth Circuit's Mooney, [FN62] noting that neither was particularly helpful. Recognizing that "[Mooney] declined to specify any particular method for certification, and merely stated that the district court did not abuse its discretion in determining that plaintiffs were not similarly situated," [FN63] Bonilla took the first step toward generating a FLSA certification standard for the Ninth Circuit, albeit in dicta, by explaining that "plaintiffs bear the burden of showing that they are similarly situated, [sic] however, this is a lenient burden for plaintiffs to meet." [FN64] Bonilla then began to define the standard and evidentiary requirements for meeting this burden by stating that the plaintiffs could satisfy that standard through the modest use of affidavits, a device already well-utilized by Rule 23 and state *181 court practitioners as a tool for satisfying the essential certification elements of commonality and typicality. [FN65]

Sixth months later, in Thiebes v. Wal-Mart Stores, Inc., [FN66] the District of Oregon transformed Bonilla's dicta into a more cognizable standard. Thiebes brought the issue of class certification in a Section 216(b) context squarely before a Ninth Circuit trial court. Citing Bonilla, the Thiebes court looked to affidavits submitted by the lead

13 B.U. Pub. Int. L.J. 167
**(Cite as: 13 B.U. Pub. Int. L.J. 167)**

plaintiffs to determine if the class was indeed "similarly situated." [FN67] While Thiebes declined to offer more than a recitation of the "lenient" Bonilla standard, the opinion finally offered guidance regarding the number of affidavits necessary to meet that standard, and the number was, in that case, only two from the representative plaintiffs. The two affidavits explained that the plaintiffs and other employees of Wal-Mart worked uncompensated overtime due to the uniform policies of the employer. According to the court, this testimony, "together with the allegations of the Amended Complaint, [was] sufficiently specific regarding how the alleged policies and practices are manifested and how they generally affect hourly employees in Oregon, such as plaintiffs," so as to support class certification. [FN68]

  Two years after Thiebes, the District of Oregon took a second opportunity to nail down the propriety of utilizing affidavits as a class-approval method. In Ballaris v. Wacker Silttronic Corp., [FN69] a Section 216(b) class certification dispute, the court again cited the Bonilla standard and looked to affidavits submitted by the plaintiffs in making the certification ruling. As in Thiebes, the Ballaris plaintiffs submitted only the affidavits of two representative plaintiffs, workers who asserted that "[the defendant's] workplace policies necessitated [employees'] working off the clock" without receiving additional wages. [FN70]

  This time, the Oregon District went even farther in cementing the use of affidavits as a guiding tool for FLSA certification motions by noting that the plaintiffs had submitted additional documentation to support their motion for certification and then refusing to look to those documents on the ground that "the affidavits ... alone are sufficient to certify the collective action." [FN71] By so ruling, the court established that plaintiffs could satisfy their burden of proof regarding the "similarly situated" standard and obtain class certification for a Section 216(b) action purely and singularly on the basis of sworn written testimony.

  This approach appears to be a hybrid version of the lenient approach of certification by allegation: The court looks to the allegation in the complaint, but also requires some sort of factual support from the plaintiffs themselves to support the alleged abuses.

**\*182 J. Tenth Circuit**

  Judge Babcock of the District Court for Colorado has actively led the Tenth Circuit to a standard of class certification by allegation alone. First, in Bayles v. American Medical Response of Colorado Inc., [FN72] he wrote that "[g]enerally, at the notice stage, courts following this line of cases require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan ...." [FN73]

  Then, in Vazlavick v. Storage Technology Corp., [FN74] Judge Babcock held that:
    In Bayles[,] I adopted an ad hoc approach of determining whether plaintiffs were similarly situated under Section 216(b). In particular, I employ the two-step approach to Section 216(b) certification adopted by several other courts. First, I must determine whether a collective action should be certified for notice purposes. Then, after discovery is completed and the case is ready for trial, I revisit the issue of certification. At the notice stage, courts following the ad hoc method "require nothing more than substantial allegations that the putative class members were together the victims of a single policy or plan ...." [FN75]

  In Vazlavick, Babacock found that the "plaintiffs have certainly made substantial allegations that the putative class members were together the victims" of a single plan; therefore, "conditional certification for notice purposes is warranted." [FN76]

  In the aggregate, these opinions make illustrate that the Tenth Circuit employs one of the most liberal approaches to class certification under the FLSA by allowing notice to the putative class members based merely on the strength of a plaintiff's allegations.

K. Eleventh Circuit

  In a rare example of an instance where a Court of Appeals itself has dictated the standard to be used by its lower courts, the Eleventh Circuit permits certification on the basis of the plaintiff's allegations and supporting affidavits. In Hipp v. Liberty National Life Insurance Co., [FN77] the Eleventh Circuit noted the widely held practice of

certifying 216(b) motion based only on the pleadings and any affidavits submitted and predictably referred to this determination as being a fairly lenient standard, more often than not resulting in conditional certification. [FN78] The Court then made one of the strongest statements by a Court of Appeals to date in endorsing this method, stating "we suggest that district courts in this circuit adopt it **183** in future cases." [FN79] Disappointingly for practitioners in the Eleventh Circuit, the Court left this suggestion as just that, a suggestion, by warning that "[n]othing in our circuit precedent, however, requires district courts to utilize this approach. The decision to create an opt-in class under Section 216(b), like the decision on class certification under Rule 23, remains soundly within the discretion of the district court." [FN80] Nonetheless, despite the advisory nature of this language, the Hipp court's willingness to set forth this guidance should prove beneficial to plaintiffs' lawyers looking for an intermediate court's stamp of approval on a lenient evidentiary standard for certification of Section 216(b) actions.

STRICTER STANDARDS AT DECERTIFICATION

In non-FLSA matters, once a class action lawsuit has been filed, the parties typically engage in extensive pre-certification discovery to determine whether the prerequisites for class treatment are satisfied, although defendants may, and often do, elect to attack the pleadings by filing a demurrer or motion to dismiss for failure to state a claim at the outset of litigation. Given the lenient standard necessitated by the policy favoring issuance of notice of class action proceedings, practitioners are cautioned not to experience a false sense of security upon achieving class action status. As the preceding section reveals, despite a wide range of approaches to initial certification, all circuits have adopted a lower threshold for certification than any would apply when reviewing a motion for decertification.

Under the Section 216(b) approach, then, the real test of propriety of class treatment comes not at the time of the initial motion for class status, but after substantial and often protracted discovery has occurred. It is at this point that the defendant will most likely seek decertification of the action and the court can determine class membership with precision. Insofar as Federal and many state courts have long recognized that the decision to certify a class may be altered or amended at any time before the case is decided on the merits, [FN81] a defendant should be expected to argue, on a motion for decertification, that the District Court's earlier grant of class status was pro forma and hardly the product of an adversarial proceeding. This two-step approach of applying a lenient standard for the initial "similarly situated" determination or "notice" stage, and a more onerous standard at the decertification stage, generally results in conditional certification and opportunity for putative class members to join the action with a delayed threat of a far more exhaustive and higher-stakes inquest, often on the eve of trial.

CONCLUSION

Clearly, many recent rulings of the Federal Courts of Appeals and District Courts have made bold statements in support of a lenient burden for the use of plaintiff **184** affidavits as the primary, if not exclusive, item of admissible evidence in the Section 216(b) certification context. Until the United States Supreme Court says otherwise, practitioners in the wage-and-hour field must to rely on the line of opinions within their jurisdiction to measure the likelihood of securing class certification for their FLSA claims. As a result, attorneys seeking class certification of FLSA actions should look closely to the sufficiency of affidavits for the lead plaintiffs and carefully consider the advisability of offering additional and perhaps unnecessary evidence, particularly in cases where such further evidence may potentially undermine the strength of the named plaintiffs' testimony.

In lieu of the full disclosure of evidence at the time of certification, and given each Circuit's propensity to grant it liberally, practitioners should decide carefully whether to hold such information in abeyance, where ethically permitted, until the more rigorous Rule 23 analysis is utilized at the almost-inevitable hearing on decertification. At that time, plaintiffs' counsel will hope to have enough success through the earlier dissemination of class notice to bring forward sufficiently persuasive and numerous declarations to satisfy Rule 23's four-part test.

[FNa1]. President, Scott Cole & Assoc., A.P.C., Oakland, Calif. J.D., University of San Francisco.

[FNaa1]. Associate, Scott Cole & Assoc. J.D., University of San Francisco.

[FN1]. O'Hara v. Factory 2-U Stores, Inc., No. 834123-5 (Alameda County Super. Ct. Dec. 3, 2001) (certifying class of store managers and assistant managers); Thomas, et al. v. California State Automobile Association, No. CH 217752-0 (Alameda County Super. Ct. May 7, 2002) (conditionally certifying class of insurance claims adjusters); Lyon v. TMP Worldwide, No. 993096 (San Francisco County Super. Ct. Nov. 15, 1999) (certifying class of

advertising account servicers); Hart v. Indian Head Water Co., No. B146565 (Los Angeles County Super Ct. Nov. 1, 2000) (certifying class of delivery drivers); Kung v. Food for Less, No. BCI188014 (Los Angeles County Super. Ct. Nov. 5, 1999) (certifying class of grocery store employees); Hines v. Food for Less, No. BC20278 (Los Angeles County Super. Ct. Oct. 20, 1999) (certifying class of grocery store "managers"); Hess v. Dayton Hudson Corp. No. 777130 (Orange County Super. Ct. Oct. 13, 1999) (certifying class of department store employees); Khan v. Denny's Holdings, Inc., No. BC177254 (Los Angeles County Super. Ct. Aug 20, 1999) (certifying class of restaurant store "managers"); Magallenes v. Telemundo Network, Inc., No. BC170651 (Los Angeles County Super. Ct. Apr. 12, 1999) (certifying class of television network employees); Mynaf v. Taco Bell Corp., No. CV7661193 (Santa Clara County Super. Ct. Oct. 26, 1998) (certifying class of restaurant employees).

[FN2]. 87 Cal. App. 4th 805 (2001).

[FN3]. 29 U.S.C. 216. The complete Act begins at 29 U.S.C. 201.

[FN4]. In a 7-2 opinion, the United States Supreme Court in Hoffmann-La Roche, Inc. v. Sperling, referred to Section 216(b) collective actions as a "class device." 493 U.S. 165, 166 (1989).

[FN5]. 29 U.S.C. § 216(b). Section 216(b) further provides that employees may seek reinstatement, promotion or other relief as the court deems proper for any violation of Section 215(a)(3) of that title. Notably, private rights of action may be maintained in such circumstances against any employer (including a public agency) in any federal or state court of competent jurisdiction.

[FN6]. In Rule 23(b)(3) class actions, for example, class members must protest their membership in the class by filing exclusion or "opt-out" forms. See Phillips Petroleum Co. v. Shutts, 472 U. S. 797 (1985). Moreover, once a class action is filed, under Rule 23, the statute of limitations is tolled for the benefit of the class until such time as the class is denied or decertified. American Pipe & Constr. Co. v. Utah, 414 U.S. 538 (1974).

[FN7]. Cal. Code Civ. Proc. § 382

[FN8]. 29 U.S.C. § 256

[FN9]. Kinney Shoe Corp. v. Vorhes, 564 F.2d 859, 862 (9th Cir. 1977).

[FN10]. As a testament to federal courts' reluctance quickly to label FLSA actions "class" actions merely based on the filing of the complaint, it is fairly well established that this label is not placed on the action until the filing of the first consent. Allen v. Atlantic Richfield Co., 724 F.2d 113 (5th Cir. 1984).

[FN11]. Despite a lack of historic authority on the scope of the term "similarly situated," circuit and district courts have wrestled with this term of art, with sharp disagreement. See, e.g., Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147 (1982); Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095 (10th Cir. 2001) (discussing the various approaches taken by different courts); Grayson v. K-Mart Corp., 79 F.3d 1086 (11th Cir. 1996), cert. denied, 519 U.S. 982 (1996); Hoffman v. Sbarro, Inc., 982 F.Supp. 249 (S.D.N.Y. 1998); Harrison v. Enterprise Rent-A-Car Co., 1998 U.S. Dist. LEXIS 13131 (M.D. Fla. 1998); Bayles v. Am. Med. Response, 950 F.Supp. 1053 (D. Colo. 1996); Schwed v. Gen. Elec. Co., 159 F.R.D. 373 (N.D.N.Y. 1995); Brooks v. Bellsouth Telecom, 164 F.R.D. 561 (N.D. Ala. 1995); Flavel v. Svedala Indus., Inc., 875 F.Supp. 550 (E.D. Wis. 1994).

[FN12]. Pub. L. No. 80-49, 61 Stat. 84 (codified as amended at 29 U.S.C. § 251 et seq.).

[FN13]. E.g., McKenna v. Champion Int'l Corp., 747 F.2d 1211 (8th Cir. 1984); Dolan v. Project Constr. Corp., 725 F.2d 1263 (10th Cir. 1984); Partlow v. Jewish Orphans' Home of So. Calif., Inc., 645 F.2d 757 (9th Cir. 1981).

[FN14]. Woods v. N.Y. Life Ins. Co., 686 F.2d 578 (7th Cir. 1982); Braunstein v. Eastern Photographic Lab., Inc., 600 F.2d 335 (2nd Cir. 1978).

[FN15]. 493 U.S. at 171.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[FN16]. Id.

[FN17]. 452 U.S. 89.

[FN18]. Hoffmann-La Roche, 493 U.S. at 171.

[FN19]. 118 F.R.D. 351 (D.N.J. 1987), vacated in part on other grounds, 122 F.R.D. 463 (D.N.J. 1988).

[FN20]. Id.

[FN21]. Schwed v. Gen. Elec. Co., 1997 U.S. Dist. LEXIS 5103 (N.D.N.Y. 1997); Severtson v. Phillips Beverage Co., 137 F.R.D. 264 (D. Minn. 1991).

[FN22]. 132 F.R.D. 263 (D. Colo. 1990). Although Shushan was an action alleging violations of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § § 621-634 ("ADEA"), and not involving FLSA claims, cases interpreting class actions involving the ADEA also look to the statutory scheme of Section 216(b).

[FN23]. Shushan, 132 F.R.D. at 264-265.

[FN24]. Id. at 266.

[FN25]. 77 F. Supp. 2d 242 (D.R.I. 1999).

[FN26]. Id. at 247.

[FN27]. Id.

[FN28]. 138 F. Supp. 2d 212 (D. Mass. 2001).

[FN29]. Id. at 214-215.

[FN30]. 199 F.R.D. 468 (E.D.N.Y. 2001).

[FN31]. Id. at 482-483 (emphasis added, internal citations omitted).

[FN32]. 2002 WL 1009463 (S.D.N.Y. 2002).

[FN33]. Id. at *2 (citing Jackson v. N.Y. Tel. Co., 163 F.R.D. 429, 431 (S.D.N.Y. 1995)).

[FN34]. Id. at *2.

[FN35]. 163 F.R.D. at 432.

[FN36]. 2003 WL 22701017 (E.D. Pa. 2003).

[FN37]. Id. at *2 (internal citations omitted).

[FN38]. Id. at *3.

[FN39]. 903 F. Supp. 889 (D. Md. 1995).

[FN40]. Id. at 893-894 (internal citations omitted).

[FN41]. Id. at 894 (internal citations omitted).

**(Cite as: 13 B.U. Pub. Int. L.J. 167)**


[FN42]. 286 F.Supp.2d 807 (S.D. Tex. 2003).

[FN43]. Id. at 810 (internal quotations and citations omitted).

[FN44]. 927 F.Supp. 249 (M.D. Tenn. 1996).

[FN45]. Id. at 251 (internal citations omitted).

[FN46]. 2001 WL 87887 (M.D. Tenn. 2001).

[FN47]. Id. at *4.

[FN48]. 210 F.R.D. 591 (S.D. Ohio 2002).

[FN49]. Id. at 596.

[FN50]. 2003 WL 21314065 (S.D. Ind. 2003).

[FN51]. Rochlin v. Cincinnati Ins. Co., 2003 WL 2185234 (S. D. Ind. 2003); Belbis v. County of Cook, 2002 WL 31600048 (N.D. Ill. 2002); Garza v. Chicago Transit Auth., 2001 WL 503036 (N.D. Ill. 2001); Krieg v. Pell's, Inc. 2001 WL 548394 (S. D. Ind. 2001). See also Woods v. N.Y. Life Ins. Co., 686 F.2d 578 (7th Cir. 1982).

[FN52]. Clausman, 2003 WL 21314065 at *3.

[FN53]. 2001 WL 34152094 (N.D. Iowa).

[FN54]. Id. at *2 (internal citations and quotations omitted).

[FN55]. 137 F.R.D. 264 (D. Minn. 1991).

[FN56]. Id. at 267 (internal quotations omitted).

[FN57]. 256 F. Supp. 2d 941 (W.D. Ark. 2003).

[FN58]. Id. at 945 (emphasis added).

[FN59]. Id. (citing Haynes v. Singer, 696 F.2d 884, 887 (11th Cir. 1983)).

[FN60]. Bonilla v. Las Vegas Cigar Co., 61 F.Supp.2d 1129, 1134 n.4 (D. Nev. 1999).

[FN61]. 855 F.2d 1062 (3d Cir. 1988).

[FN62]. 54 F.3d 1207 (5th Cir. 1995).

[FN63]. Bonilla, 61 F.Supp.2d at 1134 n.4.

[FN64]. Id. at 1134 n.6.

[FN65]. Id.

[FN66]. 1999 U.S. Dist. WL 1081357 (D. Or. 1999).

[FN67]. Id at *3.

©  2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FOR EDUCATIONAL USE ONLY
**(Cite as: 13 B.U. Pub. Int. L.J. 167)**

[FN68]. Id. at *4.

[FN69]. 2001 U.S. Dist. WL 1335809 (D. Or. 2001).

[FN70]. Id. at *2.

[FN71]. Id. at *3.

[FN72]. 950 F. Supp. 1053 (D. Colo. 1996).

[FN73]. Id. at 1066-1067 (internal quotations and citations omitted).

[FN74]. 175 F.R.D. 672 (D. Colo. 1997).

[FN75]. Id. at 678 (internal citations omitted).

[FN76]. Id. See also Reab v. Elec. Arts, Inc., 214 F.R.D. 623 (D. Colo 2002).

[FN77]. 252 F.3d 1208 (11th Cir. 2001).

[FN78]. Id. at 1218.

[FN79]. Id. at 1219.

[FN80]. Id.

[FN81]. See, e.g., Lowrey v. Circuit City Stores, 158 F.3d 742 (4th Cir. 1998); Forehand v. Florida State Hosp., 89 F.3d 1562 (11th Cir. 1996).

END OF DOCUMENT

©  2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 3

Westlaw.

Not Reported in F.Supp.2d          FOR EDUCATIONAL USE ONLY                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 1497709 (E.D.La.)
**(Cite as: 2004 WL 1497709 (E.D.La.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
E.D. Louisiana.
Derrin BASCO, et al.
v.
WAL-MART STORES INC., et al.
**No. Civ.A. 00-3184.**

July 2, 2004.

Morris Bart, III, Morris Bart, PLC, Randy Jay
Ungar, Kristi Ann Post, Ungar & Byrne, New
Orleans, LA, Michael X. St. Martin, Conrad S. P.
Williams, III, St. Martin & Williams, Houma, LA,
Jim S. Adler, Jim S. Adler & Associates, John M.
O'Quinn, Russell T. Lloyd, Stephen P. Agan,
O'Quinn, Laminack & Pirtle, Houston, TX, Franklin
D. Azar, Kenneth Pennywell, Franklin D. Azar &
Associates, Aurora, CO, Gerald L. Bader, Jr., Renee
B. Taylor, Bader & Associates, PC, Denver, CO, for
Plaintiffs.

Teresa Buckner, Bossier City, LA, pro se.

Robert K. McCalla, Lawrence Joseph Sorohan, II,
Fisher & Phillips, LLP, New Orleans, LA, for
Defendants.

*ORDER AND REASONS*

DUVAL, J.

**\*1** Before the Court is Plaintiffs' Motion for FLSA
Class Certification and to Approve Notice to All
Similarly Situated Employees in Louisiana. Oral
argument was held on March 18, 2004, with
supplemental briefing ordered; the last memorandum
was filed into the record on May 27, 2004. Having
reviewed the extensive pleadings, memoranda,
exhibits, deposition testimony and the relevant law,
the Court finds that the motion is without merit.

BACKGROUND
This case was originally filed on September 5, 2000
by Derrin Basco, Dorothy English and Colby Lagrue
in Civil District Court for the Parish of Orleans,

Louisiana, individually and on behalf of all other
similarly situated class members ("original
plaintiffs"), against Wal-Mart Stores, Inc. (including
all Louisiana Wal-Mart stores, Supercenters and
Sam's Clubs) ("Wal-Mart"). The petition also named
Wal-Mart managers, James Banks, Chris Martin,
Charles Lanclos, Charles Rinehart, Wayne Gordon
and Pat Curan ("the individual defendants"), as well
as all other store, club, district and regional managers
for the past ten years. ("John Does"). The Louisiana
claims against the individual employees were
dismissed, and a Motion to Remand was denied on
June 15, 2001. The procedural history of this case
was been discussed at length in Magistrate Judge
Roby's order allowing the Sixth Amended Complaint
to be filed in this matter, *Basco v. Wal-Mart Stores,
Inc., 2004 WL 574279 (E.D.La. March 19, 2004)* and
is incorporated herein. In addition, the factual and
procedural history is further outlined in this Court's
denial of a Motion for Class Certification on May 9,
2002. *Basco v. Wal-Mart Stores, Inc., 216 F.Supp.2d
592 (E.D.La.2002)* which is incorporated herein as
well. The United States Court of Appeals for the
Fifth Circuit denied plaintiffs leave to appeal the
denial of class certification on July 25, 2002.

On August 23, 2002, this matter was set for trial to
commence on April 28, 2003. On January 24, 2003,
defendants filed a Motion for Summary Judgment
seeking dismissal of certain of plaintiffs' remaining
claims based on prescription and all unjust
enrichment claims. While that motion was pending,
on February 27, 2003, four plaintiffs filed a Fourth
Amended Complaint which asserted for the first time
federal minimum wage and overtime violations
pursuant to the Fair Labor Standards Act of 1938, as
amended, 29 U.S.C. § § 201-219 ("FSLA").

A status conference was held on February 27, 2003,
during which plaintiffs sought a continuance of the
trial based on the new allegations. A proper motion
was filed by plaintiffs on March 17, 2003, noting
their desire to pursue their rights as a collective
action under the FLSA which required discovery.
The Court sought to have a conference to set this
matter for trial; however, plaintiffs moved for
continuance of the pretrial scheduling conference
because "plaintiffs and defense counsel have agreed
that there must be some discovery and motion
practice undertaken in order to prepare the case for a
hearing on Plaintiffs' motion to proceed as a

Not Reported in F.Supp.2d                FOR EDUCATIONAL USE ONLY                                    Page 2
Not Reported in F.Supp.2d, 2004 WL 1497709 (E.D.La.)
**(Cite as: 2004 WL 1497709 (E.D.La.))**

collective action." (Doc. 103). Thus, the parties set out to do the necessary discovery to present to the Court the instant issue. Based on counsel's request, the hearing on the certification of the collective action was set for January 15, 2004, with responses due on February 17, 2004 and a hearing on the matter set for March 4, 2004. No trial date was set at that time.

**\*2** A Fifth Amended Complaint was filed on November 11, 2003 which added 15 additional plaintiffs to this suit to flesh out the FLSA claims. [FN1] The hearing on the Motion for Certification was continued to March 18, 2004. As previously noted, after that hearing counsel requested additional time to file briefing on representative testimony which was completed on May 24, 2004.

>        FN1. By virtue of the Sixth Amended Complaint, two plaintiffs were dropped and nine new plaintiffs were added. The Court has focused on those plaintiffs that were named in the Fifth Amended Complaint, that is at the time of the filing of this motion. The new plaintiffs do not change the analysis of the matter before the Court.

Plaintiffs' Motion for FLSA Class Certification and to Approve Notice to All Similarly Situated Employees in Louisiana

The Claims

Plaintiffs seek class certification to pursue claims under the Fair Labor Standards Act of 1938, 29 U.S.C. § § 201-219 (hereinafter "FLSA"). Plaintiffs allege in the Fifth Amended Complaint that Wal-Mart pursues a pattern of conduct that results in (1) employees working off the clock, (2) employees being "locked-in" at night off-clock while waiting for management to let employees out, (3) and employees missing rest and meal breaks. Plaintiffs move the Court for an order (1) certifying this case as a collective action under § 216(b) of the FLSA, (2) approving the "Notice to Current and Former Wal-

Mart and Sam's Club Hourly Employees in Louisiana" (Exh. No. 21 to this motion) which would then be sent to the approximately 100,000 employees to be identified, by (3) compelling Wal-Mart to answer Interrogatory No. 2 of Plaintiffs' Fourth Set of Interrogatories (Exh. No. 22 to this motion).

The "class" is defined in plaintiffs' suggested "Notice" as:
>    any and all employees who are or have been, at any time within the past three (3) years: (a) Employed on an hourly basis at a Wal-mart or Sam's Club store that was owned and operated by Wal-Mart Stores, Inc. in the State of Louisiana; and (b) Did not receive minimum or overtime wages as a result of the practices described in Paragraph 2(a).

Paragraph 2(a) states:
>    This lawsuit alleges that Wal-Mart Stores, Inc. has violated the Act with regard to hourly workers as follows: (1) after clocking out after a shift, employees are required to work beyond their regular hourly schedules and are not paid for the time worked off the clock; (2) after clocking out for meal breaks, employees are required to perform work duties and are not paid for the time worked off the clock during their unpaid meal breaks; (e) employees are not permitted to take rest and meal breaks; and (4) managers have manipulated time and wage records to reduce amounts paid to Wal-Mart employees, including overtime pay.

(Plaintiffs' Memorandum in Support, Exh. 21).

Contained in Exhibit A is a list of the named plaintiffs [FN2] in the Fifth Amended Complaint, the location of the relevant store where that person is employed, the time of employment, the job description and the claims made on behalf of that person.

>        FN2. The claims of Teresa Buckner and Geneva Johnson-Heisler have been dismissed.

Exhibit A

| Name | Store Location | Time of Employment | Job Description | Claims |
|---|---|---|---|---|
| Regina Geason | Sam's Club No. 8221, Harvey | Feb. 1995-Feb.2000 | audit/inventory control | off clock/lock--in/rest and meals |
| Betty Matthews | Wal-Mart No. 23, Ruston | June 1989-April 2001 | overnight stocker, photo | off clock/lock--in/rest and meals |

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                FOR EDUCATIONAL USE ONLY                                    Page 3
Not Reported in F.Supp.2d, 2004 WL 1497709 (E.D.La.)
**(Cite as: 2004 WL 1497709 (E.D.La.))**

| | | | processor demo coordinator, zone manager, dept. manager | |
|---|---|---|---|---|
| K. Busby-Dunn | Wal-Mart No. 1206 Baton Rouge | Nov. 1999-June 2001 | lingerie dept. | off clock/lock-in/rest and meals |
| Janet Clay* | Wal-Mart No. 376 Bossier City | Nov. 1999-May 2001 | cashier | no overtime pay |
| Merle Davis | Wal-Mart No. 839 Baton Rouge | Dec. 1992-July 2001 | cashier | no overtime pay/lock-in/rest and meals |
| A. Dixon-Clark | Wal-Mart No. 1169 New Roads | ? ? | pharmacy dept. | off clock/rest and meals |
| C. Edwards | Wal-Mart No. 489 Hammond | Oct. 2000-July 2001 | receiving dept. | off clock/no overtime pay/rest and meals |
| C. Ferguson | Wal-Mart No. 2132 Baton Rouge | Sept. 1999--Sept.2001 | grocery dept. | off clock/no overtime pay |
| D. Gauthreaux | Wal-Mart No. 2132 Baton Rouge | April 1998--Feb.2001 | stoker and cashier | off clock/no overtime pay/rest and meals |
| Silas Handy* | Wal-Mart No. 376 Bossier City | 1997-2001 | ? ? ? | of f clock/rest and meals |
| Linus Mayes | Wal-Mart No. 376 Bossier City | Aug.2000-20-01 | receiving dept. | off clock/rest and meals |
| Fannie McClaim | Wal-Mart No. 428 Zachery | March 2001--May2001 | remodeling crew | off clock/rest and meals |
| Alfred Scott | Wal-Mart No. 201 Plaquemine | Feb. 2000-Aug.2001 | overnight stocker | off clock/no overtime pay/rest and meals |
| Lee Slaughter | Sam's Club No. | 1984 to | grocery dept. | off clock/rest |

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                FOR EDUCATIONAL USE ONLY                                Page 4
Not Reported in F.Supp.2d, 2004 WL 1497709 (E.D.La.)
**(Cite as: 2004 WL 1497709 (E.D.La.))**

| | 8273 | present | | and meals |
|---|---|---|---|---|
| | Shreveport | | | |
| Trinity Taylor | Wal-Mart No. 1206 Baton Rouge | Aug. 2000–June 2001 | hardware dept. | off clock/rest and meals |

 **\*3** The claims as noted vary; not each plaintiff complains of all "illegal" activities. Plaintiffs contend that these practices have resulted in the violation of the minimum wage and overtime provisions of the FLSA.

The FLSA and Collective Action Status

 Section 207(a) of the FLSA requires covered employers to compensate non-exempt employees at overtime rates for time worked in excess of statutorily-defined maximum hours. 29 U.S.C. § 207(a); *Freeman v. Wal-Mart Stores, Inc., 256 F.Supp.2d 941, 943 (W.D.Ark.2003).* An employee is authorized to bring an action on behalf of himself and other "similarly situated" employees. 28 U.S.C. § 216(b). [FN3] This type of action is meant to serve the interest of judicial economy and to aid in the vindication of plaintiffs' rights. *Id. citing Hoffman-LaRoche Inc. v. Sperling,* 439 U.S. 165, 170 (1989) (judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity). Thus, the inquiry before the Court is to determine whether the class as defined is "similarly situated."

> FN3. The Age Discrimination in Employment Act, 29 U.S.C. § 621, also explicitly incorporates section 16(b) of the FLSA, 29 U.S.C. § 216(b). *Mooney v. Aramco Services Co., 54 F.3d 1207, 1212* (5th Cir.1995). Thus, any discussion of this provision in the context of an ADEA claim is applicable to the case at bar.

 In the seminal case *Mooney v. Aramco Services Co., 54 F.3d 1207* (5th Cir.1995), the United States Court of Appeals for the Fifth Circuit noted that are the two different tests that have been applied to make this determination-- a two-step approach found in *Lusardi v. Xerox Corp., 122 F.R.D. 463, 465- 66(D.N.J.1988)* and the "Spurious Class Action" outlined in *Shushan v. University of Colorado,* 132 F.R.D. 263 (D.Colo.1990).

> Under *Lusardi,* the trial court approaches the "similarly situated" inquiry via a two-stage analysis. The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision-- usually based only on the pleadings and any affidavits

which have been submitted--whether notice of the action should be given to potential class members.
Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If th claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives-- i.e. the original plaintiffs--proceed to trial on their individual claims.

 **\*4** *Mooney* at 1213-14. Indeed, in *Lusardi,* the court considered the following factors to reach its decision to decertify the class at the second stage:

> (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the defendant] which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) the apparent absence of filings required by the ADEA prior to instituting suit.

 *Mooney, 54 F.3d at 1213 n. 7, citing Lusardi, 188 F.R.D. at 359; Thiesen v. General Electric Capital Corp., 267 F.3d 1095, 1103* (10th Cir.2001) (using the first three criteria).

 The second analysis is known as Spurious Class Action [FN4]

> FN4. *Bayles v. American Medical Response of Colorado, 950 F.Supp. 1053 (D.Col.1996)* identified three other analyses--all variations using a Rule 23analysis; however, in light of *Mooney,* the Court need not examine these other

Not Reported in F.Supp.2d                    FOR EDUCATIONAL USE ONLY                                    Page 5
Not Reported in F.Supp.2d, 2004 WL 1497709 (E.D.La.)
(Cite as: 2004 WL 1497709 (E.D.La.))

methods. "Litigation of Wage and Collective Actions" at 132.

The second line of cases is typified by *Shushan v. University of Colorado,* 132 F.R.D. 263 (D.Colo.1990). *Shushan* espouses the view that § 16(B) of the Fair Labor Standards Act (FLSA) merely breathes new life into the so-called "spurious" class action procedure previously eliminated from Fed.R.Civ.P. 23. Building on this foundation, the court determined that Congress did not intend to create a completely separate class action structure for the FLSA and ADEA context, but merely desired to limit the availability of Rule 23 class action relief under either Act. In application, the court determined that Congress intended the "similarly situated" inquiry to be co-extensive with Rule 23 class certification. In other words, the court looks at "numerosity," "commonality," "typicality" and "adequacy of representation" to determine whether a class should be certified.

*Mooney,* 54 F.3d at 1214, [FN5] This approach has not been embraced as often as the one found in *Lusardi.*

> FN5. Both in *Mooney* and *Freeman,* the courts found it unnecessary to choose between the two tests. The courts found that based on the record before them that no matter which test was used a finding that the opt-in plaintiffs or potential opt-in plaintiffs were not similarly situated.

Given the direction of the Tenth and Eleventh Circuits and the great weight of district court authority, a consensus has been reached on how section 216(b) cases should be evaluated. It is clear that the two-step ad hoc approach is the preferred method for making the similarly situated analysis and that the similarly situated standard does not incorporate Rule 23 requirements.

D. Bergen and L. Ho, "Litigation of Wage and Hour Collective actions under the Fair Labor Standards Act" 7 Employee Rts. & Emp. Pol'y J. 129, 134 (2003). [FN6] The authors continue:

> FN6. Rule 23, which is generally considered a "stricter" rule, *Garza v. Chicago Transit Authority,* 2001 WO 504036 (N.D.Ill. May 8, 2001) would require findings on numerosity, commonality, typicality and adequacy tests.

While the recent court of appeals opinions have clarified the standards and procedure for making the 'similarly situated' determination, the district courts are still wrestling with the application of such standards. The similarly situated standard is evaluated differently depending on if the inquiry takes place when: (1) plaintiffs seek court-facilitated notice early in the

litigation; or (2) discovery has closed or the defendant seeks to decertify a previously certified class propr to trial.
*Id.*

Based on the foregoing, the Court will employ the two-step approach found in *Lusardi.* However, in light of the substantial discovery that has occurred in this matter, the Court will consider the criteria for both the first and second steps in deciding whether it should certify this matter. At least one court has proceed directly to the second stage when "the parties do not dispute that discovery has been undertaken relating to the issues of certification of this action as a collective action." *Pfohl v. Farmers Ins. Group,* 2004 WL 554834 (C.D.Cal. March 1, 2004). Indeed, in the instant matter substantial discovery has occurred; the Court has heard the video deposition testimony of a substantial number of plaintiffs at the hearing on this matter and has independently reviewed written deposition testimony as well. This case, as demonstrated by its long procedural history, is not in a nascent stages. Thus, an application of the second criteria is called for.

**\*5** Because the aim of collective actions is to promote judicial economy, and substantial discovery has already been undertaken such that the Court can make an educated decision as to whether certifying this matter as a collective action would survive the decertification process, the ends of judicial economy and require the Court to make that enquiry at this stage. To create a collective action class, including the cost associated with that when a Court is convinced that there is insufficient support for same prior to its certification would be an exercise in futility and wasted resources for all parties involved.

Similarly Situated

The Standard Employed

Plaintiffs bear the burden of establishing that they are similarly situated to the proposed class. *Pfohl v. Farmers Ins. Group,* 2004 WL 554834 (C.D. Cal. March 1, 2004, citing *White v. Osmose, Inc.,* 204 F.Supp.2d 1309, 1313 (M.D.Ala.2002). As stated by Judge Feldman in *Helmerich and Payne Intern'l Drilling Co.,* 1992 WL 91946 (E.D.La. April 16, 1992):

> Similarly situated does not mean identically situated. *See Heagney* [v. European American Bank, 122 F.R.D., 515 (E.D.Wash.1989) ]; *Palmer v. Readers Digest Association,* 42 Fair Empl. Prac. 212, 213 (S.D.N.Y.1986); *Riojas [v. Seal Produce, Inc.* 82 F.R.D. 613, 617 (S.D.Tex.1979). Rather, an FLSA class determination is appropriate when there is "a

Not Reported in F.Supp.2d          FOR EDUCATIONAL USE ONLY                    Page 6
Not Reported in F.Supp.2d, 2004 WL 1497709 (E.D.La.)
(Cite as: 2004 WL 1497709 (E.D.La.))

demonstrated similarity among the individual situations ... some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]." *Heagney, supra* .... Thus, a court can foreclose a plaintiff's right to proceed collectively only if "the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice." *Burt v. Manville Sales Corp.,* 116 F.R.D. 276, 277 (D.Colo.1987).

*Id.* at *2. This standard has been restated and further refined in *H & R Block, Ltd. v. Housden,* 186 F.R.D. 399 (E.D.Tex.1999):

> although the standard for satisfying the first step is lenient, ..., the court still requires at least "substantial allegations that the putative class members were together victims of a single decision, policy or plan infected by discrimination." courts who have faced the question of whether movants established substantial allegations have considered factors such as whether potential plaintiffs were identified ...; whether affidavits of potential plaintiffs were submitted ...; and whether evidence of a widespread discriminatory plan was submitted....

*Id.* at 400. Another district court has concluded "that while a united policy, plan or scheme of discrimination may not be required to satisfy the more liberal similarly situated requirement, some identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial efficiency. *Barron v. Henry County School System,* 242 F.Supp.2d 1096 (M.D.Ala.2003), citing *Sheffield v. Orius Corp.,* 211 F.R.D. 411, 416 (D.Or.2002).

First Step--Facts or Legal Nexus that Binds so as to Create Judicial Efficiency

*6 In essence, plaintiffs' argument of their being "similarly situated" as all to Louisiana Wal-Mart employees who are not paid overtime rests on the alleged "Wal-Mart mentality" of no overtime and strict budgeting of time and employee costs. To support this position, plaintiffs contend that Wal-Mart has engaged in a practice of limiting the amount of work its employees are allowed to perform on the clock during the week but not the amount of work they are required to do. They claim it is the result of a "Customer Service Scheduling System" which is a computer network used to monitor hours worked and control payroll costs at its individual stores on a daily basis--department-by-department and employee-by-employee. Plaintiffs rely on (1) the Customer Service Scheduling System; (2) evidence that hourly employees are not compensated for all of their work; and (3) bonus incentives for Store Managers.

(1) Customer Service Scheduling System

The Customer Service Scheduling System ("CSSS") is a computer program used to optimize the hours worked in relation to the historical needs of the business. It apparently creates "preferred hours" for each store which are determined as a percentage of historical and projected sales revenues. (Perrin Deposition pp. 5-10). These "preferred hours" are then used by store managers to create the "scheduled hours" for their stores. The store then tracks the "actual hours". Wal-Mart allegedly expects that payroll costs as a percentage of sales revenues be maintained at around 8%.

In addition there is a "Store Staffing Comparison by Day Report" to monitor Associates who may be working over or under their scheduled hours. There is also a "Associate Scheduling Review Report" which store managers can use to verify that the amount of wages scheduled is consistent with the budget.

Plaintiffs also provide evidence that they contend proves that (1) the computer prompts managers when they try to add shifts to obtain the District Managers approval for the addition, (2) the method by which the time clocks are "polled" and "finalized" shaved time off (which Wal-Mart vehemently denies), also (3) managers being "coached" on employee cost overruns.

(2) Hourly Employees Not Compensated for All of Their Work

(a) Off the Clock

Plaintiffs' counsel contends that plaintiffs were "often" required to work "off the clock. Reviewing the deposition testimony of the seven plaintiffs [FN7] however does not overwhelm the Court as evidence of a policy or practice, it appears to be extremely anecdotal--one manager requiring it as oppose to all, perhaps once or twice during the course of a plaintiff's work.

> FN7. Ferguson, Slaughter, Clark, McClain, Gauthreaux, Handy and Mayes.

(b) working more than 40 hours--no overtime

Likewise, plaintiffs presented testimony of five employees complaining that they worked more than 40 hours without receiving overtime pay.

(3) Bonus Incentives for Store Managers

In further support of this theory, plaintiffs contend that managers are awarded bonuses for keeping salary costs

Not Reported in F.Supp.2d                    FOR EDUCATIONAL USE ONLY                                    Page 7
Not Reported in F.Supp.2d, 2004 WL 1497709 (E.D.La.)
**(Cite as: 2004 WL 1497709 (E.D.La.))**

down and that as a result there is an added incentive for managers to have employees to work off the clock, contrary to Wal-Mart's written policies.

**\*7** Based on these policies and procedures, plaintiffs rely on examples of the effect of the application of these alleged practices to demonstrate why this matter should proceed as a collective action. Plaintiffs focus on the fact that there is evidence of "wide-spread occurrence of off-the-clock-work and unpaid overtime" which they say they've uncovered without much discovery. Plaintiffs note that they've found nine more individuals that they've included in a Sixth Amended Complaint that have been deposed and have testified to working off the clock or not being paid overtime.

Plaintiffs point to the testimony of a former store manager for Wal-Mart Store No. 803, Mr. Mitchell, in Bogalusa from July 2000 to July 2002, who claims that six people worked off the clock to "protect him." He also claims he was instructed to delete overtime from employees' time records in April or May of 2002. Mitchell names Charles Reinhardt and Donna Turpirtz as district managers who were making decisions that led him to be understaffed.

Nonetheless, Wal-Mart contends that even using the lenient standard, plaintiffs' request should be denied as plaintiffs have not identified a "single decision, policy or plan" as set forth in *Mooney v. Aramco Serv. Co.,* 54 F.3d 1207, 1214 n. 8 (5th Cir.1995). It contends that the anecdotal, that is to say individual instances cited are not enough to support a finding of being "similarly situated." To that end they have provided a number of affidavits from managers explaining the process of scheduling that they are instructed to use and they are not under any circumstances to have workers work "off-clock". Wal-Mart specifically counters each exhibit showing that the inferences promoted by plaintiffs are ill-founded.

Wal-Mart further contends that in order to prove plaintiffs' case, the facts are too individualized to warrant this kind of procedure. First, the plaintiffs themselves are responsible for punching in and out. Wal-Mart's policy requiring payment for all working time and any deviations for that policy occurs on a manager-by-manager and associate-by-associate basis involving particular circumstances and anecdotal testimony. The Court notes that one of the most telling example of this principle was supported by the testimony of Mr. Gauthreaux who loved working in the meat department because he never was asked to be off-clock and had only been asked once to be off-clock; the testimony of Charles Ferguson supports the same conclusion.

Taking all of this into consideration, the Court must agree with Wal-Mart's characterization of the evidence presented. Simply put, plaintiffs seek to make a corporate policy to keep employee wage costs low sufficient proof to justify the creation of a class of all Wal-Mart employees that have not been properly paid overtime in the last three years. It is obvious from the discovery presented that this "policy" and its effects are neither homogeneous nor lend themselves to collective inquiry. The effects of the policy as alleged are anecdotal, that is to say particularized. Plaintiffs' own witnesses demonstrate that the "policy" was not even uniformly or systematically implemented at any given store. While it is true that this "lesser" standard should not preclude certification, and "similarly situated" does not mean identically situated, plaintiffs have failed in their burden of proof to demonstrate identifiable facts or legal nexus that binds the claims so that hearing the cases together promotes judicial efficiency. For this reason the Court would deny the Motion to Certify Collective Action. However, pretermitting that finding, the Court will now examine this matter using the more demanding second step. [FN8]

> FN8. The Court is not unaware that the two "step" inquiry somewhat collapses into one when a Court is faced with the plethora of evidence that was presented in this matter. Certainly the first "step" analysis is colored by the facts demonstrated--disparate factual and employment settings of the individual--and perhaps the Court should simply start at the second step as was done in the *Pfohl* case. Nonetheless, for purposes of appeal, the Court will go through the complete analysis.

Second Step--Disparate Settings, Disparate Defenses and Procedural

**\*8** Now, the Court will examine whether there are (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to Wal-Mart which appear to be individual to each plaintiff; and (3) fairness and procedural considerations that would make certification improper. "It would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Freeman v. Wal-Mart Stores, Inc.,* 256 F.Supp.2d 941 (W.D.Ark.2003).

The Court finds that the evidence presented and outlined above further underscores the disparate factual and employment settings of the individual plaintiffs. These

Not Reported in F.Supp.2d, 2004 WL 1497709 (E.D.La.)
**(Cite as: 2004 WL 1497709 (E.D.La.))**

facts demonstrate that it would not be in the interest of judicial economy to certify the state-wide class of employees. A store locate in Northern Louisiana faces different pressures and sales dynamics than a store in Southern Louisiana. Such variances would be equally possible even within the New Orleans area from store to store. Furthermore, the breadth of the type of employees and departments would also have to be placed into the equation. In addition, it is clear that even within a given store, one manager in one department would react to the "policy" differently than in another department. (e.g.--Mr. Gauthreaux--working in the meat department versus working as a cashier).

Furthermore, Wal-Mart's potential defenses to any alleged FLSA overtime violations will require highly individualized evidence concerning each associate. As stated in *Mooney,* 54 F.3d 1213, n. 7 "the disparate individual defenses asserted by [defendant] heightens the individuality of the claims and complicates the significant management problems." As Wal-Mart correctly noted, it would be entitled to:

(1) contest whether any off-the-clock work occurred and whether it resulted in nonpayment of FLSA overtime;

(2) argue specific defenses available under the FLSA that seem to require individual testimony particularly in reference as to what constitutes "work" under the FLSA;

(3) demonstrate its managers and supervisors did not know about the off-the clock work and that plaintiffs failed to take advantage of Wal-mart's system for reporting time;

(4) demonstrate that plaintiffs' claims are barred by § 4 of the Portal to Portal Act, 29 U.S.C. § 254, as to all hours during which plaintiffs were engaged in activities that were preliminary or post-liminary to their principal activities;

(5) demonstrate that any off-the-clock work falls within the *de minimus* exception to the FLSA;

(6) demonstrate associates claims are barred by statute of limitations or technical defaults; and

(7) demonstrate that each manager acted in good faith and that liquidated damages are not appropriate.

These factors also support the finding that a collective action of this nature presents enormous manageability problems because there is no single decision, policy or plan at issue. The findings decertifying the collective action in *Lusardi* are equally appropriate here. The members of the proposed class come from different departments, groups, organizations, sub-organizations, units and local offices within the Wal-Mart organization. The potential opt-in plaintiffs performed different jobs at different geographic locations and were subject to

different managerial requirements which occurred at various times as a result of various decisions by different supervisors made on a decentralized employee-by-employee basis. This case should not be certified; it would be an exercise in gross mismanagement of judicial and litigant time and money to certify the class as requested given the overwhelming evidence brought before the court. [FN9] Accordingly,

> FN9. In *Thiebes v. Wal-Mart Stores, Inc., 1999 WL 1081357 (D. Oregon Dec. 1, 1999),* the court allowed an FSLA action to proceed against Wal-Mart based on its findings at the First Stage and allowed the action to proceed for notice and discovery purposes. Using the less stringent standard, the court held that there were sufficient identifiable factual and legal bases that the potential plaintiffs were a victim of a common policy. Although not reported, it is this Court's understanding that ultimately the liability questions went to a jury which found in favor of the plaintiffs. Moreover, it is the Court's understanding that approximately 425 employees oped-in. There is no reported case addressing a motion for decertification after discovery had been completed. Because there has been substantial discovery in this case, this Court's analysis is based on a stricter standard in this instance.

**\*9** IT IS ORDERED that Plaintiffs' Motion for FLSA Class Certification and to Approve Notice to All Similarly Situated Employees in Louisiana is DENIED.

Not Reported in F.Supp.2d, 2004 WL 1497709 (E.D.La.)

**Motions, Pleadings and Filings** **(Back to top)**

• 2004 WL 1328003 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memoranda of Law in Response to the Court's Request for Briefing on the Subject of Representative Testimony in FLSA Cases (Apr. 15, 2004)

• 2004 WL 1328002 (Trial Motion, Memorandum and Affidavit) Ex Parte Motion for Leave to Enter Exhibits into the Record (Mar. 26, 2004)

• 2004 WL 1327973 (Trial Pleading) Plaintiffs' Sixth Amended Complaint (Mar. 19, 2004)

• 2004 WL 1327999 (Trial Motion, Memorandum and Affidavit) Motion to Dismiss Plaintiff, Geneva Johnson-Heisler Without Prejudice (Mar. 11, 2004)

• 2004 WL 1327996 (Trial Motion, Memorandum and

Not Reported in F.Supp.2d                FOR EDUCATIONAL USE ONLY                                    Page 9
Not Reported in F.Supp.2d, 2004 WL 1497709 (E.D.La.)
**(Cite as: 2004 WL 1497709 (E.D.La.))**

Affidavit) Opposition to Motion to Amend (Mar. 09, 2004)

• 2004 WL 1327994 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion to Dismiss Plaintiff Teresa Buckner (Feb. 25, 2004)

• 2004 WL 1327995 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion to Dismiss Plaintiff Geneva Johnson-Heisler (Feb. 25, 2004)

• 2004 WL 1327990 (Trial Motion, Memorandum and Affidavit) Opposition to Motion to Certify Collective Action (Feb. 17, 2004)

• 2004 WL 1327972 (Trial Pleading) Answer to Fifth Amended Complaint (Feb. 02, 2004)

• 2004 WL 1327991 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion for FLSA Class Certification and to Approve Notice to all Similarly Situated Employees in Louisiana (Jan. 15, 2004)

• 2003 WL 23539137 (Trial Pleading) Plaintiffs' Fifth Amended Complaint (Nov. 10, 2003)

• 2003 WL 23539293 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion to Enroll Additional Counsel of Record (Nov. 06, 2003)

• 2003 WL 23539294 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Unopposed Motion to Dismiss Derrin Basco (Nov. 06, 2003)

• 2003 WL 23539291 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Unopposed Motion for Continuance of Pretrial Scheduling Conference (Jul. 10, 2003)

• 2003 WL 23539289 (Trial Motion, Memorandum and Affidavit) Motion to Admit Visiting Attorney (May. 09, 2003)

• 2003 WL 23539288 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Unopposed Motion for Continuance of Trial Date (Mar. 17, 2003)

• 2003 WL 23539136 (Trial Pleading) Answer to Fourth Amended Complaint (Mar. 12, 2003)

• 2003 WL 23539135 (Trial Pleading) Plaintiffs' Fourth Amended Complaint (Feb. 27, 2003)

• 2003 WL 23539286 (Trial Motion, Memorandum and Affidavit) Defendant's Ex Parte Motion to Substitute Original Signed Declaration (Feb. 26, 2003)

• 2003 WL 23539284 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response in Opposition to Defendant's Motion in Limine to Exclude Expert Testimony and Reports (Feb. 25, 2003)

• 2003 WL 23539283 (Trial Motion, Memorandum and Affidavit) Defendant's Motion in Limine to Exclude Expert Testimony and Reports (Feb. 14, 2003)

• 2003 WL 23539282 (Trial Motion, Memorandum and Affidavit) Defendants' Motion for Summary Judgment (Jan. 24, 2003)

• 2002 WL 32520153 (Trial Motion, Memorandum and Affidavit) Defendant's Motion to File an Opposition to Plaintiffs' Motion for Class Certification Which Exceeds the Twenty-Five (25) Page Limit (May. 15, 2002)

• 2002 WL 32520152 (Trial Motion, Memorandum and Affidavit) Defendant's Opposition to Plaintiffs' Objection to Magistrate's Ruling on Plaintiffs' Motion for Protective Order (Mar. 13, 2002)

• 2002 WL 32520150 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Supplemental Memorandum of Law in Support of Class Certification (Jan. 18, 2002)

• 2002 WL 32520003 (Trial Pleading) Answer to Third Amended Complaint (Jan. 11, 2002)

• 2002 WL 32520146 (Trial Motion, Memorandum and Affidavit) Defendant's Motion for Reconsideration of Ruling on Plaintiffs' Motion for Protective Order (Jan. 03, 2002)

• 2001 WL 34562690 (Trial Motion, Memorandum and Affidavit) Defendant's Opposition to Plaintiffs' Motion for Class Certification (Dec. 28, 2001)

• 2001 WL 34562689 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Defendant's Motion for Partial Summary Judgment (Dec. 26, 2001)

• 2001 WL 34562692 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion for Continuance of Defendants' Motion for Partial Summary Judgment (Dec. 26, 2001)

• 2001 WL 34562735 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to Defendant's Motion in Limine to Exclude the Testimony of James R. Thompson (Dec. 26, 2001)

• 2001 WL 34562688 (Trial Motion, Memorandum and

Not Reported in F.Supp.2d          FOR EDUCATIONAL USE ONLY                                    Page 10
Not Reported in F.Supp.2d, 2004 WL 1497709 (E.D.La.)
**(Cite as: 2004 WL 1497709 (E.D.La.))**

Affidavit) Defendants' Opposition to Plaintiffs' Motion for Protective Order (Dec. 21, 2001)

• 2001 WL 34562691 (Trial Motion, Memorandum and Affidavit) Defendant's Motion for Expedited Hearing on its Motion to File an Opposition to Plaintiffs' Motion for Class Certification Which Exceeds the Twenty-Five (25) Page Limit (Dec. 20, 2001)

• 2001 WL 34562687 (Trial Motion, Memorandum and Affidavit) Defendant's Motion in Limine to Exclude the Testimony of James R. Thompson (Dec. 17, 2001)

• 2001 WL 34562685 (Trial Motion, Memorandum and Affidavit) Motion for Partial Summary Judgment (Dec. 14, 2001)

• 2001 WL 34562686 (Trial Motion, Memorandum and Affidavit) Motion for an Expedited Hearing on Plaintiffs' Motion for Protective Order Prohibiting Defendant from Unsupervised Contact with Potential Class Members (Dec. 13, 2001)

• 2001 WL 34562684 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion for Protective Order Prohibiting Defendants from Unsupervised Contact with Potential Class Members (Dec. 12, 2001)

• 2001 WL 34562425 (Trial Pleading) Plaintiffs' Third Amended Complaint (Dec. 04, 2001)

• 2001 WL 34562682 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion for Class Certification (Nov. 30, 2001)

• 2001 WL 34562681 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Unopposed Motion to Modify Dates for Pre-Certification Discovery and to Set Other Dates (Oct. 29, 2001)

• 2001 WL 34562680 (Trial Motion, Memorandum and Affidavit) Defendant's Motion to Set Deadlines for Exchange of Witness List and Exhibits (Oct. 16, 2001)

• 2001 WL 34562679 (Trial Motion, Memorandum and Affidavit) Motion to Admit Visiting Attorney (Oct. 01, 2001)

• 2001 WL 34562424 (Trial Pleading) Answer to Second Amended Complaint (Sep. 19, 2001)

• 2001 WL 34562401 (Trial Motion, Memorandum and Affidavit) Supplemental Memorandum in Support of Plaintiffs' Motion to Remand (Jun. 15, 2001)

• 2001 WL 34562673 (Trial Motion, Memorandum and Affidavit) Motion to Add Co-Counsel (Apr. 27, 2001)

• 2001 WL 34562672 (Trial Motion, Memorandum and Affidavit) Defendants' Opposition to Plaintiffs' Motion to Reconsider (Apr. 24, 2001)

• 2001 WL 34562669 (Trial Motion, Memorandum and Affidavit) Defendants' Opposition to Plaintiffs' Motion to Remand (Feb. 20, 2001)

• 2001 WL 34562670 (Trial Motion, Memorandum and Affidavit) Defendants' Opposition to Plaintiffs' Motion to Amend (Feb. 20, 2001)

• 2001 WL 34562667 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion to Remand (Feb. 09, 2001)

• 2001 WL 34562668 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion for Leave to File Amended Complaint (Feb. 09, 2001)

• 2000 WL 34339238 (Trial Motion, Memorandum and Affidavit) Motion to Admit Visiting Attorneys (Nov. 27, 2000)

• 2:00CV03184 (Docket) (Oct. 27, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 4

**Westlaw.**

Not Reported in F.Supp.2d          FOR EDUCATIONAL USE ONLY                                      Page 1
Not Reported in F.Supp.2d, 2004 WL 554834 (C.D.Cal.)
**(Cite as: 2004 WL 554834 (C.D.Cal.))**

C

Only the Westlaw citation is currently available.

United States District Court,
C.D. California.
Thomas PFOHL, et al, Plaintiffs,
v.
FARMERS INSURANCE GROUP, Defendant.
No. CV03-3080 DT (RCX).

March 1, 2004.

Derrick Fisher, Derrick Fisher Law Offices, Pasadena, CA, Joseph E Fieschko, Jr., Joseph E Fieschko Jr & Associates, Pittsburgh, PA, for Plaintiffs.

Lee T. Paterson, Jessie Ann Kohler, Winston & Strawn, Los Angeles, for Defendant.

ORDER DENYING PLAINTIFF THOMAS PFOHL'S AMENDED MOTION FOR CERTIFICATION OF COLLECTIVE ACTION UNDER SECTION 216(B) OF THE FAIR LABOR STANDARDS ACT

TEVRIZIAN, J.

I. *Background*

**\*1** This action is brought by Plaintiff Thomas Pfohl ("Plaintiff") against Defendant Farmers Insurance Exchange, erroneously sued as Farmers Insurance Group ("Farmers"), for overtime wages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Plaintiff brings this action on behalf of himself and all other similarly situated employees who were employed by Farmers as temporary full-time insurance adjusters. Presently before this Court is Plaintiff's Amended Motion for Certification of Collection Action Under Section 216(b) of the FLSA.

A. Factual Summary

The following facts are alleged in the Complaint:

Plaintiff was employed by Farmers from February 26, 2002 until October 11, 2002. (Complaint, ¶ 8.) He was paid $40.00 per hour, with no minimum salary, worked approximately seventy hours per week and was not paid at a rate one and a half times his normal rate for hours worked in excess of forty hours per week. (*See id.*) His duties consisted of working on Farmers' files involving claims submitted to Farmers for property damage and other damages alleged to be caused by the formation of mold in residential and commercial buildings. (*See id.*)

Plaintiff brings this action as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b). (*See id.* at ¶ 3.) All Plaintiffs were "employees" of Farmers because they were required to comply with Farmers' instructions about when, where and how they were expected to work. (*See id.* at ¶ 6.) Plaintiffs have a right of recovery under the FLSA for unpaid overtime wages owed to them for hours worked in excess of forty hours per week in which their compensation was based upon the number of hours they worked each week, but they were not paid an amount equal to one and a half times their normal hourly rate for all hours worked in excess of forty hours per week. (*See id.* at ¶ 5.)

B. Procedural Summary

On January 6, 2003, Plaintiff filed the Complaint in the United States District Court for the Northern District of California ("Northern District").

On February 3, 2003, Farmers filed its Answer in the Northern District.

On March 10, 2003, Farmers filed a Motion to Transfer Venue in the Northern District.

On April 14, 2003, the Northern District filed an Order of Transfer, transferring this action to the Central District of California. Upon receipt of this action, the action was assigned to this Court.

On August 11, 2003, this Court held a Scheduling Conference and set the following dates: Phase I discovery cutoff on November 28, 2003 and status conference on December 8, 2003.

On September 8, 2003, Plaintiff filed a Motion for Certification of Collective Action Under Section 216(b) of the FLSA.

On September 15, 2003, a Consent to Opt In as Class Member was filed.

Not Reported in F.Supp.2d                FOR EDUCATIONAL USE ONLY                                    Page 2
Not Reported in F.Supp.2d, 2004 WL 554834 (C.D.Cal.)
**(Cite as: 2004 WL 554834 (C.D.Cal.))**

On September 23, 2003, three Consents to Opt In as Class Member were filed.

On November 23, 2003, Plaintiff filed an Amended Motion for Certification of Collective Action Under Section 216(b) of the Fair Labor Standards Act, which is currently before this Court. [FN1] The previously set Status Conference was also continued to this date.

> FN1. Farmers filed an Opposition to this Motion, and Plaintiff filed a Reply. However, because Plaintiff submitted new evidence and raised new arguments in his Reply, Farmers was permitted to file a Sur-Reply.

**\*2** On February 10, 2004, six Consents to Opt In as Class Member were filed.

On February 12, 2004, Plaintiff filed a "Hearing Date on Motion to Amend Complaint In Action At Law March 8, 2004 at 10:00 A.M." [FN2]

> FN2. Plaintiff attempted to file a Motion to Amend Complaint on January 30, 2004; however, a Notice of Document Discrepancy was issued whereby said Motion was ordered not to be filed but instead rejected because written notice of motion was lacking or the timeliness of notice was incorrect and because the proposed order was not a separate document. On February 12, 2004, Plaintiff filed this document entitled "Hearing Date on Motion to Amend Complaint in Action at Law March 8, 2004 at 10:00 A.M," and he lodged a Proposed Order. Apparently, these documents were filed in response to the Notice of Document Discrepancy; however, the Motion to Amend itself was never filed with the Court. As such, the hearing date of March 8, 2004 does not exist because no "Motion to Amend Complaint" has been properly filed with the Court. Unfortunately, it appears that Plaintiff served a Motion to Amend on Farmers, even though such motion was not properly filed, because Farmers filed an opposition to such motion.

On February 24, 2004, three Consents to Opt In as Class Member were filed.

II. *Discussion*

A. *Standard*

The FLSA provides an "employee" with a private right of action against his "employer" when that employer fails to pay overtime wages, i.e., one and one-half times the regular rate of pay per hour, when the employee works in excess of forty hours per week. *See* 29 U.S.C. § § 203, 207. An employee is also authorized to bring an action on behalf of similarly situated employees, *Id.* at § 216(b); *Doe v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir.2000). Such an action is a type of class action, known as a "collective action," for employees who are "similarly situated" to the plaintiffs and who opt-in to the suit by filing a consent in writing with the court. 29 U.S.C. § 216(b). If employees do not opt in by filing a written consent, they are not bound by the outcome of the collective action and may bring a subsequent private action. *EEOC v. Pan Am. Work Airways, Inc.*, 897 F.2d 1499, 1508 n. 11 (9th Cir.1990). A district court may authorize the named plaintiffs in a FLSA collective action to send notice to all potential plaintiffs and may set a deadline for plaintiffs to join the suit by filing consents to sue. *Does I through XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir.2000)(citing *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169, 172, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)).

B. *Analysis* [FN3]

> FN3. Rulings to the objections asserted by the parties shall be deemed consistent with the analysis set forth herein.

1. Plaintiff must show that he is "similarly situated" to the purported collective action group he wishes to represent

Based on the Standard set forth above, at issue here is whether Plaintiff and the proposed collective action group are "similarly situated" for purposes of Section 216(b). "A plaintiff bears the burden of establishing that he and the class he wishes to represent are similarly situated." *White v. Osmose, Inc.*, 204 F.Supp.2d 1309, 1313 (M.D.Ala.2002). Section 216(b) does not define "similarly situated," and the Ninth Circuit has not defined it either. The Tenth Circuit has noted that various approaches have been taken in determining whether plaintiffs are "similarly situated." *See Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1102-03 (10th Cir.2001)(discussing three possible approaches to the "similarly situated" analysis). As another district court in this district observed, of these approaches,

Not Reported in F.Supp.2d                FOR EDUCATIONAL USE ONLY                                    Page 3
Not Reported in F.Supp.2d, 2004 WL 554834 (C.D.Cal.)
**(Cite as: 2004 WL 554834 (C.D.Cal.))**

the majority of courts prefer the *ad hoc,* two-tiered approach. *Wynn v. National Broadcasting Company, Inc.,* 234 F.Supp.2d 1067, 1082 (C.D.Cal.2002). Under this approach, the district court makes two determinations, on an *ad hoc,* case-by-case basis. *See id.* The first determination is made based on the pleadings and any affidavits that have been submitted as to whether the class should be certified. *See id.* Because of the minimal evidence at this stage, this determination is made based on a fairly lenient standard. *See id.* The second determination is made after discovery is largely complete. *See id.* There, the court weighs various factors in making a factual determination as to whether the plaintiffs are similarly situated. *See id.* Such factors include (1) the disparate factual and employment settings of the individual plaintiffs, (2) the various defenses available to the defendant which appeared to be individual to each plaintiff, and (3) fairness and procedural considerations. *Thiessen,* 267 F.3d at 1103.

**\*3** In this case, the parties do not dispute that discovery has been undertaken relating to the issues of certification of this action as a collective action. As such, the Court can proceed to the second determination discussed above and weigh relevant factors to determine whether the plaintiffs are similarly situated.

2. The parties' contentions

In his Motion, Plaintiff explains that an inordinate number of "mold claims" were submitted to Farmers by its policyholders during the years 2000 and 2001, and that in order to deal with this dramatic and sudden increase in this type of claim, Farmers contracted with outside personnel companies, including Continental Staffing, Inc. ("Continental"), and outside adjusting companies, including Wardlaw Claims Service, LLP ("Wardlaw"), NCA and Eberls, to hire additional adjusters on a full-time temporary basis to help Farmers' own adjusters handle this sudden influx of claims. Plaintiff himself was hired through Continental.

Plaintiff defines the class as follows:
All those individuals who were paid on an hourly basis and who were not paid overtime wages at the rate of one and one-half times their regular rate. They were generally hired in December of 2001 and thereafter. They were hired as temporary full time adjusters through personnel companies (such as Continental) or adjusting companies (such as Wardlaw, NCA or Eberls). They usually worked on

mold claim files. They generally worked in the states of Texas or California. They generally worked in (or out of) permanent Farmers offices, under the direction of Farmers supervisors, the Farmers supervisors approved their time cards, and they generally performed the same tasks that permanent Farmers employees performed.

In opposition, Farmers contends that Plaintiff has presented no evidence to support his contention that he is "similarly situated" to the other individuals he seeks to represent. Specifically, it argues that there are three primary issues in which Plaintiff must demonstrate that he is "similarly situated" to the proposed collective group before a collective action may proceed in this case: (1) that Farmers was a joint employer; (2) that each of the putative plaintiffs was not paid according to the "salary basis test" or applicable fee-based regulations; and (3) that the putative plaintiffs did not meet the "duties test" of the administrative exemption. It argues that each of these requires a fact-intensive inquiry that, in this case, is not suitable to the collective action proposed by Plaintiff.

This Court examines each of these issues below.

3. Farmers is not the joint employer of Plaintiff and even if it was, Plaintiff has not shown that he is similarly situated to the other members of the proposed collective action group with respect to each member's employment relationship with Farmers

Independent contractors are not covered by the FLSA; that is, there must be an employer-employee relationship for liability to accrue for alleged unpaid overtime. *See Chao v. A-One Med. Servs.,* 346 F.3d 908, 917-18 (9th Cir.2003).

**\*4** Under the FLSA, "employer" includes: any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.

29 U.S.C. § 203(d). Plaintiff admits that Farmers was not his direct employer. Instead, he claims that Farmers was a joint employer. Two or more employers may jointly employ someone for the purposes of the FLSA. *Bonnette v. California Health and Welfare Agency,* 704 F.2d 1465, 1469 (9th Cir.1983). Joint employers are individually responsible for compliance with the FLSA. 29 C.F.R. § 791.2(a). Determining whether the two entities may be considered "joint employers" requires

Not Reported in F.Supp.2d          FOR EDUCATIONAL USE ONLY                    Page 4
Not Reported in F.Supp.2d, 2004 WL 554834 (C.D.Cal.)
(Cite as: 2004 WL 554834 (C.D.Cal.))

consideration of the total employment situation, but should focus on four primary factors: "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of payment, (3) determined the rate and method of payment, and (4) maintained employment records." *Bonnette,* 704 F.2d at 1470.

 Farmers contends that Plaintiff fails to provide evidence to show that Farmers was a joint employer of Plaintiff or that Plaintiff is "similarly situated" to the other individuals he seeks to represent with regard to any alleged employment relationship with Farmers. As such, this Court examines the above factors to determine whether Farmers was a joint employer of Plaintiff and whether Plaintiff is "similarly situated" to the other members of the proposed collective group with respect to the employment relationship with Farmers.

 a. power to hire and fire employees

 Farmers provides evidence that its contracts with insurance adjusting companies to provide independent contractor adjusters, such as with Wardlaw and Pilot Catastrophe Services, Inc., specifically state that the adjusters provided are independent contractors, not employee of Farmers. (Kohler Decl., Exhs. A and B at Article 6.) With respect to Continental, Farmers provides evidence that Continental required its employees to sign an employment agreement specifying that the adjusters were employees of Continental and that they had no rights or claims to employment with the client with which they worked. (*See id.* at ¶ 4; Exh. C.)

 In his Reply, Plaintiff contends that Farmers had the absolute power to hire and fire him. He relies on the December 20, 2001 engagement letter which specifically provides that Farmers had the option to hire the adjusters permanently at any time. He also claims that he was fired by his Farmers' supervisor. In response, Farmers disputes Plaintiff's interpretation of the evidence and further argues that Plaintiff has not shown that he is similarly situated with regard to adjusters from other companies, or even with adjusters from Continental. This Court agrees with Farmers.

 **\*5** The letter relied upon by Plaintiff gives Farmers the authority to hire Continental-provided workers without incurring a fee. (Reply Brief, Exh. A.) However, it is not relevant to whether Farmers had the ability to hire or fire Continental adjusters while

they were employed by Continental. In fact, as stated above, the independent contractor adjusters signed contracts with Continental specifying that they had no rights or claims to employment with the client to whom they were assigned. (*See* Kohler Decl., ¶ 4, Exh. C.) Furthermore, Plaintiff has presented no evidence in regard to the other contracting companies. By contrast, Farmers has shown that independent contractor adjusters from the other contracting companies Plaintiff seeks to represent were selected and assigned by those other adjusting companies, not by Farmers. (*See, e.g.,* Bishop Decl., ¶ 6; Kainer Decl., ¶ 9.)

 With respect to Plaintiff's claim that he was fired by his Farmers' supervisor, Farmers point to Plaintiff's deposition testimony wherein he states the reason he stopped working for Farmers was because Farmers was downsizing, and he was offered a job by Continental to work on a Farmers' project in Texas which he refused. (Plaintiff Depo. at pp. 58, 61, 64-65, 81-82 and Exh. 8, attached to Warren Decl. as Exh. A.) Plaintiff admitted in his deposition that he would contact Continental, and Continental would tell him what work was available. (*Id.* at 56.) Moreover, even if Farmers did control the hiring and firing of Plaintiff, then Plaintiff is not similarly situated to other Continental adjusters who worked in other locations because the evidence shows that on-site Continental managers handled personnel matters at those other locations. (Nguyen Decl., ¶ 10, Shaver Decl., ¶¶ 8, 10-11.)

 b. supervise and control employee work schedules or conditions of payment

 Farmers presents evidence that the Continental employees acknowledged that their employment agreement with Continental had no effect on the terms, conditions and limitations agreed to between Continental and the client (Farmers). (Kohler Decl., ¶ 4; Exh. C.) It states that it did not have the authority to control the terms and conditions of the Continental workers' employment. (*See id* . at ¶ 6; Exh. E; Shaver Decl., ¶ 11.) It states that Farmers managers could not make personnel changes. (Shaver Decl., ¶ 11; Kainer Decl., ¶ 9.)

 In support of his contention that Farmers had the absolute power to supervise the adjusters' work schedules and conditions of employment, Plaintiff generally states that he was supervised by Farmers' supervisors at certain assignments. He offers no specific facts whether this "supervision" related to work schedules or conditions of payment. Plaintiff

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d          FOR EDUCATIONAL USE ONLY                                    Page 5
Not Reported in F.Supp.2d, 2004 WL 554834 (C.D.Cal.)
**(Cite as: 2004 WL 554834 (C.D.Cal.))**

attempts to meet this requirement by stating that the adjusters were only paid if their time sheets were approved and signed by their Farmers' supervisor; however, again, the approval of time sheets bears no relation to the initial setting of work schedules or the terms for payment. Plaintiff also relies on the engagement letter which states, "As a temporary employee you are expected to follow the rules, regulations, procedures and dress code of the client company to which you are assigned." Again, this general statement in the engagement letter says nothing about the control of work schedules or conditions of payment.

**\*6** Moreover, even assuming Farmers had the requisite supervision and control over Plaintiff, Plaintiff presents no evidence that Farmers had the same requisite supervision and control of adjusters from other agencies. By contrast, Farmers presents evidence that it did not exercise such supervision and control, as the other contracting entities had their own supervisors on-site. (Bishop Decl., ¶ 6; Kainer Decl., ¶ 9; Nguyen Decl., ¶ 6.) It also presents evidence that Continental provided supervisors who would determine the schedules and working conditions at sites other than those at which Plaintiff worked. (Nguyen Decl., ¶ 10; Shaver Decl., ¶¶ 8, 10-11.)

c. determine rate and method of payment

Farmers shows that its agreements with the entities which provide the independent contractor adjusters do not specify how the contracting entity is to pay these independent contractor adjusters, as that is a matter between the adjusting company and its workers. (Kohler Decl., Exhs. A and B at Article 4.) It states that it does not control the rate of pay or method of payment from the contracting entity to the worker. (*See* Smith Decl., ¶ 8; Martin Decl., ¶ 6; Shaver Decl., ¶ 11.) It does not prepare the payroll or pay wages to the adjusters. (*See* Hongsdusit Decl., ¶ 8; Martin Decl., ¶ 6.) Similarly, Farmers did not determine the pay rates to Continental workers and did not determine the method of payment to Continental workers. (Shaver Decl., ¶ 11.)

In support of his contention that Farmers determined the rate and method of payment, Plaintiff relies on Continental's proposal to Farmers in which Continental proposed, and Farmers accepted, the $40 .00 per hour wage rate. However, while Farmers agreed to pay Continental on an hourly rate, such agreement did not determine the payment relationship between Continental and its employees. In fact, Plaintiff admits that Continental changed its

rate and method of payment to its employees, by guaranteeing a minimum weekly salary of $250, then going to a $2,650 weekly salary, then to a $2,250 weekly salary, then to a hourly rate with overtime. (Kohler Decl., Exhs. G-K; Reply Brief, Exh. G.) There is simply no evidence that Farmers and not Continental changed these rates. Furthermore, Plaintiff admits he does not know how adjusters from other companies were paid. (Plaintiff Depo. at 85-87.)

d. maintain employment records

With respect to the maintenance of employment records, Plaintiff contends that Farmers had turned over two storage boxes of employment records on these individuals to Plaintiff's counsel through discovery. In response, Farmers states that these "employment records" consisted of nothing more than timesheets and invoices used to determine the appropriate payment to Continental, and regardless, Farmers obtained many of these records from Continental in order to respond to Plaintiff's discovery request. This Court agrees with Farmers that the fact that it obtained records at Plaintiff's request is not evidence that Farmers itself maintained or controlled them. Furthermore, Plaintiff again fails to offer any evidence to show that Farmers maintained similar so-called "employment records" for adjusters supplied by other companies and therefore has not shown he is similarly situated to them in this regard.

e. conclusion

**\*7** Thus, based on the foregoing factors, this Court finds that Plaintiff has failed to show that Farmers together with Continental was his joint employer, and even if Plaintiff were able to establish this, he has failed to show that he is similarly situated to the other members of the proposed collective group consisting of adjusters from Wardlaw, NCA and Eberls with respect to the members' employment relationship with Farmers. On this basis alone, then, denial of certification of this action as a collective action is warranted.

4. Plaintiff has not shown that he is similarly situated to the other members with respect to the elements of the administrative exemption

Although an employer-employee relationship may exist for liability purposes, the FLSA exempts bona fide administrative employees from its overtime pay requirements. *See* 29 U.S.C. § 213(a)(1). The

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d            FOR EDUCATIONAL USE ONLY                                    Page 6
Not Reported in F.Supp.2d, 2004 WL 554834 (C.D.Cal.)
**(Cite as: 2004 WL 554834 (C.D.Cal.))**

administrative exemption is comprised of two parts: (1) whether the employee was paid on an appropriate salary or fee basis; and (2) whether the employee's duties satisfy the "duties test" set forth in the regulations.

Farmers argues that even if an employment relationship exists, Plaintiff has not shown that the putative collective action group is similarly situated to him in regard to the form or method of wages paid to them, and that he has not shown that the job duties of the putative collective group are sufficiently similar to his. This Court agrees that these are essential elements for determining the administrative exemption. As such, this Court must examine Farmers' contentions regarding these issues. However, before proceeding, this Court notes Plaintiff's claim that it is Farmers which must show that the employees meet the administrative exemption. While this is ultimately true, this substantive issue is not now before this Court. Instead, the issue presently before this Court is whether this case should proceed as a collective action. Plaintiff bears the burden of proving this, and it is for him to present evidence that all putative members were paid similarly and performed similar job duties. In other words, since Plaintiff alleges in his Complaint that he was not exempt from overtime pay requirements because he was paid on an hourly basis, he must demonstrate that he is similarly situated to the other adjusters he seeks to represent with regard to this issue.

a. whether the employee was paid on a salary or fee basis

To meet the requirements of the administrative exemption, the employee must have received a salary. *See* 29 C.F.R. § § 541.211-213. In lieu of being paid on a salary basis, an exempt administrative employee may receive his or her compensation on a fee basis. *See id.* at § § 541.213, 541.313(c). Fee basis compensation is "the payment of an agreed upon sum for a single job regardless of the time required for its completion." *See id.* at § 541.313(b).

Farmers contends that the wage payments made to the proposed collective action group differed, not only as between Continental and the other companies, but also between the Continental workers themselves. While Farmers' evidence supports this contention, this Court agrees that, at a minimum that Plaintiff has failed to show otherwise.

**\*8** Plaintiff alleges he was paid by the hour by Continental, yet another Continental worker, a putative opt-in, Bill Myers, was paid in 2003 a guaranteed $250 base salary or a percentage of fees billed, whichever was greater; later, he was paid a flat salary of $2650 per week and then $2250 per week. (Kohler Decl., Exhs. F-J.) In August 2003, Continental again changed its method of payment to its workers--it went back to paying its adjusters by the hour, including overtime for hours worked over 40 in a week. (*See id.* at ¶ 8, Exh. K.) With respect to how adjusters for other companies were paid, Plaintiff admits that he does not know how they were paid. (Plaintiff Depo. at 85-87.)

In his Reply, Plaintiff submits new affidavits; however, these affidavits state in a conclusory fashion that the individual worked for Farmers and was paid by the hour. None of them indicate for which contracting entity he/she worked. Without basic facts as to which contracting entity employed each affiant, Plaintiff has not shown that he is similarly situated to any adjuster from any company other than Continental. With respect to adjusters with Continental, Plaintiff's own evidence is in conflict. In his Reply, Plaintiff states that Continental adjusters were paid a regular flat salary rate in 2003 (Reply, pp. 3-4), but he then submits affidavits wherein each Continental worker states he worked in 2003 and was paid by the hour. (*See* Cannon, Capone, Erhardt, Ferro and Jackson Affidavits.) Since Plaintiff was paid by the hour while other Continental adjusters were paid on a salary basis, then he cannot represent them as being similarly situated. [FN4]

> FN4. Recognizing the problem, Plaintiff suggests that he wants to send notice only to those individuals who were paid by the hour. However, such a suggestion highlights that certification is not proper here. To determine who was actually paid by the hour would require an individualized determination and review of pay records, and such an individualized inquiry is not the purpose of a collective action.

b. whether the employee's duties satisfy the "duties test"

To meet the administrative exemption, the employee's primary duties must consist of (a) the performance of office work directly related to the general business operations of the employer; and (b) duties that require the exercise of discretion and independent judgment. 29 C.F.R. § 541.2(a)(1). The

Not Reported in F.Supp.2d                FOR EDUCATIONAL USE ONLY                                    Page 7
Not Reported in F.Supp.2d, 2004 WL 554834 (C.D.Cal.)
**(Cite as: 2004 WL 554834 (C.D.Cal.))**

federal regulations expressly include "claim agents and adjusters" as employees who perform duties relating to the administrative operations of a business. *Id* . at § 541.205(c)(5).

Farmers contends that job assignments and duties of independent contractor claims representatives vary widely, even among the adjusters provided by the same company. It provides evidence that Plaintiff's own job assignments and duties varied. For example, Plaintiff was employed by Continental in February 2002, when he first began work on mold claims for Farmers. (Plaintiff Depo. at pp. 9, 27.) His initial job responsibilities were as a "file examiner." (*Id.*) When Plaintiff moved to adjust mold claims in Sacramento, he became a "lead adjuster," which meant he generally supervised the work of several Wardlaw independent adjusters, who performed the initial field inspections and made the initial claim valuation. (*Id.* at 39, 43-44, 47.) Plaintiff then worked in Oklahoma City for about four weeks as a file examiner on mold files. (*Id.* at 53.) After that, he worked in Sacramento as a lead adjuster, and then Continental offered Plaintiff a job assignment in Texas, but Plaintiff rejected it. (*Id.* at 45-58, 61-82.)

**\*9** Farmers also provides evidence demonstrating that the adjusters perform widely varying job duties. (*See* Bishop Decl., ¶ ¶ 5, 10 (describing different duties of "field adjusters" provided by Wardlaw, NCA and Eberls, with duties of "office adjusters" provided by Continental); Kainer Decl., ¶ ¶ 6-8 (stating that Continental adjusters "were assigned duties not performed by any other independent adjusters working mold claims at that time" and describing their job duties as "lead" adjusters, while other company adjusters had different job duties); Nguyen Decl., ¶ ¶ 4-9 (describing that Continental adjuster duties differed in that some Continental adjusters worked as "leads," while others worked as "office adjusters," which all differed from the "field adjusting" work performed by other company adjusters); Smith Decl., ¶ 11 (stating that some Continental adjusters were assigned to the Complex Claims Unit and made presentations with recommendations during Legal Round Table meetings with Farmers' counsel; "No other independent adjusters from other agencies had duties at all similar to this duty.")).

Plaintiff offers no details of what the individuals in the putative collective action group actually did on the job. He merely states that they all were hired to work on "the mold claims project," and then he admits that "their duties may have varied to some

extent." (Reply, p. 12.) In fact, some of the affidavits filed with his Reply reveal that the putative collective action members worked on different types of claims other than mold claims. (*See,* e.g., Reed Affidavit, Exh. E to Reply (stating that he worked on storm claims, not just mold claims); Roy Affidavit (stating he worked as a lead adjuster in the litigated claims section)). In sum, Plaintiff fails to rebut the evidence Farmers submitted demonstrating that the adjusters perform widely varying job duties. [FN5] The differing job duties and the individualized inquiry to determine whether these varying duties meet the administrative exemption preclude a collective action in this case.

> FN5. In his Reply, Plaintiff argues that Farmers' claims adjusters are production workers not covered by the FLSA administrative exemption. Farmers responds that this argument is incorrect and, in any event, irrelevant to a determination of whether they are similarly situated. This Court agrees with this latter argument; it does not need to address the issue of whether the insurance claims adjusters are exempt administrative employees or production workers at this time.

c. The existence of an alleged common plan or policy is not dispositive

Plaintiff argues that the proposed collective action group is similarly situated because there is "clear evidence of a single decision, policy or plan which affected all of them." He specifically states that such plan was Farmers' decision "to hire numerous independent adjusters to work on mold claims and to pay them an hourly wage, but would not pay them overtime wages in clear violation of the overtime provisions of the FLSA." Plaintiff relies on the case of *Pines v. State Farm Ins. Co.,* 1992 U.S. Dist. LEXIS 6972 (C.D.Cal.1992).

This Court finds that Plaintiff's reliance on *Pines* is misplaced. In *Pines,* the plaintiff sought court facilitation of the opt-in procedure based upon the plaintiff's claim under the Age Discrimination in Employment Act ("ADEA") that defendants denied her, and other similarly situated persons, employment on the basis of age. [FN6] The Court granted plaintiffs' motion for court facilitation of the opt-in procedure because plaintiffs produced substantial allegations that the defendants participated in a plan of age discrimination that affected many similarly situated people. Thus, while the Court did focus on

evidence of a plan of discrimination, the issue before it did not involve the need for individualized inquiries. By contrast, in this case, the issues of the joint employer test and the administrative exemption tests of the FLSA require such individualized inquiries. As another court stated, "[u]nlike in a discrimination case, the focus [in FLSA cases] is not on [the employer's] action, but instead on the nature of the employee's duties in the context of the relevant exemption criteria." *Morisky,* 111 F.Supp.2d at 498; *Pfaahler,* 2000 U.S. Dist. LEXIS 1772, *9 (refusing to authorize FLSA collective action; distinguishing ADEA cases because, unlike FLSA cases, "in a discrimination case, it is relatively easy to satisfy the similarly situated standard [because] a discrimination case focuses on whether the defendant had a policy of discriminating against its employees."). In sum, while a policy or plan may be relevant to the inquiry of certification, it cannot be the sole factor in light of the other issues under the FLSA.

> FN6. A collective action under the ADEA incorporates the standards for a collective action under the FLSA. *Pines,* 1992 U.S. Dist. LEXIS 6972, *19.

 d. conclusion

**\*10** Because Plaintiff has failed to show that he is similarly situated to the other members with respect to the payment of a salary and the performance of duties, the exempt or non-exempt status of hundreds of independent contractor adjusters would need to be determined on an employee-by-employee basis. This would be inefficient and impractical, thereby defeating the purpose of a collective action. *See Mike v. Safeco Insurance Co.,* 2003 U.S. Dist. LEXIS 21438 (D.Conn.2003)(denying collective action certification in FLSA overtime case because plaintiff did not show similarity in job duties and job duties test would require individualized facts). This Court therefore finds that certification of a collective action is not warranted on this additional basis.

 5. Additional reasons exist for denying certification

 Farmers offers additional arguments why a 216(b) collective action would not be appropriate. This Court agrees with these arguments. First, distinct defenses available to Farmers that would apply to disparately situated individuals do not allow for a manageable case. *See Lusardi v. Xerox Corp.,* 118 F.R.D. 301, 370 (D.N.J.1987)("consolidation of these claims into a representative class with the attendant

defenses would not provide for an efficient proceeding"). Further, all of the issues discussed so far highlight that allowing this proposed collective action is contrary to the purpose of allowing notice and a collective action to proceed--to allow "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [conduct]." *Hoffman-LaRoche, 493 U.S. at 170.* Additionally, as Farmers states, notice should be denied because Plaintiff has engaged in solicitation and has failed to come up with significant numbers of allegedly similarly situated employees who are likely to assert similar claims. *See,* e.g., *Bernard v. Household International, Inc., 231 F.Supp.2d 433, 436 (E.D.Va.2002)*(collective action notice denied, in part, because there had been ads in local papers regarding the case); *Michaelson v. Arrow Transport Co.,* 1997 U.S. Dist. LEXIS 23665 (D.Or.1997)(denying notice to potential collective action members in a FLSA case where complaint failed to allege an inability to contact collective action members in the absence of court-authorized notice). Here, Plaintiff's attorneys have posted a solicitation on a nationwide independent adjusters' website. (*See* Warren Decl., Exh. A--Plaintiff Depo., Exh. 10.) While "Consents to Opt In as Class Member" have been filed, no information is provided regarding these purported members, and even when affidavits have been provided, the affidavits lack the requisite information regarding the issues before the Court, as explained above.

 Finally, Farmers argues that the Court should deny Plaintiff's motion because Plaintiff cannot show that either he or his attorney can adequately represent the proposed collective action members. Specifically, it claims that Plaintiff has a fundamental conflict with other potential collective action members in that Plaintiff supervised the adjusters he seeks to represent and approved their time records and denied payment for work performed by them. It also claims that Plaintiff's counsel, Mr. Fisher, has a client relationship with Wardlaw and Isabelle Arnold, a potential defendant and witness in this case who is Farmers' former mold claims manager primarily responsible for the relationship with Continental. These arguments are based upon Federal Rule of Civil Procedure 23 class action issues. While such class action issues are arguably relevant here, this Court finds that it need not make such determination in light of the analysis set forth above. Because Plaintiff has failed to show that a collective action is warranted here, issues as to his or his counsel's ability to represent such collective group are essentially moot.

Not Reported in F.Supp.2d          FOR EDUCATIONAL USE ONLY                    Page 9
Not Reported in F.Supp.2d, 2004 WL 554834 (C.D.Cal.)
**(Cite as: 2004 WL 554834 (C.D.Cal.))**

III. *Conclusion*

**\*11** Plaintiff has failed to show that a collective action of temporary contractor adjusters supplied to Farmers through different agencies to work on mold claims is warranted here. Instead, diverse individualized factors among the proposed collective group members exist, including the factors necessary to conclude that Farmers is a "joint employer" with a number of temporary agencies, the variety of methods of payment to the proposed collective group members who were paid by flat fee, by the hour and by salary by the same and by different employers while Plaintiff allegedly was paid by the hour, and the differences between Plaintiff and each of proposed collective group members in their actual job duties and the degree to which any one individual exercised independent judgment and discretion in carrying out their varying duties.

Accordingly, this Court denies Plaintiff Thomas Pfohl's Amended Motion for Certification of Collective Action Under Section 216(b) of the Fair Labor Standards Act. [FN7] As such, this Court will allow this case to proceed on the individual claims of this Plaintiff, Thomas Pfohl, only. This Court orders counsel for Plaintiff Thomas Pfohl to notify, in writing, all persons that have attempted to file to opt in to this purported collective action of this Court's decision to deny class certification. This will enable said parties to file their own individual lawsuits to protect whatever rights they may have.

> FN7. As explained above, Plaintiff has attempted to file a Motion to Amend Complaint which he desires to be heard on March 8, 2004. However, no such Motion was properly filed. According to Farmers' opposition to the Motion to Amend, Plaintiff seeks to add three state law class claims under the California Labor Code and California Business and Professions Code, to add two additional named plaintiffs, to add two additional defendants, Wardlaw Adjusting and Continental Staffing, Inc., and to add two new FLSA collective action claims against the proposed new defendants. This Court notes that in light of this Court's determination to deny this instant motion for certification of collective action, any purported Motion to Amend may be moot, or at a minimum, require revision in light of this current Order before any attempt to refile.

IT IS SO ORDERED.

Not Reported in F.Supp.2d, 2004 WL 554834 (C.D.Cal.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 5

Westlaw.

Not Reported in F.Supp.2d          FOR EDUCATIONAL USE ONLY                                      Page 1
Not Reported in F.Supp.2d, 2002 WL 413901 (N.D.Tex.), 147 Lab.Cas. P 34,632
**(Cite as: 2002 WL 413901 (N.D.Tex.))**

**Motions, Pleadings and Filings**

United States District Court, N.D. Texas, Dallas
Division.
Laura D. HALL, On Behalf of Herself and Others
Similarly Situated Plaintiff,
v.
Linda L. BURK, M.D., Defendant.
**No. Civ. 301CV2487H.**

March 11, 2002.

*MEMORANDUM OPINION AND ORDER*

SANDERS, Senior J.

*\*1 Before the Court is Plaintiff's Expedited Motion for Notice to Potential Plaintiffs and Limited Expedited Discovery, filed February 7, 2002; and Defendant's Response thereto, filed February 19, 2002. Also before this Court is Plaintiff's Expedited Motion to Void Releases, for Corrective Notice, for Protective Order, and for Limited Expedited Discovery, filed February 12, 2002; and Defendant's Response thereto, filed February 22, 2002. Upon review of the pleadings, briefs, and relevant authorities, the Court is of the opinion for the reasons stated below that Plaintiff's Motion for Notice and for Limited Discovery should be DENIED, that Plaintiff's Motion to Void Releases, for Corrective notice and for Limited Discovery should also be DENIED, and that Plaintiff's Motion for a Protective Order should be DENIED.

I. BACKGROUND

Plaintiff alleges a violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § § 201, et seq., on behalf of herself and other similarly situated former and current employees of the Defendant. (Compl. at 1). Defendant is an ophthalmologist who maintains two offices in Dallas, Texas. (Resp. Mot for Notice at 2). Plaintiff states that she began working for the Defendant in April 2000 and that the Defendant failed to pay her and other similarly situated employees the required time and a half for hours worked in excess of forty hours per week. (Compl. at 2). Plaintiff states that she and

others were employed on a fluctuating workweek basis. *See* 29 C.F.R. § 778.114(a) (2001). The requirements for a "fixed salary for fluctuating hours" plan are: (1) the employee's hours of work fluctuate from week to week; (2) there is a mutual understanding between the employee and employer that the salary will constitute straight time pay for the hours worked; and (3) the amount of salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he or she works is greatest. *Id.* The regulations provide that overtime pursuant to a fluctuating workweek plan is calculated at one-half the rate in addition to the salary. *See* 29 C.F.R. § 778.114(a) (2001). Plaintiff alleges that pursuant to the agreement she had with the Defendant, her salary should have been $13 per hour or $520 per week. [FN1] Plaintiff states, however, that Defendant failed to pay this base salary and therefore, she should have received overtime payments calculated at one and one-half times her "hourly" rate because Defendant failed to comply with the requirements for a fluctuating workweek plan.

FN1. Plaintiff's statement that she was paid $13 per hour is puzzling. The regulations provide that under the fluctuating workweek plan, the hourly rate would change from week to week depending on the number of hours an employee worked. For example, an employee whose salary is $250 per week and "during the course of 4 weeks [ ] works 40, 44, 50, and 48 hours, [would have a] regular hourly rate of pay in each of these weeks [of] approximately $6.25, $5.68, $5, and $5.21." 21 C.F.R. § 778.114(b) (2001). Therefore, if Plaintiff was truly a fluctuating workweek employee, she would not have an hourly rate. Nevertheless, Defendant does not contest Plaintiff's assertions and admits that Plaintiff is owed overtime. (Resp. at 3).

Plaintiff asserts that other employees did not receive overtime payments in accordance with the FLSA. In furtherance of this claim, Plaintiff requests (1) the Court order that notice be provided to similarly situated employees under 29 U.S.C. § 216(b); (2) Court approval of the dissemination notice; and (3) limited discovery of the name, address, telephone number, date of birth, and social security number of

Not Reported in F.Supp.2d                FOR EDUCATIONAL USE ONLY                                    Page 2
Not Reported in F.Supp.2d, 2002 WL 413901 (N.D.Tex.), 147 Lab.Cas. P 34,632
**(Cite as: 2002 WL 413901 (N.D.Tex.))**

all similarly situated employees. Defendant argues that Plaintiff has not made the requisite showing that this suit is proper for class treatment under the FLSA.

**\*2** In addition, after learning of Plaintiff's claims, Defendant alleges that she paid and obtained releases from other employees to whom she owed overtime pay. (Resp. Mot. to Void Releases at 3). Plaintiff contends that (1) the releases are void; (2) that the Court must approve corrective notice; (3) that a Protective Order issue to prevent Defendant from contacting putative members; and (4) that the Court permit limited discovery. Defendant contends that Plaintiff lacks standing to pursue voiding the releases and that corrective notice is unnecessary in this case.

II. ANALYSIS

A. Motion for Notice and Limited Discovery

The FLSA provides that a suit may be instituted "by one or more employees for or in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). This type of class action, also called a collective or representative action, is different from a Fed.R.Civ.P. 23 class action in that the members of the class are permitted to "opt-in" rather than "opt-out" of the class. *See Mooney v. ARAMCO Servs. Co., et al., 54 F.3d 1207, 1212 (5th Cir.1995).* Rule 23 and § 216(b) class actions are "mutually exclusive and irreconcilable" and those who choose not to opt-in to an class action under § 216(b) are not bound by and may not benefit from the judgment. *LaChapelle v. Owens-Illinois, Inc., 513 F.2d 286, 288-89 (5th Cir.1975).*

The Supreme Court has provided that District Courts have discretion to authorize notice to similarly situated employees that they may opt-in to a class, but that notice is by no means mandatory. *See Hoffman -La Roche, Inc. v. Sperling, 493 U.S. 165, 169 (1989); see also Camper, et al. v. Home Quality Mgmt., Inc., 200 F.R.D. 516, 519 (D.Md.2000)* ("The relevant inquiry then is not whether the Court has discretion to facilitate notice, but whether this is an appropriate case in which to exercise discretion."). Although *Sperling* addressed the issue of whether District Courts have this discretion in Age Discrimination in Employment Act ("ADEA") cases, the ADEA incorporates § 216(b) of the FLSA. *See id.* at 167. In addition, other courts have held that the analysis in *Sperling* and other ADEA cases involving questions of the opt-in process should be applied to cases solely based on the FLSA. *See H & R Block, Ltd. v. Housden & Beard, 186 F.R.D. 399, 400 (E .D.*

*Tex.1999); see also Garner v. G.D. Searle Parmaceuticals & Co., 802 F.Supp. 418, 422 (M.D.Ala.1991).*

The determination of whether this Court should exercise its discretion involves the analysis of two tests, neither one of which carries more weight than the other. *See Mooney, 54 F.3d 1207, 1216 (5th Cir.1995).* The first test derives from *Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J.1987)* and involves a two prong analysis. First, the Court must make an initial inquiry into whether the Plaintiff has provided sufficient evidence that similarly situated potential Plaintiffs exist. *See Mooney, 54 F.3d at 1213-14.* At this stage, the Court uses a lenient standard to determine whether similarly situated persons exist, and if the Court determines that certification is appropriate, then it usually "conditionally certifies" the class. *See id* at 1214. Second, the Court reexamines the class after notice, time for opting-in, and discovery have taken place. *See id.* If the Court finds that the class is no longer made up of similarly situated persons, then it may decertify the class. *See id.* This inquiry is usually conducted upon a motion filed by the Defendant. *See id.*

**\*3** In pursuit of the first inquiry, this Court finds that Plaintiff failed to present sufficient evidence that similarly situated Plaintiffs exist. Unsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden. *See Haynes v. Singer Co., Inc., 696 F.2d 884, 887 (11th Cir.1983).* Some Courts have found class certification appropriate where potential Plaintiffs were identified. *See Garner & Karn v. G.D. Searle Pharmaceuticals, 802 F.Supp. 418, 422 (M.D.Ala.1991).* Other Courts have looked to affidavits of potential plaintiffs. *See Belcher v. Shoney's, Inc., 927 F.Supp. 249, 252 (M.D.Tenn.1996).* Here, however, Plaintiff has not submitted affidavits or even names of potential Plaintiffs. Plaintiff's only proof of a widespread violation of the FLSA is the conclusory allegation that all the employees "were subjected to improper deductions from what should be their fixed salaries." (Resp. Mot. for Notice at 2). Defendant provides that she underpaid her employees, but also explains that she has reimbursed almost all of them after realizing her errors. [FN2] Therefore, it is unclear whether there exist potential Plaintiffs that satisfy the "similarly situated" requirement. Plaintiff fails to address this issue and the Court cannot approve even conditional certification without more of a showing.

FN2. Defendant asserts that:

Not Reported in F.Supp.2d                FOR EDUCATIONAL USE ONLY                                    Page 3
Not Reported in F.Supp.2d, 2002 WL 413901 (N.D.Tex.), 147 Lab.Cas. P 34,632
**(Cite as: 2002 WL 413901 (N.D.Tex.))**

Upon learning of Hall's claim that she was improperly paid, Dr. Burk's office administrator conducted an audit of the practice's payroll records and calculated the amount each current and former employee should have been paid with overtime paid at time and a half. All current employees have received payment for the full difference between what they were paid and what they should have been paid. With respect to former employees, notices were sent to all of them and as of the date of this Response, checks have been mailed to seven (7) of the eleven (11) former employees. Two more have signed for the letter but not yet requested checks. Two others have either not claimed their letters or they have been returned for forwarding. The total amount paid to all current and former employees is approximately $11,500.
(Resp. Mot. for Notice at 3).

The second test used by the Court in *Shushan v. University of Colorado,* 132 F.R.D. 263, 265 (D.Colo.1990) is composed of the requirements of Fed. R. Civ. P. 23(c), i.e. "numerosity," "commonality," "typicality," and "adequacy of representation." Plaintiff has completely failed to make a showing under this test, except for the conclusory allegations provided in the Complaint and therefore fails this test. *See H & R Block, Ltd.,* 186 F.R.D. at 401.

This Court has a "responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation." *Severston v. Phillips Beverage Co.,* 137 F.R.D. 264, 266-67 (D.Minn.1991). At this time, Plaintiff has failed to provide factual evidence in support of either test and therefore Plaintiff's Motion for Notice should be DENIED without prejudice. Given the Court's reasons as stated above, it is unnecessary to reach the merits of Plaintiff's request for limited discovery and it is also DENIED.

B. Motion to Void Releases, for Corrective Notice, and for Limited Expedited Discovery

Subsequent to filing the Motion for Notice and Limited Discovery, Plaintiff filed an Expedited Motion to Void Releases, for Corrective Notice, for Protective Order, and for Limited Expedited Discovery. This Motion addresses the validity of "releases" signed by current and former employees of the Defendant in exchange for receipt of back pay. Without addressing the merits of Plaintiff's argument

that the releases are void, this Court finds that Plaintiff lacks standing to assert a claim of the putative Plaintiffs' (i.e. the other employees) settlements. To establish standing,

**\*4** [F]irst, the Plaintiff must have suffered an 'injury in fact'--an invasion of a legally protected interest which is (a) concrete and particularized (citations omitted); and (b) 'actual or imminent, not 'conjectural' or 'hypothetical' (citations omitted). Second, there must be a causal connection between the injury and the conduct complained of--the injury has to be 'fairly ... traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the Court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1991). In this case, Plaintiff has not established an injury caused by the putative Plaintiffs' settlements. Courts have voided releases where signatories of the releases were Plaintiffs in the class action, but the only Plaintiff here has not signed a release. *See O'Brien v. Encotech Constr. Servs., Inc.,* 203 F.R.D. 346, 349 (N.D.Ill.2001) ("Plaintiffs assert that two named Plaintiffs ... have signed releases, and both wish to be part of the current action. Therefore, standing and ripeness are not impediments to the filing of a motion to declare their releases void."). The Court finds that Plaintiff does not have standing to contest the releases and therefore, Plaintiff's Motion to Void Releases is DENIED. Given this ruling, the Motion for Corrective Notice and for Limited Discovery is also DENIED.

C. Motion for Protective Order

Plaintiff's two-sentence, conclusory request for a protective order should be denied. This Court has authority to intervene in the notice process, see *O'Brien,* 203 F.R.D. at 348, but the reasons cited by the Plaintiff are insufficient to warrant issuing a Protective Order at this time. Plaintiff's Motion for Protective Order is hereby DENIED without Prejudice.

III. CONCLUSION

Given the Court's reasons stated above, Plaintiff's Motion for Notice and for Limited Discovery is DENIED, Plaintiff's Motion to Void Releases, for Corrective notice and for Limited Discovery is also DENIED, and Plaintiff's Motion for a Protective Order is DENIED.
    SO ORDERED.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                    FOR EDUCATIONAL USE ONLY                                          Page 4
Not Reported in F.Supp.2d, 2002 WL 413901 (N.D.Tex.), 147 Lab.Cas. P 34,632
**(Cite as: 2002 WL 413901 (N.D.Tex.))**


    **Motions, Pleadings and Filings <u>(Back to top)</u>**

•       <u>3:01cv02487</u>      (Docket)
(Nov. 26, 2001)

END OF DOCUMENT

©  2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 6

ERIC DEAN, Plaintiff, v. PRICELINE.COM, INC., Defendant.

No. 3:00CV1273 (DJS)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

**2001 U.S. Dist. LEXIS 24982**

June 5, 2001, Decided

**DISPOSITION:** [*1] Plaintiff's motion to join additional parties denied.

**COUNSEL:** For Eric Dean, PLAINTIFF: Mark Paul Carey, Carey & Associates, Southport, CT USA.

For Eric Dean, PLAINTIFF: Robert L Cavanaugh, Jr, Rodie & Connolly, Stratford, CT USA.

For Priceline.com Inc, DEFENDANT: Kevin D O'Leary, Joel B Casey, Cummings & Lockwood, Hartford, CT USA.

For Priceline.com Inc, DEFENDANT: Richard Michael Solazzo, Cummings & Lockwood, Stamford, CT USA.

**JUDGES:** DOMINIC J. SQUATRITO, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** DOMINIC J. SQUATRITO

**OPINION:** RULING

The plaintiff has brought this twelve-count action against the defendant, Priceline.com, Inc. ("Priceline"), alleging two federal claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207(a)(1) & 215(a)(3), and ten state law claims under various state statutes and the common law. Count One alleges a failure to pay overtime wages in violation of the FLSA. Count Two alleges that Priceline retaliated against plaintiff in violation of 29 U.S.C. § 215(a)(3) for filing a complaint with the Department of Labor. Counts Three and Four allege overtime and retaliation claims [*2] in violation of state statutes. See Conn. Gen. Stat. §§ 31-60(a) & 69(b). Counts Five through Twelve allege state common law, contractual, and extra-contractual, claims.

Now pending is the plaintiff's motion to join additional parties pursuant to § 216(b) of the FLSA. For the reasons that follow, the motion is DENIED.

FACTS

The plaintiff was employed by the defendant as a Senior Database Administrator from April 15, 1999, until he resigned on June 14, 2000. The plaintiff claims that he often was called upon to perform tasks in the evening, the early morning hours, and on weekends from April through December of 1999, and, thereafter, every third week from January 2000 until his resignation in June of 2000. The gravamen of his complaint is that the defendant violated the FLSA because it did not pay him overtime wages during his tenure as a Priceline employee. n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 The Fair Labor Standards Act states that no employer within the meaning of the Act "shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). This general mandate, however, does not apply to persons employed in a bona fide executive, administrative, or professional capacity. See 29 U.S.C. § 213(a)(1).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*3]

The defendant has taken the position that the plaintiff is exempt from the overtime provisions of the FLSA. It claims that from the outset of his negotiations with Priceline, the plaintiff understood that he would not receive overtime, but would be a salaried professional-level employee instead. Further, Priceline claims that the position for which plaintiff was hired, and at which he worked, was one that required him regularly and consistently to exercise discretion and independent judgment in, inter alia, identifying and solving problems; planning, scheduling, and coordinating activities; and developing problem-solving systems.

In light of these duties, Priceline maintains that the plaintiff is exempt from the overtime mandate of the FLSA on two independent grounds. First, the defendant argues that the plaintiff is an exempt computer-related professional employee within the meaning of the FLSA. Second, the defendant asserts that the plaintiff's job description also meets the definition of an administrative employee, another exempt category. The plaintiff, of course, disagrees with both arguments and has moved this court for permission to give notice of this suit to other Priceline [*4] employees who also were not payed overtime wages and to allow them to join the litigation.

DISCUSSION

The plaintiff moves for certification of a "collective action" under § 216(b) of the FLSA. n2 The FLSA allows one or more employees to pursue an action in a representative capacity for other similarly situated employees. See 29 U.S.C. § 216(b). This type of action allows potential class members who are similarly situated to the named plaintiff to

"opt in" to the case. Id.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Section 216(b) of the FLSA provides in pertinent part:
An action ... may be maintained against any employer ... by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

 29 U.S.C. § 216(b).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

"It is well settled that district courts [*5]  have the discretionary power to authorize the sending of notice to potential class members in a collective action brought pursuant to § 216(b) of the FLSA." Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (citing Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 107 L. Ed. 2d 480, 110 S. Ct. 482 (1989); Braunstein v. Eastern Photographic Laboratories, Inc., 600 F.2d 335, 336 (2d Cir. 1978)). Thus, the issue presently before this court is whether the "appropriate circumstances" exist for the court to exercise its discretion in allowing this action to proceed as a collective action. Id. The threshold issue in deciding whether to authorize class notice in an FLSA action is whether plaintiffs have demonstrated that potential class members are "similarly situated." Id. (citing 29 U.S.C. § 216(b)).

According to the plaintiff, the putative class members are similarly situated because all were denied overtime pay as a result of being misclassified as exempt. The plaintiff argues that the defendant violated the FLSA by failing to implement a company-wide policy by which it could accurately categorize [*6]  exempt and non-exempt employees. It is clear that "what plaintiff [is] really challenging here is defendant's determination that [plaintiff is] exempt under the FLSA." Morisky v. Public Service Electric and Gas Co., 111 F. Supp. 2d 493, 498 (D.N.J. 2000) (denying plaintiff's motion for collective action under § 216(b)). This court finds the following language, employed by Judge Pisano in Morisky, particularly persuasive given the factual similarities between these two cases:

To determine which employees are entitled to overtime compensation under the FSLA depends on an individual, fact-specific analysis of each employee's job responsibilities under the relevant statutory exemption criteria. Therefore, "similarly situated" in this case must be analyzed in terms of the nature of the job duties performed by each class member, as the ultimate issue to be determined is whether each employee was properly classified as exempt ... The scope of the class is dependent upon the answer to the

question that is at the heart of this case -- which employees are properly classified as exempt? ... The proposed class consists of a group of individuals with different jobs [*7] and different job responsibilities who believe they have been improperly classified as exempt and denied overtime wages ... Thus, plaintiffs are seeking to have this Court certify a class based upon their own belief as to which employees do not satisfy any of the exemption criteria -- the very issue to be litigated in this action.

Id. at 498-99. Given the pending legal issues and the current posture of this matter, the court concludes that collective treatment of this action would be inappropriate.

Further, from a practical standpoint, litigating this case as a collective action would be extremely difficult, at best. "The exempt or non-exempt status of any particular employee must be determined on the basis of whether his duties, responsibilities and salary meet all the requirements of the appropriate section of the regulations." 29 C.F.R. § 541.201(b)(2). Determining whether an employee is exempt is extremely individual and fact-intensive, requiring "a detailed analysis of the time spent performing administrative duties" and "a careful factual analysis of the full range of the employee's job duties and responsibilities." Cooke v. General Dynamics Corp., 993 F. Supp. 56, 59-61 (D. Conn. 1997). [*8]  For these reasons, the court declines to exercise its discretion to allow a collective action in this case.

CONCLUSION

The plaintiff's motion to join additional parties [doc. # 69 (3:00CV1273 (DJS))] is DENIED.

So ordered this 5th day of June, 2001.

DOMINIC J. SQUATRITO

UNITED STATES DISTRICT JUDGE

Exhibit 7

Westlaw.

Not Reported in F.Supp.2d                FOR EDUCATIONAL USE ONLY                                    Page 1
Not Reported in F.Supp.2d, 2000 WL 198888 (N.D.Ill.), 8 Wage & Hour Cas.2d (BNA) 977
**(Cite as: 2000 WL 198888 (N.D.Ill.))**

United States District Court, N.D. Illinois, Eastern
Division.
Evan PFAAHLER, on behalf of himself and all other
similarly situated,
Plaintiffs,
v.
CONSULTANTS FOR ARCHITECTS, INC.,
Defendants.
**No. 99 C 6700.**

Feb. 8, 2000.

MEMORANDUM OPINION AND ORDER

CONLON, District J.

**\*1** Evan Pfahler ("Pfahler") sues Consulting for
Architects, Inc. ("CFA") under the Fair Labor
Standards Act, 29 U.S.C. § 201 *et seq* ("FLSA").
Pfahler claims CFA failed to pay him $191.28 in
overtime wages. Pfahler moves for conditional
certification of a collective action pursuant to §
216(b) of the FLSA.

BACKGROUND

CFA is a referral company that places architects and
design professionals with corporate clients on a
contractual, job-to-job basis. According to Pfahler,
designers seeking work register with CFA, and CFA
then finds them jobs in Chicago-area businesses.
Pfahler is a designer who sought placement through
CFA. In January 1999, CFA found a job for Pfahler
at Ricondo & Associates ("Ricondo").

Pfahler contends that even though he was working at
Ricondo, he was an "employee" of CFA within the
meaning of the FLSA. Pfahler claims he was paid on
an hourly basis by CFA and was entitled to overtime
pay for working in excess of 40 hours per week, but
that he did not receive overtime pay from CFA.
According to Pfahler, CFA improperly classifies its
registrants as "independent contractors" in order to
avoid paying overtime wages. Pfahler contends that
while working at Ricondo, he was required to work a
regular shift at Ricondo and could not seek work
elsewhere. Moreover, he asserts his agreement with
CFA prevented him from employment by Ricondo
during the term of his placement there.

Pfahler seeks certification of a collective action

under the FLSA so that he may represent other
workers he believes were improperly denied overtime
wages by CFA. According to Pfahler, CFA has failed
to pay overtime wages to at least 140 workers since
October 1996. CFA responds that the workers are
independent contractors who decide when, where,
and for whom they wish to work. CFA contends it
provides its referral services to people with various
levels of experience and skill, and that it places these
people in various positions. Some of these positions
(such as project managers) require independent
thought, while others do not require much skill or
experience. CFA compensates workers by billing the
client with whom the worker is placed for the
worker's services, deducting a commission for
placement, and issuing a check to the worker.

DISCUSSION

Section 216(b) of the FLSA permits a plaintiff to
bring a collective action on behalf of other potential
claimants. A collective action under § 216(b) differs
from a class action under Fed.R.Civ.P. 23. *See Woods
v. New York Life Ins. Co., 686 F.2d 578 (7th
Cir.1982)*. A collective action can be brought under §
216(b) as long as the plaintiff is "similarly situated"
with those potential claimants he wishes to represent.
29 U.S.C. § 216(b). In a collective action, no
claimant shall be a member of or bound by the action
unless he or she "opts in" to the action. *Id.* For this
reason, notice is sent to potential claimants once a
collective action is authorized. *Woods, 686 F.2d at
580 (7th Cir.1982)*.

**\*2** Pfahler contends he is similarly situated with
other potential class members because he was
improperly classified as an independent contractor
and denied overtime wages. However, Pfahler has
failed to demonstrate any basis for a finding that he is
similarly situated with other potential claimants.
Liability in Pfahler's case will turn on whether
Pfahler is an "independent contractor" or an
"employee" within the meaning of the FLSA. The
same is true for every potential claimant included in
the collective action. Those who are "independent
contractors" would not be similarly situated with
Pfahler, who claims he is an "employee."

In order to determine who is an independent
contractor and who is an employee, the court would
be required to make a fact-intensive, individual
determination as to the nature of each potential

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d          FOR EDUCATIONAL USE ONLY                          Page 2
Not Reported in F.Supp.2d, 2000 WL 198888 (N.D.Ill.), 8 Wage & Hour Cas.2d (BNA) 977
**(Cite as: 2000 WL 198888 (N.D.Ill.))**

claimant's employment relationship with CFA; this inquiry could also entail examining each claimant's relationship with the various corporate clients with whom they were placed by CFA. [FN1] Where this is the case, certification of a collective action under the FLSA is inappropriate. *Donihoo v. Dallas Airmotive, Inc.*, 1998 WL 91256, at *1 (N.D.Tex. Feb. 23, 1998) ("an inquiry into the employee's specific job duties ... is not appropriate in a class lawsuit under Section 216(b)"). *Tumminello v. United States*, 14 Cl.Ct. 693, 697 (1988). A collective action under the FLSA is only appropriate where those in the pool of potential claimants perform the same duties as the plaintiff. *See Donihoo, 1998 WL 91256, at *2.*

> FN1. In making this determination, the court must evaluate the employment status of each claimant in light of the following factors:
>
> 1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
>
> 3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
>
> 4) whether the service rendered requires a special skill;
>
> 5) the degree of permanency and duration of the working relationship;
>
> 6) the extent to which the service rendered is an integral part of the alleged employer's business.
>
> *Secretary of Labor v. Lauritzen*, 835 F.2d 1529, 1535 (7th Cir.1987).

Pfahler makes no showing that other potential claimants performed the same type of duties as himself, or that they could be classified as "independent contractors." Pfahler provides no grounds indicating his knowledge of the work other workers performed, the circumstances under which work was performed, or the circumstances of potential claimants affecting their desire to work as independent contractors or employees. Moreover, Pfahler testified that aside from Ricondo, "I don't know anything about [CFA's] relationships with any other companies." Pfahler Dep. p. 108. Pfahler attests that most, if not all, of those others with whom he worked while at CFA held ministerial, non-supervisory positions, with little or no exercise of discretion or judgment. Pfahler Decl. ¶ 20. However, Pfahler's belief as to the nature of the employment relationship between other workers and CFA is insufficient to meet the similarly situated

requirement. Pfahler must point to something concrete aside from his belief.

Moreover, Pfahler is able to identify only three other people placed by CFA that he purportedly met while working at Ricondo. As to the rest of the potential claimants, Pfahler merely attaches a list of all persons referred by CFA who worked over 40 hours per week. He provides no basis for concluding these workers were "employees" and not "independent contractors." Simply identifying a group who worked overtime does nothing to establish a situation similar to Pfahler's. Rather, he must make some showing that the nature of the employment relationship between these workers and CFA renders them "employees" under the FLSA. *See Klegerman v. F.G. Apparel, Inc.*, 1986 WL 2531, at *6 (N.D.Ill. Feb. 11, 1986) (Nordberg, J.) (denying collective action where plaintiff failed to identify any other individuals alleged to be similarly situated and merely alleged defendant discriminated against other employees); *D'Anna v. M/A-Com, Inc.*, 903 F.Supp. 889, 893-94 (D.Md.1995) (requiring plaintiff to make a modest preliminary showing that a similarly situated group of potential claimants exists and concluding that broad allegations of class-wide discrimination along with a mere list of names, without more, is insufficient to show plaintiff is similarly situated).

**\*3** Pfahler argues he is similarly situated because he and other potential claimants were all subjected to the same CFA interviewing, testing, screening, and placement procedures, and that they all submitted CFA time sheets, were paid by computer generated checks, and were all placed in jobs in the Chicago area. But the similarity of the procedures through which workers registered and were paid is not probative of the nature of their employment status with each of the various corporate clients with whom they were placed. Pfahler devotes significant time to discussing the background and facts he believes establish his status as an employee and his entitlement to overtime pay. However, the facts that may establish Pfahler's status as an employee have no bearing on whether other potential claimants experienced similar relationships with CFA.

Finally, Pfahler relies on *Behr v. Drake Hotel*, 586 F.Supp. 427 (N.D.Ill.1984) and *Allen v. Marshall Field & Co.*, 93 F.R.D. 438 (N.D.Ill.1982) in support of his argument that he makes the minimal showing necessary to establish he is similarly situated with other potential claimants. Those cases involved claims of discrimination under the Age Discrimination in Employment Act, which

Not Reported in F.Supp.2d, 2000 WL 198888 (N.D.Ill.), 8 Wage & Hour Cas.2d (BNA) 977
**(Cite as: 2000 WL 198888 (N.D.Ill.))**

incorporates the collective action provision of the FLSA. In a discrimination case, it is relatively easy to satisfy the similarly situated standard. As noted in *Allen* and *Behr,* a discrimination case focuses on whether the defendant had a policy of discriminating against its employees. The primary showing of discrimination is common to all potential claimants. However, the focus of a collective action in this case would be the distinction between an employee and an independent contractor. The focus would not be CFA's actions, but rather the nature of the claimants' employment relationship with CFA. A collective action in this situation is only appropriate where the plaintiff makes some showing that the nature of the work performed by other claimants is at least similar to his own. *See Donihoo, 1998 WL 91256, at \*2.* Pfahler fails to do so.

CONCLUSION

 Pfahler's motion for conditional certification of collective action and to send notice of collective action is denied.

 Not Reported in F.Supp.2d, 2000 WL 198888 (N.D.Ill.), 8 Wage & Hour Cas.2d (BNA) 977

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 8

 Westlaw.

Not Reported in F.Supp.2d    FOR EDUCATIONAL USE ONLY    Page 1
Not Reported in F.Supp.2d, 2003 WL 2006593 (N.D.Ill.)
**(Cite as: 2003 WL 2006593 (N.D.Ill.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.
Linda TAILLON, on behalf of herself and all other
Plaintiffs similarly situated
known and unknown, Plaintiff,
v.
KOHLER RENTAL POWER, INC., a wholly owned
subsidiary of Kohler Company,
Defendant.
**No. 02 C 8882.**

April 29, 2003.

*MEMORANDUM OPINION AND ORDER*

DARRAH, J.

**\*1** Plaintiff, Linda Taillon ("Plaintiff"), filed a four-count complaint against Defendant, Kohler Rental Power, Inc. ("Defendant"), alleging violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Count I); the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* and the Portal to Portal Act, 29 U.S.C. § 251 *et seq.* (Count II); the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/4a (Count III); and to collect unpaid wages pursuant to the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115 Ill. Comp. Stat. 115/1 *et seq.* (Count IV). Plaintiff has filed a Motion for an Order Authorizing Notice to Similarly Situated Persons Pursuant to 29 U.S.C. § 216(b).

For the reasons that follow, Plaintiff's motion is granted.

The requirements for a class or collective action under the FLSA are governed by 29 U.S.C. § 216(b). Section 216(b) provides:

An action to recover the liability prescribed in [section 206, 207 or 215(a)(3) of title 29] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or

themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.
29 U.S.C. § 216(b).

Under § 216(b), class actions under the FLSA can only be maintained when and if potential claimants opt in. *Allen v. Marshall Field & Co.,* 93 F.R.D. 438, 441 (N.D.Ill.1982). In contrast, class actions under Rule 23 bind all members of the class unless they opt out. This difference between Rule 23 and § 216(b) means that Rule 23's class certification requirements do not apply to FLSA class actions. *King v. General Elec. Co.,* 960 F.2d 617, 621 (7th Cir.1992); *Woods v. New York Life Ins. Co.,* 686 F.2d 578, 580 (7th Cir.1982).

Rather, under the FLSA, the representative need only show that the plaintiffs are similarly situated. 29 U.S.C. § 216(b). However, the FLSA and its regulations do not define similarly situated. A named plaintiff can show that the potential claimants are similarly situated "by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Realite v. Ark Rests. Corp.,* 7 F.Supp.2d 303, 306 (S.D.N.Y.1998) (citations omitted).

District courts have the power to authorize notice of the action to potential plaintiffs. *Woods,* 686 F.2d at 580.

Defendant opposes notifying potential plaintiffs for the following reasons: (1) Plaintiff's position of Project Manager II is exempt under the FLSA, (2) Plaintiff's declaration in support of her motion contains inadmissible facts which are not based on her personal knowledge, (3) the complaint alleges no facts which establish that a FLSA violation occurred, (4) Plaintiff has failed to show that any member of the purported plaintiff class has any interest in this action, and (5) the proposed notice is defective.

**\*2** Defendant argues that the Project Manager II position is exempt under the FLSA. In support of this argument, Defendant has attached the affidavit of Richard C. Homiston ("Homiston"), Defendant's Director of Human Resources.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                FOR EDUCATIONAL USE ONLY                                    Page 2
Not Reported in F.Supp.2d, 2003 WL 2006593 (N.D.Ill.)
**(Cite as: 2003 WL 2006593 (N.D.Ill.))**

According to the Affidavit of Richard C. Homiston, Defendant's Director of Human Resources, [FN1] a Project Manager II's "primary job duties consist of non-manual work that is directly related to [Defendant's] general business operation," selling Defendant's Event Services, directing event projects from start to finish, assisting Defendant's regional and branch managers with planning and forecasting, assisting customers, assuring that customers have trained staff to maintain equipment and manage the business, and advising Defendant of its fleet positioning. (Homiston Aff. ¶ 6.) A Project Manager II must exercise discretion and independent judgment. (*Id.* ¶ 8.) However, a Project Manager II does not formulate management policies or participate in every aspect of Defendant's business as a whole. (*Id.*) Project Manager II is an "exempt" position, and employees occupying this position are paid on a salaried basis. (*Id.* ¶ 11.)

> FN1. A copy of the position description for the Project Manager II position was purportedly attached as Exhibit A to the Homiston Affidavit. However, there is no Exhibit A to the Homiston Affidavit.

Defendant has not identified a specific provision of the FLSA that would exempt Plaintiff's position from the maximum hour provisions of the FLSA. Rather, Defendant relies solely on the conclusion that its internal classification of the Project Manager II position is "exempt". This is an insufficient basis to determine that the Project Manager II position is "exempt" under the FLSA. Defendant will not be prejudiced if it is determined that the Project Manager II position is "exempt" after notice has been sent to potential plaintiffs. *Jackson v. New York Tel. Co.,* 163 F.R.D. 429, 431 (S.D.N.Y.1995) ("[E]ven if plaintiffs' claims turn out to be meritless ... notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in this case.").

Defendant next argues that notice under § 216(b) is improper because the complaint does not allege a FLSA violation and that Plaintiff's declaration is deficient because it contains inadmissible facts. [FN2] Specifically, Defendant argues that the allegations in the complaint do not meet the requirements for issuing notice to potential class members.

> FN2. Defendant has filed a separate motion to strike portions of Plaintiff's declaration.

For the reasons stated herein, this motion is denied.

The complaint alleges that, throughout Plaintiff's tenure with Defendant, she worked in excess of forty hours per week and was not paid time-and-a-half for the hours worked in excess of forty hours per week. (Compl.¶ ¶ 21, 22.) The complaint also alleges that Defendant employed others who performed the same job duties and responsibilities as Plaintiff and who were not paid time-and-a-half for hours worked in excess of forty hours per week. (*Id.* ¶ 23.) The complaint further alleges that "it is ... Defendant's policy and practice [not] to pay overtime wages to employees employed in the job position of 'Account Executive'...." (*Id.* ¶ 24.)

**\*3** These allegations are sufficient to allege a FLSA violation and meet the requirements for notice under § 216(b). The complaint alleges that it was Defendant's policy and practice not to pay time-and-half to employees in Plaintiff's position. Furthermore, the Homiston Affidavit actually supports the allegations in the complaint. Homiston asserts that it was Defendant's practice and policy not to pay overtime to Project Manager IIs but to pay them on a salaried basis because Defendant has classified such employees as "exempt" under the FLSA. (Homiston Aff. ¶ 11.) However, if such employees are not "exempt" under the FLSA, then a FLSA violation has occurred, and a class of employees who were wrongly denied overtime compensation exists. Also, it is curious that the affidavit submitted by Defendant's Director of Human Resources does not assert that all persons employed in Plaintiff's position of Project Manager II are in fact not similarly situated as Plaintiff. The Declaration filed by Plaintiff in this regard is reasonable based on firsthand knowledge in material part and is, therefore, unrebutted.

Defendant also argues that notice should not be sent to potential class members because Plaintiff has not shown that there are other similarly situated individuals who were denied overtime compensation in violation of the FLSA but who also wish to opt-in to the instant case. Defendant cites several cases in which named plaintiffs provided affidavits from potential class members before notice was authorized. *See Belbis v. County of Cook,* No. 01 C 6119, 2002 WL 31600048 (N.D.Ill. Nov. 13, 2002); *Vazquez v. Tri-State Mgmt. Co., Inc.,* 2002 WL 58718 (N.D.Ill. Jan. 10, 2002); *Morisky v. Public Serv. Elect. & Gas Co.,* 111 F.Supp.2d 493 (D.N.J.2000); *Realite v. Ark Rests. Corp.,* 7 F.Supp.2d at 306; *Allen v. Marshall Field & Co.,* 93

F.R.D. 438 (N.D.Ill.1982).

 However, those cases did not establish an independent requirement of proof of desire to join in the action for authorization of notice under § 216(b). Rather, in those cases, the affidavits of potential class members were used to determine whether the named plaintiff and potential class members were similarly situated under § 216(b), *see Belbis,* 2002 WL 31600048, at *5; *Vazquez,* 2002 WL 58718, at *3; *Realite,* 7 F.Supp.2d at 306-7; whether the numerosity requirement for class certification under Federal Rule of Civil Procedure 23 had been met, *Morisky,* 111 F.Supp.2d at 497 n. 6; and to determine that judicial economy would be served by notifying potential class members where other actions were about to be filed. *See Allen,* 93 F.R.D. at 443.

 Plaintiff has adequately alleged and Defendant has conceded that Defendant has a common plan of not paying overtime wages to Project Manager IIs. Thus, Plaintiff has established that the plaintiff class is similarly situated.

 Defendant argues that the proposed notice is defective because: (1) it is overly broad because it is not limited to Project Manager IIs; (2) the description of the action favors Plaintiff; and (3) it fails to notify potential class members that, if they opt-in, they will be required to participate in discovery. In her reply in support of her motion, Plaintiff states that she seeks only to notify other employees who are Project Manager IIs. (Reply Supp. Mot. Begin "Opt-In" Notice Members Pl. Class at 2 n. 1.)

 **\*4** Defendant also objects to the notice because the proposed notice precludes Defendant from communicating with class members. District courts have discretion to limit communication between parties and class members. *Williams v. Chartwell Fin. Serv. Ltd.,* 204 F.3d 748, 759 (7th Cir.2000). An order limiting Defendant's communication with class members regarding this action will cause Defendant no harm and generally promote a fair notification procedure.

 The Portal-to-Portal Act provides that the statute of limitations for actions under the FLSA is two years, unless the cause of action arises out of a willful violation of the FLSA; in which case, the statute of limitations is three years. 29 U.S.C. § 255(a). Defendant has conceded that it did not pay overtime wages to Project Manager IIs because it classifies that position as "exempt." (Homiston Aff. ¶ 11.) This concession implies willfulness on the part of the

Defendant, which implies that the proper statute of limitations is three years. 29 U.S.C. § 255(a).

 Therefore, Plaintiff's Motion for an Order Authorizing Notice to Similarly Situated Persons Pursuant to 29 U.S.C. § 216(b) is granted. As Plaintiff concedes, the proper class is employees who occupy the Project Manager II position who work or worked for Defendant during the past three years and who (1) worked overtime during that period and (2) did not receive time-and-a-half for hours worked in excess of forty hours. Defendant's objections to the form of the order are not meritorious.

*CONCLUSION*

 For the reasons stated above, Plaintiff Linda Taillon's Motion for an Order Authorizing Notice to Similarly Situated Persons Pursuant to 29 U.S.C. § 216(b) is GRANTED.

 Defendant is ordered to (1) submit, within fourteen days of the date of this Memorandum Opinion and Order, the names and addresses of all potential class members and (2) refrain from any and all forms of communication with current and prospective class members concerning the merits and issues of their FLSA claims. Counsel for Plaintiff is ordered to amend Plaintiff's proposed Notice to conform to the class that has been defined in this Memorandum Opinion and Order, which shall be sent to all potential class members.

 It is further ordered that Defendant's Motion to Strike Portions of Plaintiff's Declaration is DENIED.

 IT IS SO ORDERED.

 Not Reported in F.Supp.2d, 2003 WL 2006593 (N.D.Ill.)

 **Motions, Pleadings and Filings** (Back to top)

• 2004 WL 869888 (Trial Motion, Memorandum and Affidavit) Agreed Motion to Approve Settlement (Feb. 04, 2004)

• 2003 WL 23419332 (Trial Motion, Memorandum and Affidavit) Motion for Leave to Withdraw Appearance (Oct. 30, 2003)

• 2003 WL 23683456 (Trial Motion, Memorandum and Affidavit) Plaintiff's Reply in Support of Her Motion to Begin "Opt-In" Notice to Members of the Plaintiff Class (Mar. 18, 2003)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                FOR EDUCATIONAL USE ONLY                                    Page 4
Not Reported in F.Supp.2d, 2003 WL 2006593 (N.D.Ill.)
**(Cite as: 2003 WL 2006593 (N.D.Ill.))**

• 2003 WL 23419326 (Trial Motion, Memorandum and Affidavit) Defendant's Motion to Strike Portions of Plaintiff's Declaration (Mar. 11, 2003)

• 2003 WL 23419329 (Trial Motion, Memorandum and Affidavit) Defendant's Memorandum in Opposition to Plaintiff's Motion for an Order Authorizing Notice to Similarly Situated Persons Pursuant to 29 U.S.C. § 216(B) (Mar. 11, 2003)

• 2003 WL 23683461 (Trial Motion, Memorandum and Affidavit) Defendant's Motion to Strike Portions of Plaintiff's Declaration (Mar. 11, 2003)

• 2003 WL 23683463 (Trial Motion, Memorandum and Affidavit) Defendant's Memorandum in Opposition to Plaintiff's Motion for an Order Authorizing Notice to Similarly Situated Persons Pursuant to 29 U.S.C. § 216(B) (Mar. 11, 2003)

• 2003 WL 23419325 (Trial Motion, Memorandum and Affidavit) Agreed Motion for Extension of Time for Filing Defendant's Response Brief in Opposition to Plaintiff's Motion for an Order Authorizing Notice to Similarly Situated Persons Pursuant to 29 U.S.C. § 216(B) (Feb. 27, 2003)

• 2003 WL 23419322 (Trial Motion, Memorandum and Affidavit) Plaintiff's Motion for an Order Authorizing Notice to Similarly Situated Persons Pursuant to 29 U.S.C. § 216(b) (Feb. 11, 2003)

• 2003 WL 23419319 (Trial Pleading) Answer and Affirmative Defense to Complaint (Jan. 31, 2003)

• 2003 WL 23683561 (Trial Pleading) Answer and Affirmative Defense to Complaint (Jan. 31, 2003)

• 2002 WL 32452956 (Trial Pleading) Complaint (Dec. 09, 2002)

• 2002 WL 32601690 (Trial Pleading) Complaint (Dec. 09, 2002)

• 1:02CV08882 (Docket) (Dec. 09, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.