**Unpublished Cases – Part 1**

Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2005 WL 589425 (D.N.H.), 2005 DNH 040
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents

NOT FOR PUBLICATION
   United States District Court,D. New Hampshire.
   Robert THERRIEN, Plaintiff
   v.
   Mark F. SULLIVAN, Defendant
   **No. Civ. 04-31-SM.**

March 14, 2005.

Sven D. Wiberg, Desfosses Law Firm, Portsmouth, NH, for Plaintiff.
Richard Bell, Nelson Kinder Mosseau & Saturley PC, Manchester, NH, for Defendant.

*ORDER*
MCAULIFFE, Chief J.
*1 In 1996, plaintiff, Robert Therrien, was charged with one count of aggravated felonious sexual assault, for having allegedly forced his first-grade daughter to perform fellatio on him. Therrien retained the defendant, Mark Sullivan, Esq., to represent him in defending against that charge. Following a jury trial, Therrien was convicted and sentenced to seven and one-half to fifteen years in state prison. That conviction was affirmed on appeal.

Subsequently, however, Therrien moved for, and was granted, a new trial on grounds that Sullivan provided constitutionally deficient representation. In granting Therrien's requested relief, the state court concluded that Sullivan failed to file appropriate pretrial motions in limine seeking to prevent the State from introducing evidence of Therrien's prior bad acts, and failed to properly object to the introduction of that prejudicial evidence at trial.

Therrien then filed this civil suit against Sullivan, invoking this court's diversity jurisdiction. In the sole count of his complaint, Therrien asserts claims for "legal malpractice, negligence, breach of contract, fraud and other [unspecified] causes of action arising out of [Sullivan's] deficient representation of Plaintiff." Amended complaint at para. 1. Sullivan moves to dismiss Therrien's claims, saying his complaint fails to state a claim upon which relief may be granted and that those claims are barred by the pertinent statute of limitations. In the alternative, Sullivan moves this court to certify the potentially dispositive statute of limitations question to the New Hampshire Supreme Court. Therrien objects.

Standard of Review

When ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." *Martin v. Applied Cellular Tech.,* 284 F.3d 1, 6 (1st Cir.2002). Dismissal is appropriate only if "it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." *Langadinos v. American Airlines, Inc.,* 199 F.3d 68, 69 (1st Cir.2000).

Notwithstanding this deferential standard of review, however, the court need not accept as true a plaintiff's "bald assertions" or conclusions of law. *See Resolution Trust Corp. v. Driscoll,* 985 F.2d 44, 48 (1st Cir.1993) ("Factual allegations in a complaint are assumed to be true when a court is passing upon a motion to dismiss, but this tolerance does not extend to legal conclusions or to 'bald assertions." ') (citations omitted). *See also Chongris v. Board of Appeals,* 811 F.2d 36, 37 (1st Cir.1987).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2

Not Reported in F.Supp.2d, 2005 WL 589425 (D.N.H.), 2005 DNH 040
**(Cite as: Not Reported in F.Supp.2d)**

Factual Background

The relevant factual background is described in detail in the New Hampshire Supreme Court's opinion affirming Therrien's criminal conviction. *State v. Therrien,* 144 N.H. 433, 744 A.2d 85 (1999) (*"Therrien 1"*). Only an abbreviated recitation of the pertinent facts is necessary here.

**\*2** While living in Portsmouth, New Hampshire, Therrien allegedly forced his first-grade daughter to perform fellatio on him. Soon thereafter, the family moved to Maine. In 1995, the victim informed her mother about the assault that had allegedly occurred earlier in Portsmouth. Therrien was charged with that assault, but before he was brought to trial in New Hampshire, he was tried for other alleged sexual assaults against his daughter in Maine. Therrien was acquitted of those charges.

At his subsequent trial on the Portsmouth charge, the jury was allowed to hear evidence of Therrien's alleged sexual assaults against his daughter in Maine. Defense counsel was not, however, permitted to introduce evidence that Therrien had been acquitted of those charges. Additionally, over defense counsel's objection, the jury was allowed to hear testimony from the victim's social worker, who testified that Therrien had abused the victim until she was thirteen years old. In March of 1997, Therrien was convicted of aggravated felonious sexual assault. On April 25, 1997, he was sentenced to serve seven and one-half to fifteen years in prison.

On direct appeal to the New Hampshire Supreme Court, Therrien, represented by different counsel, asserted that the trial court erred in admitting evidence of other bad acts (i.e., the alleged sexual assaults that occurred in Maine), without permitting him to introduce evidence that he had been acquitted of those charges. He also challenged the trial court's decision to allow the victim's therapist to testify about multiple incidents of abuse. The state supreme court affirmed Therrien's conviction, concluding that the victim's testimony about sexual assaults that allegedly took place in Maine amounted to harmless error. It also concluded that Therrien failed to preserve for appellate review his objections to: (1) the court's ruling precluding

introduction of evidence of his acquittal of the Maine charges; and (2) introduction of the social worker's testimony. *See Therrien I.*

Therrien then sought collateral relief in the state trial court, moving for a new trial. He asserted that he had been denied effective assistance of counsel at his trial. The superior court denied that motion, concluding that counsel provided constitutionally adequate representation. The state supreme court vacated that holding, reasoning that the trial court should have conducted an evidentiary hearing on the matter prior to ruling. The case was transferred to a new judge, an evidentiary hearing was held, and the court determined that Sullivan did, in fact, provide constitutionally deficient representation:

The court finds that Sullivan's representation of defendant at trial was deficient, as he failed to properly prepare for, attempt to exclude, try to mitigate, or even preserve for appeal the issue of defendant's inherently prejudicial prior bad acts.

*State v. Therrien,* No. 96-S-541 (N.H.Super.Ct. May 7, 2002) (*"Therrien II"*). Accordingly, the court vacated Therrien's conviction and granted his motion for a new trial. The State, however, declined to re-prosecute Therrien, perhaps because he had already served approximately five years in prison.

**\*3** On January 28, 2004, Therrien filed this diversity action against Sullivan, asserting that he is actually innocent of the charges brought against him and saying that Sullivan's deficient representation proximately caused his allegedly wrongful conviction and incarceration.[FN1] As noted above, Sullivan moves to dismiss Therrien's one-count complaint on grounds that it is barred by the applicable limitations period.

> FN1. It is appropriate, in this context, to note that no court has determined that Therrien was actually innocent of the criminal charge against him; his conviction was set aside on other grounds, and the charges were then dropped as a matter of prosecutorial discretion.

Discussion

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                        Page 3

Not Reported in F.Supp.2d, 2005 WL 589425 (D.N.H.), 2005 DNH 040
**(Cite as: Not Reported in F.Supp.2d)**

I. *Essential Elements of a Viable Claim.*

Under New Hampshire law, a plaintiff in a traditional civil legal malpractice case must prove: (1) that an attorney-client relationship existed, which placed a duty upon the attorney to exercise reasonable professional care, skill and knowledge in providing legal services to that client; (2) a breach of that duty; and (3) resultant harm legally caused by that breach.

*Furbush v. McKittrick,* 149 N.H. 426, 432, 821 A.2d 1126 (2003). In a criminal legal malpractice action-one in which the plaintiff asserts that counsel provided deficient representation in a criminal proceeding-the plaintiff must also demonstrate that he or she was "actually innocent" of the conduct giving rise to the criminal charges.While [a criminal malpractice claim] requires all the proof essential to a civil malpractice claim, a criminal malpractice action will fail if the claimant does not allege and prove, by a preponderance of the evidence, actual innocence. It is not sufficient for a claimant to allege and prove that if counsel had acted differently, *legal* guilt would not have been established. As a matter of law, the gateway to damages will remain closed unless a claimant can establish that he or she is, in fact, innocent of the conduct underlying the criminal charge.

*Mahoney v. Shaheen, Cappiello, Stein & Gordon, P.A.,* 143 N.H. 491, 496, 727 A.2d 996 (1999) (emphasis in original).

Here, Therrien's complaint plainly sets forth each of the essential elements of a viable claim for criminal legal malpractice. Whether he can actually prove each of those elements, and whether he can demonstrate a causative link between Sullivan's conduct and Therrien's criminal conviction, *see, e.g., Carbone v. Tierney,* 151 N.H. 521, 864 A.2d 308 (2004), are not issues that are appropriate for resolution on a motion to dismiss. *See, e .g., Gorski v. N.H. Dep't of Corr.,* 290 F.3d 466, 472 (1st Cir.2002) ("The issue presently before us, however, is not what the plaintiff is required ultimately to *prove* in order to prevail on her claim, but rather what she is required to *plead* in order to be

permitted to develop her case for eventual adjudication on the merits.") (emphasis in original).

II. *Statute of Limitations and Tolling.*

Malpractice actions are governed by N.H.Rev.Stat. Ann. ("RSA") 508:4, which establishes a three-year limitations period for all personal injury actions. *See Furbush,* 149 N.H. at 430, 821 A.2d 1126. "A cause of action arises once all the necessary elements are present." *Shaheen, Cappiello, Stein & Gordon, P.A. v. Home Ins. Co.,* 143 N.H. 35, 40, 719 A.2d 562 (1998) (citation and internal punctuation omitted). Accordingly, a cause of action for legal malpractice accrues when "an attorney breaches a professional duty *and* damages occur as a result," *Id.* (emphasis in original). So, an action to recover for alleged criminal legal malpractice must be brought within three years of that coincidence.

**\*4** In this case, Sullivan's breach of professional duty consisted of his failure to adequately prepare for, and address at trial, the prior bad acts evidence offered against Therrien. *See* Complaint at para. 7. *See also Therrien II.* That alleged malpractice first caused harm to Therrien when he was convicted (wrongly, according to Therrien) of aggravated felonious sexual assault. The harm associated with Sullivan's alleged malpractice was, therefore, manifest by December 13, 1999, when the New Hampshire Supreme Court affirmed Therrien's conviction.

Therrien was certainly aware of his potential malpractice claim against Sullivan, at the very latest, when Therrien filed his motion for a new trial, on March 2, 2000. In that motion, Therrien alleged, among other things, that "The prejudice from trial counsel's deficient performance is palpable.... If proper arguments had been made by [Attorney Sullivan], there is a reasonable probability that either the verdict would have been different, or that Mr. Therrien's conviction would have been reversed on appeal." Exhibit A to defendant's memorandum, Therrien's motion for new trial at 19. Plainly, by that time, Therrien knew or believed that: (1) he was actually innocent of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 4

Not Reported in F.Supp.2d, 2005 WL 589425 (D.N.H.), 2005 DNH 040
**(Cite as: Not Reported in F.Supp.2d)**

charge against him; (2) he was, nevertheless, convicted of that charge; and (3) Attorney Sullivan had not properly objected to (or preserved issues for appeal related to) the admission of prejudicial bad acts evidence, preclusion of evidence of the Maine acquittals, and admission of the social worker's testimony. Thus, he was aware of both Sullivan's alleged malpractice and the causal link between that alleged malpractice and his wrongful conviction.

In short, once his conviction was affirmed on appeal (and certainly by March 2, 2000, when he filed his motion for a new trial), Therrien knew his attorney had allegedly "breach[ed] a professional duty *and damages occur[red] as a result.*" *Home Ins. Co.,* 143 N.H. at 40, 719 A.2d 562 (emphasis supplied). It would seem apparent, then, that Therrien's criminal malpractice suit, which was filed on January 28, 2004, is untimely under New Hampshire's three-year limitations period.

But Therrien asserts that the limitations period did not begin to run (or should have been tolled) until May 7, 2002, when the state trial court determined that Sullivan's representation had been constitutionally deficient and granted his motion for a new trial. Only then, says Therrien, was he legally capable of establishing an essential element of his criminal malpractice claim against Sullivan: his actual innocence of the crime of aggravated felonious sexual assault. Before his conviction was set aside, he says, principles of collateral estoppel would have precluded him from denying that he was guilty of the criminal charge. That is to say, until his conviction was set aside, he was legally prevented from proving an essential element of his criminal malpractice claim: that he was actually innocent of the charges against him.

**\*5** Accordingly, says Therrien, only after his conviction was vacated and his motion for new trial granted, were all of the legal bars to his malpractice claim against Sullivan removed. It naturally follows, then, that he claims it was at that point that his malpractice cause of action actually "accrued," and the time in which to file began to run. Alternatively, he says the applicable limitations period should be tolled until the collateral estoppel bar to his proving actual innocence was lifted (when his motion for

new trial was granted, on May 7, 2002).

Although the New Hampshire Supreme Court has yet to address the legal question presented by this case, numerous other state courts have wrestled with the issue. Among those courts, there is a decided lack of agreement regarding when a criminal defendant's legal malpractice claim actually accrues. Some courts have adopted what has become known as the "one track approach," holding that a criminal malpractice action does not accrue until the defendant has obtained collateral relief from his or her conviction. The Supreme Court of Minnesota has, for example, observed that until appellate (or collateral) relief is obtained with regard to the underlying conviction, a claim for criminal malpractice cannot survive a motion to dismiss. Principles of collateral estoppel would preclude a criminal defendant from establishing his or her innocence of the underlying crime-an essential element of the malpractice claim.

Our holding today is a recognition that as long as a valid criminal conviction is in place a legal malpractice cause of action based on a defense counsel's ineffective assistance cannot withstand a Rule 12.02(e) motion to dismiss.

Additionally, by precluding claims from proceeding in which a plaintiff's criminal conviction has not been overturned and will likely never be overturned, our decision comports with another fundamental policy of the statute of limitations, which is to permit the judicial system to husband its limited resources. Therefore, in this case, the policy against allowing a defendant to collaterally attack a valid criminal conviction in a subsequent civil proceeding outweighs the policy of preventing stale claims.

*Noske v. Friedberg,* 670 N.W.2d 740, 745-46 (Minn.2003) (citation and internal punctuation omitted). *See also Canaan v. Bartee,* 276 Kan. 116, 72 P.3d 911, 921 (Kan.) ("We hold that before [a criminal defendant] may sue his attorneys for legal malpractice he must obtain postconviction relief"), *cert. denied,* 540 U.S. 1090, 124 S.Ct. 962, 157 L.Ed.2d 795 (2003); *Adkins v. Dixon,* 253 Va. 275,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 5

Not Reported in F.Supp.2d, 2005 WL 589425 (D.N.H.), 2005 DNH 040
**(Cite as: Not Reported in F.Supp.2d)**

482 S.E.2d 797, 801 (Va.1997) ("Since successful termination of [post-conviction collateral challenges to the conviction] is a part of [plaintiff's] cause of action, he has no right of action until that time and, thus, the statute of limitations does not begin to run until termination of the post-conviction proceeding." ); *Stevens v. Bispham,* 316 Or. 221, 851 P.2d 556, 566 (Or.1993) ("We hold that, in order for one convicted of a criminal offense to bring an action for professional negligence against that person's criminal defense counsel, the person must, in addition to alleging a duty, its breach, and causation, allege 'harm' in that the person has been exonerated of the criminal offense through reversal on direct appeal, through post-conviction relief proceedings, or otherwise.").

*6 Other courts, however, have adopted a "two track approach," concluding that a malpractice cause of action accrues as soon as the criminal defendant becomes aware of his or her attorney's negligence and the resulting injury (typically, not later than the date on which the criminal defendant filed his or her petition seeking collateral relief from the conviction). So, for example, the Colorado Supreme Court has held:
[A]n underlying criminal appeal or motion for postconviction relief does not affect the accrual for related legal malpractice claims. Similarly, such criminal matters do not require tolling of the statute of limitations of related malpractice claims. Criminal defendants must file their malpractice actions within two years of discovering the attorney's negligence and the resulting injury. In the event that a particular criminal defendant must obtain appellate relief to avoid dismissal of a pending malpractice action, or if proceeding with a malpractice action would jeopardize the criminal defendant's rights, the trial court may stay the malpractice action pending resolution of the criminal case.

*Morrison v. Goff,* 91 P.3d 1050, 1058 (Colo.2004). *See also Ereth v. Cascade County,* 318 Mont. 355, 81 P.3d 463, 469 (Mont.2003) ("[W]e hold that a criminal defendant must file a malpractice complaint within three years of discovering the act, error or omission ... [W]ith the claim preserved, the defendant can seek a stay in the civil suit until the

criminal case is resolved."); *Gebhardt v. O'Rourke,* 444 Mich. 535, 510 N.W.2d 900, 904 (Mich.1994) ( "[Plaintiff] knew that she had a possible claim against [her criminal defense counsel] when she moved for a new trial. At this time, she was able to allege the elements of a malpractice claim.").

To be sure, a cause of action "accrues" when all elements of that claim are present. Whether a plaintiff can actually *prove* each of those essential elements is, typically, not relevant for purposes of determining when the pertinent limitations period has begun to run. Consequently, the New Hampshire Supreme Court might well adopt the " two track approach," concluding that the running of the limitations period is not affected by the fact that a defendant in a criminal malpractice action can assert, by way of affirmative defense, that the plaintiff is collaterally estopped from proving one or more essential elements of his or her malpractice claim.

On the other hand, there might well be sound policy reasons that counsel in favor of recognizing that a criminal defendant's malpractice cause of action does not accrue (or that the limitations period is tolled) until the criminal defendant obtains collateral relief from his or her conviction. Concluding otherwise might effectively encourage every defendant convicted of a crime to immediately file a malpractice action against his or her attorney (and then seek a stay of that proceeding), to protect against losing the cause of action before he or she obtains collateral relief from the underlying conviction. That, in turn, would likely have an adverse impact on the number of attorneys willing to represent criminal defendants. It would also put substantial pressure on the State's limited judicial resources.

*7 Resolving such fundamental questions of state law is a role best left to the state courts. When a federal court is called upon to apply state law, it must "take state law as it finds it: 'not as it might conceivably be, some day; nor even as it should be." ' *Kassel v. Gannett Co.,* 875 F.2d 935, 950 (1st Cir.1989) (*quoting Plummer v. Abbott Laboratories,* 568 F.Supp. 920, 927 (D.R.I.1983)). When state law has been authoritatively interpreted by the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 6

Not Reported in F.Supp.2d, 2005 WL 589425 (D.N.H.), 2005 DNH 040
**(Cite as: Not Reported in F.Supp.2d)**

state's highest court, this court's role is straightforward: it must apply that law according to its tenor. *See Kassel,* 875 F.2d at 950. When the signposts are somewhat blurred, the federal court may assume that the state court would adopt an interpretation of state law that is consistent with logic and supported by reasoned authority. *See Moores v. Greenberg,* 834 F.2d 1105, 1107 n. 3 (1st Cir.1987). However, this court should be, and is, hesitant to blaze new, previously uncharted state-law trails. Accordingly, when a dispositive legal question is novel and the state's law in the area is unsettled, certification is often appropriate. *See Lehman Bros. v. Schein,* 416 U.S. 386, 391, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974); *Arizonans for Official English v. Arizona,* 520 U.S. 43, 76, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997). *See also Acadia Ins. Co. v. McNeil,* 116 F.3d 599, 605 (1st Cir.1997).

An expansive reading of New Hampshire's statutory limitations period or the State's controlling principles of equitable tolling, particularly when resolution of a novel question of New Hampshire law implicates substantial public policy concerns, is a realm best occupied by the New Hampshire Supreme Court. Because that court has yet to address the discrete issue presented in this case, and because it is unclear how it would likely resolve that issue in the context of the facts as pled, the fairest and most prudent course of action at this stage is to certify the question. Otherwise, the case would be dismissed (perhaps wrongly) and the Court of Appeals would likely have to revisit the question of certification. Alternatively, if the case were not dismissed, extended and expensive litigation would proceed, perhaps unnecessarily, on a claim of questionable viability. Neither situation represents an efficient use of judicial, or the litigants', resources.

Conclusion

Defendant's motions to dismiss (documents no. 3 and 7) are denied. His motion to reconsider denial of motion to dismiss or in the alternative for certification to the New Hampshire Supreme Court (document no. 11) is granted in part and denied in

part.[FN2] To the extent it seeks certification to the New Hampshire Supreme Court of the controlling legal issues presented in this case, the motion is granted. In all other respects, it is denied.

> FN2. For procedural reasons, the court's original ruling on defendant's motion to dismiss (document no. 7), issued by the Magistrate Judge, was vacated *after* defendant filed his motion to reconsider or, in the alternative, to certify. Accordingly, both the motion to dismiss and the motion to reconsider are, technically, ripe for review.

The court proposes to certify the following questions of law to the New Hampshire Supreme Court:
1. In the context of a civil action for criminal legal malpractice, *see, e.g., Mahoney v. Shaheen, Cappiello, Stein & Gordon, P.A.,* 143 N.H. 491, 727 A.2d 996 (1999), when does a criminal defendant's cause of action against his or her defense counsel accrue?
*8 2. If the cause of action for criminal legal malpractice accrues upon the criminal defendant's discovery of the attorney's alleged negligence and the resulting harm, is the pertinent state limitations period tolled until the criminal defendant obtains collateral relief from his or her underlying criminal conviction (thereby avoiding estoppel bars to proving actual innocence)?

*See generally* N.H.Supr. Ct. R. 34. If either party objects to the form of the questions the court proposes to certify, a written objection, along with suggested alternatives, shall be filed on or before April 8, 2005. The court proposes to submit to the Supreme Court, as its statement of facts, the facts as presented in this order. If either party objects or wishes the court to supplement that statement of facts, that party shall submit an objection and/or proposed statement of supplemental facts by April 8, 2005. The parties should, of course, bear in mind that because defendant's pending motion is one to dismiss, the court must assume that all properly alleged facts in plaintiff's amended complaint (document no. 6) are true.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 7

Not Reported in F.Supp.2d, 2005 WL 589425 (D.N.H.), 2005 DNH 040
**(Cite as: Not Reported in F.Supp.2d)**


SO ORDERED.

D.N.H.,2005.
Therrien v. Sullivan
Not Reported in F.Supp.2d, 2005 WL 589425
(D.N.H.), 2005 DNH 040

Briefs and Other Related Documents (Back to top)

• 1:04cv00031 (Docket) (Jan. 28, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                          Page 1

Not Reported in F.Supp.2d, 2004 WL 2359968 (D.Or.)
(Cite as: Not Reported in F.Supp.2d)

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Oregon.
Douglas ASHBY, Carol Porto, and Grant Wenzlick,
Plaintiffs,
v.
FARMERS INSURANCE COMPANY OF
OREGON, Defendant.
**No. CV 01-1446-BR.**

Oct. 18, 2004.

N. Robert Stoll, Steven D. Larson, David F. Rees,
Stoll Stoll Berne Lokting & Schlachter, P.C.,
Portland, OR, Charles A. Ringo, Beaverton, OR, for
Plaintiffs.
Barnes H. Ellis, Stephen A. Redshaw, Stoel Rives,
LLP, Portland, OR, for Defendant.

OPINION AND ORDER
BROWN, J.
**\*1** This matter comes before the Court on the
Motion for Class Certification (# 113) of Plaintiffs
Carol Porto and Grant Wenzlick.[FN1]

> FN1. The Court previously granted FICO's
> Motion for Summary Judgment against
> Plaintiff Douglas Ashby. *See* Opin. and
> Order issued March 17, 2004.

Porto and Wenzlick allege FICO violated the Fair
Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et
seq.,* when FICO used information in consumer
credit reports to increase the insurance premiums
FICO charged upon renewal of personal lines
insurance policies issued to Porto and Wenzlick.
Porto purchased and renewed automobile and
homeowner insurance policies from FICO.
Wenzlick purchased and renewed renter insurance
policies from FICO. Porto and Wenzlick allege the
increase in their respective insurance premiums

constituted adverse actions for which FICO failed to
give adequate notice under § 1681m(a)(1). Porto
and Wenzlick seek statutory damages, punitive
damages, and attorneys' fees.

For the following reasons, the Court GRANTS the
Motion for Class Certification of Plaintiffs Porto
and Wenzlick.

*STANDARDS*

Fed.R.Civ.P. 23 provides in pertinent part:
(a) Prerequisites to a Class Action. One or more
members of a class may sue or be sued as
representative parties on behalf of all only if (1) the
class is so numerous that joinder of all members is
impracticable, (2) there are questions of law or fact
common to the class, (3) the claims or defenses of
the representative parties are typical of the claims or
defenses of the class, and (4) the representative
parties will fairly and adequately protect the
interests of the class.
(b) Class Actions Maintainable. An action may be
maintained as a class action if the prerequisites of
subdivision (a) are satisfied, and in addition:

(3) the court finds that the questions of law or fact
common to the members of the class predominate
over any questions affecting only individual
members, and that a class action is superior to other
available methods for the fair and efficient
adjudication of the controversy. The matters
pertinent to the findings include: (A) the interest of
the members of the class in individually controlling
the prosecution or defense of separate actions; (B)
the extent and nature of any litigation concerning
the controversy already commenced by or against
members of the class; (C) the desirability or
undesirability of concentrating the litigation of the
claims in the particular forum; (D) the difficulties
likely to be encountered in the management of a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 2

Not Reported in F.Supp.2d, 2004 WL 2359968 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

class action.

The decision to grant or to deny class certification is within the trial court's discretion. *Jordan v. County of Los Angeles,* 669 F.2d 1311, 1318 (9th Cir.), *vacated on other grounds,* 459 U.S. 810 (1982). Plaintiffs have the burden to establish compliance with Rule 23. *In re N. Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.,* 693 F.2d 847, 854 (9th Cir.1982), *cert. denied,* 459 U.S. 1171 (1983). A class may be certified only if the court is satisfied "after a rigorous analysis that the prerequisites of Rule 23(a) have been satisfied." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 509 (9th Cir.1992) (citing *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161 (1982). A class may be certified as to one or more claims without certifying all of the claims alleged in the complaint. Fed.R.Civ.P. 23(c)(4).

**\*2** For purposes of ruling on a motion to certify a class, the court must take the substantive allegations of the complaint as true. *Blackie v. Barrack,* 524 F.2d 891, 901 n. 17 (9th Cir.1975), *cert. denied,* 429 U.S. 816 (1976). The determination of class certification does not require or permit a preliminary inquiry into the merits. *Id.* An extensive evidentiary showing by the plaintiff is not required as long as the court has sufficient material before it to determine the nature of the allegations and to rule on compliance with the requirements of Rule 23. *Id.*

### BACKGROUND

On October 7, 2004, this Court denied FICO's Motion for Summary Judgment in which FICO moved the Court to determine that the FCRA notice sent to Porto and Wenzlick complied with the notice requirements of § 1681m(a). The Court held " [FICO's] ... FCRA Notice requires the insured to inspect two separate documents and then to deduce that something negative in a consumer credit report caused the insurer to increase the premium charged on renewal." *See* Opin. and Order at 12 (issued Oct. 7, 2004). In other words, the Court found FICO did not establish as a matter of law that the FCRA notices sent to Porto and Wenzlick met the

requirements of § 1681m(a) because FICO's notice failed to state specifically the increase in the premiums charged to Porto and Wenzlick constituted an adverse action based on information in consumer credit reports.

### DISCUSSION

Porto and Wenzlick now move the Court for an order under Fed.R.Civ.P. 23(a) and (b)(3) certifying the following class, which is the class definition proposed by FICO: [FN2]

> FN2. FICO initially asserted the class definition proposed by Porto and Wenzlick was "grossly overbroad." Porto and Wenzlick, however, conceded their proposed class definition was overbroad in light of this Court's previous ruling in which it granted summary judgment in favor of FICO against the FCRA claims of Plaintiff Douglas Ashby. *See* Opin. and Order issued March 17, 2004. Accordingly, Porto and Wenzlick have adopted the class definition proposed by FICO.

All automobile and property personal lines insurance policyholders of Farmers Insurance Company of Oregon (FICO) during the period February 26, 2001 to August 1, 2002 who paid a renewal premium that was increased over the prior period's premium where such increase was based in whole or in part on any information contained in a consumer report, and excluding any current officer, director, or employee of FICO, Farmers Group, Inc. (FGI),[FN3] or its affiliates, or any former officer, director, or employee of FGI, FICO, or their affiliates who served during the class period, or any judge of the United States District Court for the District of Oregon.

> FN3. FGI is FICO's attorney-in-fact (AIF). Even though FGI was dismissed as a defendant in this action because FGI did not underwrite the insurance policies

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                Page 3

Not Reported in F.Supp.2d, 2004 WL 2359968 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

involved in this case, anyone affiliated with FGI is excluded from the class because, as FICO's AIF, FGI provided all of the management services related to FICO's insurance policies, including the creation and delivery of the FCRA notices at issue. *See* Opin. and Order at 11 (issued Feb. 20, 2003).

FICO opposes the Motion for class certification for the following reasons: (1) individual issues of proposed class members predominate over issues common to the class, (2) proposed class representatives Porto and Wenzlick and their counsel have a conflict of interest with proposed absentee class members, (3) the claims of Porto and Wenzlick are neither "typical" nor "adequate," and (4) enforcement of alleged "technical violations" of FCRA by means of a class action is inappropriate.

### 1. *Individual Issues of Fact as to Proposed Class Members.*

FICO asserts the individual fact issues pertaining to each proposed class member predominate over issues common to the class.

#### a. *Agent and Customer Communications.*

**\*3** FICO asserts there are individual fact issues pertaining to each proposed class member regarding conversations between FICO's agents and customers as to FICO's use of consumer credit reports to set insurance premium rates.

In *Mark v. Valley Insurance Company,* CV 01-1575-BR (filed Oct. 24, 2001), one of a series of FCRA cases pending in this Court, the Court stated: Discussions between an insured and an insurance agent and the insured's understanding of the reasons for any higher premium rate are not relevant to the issue of whether Defendants gave adequate notice to the appropriate insureds. The specific notice requirements are set forth in 15 U.S.C. § 1681m(a). There is no statutory provision that allows a defense to the notice requirement on the basis of the insured's actual knowledge.

Opin. and Order at 8 (issued Feb. 6, 2004).

FICO attempts to distinguish this case from *Mark* on the grounds that many independent agents who sell personal lines insurance policies on behalf of FICO tell their customers that FICO uses information in consumer credit reports to set the premiums even though agents are not instructed to provide FCRA notices to their customers. In addition, FICO asserts its agents are a "dedicated agency force" who have agreements with FICO in contrast to the general agents used by Defendant Valley Insurance Company in *Mark.*

In *Mark,* no written notice of a renewal premium increase was given to the insureds. Here, however, FICO sent written notices "of the fact of an increase " to insureds in renewal insurance premiums as a supplement to similar oral communications made by its agents. FICO also presented a "specific record of [oral] communications from numerous agents to numerous class members relating to the sole alleged deficiency in the FICO written notice."

The Court finds FICO's evidence of *ad hoc* oral communications between its independent agents and insureds establishes only that some proposed class members may have had actual knowledge of the impact of their credit score on the premium FICO charged on renewal of the class members' policies. As noted, however, such evidence is not relevant as to whether FICO sent a notice that adequately complied with § 1681m(a).

On this record, the Court concludes conversations between independent agents and customers relating to FICO's use of consumer credit reports in setting premium rates are not relevant to the class members' FCRA claims based on FICO's alleged failure to give adequate notice of adverse actions FICO took against proposed class members.

#### b. *Increase in Premium Based on Information in a Consumer Credit Report.*

FICO asserts many factors may generate an increase in the premium charged to proposed class members on renewal of their insurance policies. For instance,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                          Page 4

Not Reported in F.Supp.2d, 2004 WL 2359968 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

changes in loss experience, coverage amounts, driving history, and general rate increases may increase the amount of the premium on renewal. Accordingly, FICO contends fact finding would be necessary as to each class member to determine whether the increase in the amount of premium charged on renewal was the result of information in a consumer credit report or one of the other factors set forth above. The Court disagrees.

*4 FICO creates a letter grade for every insured based on information in a consumer credit report. The letter grade determines the amount FICO will charge for the premium, which is a percentage of the base premium rate. The base premium rate incorporates the noncredit report factors described by FICO before calculation of the final premium.

Accordingly, the increase in the premium charged to an insured with a higher letter grade based on information in a consumer credit report will always be greater than the increase charged to an insured with a lower letter grade because the former will always pay a higher percentage of the base premium rate.

The Court, therefore, finds the only individual fact issues to be decided as to each proposed class member are (1) whether the class member's premium increased on renewal of the insurance policy and (2) whether the increase in the premium charged was greater than the increase in the premium charged to other insureds who had the most favorable credit rating and whose premium was calculated from the same base premium rate as the class member's premium. Accordingly, the Court concludes the necessity of making the described limited factual determinations does not bar class certification.

c. *Proposed Class Members' Subjective Understanding of FCRA Notice.*

FICO contends there are individual fact issues as to whether each proposed class member actually understood from FICO's notice that the proposed class member had suffered an adverse action in the form of an increased premium based on a consumer

credit report. FICO asserts proposed class members who actually understood FICO had taken such adverse action would be barred from any recovery. The Court disagrees.

The Court finds the cases FICO relies on to support its assertion are not on point because in each instance issues of proof regarding reliance on misrepresentations and/or proof of actual damages incurred by individual class members predominated over issues common to the class. *See Buford v. H & R Block, Inc.,* 168 F.R.D. 340 (S .D. Ga.1996), *aff'd sub nom Jones v. H & R Block Tax Serv.,* 117 F.3d 1433 (11th Cir.1997) (court denied motion for class certification of taxpayers who alleged the defendant fraudulently misrepresented that its Refund Anticipation Loan program involved a tax refund rather than a loan because reliance on the alleged fraudulent misrepresentations was an essential element of each class member's claim). *See also Wilcox Dev. Co. v. First Interstate Bank of Or.,* 97 F.R.D. 440 (1983)(class action is inappropriate in a Sherman Act claim against a bank when proof of individual class members' injuries-in-fact and actual damages predominate over common issues).

Unlike *Buford, Wilcox,* and other cases relied on by FICO, the predominant issue in this case is the adequacy of a form notice of adverse action that FICO sent to thousands of insureds during a specific period. To the extent the proposed class members seek statutory damages, their subjective knowledge that FICO took adverse actions against them is irrelevant. *See Schnall v. Amboy Nat'l Bank,* 279 F.3d 205, 219 (3rd Cir.2002) (in a class action to recover statutory as opposed to actual damages under the Truth-in-Savings Act, class members need not show they relied on defective account disclosures or were misled by the bank's failure to comply with the Act's disclosure requirements).

*5 The Court, therefore, concludes the subjective knowledge of class members regarding adverse actions taken against them is not relevant to their claims for statutory damages under FCRA.

d. *Proposed Class Members' Receipt of FCRA Notice.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 5

Not Reported in F.Supp.2d, 2004 WL 2359968 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

FICO asserts there are individual fact issues as to whether each proposed class member actually received a FCRA notice. As noted, however, class members need not prove they relied on the FCRA notice in order to recover statutory damages. The only issue is whether FICO gave adequate notice of an adverse action taken against an insured based on information in a consumer credit report. Proposed individual class members must establish only that they are within the class of insureds who should have been given adequate notice of such an adverse action. If the notice FICO gave was inadequate under FCRA, proof of the insured's receipt of the notice is irrelevant.

e. *Causation of Damage Suffered by Class Members.*

FICO asserts there are individual fact issues as to whether each proposed class member suffered actual harm because of FICO's failure to provide adequate notice of the adverse action it took against the class members. FICO asserts "FCRA's statutory damages provision should be interpreted as Congress' method of compensating a plaintiff who has incurred actual damages where proof of the amount is difficult." Congress, however, has stated in plain terms that statutory damages are available as an alternative remedy to actual damages for class members who are not provided adequate notice of an adverse action taken against them when the alleged inadequate notice arises from a willful violation of FCRA's notice requirements. 15 U.S.C. § 1681n(a)(1)(B).

f. *Amount of Actual Damages.*

FICO asserts there are individual fact issues as to each of those proposed class members who seek actual damages in addition to statutory damages. As noted, statutory damages are an alternate remedy to actual damages under 15 U.S.C. § 1681n(a)(1)(B). Accordingly, a proposed class member may not seek both actual and statutory damages. FICO's concern that individual fact issues will arise when proposed class members seek both actual and statutory damages is, therefore, unfounded.

g. *Amount of Statutory Damages.*

FICO asserts there are individual fact issues as to the amount each proposed class member should receive as statutory damages because FCRA allows a range of statutory damages from $100 to $1000. 15 U.S.C. § 1681n(a)(1)(A). FICO asserts the range of damages awarded to each proposed class member may depend on whether the class member suffered " actual damages at all," whether proposed class members "exercised reasonable care," whether the premium amount charged was $1 or $500," or whether proposed class members seek "multiple recoveries."

At this stage of the proceedings, the Court cannot foresee every circumstance in which a plausible argument could be made that the amount of statutory damages awarded to individual proposed class members should be different. The Court, therefore, cannot rule out the possibility that certain proposed class members may be entitled to a greater or lesser award of statutory damages than other proposed class members. The Court, however, concludes FICO's concerns are premature for purposes of the Motion to Certify and do not provide a sufficient basis for this Court to exercise its discretion to disallow class certification. See *Mark v. Valley Insurance Company,* CV 01-1575-BR, Opin. and Order at 16 (issued Feb. 6, 2004)("the potential for individualized determinations of statutory damages is insufficient to defeat class certification."). Opin. and Order at 16.

2. *Conflict of Interest between Class Representatives and Proposed Class Members.*

**\*6** FICO asserts Porto and Wenzlick have a conflict with proposed absentee class members because Porto and Wenzlick seek only statutory damages and, therefore, "attempt to subvert a potentially larger individual claim [for actual damages] to accommodate their desire for class certification."

The Court's analysis in *Mark,* however, also applies here:
Plaintiff does not have a conflict of interest based

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                          Page 6

Not Reported in F.Supp.2d, 2004 WL 2359968 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

on the mere fact that putative class members may seek actual damages rather than statutory and punitive damages. In addition, Plaintiff must prove willful misconduct to establish her entitlement to statutory and punitive damages. A finding of willful misconduct necessarily includes negligent misconduct sufficient to justify an award of actual damages under FCRA. Plaintiff and her counsel have sufficient incentive to pursue Defendants' liability under FCRA as aggressively as a class member who may choose to seek actual damages only. The plaintiff in a FCRA class action who does not seek actual damages has "a significant and sufficient enough stake in the outcome; she has, and can be expected to vigorously and zealously this alleged grievance" particularly when "dissatisfied class members have a right to opt out of the class." *White v. Imperial Adjustment Corp .,* 2002 WL 1809084, at *13.

Opin. and Order at 14 (issued Feb. 6, 2004).

Although Porto and Wenzlick move only to represent a class of insureds who seek statutory and punitive damages based on FICO's allegedly willful violation of FCRA's notice requirements, they are capable of vigorously prosecuting the claims of those class members who seek actual damages but choose not to opt out of the class.

The Court, therefore, concludes Porto and Wenzlick do not have a conflict of interest in acting as class representatives for putative class members who seek actual damages based on FICO's alleged FCRA notice violation.

### 3. Typicality and Adequacy of Claims of Class Representatives.

FICO asserts Porto and Wenzlick are not typical or adequate class representatives because both of them are vulnerable to FICO's unique defense that neither Porto nor Wenzlick read the allegedly defective FCRA notices and, in fact, Wenzlick agreed to become a plaintiff in this action before he even received his FCRA notice. In addition, FICO asserts it has the unique defense that Porto did not suffer an adverse action arising from an increase in her

homeowner insurance policy premium because the premium charged by FICO did not increase but, in fact, decreased after FICO discovered it had erroneously failed to credit discounts unrelated to information in Porto's consumer credit report.

As noted, the Court has found an insured's subjective knowledge as to the meaning of a FCRA adverse action notice is irrelevant in determining whether FCRA's notice requirements have been violated. Accordingly, the fact that Porto and Wenzlick may not have read the notices is not a viable defense. In addition, the Court found FICO failed to establish Porto did not suffer an adverse action regarding her homeowner policy. *See* Opin. and Order at 10 (issued Oct. 7, 2004).

*7 As also noted, this Court previously concluded FICO failed to establish that its notices of adverse action to both Porto and Wenzlick complied with the requirements of FCRA as a matter of law. The issue at trial, therefore, will be whether FICO willfully failed to provide an adequate notice of adverse action to Porto, Wenzlick, and the other proposed class members.

Accordingly, the Court concludes the FCRA claims of Porto and Wenzlick are typical of the proposed class members' claims. Porto and Wenzlick, therefore, are adequate class representatives.

### 4. Enforcement of FCRA Notice Requirements by Class Action.

FICO asserts a class action in this case is not the " superior" method to enforce FCRA notice requirements because the potential aggregate statutory damages awarded to the class would be " grossly disproportional to the offense alleged." To support this proposition, FICO relies on a line of cases decided under the Truth in Lending Act (TILA), 15 U.S.C. § 1601, *et seq.,* beginning with *Ratner v. Chemical Bank New York Trust Company,* 54 F.R.D. 412 (S . D.N.Y.1972).

In *Ratner,* the plaintiff brought an action against a bank that issued him a "Mastercard" credit card. The plaintiff alleged the bank failed to show the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 7

Not Reported in F.Supp.2d, 2004 WL 2359968 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

statutorily required "nominal annual percentage rate" on a periodic statement that reported an outstanding principal balance on which no interest charge had accrued. The court agreed with the defendant's contention that certification of a class action was "unnecessary" because TILA provides for a "$100 minimum recovery and payment of costs and a reasonable fee for counsel; and (2) the proposed recovery of $100 each for some 130,000 class members would be a horrendous, possibly annihilating punishment, unrelated to any damage to the purported class or to any benefit to defendant, *for what is at most a technical and debatable violation of the Truth in Lending Act." Id.* 416 (emphasis added). *See also La Mar v. H & B Novelty & Loan Co.,* 489 F.2d 461, 468 n. 7 (9th Cir.1973) (the trend of authority is that class actions are inappropriate for claims based on a violation of TILA); *Mathews v. Book-of-the-Month Club, Inc.,* 62 F.R.D. 479, 480 (N.D.Cal.1974) (*Ratner* has " come to be the leading case in class actions in Truth in Lending cases, particularly, and generally in statutory actions where Congress has provided for minimum damages and attorneys' fees.").[FN4]

> FN4. Congress removed the potential for defendants to suffer crushing damages from class action litigation brought under TILA by amending the statute to limit the maximum aggregate recovery in a class action to "the lesser of $500,000 or 1 per centum of the net worth of the creditor." *See* 15 U.S.C. § 1640(a)(1)(B).

Other courts, however, have upheld class actions in TILA cases. *See Haynes v. Logan Furn. Mart, Inc.,* 503 F.2d 1161 (7th Cir.1974). In *Haynes,* the court held a class action is appropriate under TILA when the class size is manageable: for example, when the class has approximately 2500 members and actual damages are alleged. The court adopted a case-by-case determination in which the court weighs the benefits of a class action under TILA against the protection of defendants from crushing damages:

**\*8** [T]he purpose of enacting a statutory minimum damage provision was as much to induce creditor compliance with the Act as to provoke incentives

for private litigants. Therefore, creditors disregarding their responsibilities under the Act and causing damages to members of a class however limited or extensive should have no assurance that their accumulated responsibility cannot be enforced through [a class action].... [W]hile procedural fairness with respect to protecting defendants from crushing damages predicated on the statutory minimum recovery is an important consideration in determining the superiority of the class action mode of adjudication, it is at least equally important to prevent violators of the Act from limiting recovery to a few individuals where actual, widespread noncompliance is found to exist.

*Id.* at 1164.

Here FICO asserts at least 130,000 of its insureds would be members of the class proposed by Porto and Wenzlick, and the potential range of verdict against FICO could be $52 to $520 million based on the assumption that each class member had four renewals for which FCRA notices were required. FICO asserts "a result so grossly disproportionate to the alleged notice deficiency is neither required nor permitted by the provisions of Rule 23 as applied to the facts of this case." The Court disagrees.

First, as noted, the Court has found Porto and Wenzlick have met each of the specific requirements for certification of a class action under Fed.R.Civ.P. 23. The underpinning of the cases rejecting class certification in TILA cases as well as other cases involving a range of consumer protection statutes is a policy determination by those courts that it is unfair to subject defendants to a potentially fatal financial blow based on technical violations of those statutes. This Court, however, is not persuaded it should follow a policy to protect defendants from potentially serious financial consequences based on their substantive violation of consumer protection statutes enacted by Congress. "In the absence of a direct expression by Congress of its intent to depart from the usual course of trying 'all suits of a civil nature' under the Rules established for that purpose, class relief is appropriate in civil actions brought in a federal court." *Califano v. Yamasaki,* 442 U.S. 682, 700 (1979). *See also Reiter v. Sonotone Corp.,* 442 U.S.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 8

Not Reported in F.Supp.2d, 2004 WL 2359968 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d)**

330, 344-45 (1979) ( "[T]hat the cost of defending consumer class actions will have a potential ruinous effect on small businesses in particular and will ultimately be paid by consumers ... are not unimportant considerations, but they are policy considerations more properly addressed by Congress than this Court.").

This Court is mindful of the potentially significant financial impact a successful class action may have on FICO. FICO has not asserted, however, that the impact will deal a fatal financial blow to its business. In addition, the Court does not credit FICO's apparent characterization of its alleged FCRA violations as "technical." FICO may be found liable to proposed class members for statutory damages only if the trier of fact finds FICO willfully violated FCRA's notice provisions. Although this Court has not decided the specific standard that should be applied to determine whether a violation of FCRA's notice requirements is "willful," [FN5] the Court is satisfied that a willful violation of the statute is more than a "technical" one.

> FN5. See related case of *Razilov v. AMCO,* CV 01-1446-BR, Opin. and Order at 19-20 (issued Mar. 3, 2004).

**\*9** The Court, therefore, concludes a class action seeking statutory damages for violations of FCRA's notice requirements is neither inappropriate nor unfair, and, in any event, these are policy considerations for Congress.

## CONCLUSION

For these reasons, the Court GRANTS Plaintiffs' Motion for Class Certification (# 113) of the following class:
All automobile and property personal lines insurance policyholders of Farmers Insurance Company of Oregon (FICO) during the period February 26, 2001 to August 1, 2002, who paid a renewal premium that was increased over the prior period's premium when such increase was based in whole or in part on information contained in a consumer report, and excluding any current officer, director, or employee of FICO, Farmers Group, Inc. (FGI), or its affiliates, or any former officer, director, or employee of FGI, FICO, or their affiliates who served during the class period, or any judge of the United States District Court for the District of Oregon.

IT IS SO ORDERED.

D.Or.,2004.
Ashby v. Farmers Ins. Co. of Oregon
Not Reported in F.Supp.2d, 2004 WL 2359968 (D.Or.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 990182 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Defendant's Second Motion to Reconsider Ruling Re Advice of Counsel (Feb. 1, 2006)
• 3:01cv01446 (Docket) (Sep. 28, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Unpublished Cases – Part 2

Westlaw.

Not Reported in F.Supp.2d                                                                        Page 1

Not Reported in F.Supp.2d, 2001 WL 34136016 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d)**


**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, S.D. Indiana.
In re: BRIDGESTONE/FIRESTONE, INC., ATX,
ATX II and Wilderness Tires Products Liability
Litigation.
This Document Relates to Master Complaint.
**No. IP 00-9373-C-B/S, MDL No. 1373.**

August 6, 2001.


Trial Order


Memorandum in Support of Plaintiffs Motion for
Reconsideration of Ruling on the Scope of
TCPA/MCPA in July 27 Order Granting in Part and
Denying in Part the Motion to Dismiss the Master
Complaint


Before the Honorable Sarah Evans Barker.


I. INTRODUCTION ...                                                                        1
II. LEGAL STANDARD ...                                                                    1
III. SCOPE OF REQUEST FOR                                                                 2
RECONSIDERATION ...
IV. ARGUMENT ...                                                                          2

## I. *INTRODUCTION*

*1 Plaintiffs respectfully ask the Court to reconsider
its July 27, 2001 *Order Granting in Part and
Denying in Part the Motion to Dismiss the Master
Complaint* (the *Order*), insofar as the *Order* granted
in part Defendants Motion to Dismiss Plaintiffs
Consumer Protection Act claims based on (1) the
inability to maintain a class action under the
Tennessee Consumer Protection Act (TCPA); (2)
the unavailability of the class action mechanism of
the Michigan Consumer Protection Act to

non-Michigan residents and injurees; and (3)
Plaintiffs failure to plead individual reliance as an
element of their consumer fraud claims.


## II. *LEGAL STANDARD*

A motion for reconsideration is appropriate where
the District Court has made a decision outside the
adversarial issues presented to the Court by the
parties, or committed manifest errors of law. *Bank
of Waunakee v. Rochester Cheese Sales, Inc.,* 906
F.2d 1185, 1191 (7th Cir. 1990). A motion for
reconsideration essentially enables a district court to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 34136016 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d)**

correct its own error, sparing the parties and the appellate courts the burden of unnecessary appellate procedures. *Demos v. City of Indianapolis,* 139 F. Supp. 2d 1026, 1027 (S.D. Ind. 2001) (internal quotation marks and citation omitted).

In the present case, the issues of the availability (or unavailability) of class-wide relief under the TCPA and MCPA were not framed by Defendants opening papers in support of dismissal. Consequently, Plaintiffs failed to anticipate the need to brief this aspect of their consumer protection claims in opposing the Defendants Motion. As a result, the Court ruled on the Defendants Motion without the benefit of a full adversarial presentation of issues this Court ultimately found dispositive of potential class treatment of Plaintiffs consumer protection claims.

### III. *SCOPE OF REQUEST FOR RECONSIDERATION*

The July 27, 2001 *Order* is lengthy and thorough, and doubtless contains much that either side might wish to re-argue. That is not the intent of this Motion. Plaintiffs review of Tennessee decisional law, commentary, and legislative history on the class treatment of TCPA claims reveals that Tennessee law itself recognizes TCPA class actions. Further review as to the issue of the MCPA s legislative limitation of class treatment to Michigan residents and injurees reveals that this limitation is procedural, and thus not binding on this Court; under the *Erie* doctrine, Rule 23 governs the potential class treatment of the MCPA and TCPA claims. Thus, claims under both TCPA and MCPA may be certified on a nationwide basis by meeting Rule 23 criteria, and Plaintiffs need neither plead nor prove individual reliance under either statute. We appreciate the opportunity to bring these points to the Court s attention so that we are not foreclosed, by those portions of the Court s July 23, 2001 *Order,* from continuing to seek the nationwide class treatment of plaintiffs Consumer Protection Act claims.

### IV. *ARGUMENT*

In its July 27, 2001 *Order,* the Court dismissed Plaintiffs Tenth Claim for Relief to the extent Plaintiffs asserted such claims against Firestone and Ford for all others similarly situated. The Court held that Plaintiffs cannot maintain a class action under either the TCPA or MCPA because (a) [b]y its terms, the TCPA does not provide for class actions, and (b) class actions may be brought under the MCPA in Michigan courts only on behalf of Michigan residents and injurees. *Order* at 58. Although the Court dismissed Plaintiffs *representative* claims under the TCPA and MCPA, it reasoned that the laws of Michigan and Tennessee nonetheless permit non-resident Class members to bring *individual* actions against either Defendant under the appropriate statute, provided that they plead and prove individual reliance on the Defendants misrepresentations and omissions. *Order* at 59-60, 67.

**\*2** As we show below, nationwide class certification is not foreclosed in this Court under either the TCPA or MCPA; this Court should make no distinctions based on state residence to differentiate between those who may bring their claims within a class and those who may not; proof of individual reliance will not required under either statute; and Defendant s motion to dismiss the Tenth Claim for Relief should be denied in its entirety.

### A. *Federal Rule of Civil Procedure 23, and Not State Law, Governs the Procedural Issue of the Grant and Scope of Class Certification.*

Whenever a federal district court exercises jurisdiction over a claim arising under state law, the court must determine and apply state law to the parties substantive claims and defenses, while employing federal law to govern the procedural administration of the litigation.[FN1] *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78 (1938) (Except in matters governed by the Federal Constitution or by Acts of Congress, the [substantive] law to be applied in any case is the law of the state.); *Hanna v. Plumer,* 380 U.S. 460 (1965) (any conflict between state procedural rules and the Federal Rules of Civil Procedure must be resolved in favor

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 3

Not Reported in F.Supp.2d, 2001 WL 34136016 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d)**

of use of the Federal Rules); Fed. R. Civ. P. 1 (These rules govern the procedure in the United States district courts in all suits of a civil nature....); *see generally,* Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 2d §§ 4501-08 (tracing development of the *Erie* Doctrine).

> FN1. This is the case regardless of whether the federal court s jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332, *Erie Railroad Co. v. Tompkins,* 304 U.S. 64 (1938), or supplemental jurisdiction under 28 U.S.C. § 1367, *see Kristiansen v. John Mullins & Sons, Inc.,* 59 F.R.D. 99, 110 (E.D.N.Y. 1973) (applying Federal Rule of Civil Procedure 23 to pendent state law claim). Where federal question jurisdiction is invoked, federal law governs both the substance and procedure of the litigation. *E.g., Califano v. Yamasaki,* 442 U.S. 682, 698-703 (1979) (Federal Rules of Civil Procedure, and Rule 23 in particular, apply to claims brought under the federal Social Security Act).

In *Hanna v. Plumer,* the Supreme Court eliminated the need for a district court to undertake an in-depth analysis of whether a particular provision of state law should be regarded as substantive or procedural for purposes of determining whether state law or a Federal Rule of Civil Procedure obtains. [FN2] Instead, *Hanna* provides that, so long as a Federal Rule of Civil Procedure is a lawful exercise of Congress rule-making power under the Rules Enabling Act, 28 U.S.C. § 2072,[FN3] the Federal Rule governs notwithstanding any conflict between it and state law. *Hanna,* 380 U.S. at 468. The district court s inquiry is simple and straightforward:

> FN2. The Michigan Supreme Court itself has recognized that whether a class can be certified is a procedural question of state law. *Grigg v. Michigan Nat. Bank,* 274 N.W.2d 752, 759 (Mich. 1979) (reversing denial of certification of class of bank creditcardholders in predatory lending

action).

> FN3. The Rules Enabling Act, 28 U.S.C. § 2072, provides, in pertinent part:
> (a) The Supreme Court shall have the power to prescribe general rules of practice and procedure ... for cases in the United States district courts ... and courts of appeals.
> (b) Such rules shall not abridge, enlarge or modify any substantive right. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.

**\*3** When a situation is covered by one of the Federal Rules, ... the court has been instructed to apply the Federal Rule, and can refuse to do so only if the Advisory Committee, this Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions. *Id.* at 471. While emphasizing the need for procedural uniformity among federal courts, *Hanna* not only contemplated, but expressly countenanced, procedural variations between federal and state courts, even with respect to identical causes of action:

*Erie* and its offspring cast no doubt on the long-recognized power of Congress to prescribe housekeeping rules for federal courts even though some of those rules will inevitably differ from comparable state rules. When ... a right is enforceable in a federal as well as in a State court, the forms and mode of enforcing the right may at times, naturally enough, vary because the two judicial systems are not identical.... To hold that a Federal Rule of Civil Procedure must cease to function whenever it alters the mode of enforcing state-created rights would be to disembowel either the Constitution s grant of power over federal procedure or Congress attempt to exercise that power in the Enabling Act.

*Id.* at 471, 473-74 (internal quotation marks and citations omitted).

Plaintiffs are thus not foreclosed from pursuing their consumer protection claims on a class basis because of perceived procedural restrictions under the state laws of Michigan or Tennessee.[FN4]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 4

Not Reported in F.Supp.2d, 2001 WL 34136016 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d)**

Instead, in this federal court, Federal Rule of Civil Procedure 23 displaces any state law to the contrary, and provides the only relevant framework for this Court s determination of the nature and scope of any Class(es) on whose behalf Plaintiffs may assert MCPA and TCPA claims. This is true despite that the application of Rule 23 may alter[] the mode of enforcing state-created rights, unless this Court concludes that Rule 23 exceeds the restrictions set by the Constitution and the Rules Enabling Act. *Hanna,* 380 U.S. at 471; *see Gasperini v. Center for Humanities,* 518 U.S. 415, 427 & n.7 (1996) ( Concerning matters covered by the Federal Rules of Civil Procedure ... [i]t is settled that if the Rule in point is consonant with the Rules Enabling Act, 28 U.S.C. § 2072, and the Constitution, the Federal Rule applies regardless of contrary state law. ) Significantly, [n]othing in Rule 23 ... limits the geographical scope of a class action that is brought in conformity with that Rule.[FN5] *Califano v. Yamasaki,* 442 U.S. at 702.

> FN4. As explained in Section IV.B., *infra,* the *Erie* decision, though dispositive of the point, is unnecessary as to the TCPA because that statute itself allows class actions and Tennessee courts accordingly certify them.

> FN5. To the extent Defendants may contend that this Court could simply harmonize competing state and federal class action rules by using Rule 23 to certify a class of Michigan residents and injurees which would comport with the MCPA s restrictions on class scope, the Supreme Court rejected just such a theory in *Burlington N. R.R. Co. v. Woods,* 480 U.S. 1 (1987). In *Burlington,* the Court held that where a state statute purports to frame the scope of a federal court s discretion under the Federal Rules of Civil Procedure, the circumscriptive effect of the state law provides no authority for defining the scope of discretion allowed under the Federal Rules. *Id.* at 8. Instead, the Federal Rule occupies the [state] statute s field of operation so as to preclude its application

with respect to state law claims pending in federal court. *Id.* at 7. Thus, although the MCPA may limit a Michigan court s discretion to certify a nationwide class under the Michigan class action rule, MCR 3.501, the MCPA has no application to class certification determinations by this federal Court. *Id.* at 8.

**\*4** It has long been established, however, that Federal Rule of Civil Procedure 23 is consistent with the Rules Enabling Act and the Constitution, because a class action under Rule 23

does not involve claims different from those involved in an individual action. It is merely a mechanism for allowing a group of people, all of whom have suffered or are suffering the same wrong, to join together to seek redress.... [I]t is settled that Rule 23 is sufficiently confined to questions of procedure to be applicable in diversity actions without transgressing the constitutional requirement that federal courts defer to state substantive law.... In short, Rule 23 is considered a procedural rule, rather than one that affects the substance or the merits of litigation.

*Doe v. District of Columbia,* 701 F.2d 948, 963 (D.C. Cir. 1983) (internal quotation marks and citations omitted).

Accordingly, several courts have certified classes pursuant to Federal Rule of Civil Procedure 23, notwithstanding state law restrictions that would have prohibited the action from proceeding on a class basis had it been pending in state court. *Kristiansen v. John Mullins & Sons, Inc.,* 59 F.R.D. 99, 108-10 (E.D.N.Y. 1973), relied on *Hanna* to certify state truth-in-lending claim under Fed. R. Civ. P. 23, though state decisional law interpreting and applying state truth-in-lending statute prohibited class actions; *Briskin v. Glickman,* 267 F. Supp. 600, 602-05 (S.D.N.Y. 1967) relied on *Erie, Hanna,* and progeny to certify a plaintiff class on state securities law claims although a class action would not have been permissible in fraud context under state decisional law; and *Oskoian v. Canuel,* 269 F.2d 311 (1st Cir. 1959) was a pre-*Hanna* affirmance of the district court s certification, pursuant to the Federal Rule, of a defendant class of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 34136016 (S.D.Ind.)
(Cite as: Not Reported in F.Supp.2d)

more than 50,000 labor union members, despite a prohibition on such binding class actions under state statute. *See also, Paul Revere Life Ins. Co. v. Brock,* 931 F.2d 56, 1991 WL 59941, *1 (6th Cir. 1991) (stating in the context of an interpleader action that [w]hile the Ohio Court of Common Pleas did certify a class under Ohio s Rule 23, federal procedural rules must be followed in federal court where an arguably procedural matter is controlled by a valid Federal Rule of Civil Procedure. *Hanna v. Plumer,* 380 U.S. 460 (1965). Certainly the question of class action certification is controlled by Fed. R. Civ. P. 23 in federal court. ) [FN6]

> FN6. In accordance with this Court s rules and the Rules for the Sixth Circuit United States Court of Appeals, a copy of this unpublished decision is attached as Exhibit 1 hereto.

**\*5** According to this Court s conclusion in its *Order,* adherence to state law procedures under the MCPA and TCPA would require tens of thousands of individual plaintiffs to bring a multiplicity of actions in the federal court in a context that Rule 23 was meant to avoid. *Briskin,* 267 F. Supp. at 604. If all Plaintiffs and potential Class members are to pursue their claims against Ford and Firestone, respectively, under a single state s law, as this Court has properly determined, all should be subject to the same federal procedural standards in determining their ability to proceed as a Class. Under these circumstances, to negate Rule 23 (whose application has no substantive effect on the parties claims or defenses, but simply prescribes the procedural mode of enforcing Plaintiffs state-created rights under the MCPA and TCPA) would be to disembowel either the Constitution s grant of power over federal procedure or Congress attempt to exercise that power in the Enabling Act. *Hanna,* 380 U.S. at 473-74. Indeed, such a holding would create the unnecessary and improper anomaly of plaintiffs united under a single substantive law but divided in their practical ability to assert it.[FN7]

> FN7. As explained above, Rule 23, not the

MCPA, governs the Court s ability to certify a nationwide class. Further, as this Court recognized, nonresidents may assert claims against the Defendants under the MCPA and TCPA. *Order* at 59-60. Nonetheless, if and to the extent the Court so requires, Plaintiffs will amend the Master Complaint at the appropriate time to designate a Michigan resident and/or injuree to represent the nationwide class with respect to Plaintiffs MCPA claims.

For the foregoing reasons, any restriction on class claims under the MCPA and TCPA should have no bearing on these proceedings.

B. *Class Actions Are Permissible under the TCPA.*

The only briefing on the permissibility of class actions under the TCPA arose in Defendants Reply Memorandum, which stated simply, the TCPA, by its own terms, may not even allow private parties to bring class actions, and cited a single case that expressed no judgment or opinion on the point. (Defs. Reply Brief III at 14.) While the statute s use of the term individual might, in the absence of legislative history or decisional law, be argued to foreclose class actions,[FN8] such an interpretation is inconsistent with the statute s documented legislative intent, and with Tennessee jurisprudence upholding class certification of TCPA claims. *See* accompanying *Decl. of Douglas S. Johnston, Jr.* [the *Johnston Decl.*] attached hereto as Exhibit 2 and Exhibits thereto.

> FN8. It has been determined, in a number of other statutory contexts, that the use of the word individual, as employed in the TCPA, does *not* foreclose class treatment. As the United States Supreme Court observed in *Califano v. Yamasaki,* 442 U.S. at 700, a wide variety of federal jurisdictional provisions speak in terms of individual plaintiffs, but class relief has never been thought to be unavailable under them. Instead, the term individual signals that private parties (as opposed or in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 34136016 (S.D.Ind.)
(Cite as: Not Reported in F.Supp.2d)

addition to government officials) may bring suit. *See id.*

**\*6** Defendants speculation that the TCPA may not provide for class actions does not bear up under examination. Class actions are permitted under the TCPA. *See generally, Johnston Decl.;* Comment, *The Tennessee Consumer Protection Act: An Overview,* 58 Tenn. L. Rev. 455, 474 (1991). When it was originally enacted in 1977, the TCPA provided:
Any person who suffers an ascertainable loss ... as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this act ... may bring an action individually, *but not in a representative capacity,* to recover actual damages.

*Johnston Decl.,* ¶ 3 & Exh. A (emphasis added). In 1991, however, the Tennessee Legislature amended the TCPA to revoke the above-underscored language prohibiting class actions. *Id.* at ¶ 4 & Exh. B. The legislative record makes clear that the purpose of this amendment was to allow[] persons who suffer loss due to deceptive practices to bring an action in [sic] representative capacity and should reduce the number of individual cases brought in courts and reduce the clogging of the courts by separate cases. *Id.* at ¶ 5.

Commenting upon this important change, the Tennessee Law Review noted:
In its last session, the legislature removed a significant restriction on the enforcement of the Act by revoking the prohibition of class action suits under the Act. Unlike several states consumer protection legislation, the Tennessee Consumer Protection Act previously did not allow private class actions to be brought under the Act. The rationale of the past prohibition of class actions reflected the legislature s concern that the Act could be abused to inundate legitimate businesses with countless lawsuits. The prohibition, however, curtailed the ability of many consumers to recover for legitimate claims under the Act. Because large numbers of consumers are often affected by the same unfair or deceptive practice, but a single individual s claim is often too small to make it worthwhile to litigate, class actions provide an effective mechanism through which to enforce the Act. From a policy standpoint, the previous prohibition of class actions discouraged a vendor from refraining from unfair and deceptive practices. The loss of an occasional suit brought by an individual probably did little to deter an unscrupulous vendor from engaging in further deceptive conduct if the vendor had taken larger amounts through the same deceptive practices from consumers who did not pursue legal recourse.

58 Tenn. L. Rev. at 474-475 (footnotes omitted).

Since the Tennessee Legislature revoked the prohibition of TCPA class actions, Tennessee state courts have certified TCPA claims for class treatment. *E.g., Carter v. First Tennessee Bank,* No. 3894 (Fayette Cty. Cir. Ct., Jan. 8, 2001) (certifying a multistate class on TCPA and negligence claims) (attached as Exhibit 3"); *Robinson v. EMI Music Dist.,* 1996 WL 495551 (Tenn. Cir. Ct. 1996) (certifying a 15-state class of CD purchasers for TCPA and state antitrust claims) (attached as Exh. C to *Johnston Decl.*).

### C. *Individual Reliance Is Not Required under the TCPA or MCPA.*

**\*7** As the Court observed in its July 27 *Order,* the issue of reliance is no barrier to class treatment of Plaintiffs consumer protection claims. *Order* at 64-67. Additionally, as a number of Tennessee decisions have held, reliance is simply not an element of any TCPA claim; instead, Plaintiffs need only establish, through the use of extrinsic evidence, that their losses were proximately caused by Defendants deceitful conduct, an element the Tennessee courts have held does not constitute subjective reliance.

The Tennessee Court of Appeals has, on at least three separate occasions, specifically held that reliance is *not* required under the Tennessee Consumer Protection Act ( TCPA ). The first appellate opinion to deal with the issue was *Ganzevoort v. Russell,* No. 01-A-01-9502-CV00038, 1995 WL 623047 (Tenn. Ct. App. Oct. 15, 1995), to which this Court

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 7

Not Reported in F.Supp.2d, 2001 WL 34136016 (S.D.Ind.)
(Cite as: Not Reported in F.Supp.2d)

referred in its March 27, 2001 *Order.* In *Ganzevoort,* the Court of Appeals explained why reliance is not required under the TCPA:

[R]eliance is not part of the cause of action, simply because the Act does not require it. Tenn. Code Ann. § 47-18-109 gives a person who has suffered an ascertainable loss a cause of action to recover the actual damages caused by a deceptive act or practice. It does not mention reliance, and the whole tenor of the act makes it clear that the technical requirements of a cause of action for fraud and deceit are not a part of the cause of action under the act.

*Id.* at *2.

Permission to appeal was granted in *Ganzevoort* by the Tennessee Supreme Court. The Supreme Court affirmed the Court of Appeals. In so doing, the Supreme Court did not address the reliance issue, thus letting stand the Court of Appeals holding that reliance was not required under the TCPA.

The same Court of Appeals addressed the issue again in 1999, on petition for rehearing in *Harvey v. Ford Motor Credit Co.,* No. 03A01-9807-CV-00235, 1999 WL 486894 (July 13, 1999), which was brought as a class action under the TCPA. In *Harvey,* the court reaffirmed its holding that reliance is not required under the TCPA, noted that the Tennessee Supreme Court had not addressed the issue of reliance, and explained again in detail why reliance is not required under the TCPA:

In *Ganzevoort,* this Court had held that reliance is not a part of the cause of action, simply because the Act does not require it. We further noted that the whole tenor of the act makes it clear that the technical requirements of a cause of action for fraud and deceit are not a part of the cause of action under the act. The Supreme Court affirmed, but did not specifically address the reliance issue. The Court cited with approval the definitions of deceptive act or practice found in decisions by Illinois and Vermont courts.

*8 Under the Illinois Consumer Fraud Act, plaintiffs are not required to prove actual reliance. Vermont s Consumer Fraud Act, however, grants a cause of action to consumers who contract for goods or services in reliance upon false or fraudulent representations.

*The Tennessee Consumer Protection Act does not require reliance.* We elect to follow this Court s reasoning in *Ganzevoort,* although not specifically addressed by the Supreme Court. First, the Act contains no express requirement of reliance. Second, the Act is to be liberally construed to protect consumers. Finally, this Court has noted that state consumer protection acts generally do not require reliance.

*Harvey,* 1999 WL 486894 at *1-2 (internal citations omitted) (emphasis supplied).[FN9]

FN9. Whereas the TCPA claim in *Harvey* rested solely on the defendant s alleged affirmative misrepresentation to which the Plaintiffs did not allege he was exposed, Plaintiffs TCPA and MCPA claims here are based not only on the affirmative misrepresentations contained in Defendants longstanding nationwide advertising and pervasive publicity campaigns touting the safety and reliability of the Tires and Explorers, but upon Defendants simultaneous and knowing active and systematic fraudulent concealment of the Tires and Explorers dangerous deficiencies, a course of unfair and deceptive acts and practices that is detailed throughout the complaint, *e.g.,* Master Cmplt ¶¶ 109-13, 308, and is actionable under the TCPA § 47-18-109(a) . It is this uniform concealment and suppression of material information that supplies the objective proximate causal link for Plaintiffs TCPA claim.

Finally, in *Harvey,* the Court of Appeals cited to the case of *Lien v. Couch,* a decision earlier in that same year, which was later published. *See Lien v. Couch,* 993 S.W.2d 53 (Tenn. Ct. App. 1998), *appeal denied,* May 10, 1999. In *Lien,* the Court of Appeals again discussed the reliance issue:

[T]he common-law causes of action ... are not comparable to those available under the Tennessee Consumer Protection Act. Consumer protection acts

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                    Page 8

Not Reported in F.Supp.2d, 2001 WL 34136016 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d)**

and deceptive trade practices statutes are intended to provide broader remedies than those available under the common law. They generally dispense with the element of actual reliance required by common-law actions, and they also provide for a broader range of remedies.

*Lien,* 993 S.W.2d at 57 (footnote omitted).[FN10]

> FN10. *Lien v. Couch* involved an interstate contract dispute over ten pairs of emu chicks. *Id.* at 54. Responding to an ad in the magazine *Emu Today and Tomorrow,* Tennessee plaintiffs entered into a contract for ten pairs of January, February or early March emu chicks with Big Ridge Emu Ranch in Arkansas. The $65,000 contract included a $16,250 deposit, which plaintiffs paid. Big Ridge must have counted its chicks before they hatched: when plaintiffs arrived at the ranch in March, chicks from these months were no longer available. Plaintiffs declined to accept the late March or April chicks, as having lesser value. Big Ridge Ranch declined to cancel the contract. Breach of contract litigation ensued in Arkansas which the Tennessee plaintiffs lost. The *Lien v. Couch* appellate holding established their right to pursue their TCPA claim because the statute embraced conduct, and provided remedies, that might not have been available for assertion by counterclaim in the Tennessee common law contract action. *Id.* at 54-55.

**\*9** Thus, the Tennessee Court of Appeals has, on three separate occasions, held that reliance is not an element under the TCPA. The Tennessee Supreme Court let these holdings stand, and *Ganzevoort, Harvey,* and *Lien* [FN11] are law in Tennessee. Reliance is *not* required under the TCPA.

> FN11. These decisions demonstrate that Tennessee jurisprudence does not equate the concept of objective causation, which is an element of the TCPA, with that of

subjective or individual reliance, which is not.

Similarly, as this Court recognized, the Michigan Supreme Court has expressly dispensed with the need for proof of individual reliance under the MCPA in the class action context. *Dix v. American Bankers Life Assurance Co.,* 415 N.W.2d 206, 209 (Mich. 1987). Plaintiffs may prove their MCPA claim on a class basis by showing, through the use of extrinsic evidence, that the defendants, with an intent to deceive, misrepresented or concealed material information on which a reasonable person would have relied. *Id.* at 209;[FN12] *see Gasperoni v. Metabolife, Int l, Inc.,* 2000 WL 33365948, *7 (E.D. Mich. 2000) (a claim based on fraudulent omission, or silent fraud, does not require any proof of actual reliance).

> FN12. The Tenth Claim for Relief herein includes allegations that Defendants concealed and suppressed facts material to the true characteristics, standards, and quality of their products. Master Cmplt ¶ 308.

### V. *CONCLUSION*

For the foregoing reasons, Plaintiffs respectfully request that the Court reconsider its dismissal of Plaintiffs statutory consumer protection claims against Firestone and Ford insofar as those claims seek relief for all others similarly situated and do not individually allege reliance, and instead amend its *Order* to deny Defendants Motion to Dismiss the Tenth Claim for Relief in its entirety.

S.D.Ind. 2001.
In re: BRIDGESTONE/FIRESTONE, INC., ATX, ATX II and Wilderness Tires Products Liability Litigation. This Document Relates to Master Complaint.
Not Reported in F.Supp.2d, 2001 WL 34136016 (S.D.Ind.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 740176 (Trial Motion, Memorandum

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 9

Not Reported in F.Supp.2d, 2001 WL 34136016 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d)**

and Affidavit) Plaintiffs' Response to Defendant's Motion to Dismiss for Forum Non Conveniens (Feb. 03, 2005)
• 2004 WL 1274393 (Trial Motion, Memorandum and Affidavit) River-Bend's Reply Memorandum and Brief to Ford Motor Company's Reply to River-Bend's Motion for Summary Judgment (Apr. 29, 2004)
• 2004 WL 1274390 (Trial Motion, Memorandum and Affidavit) Reply Brief and Memorandum in Opposition to Ford Motor Company's Motion for Summary Judgment (Apr. 06, 2004)
• 2004 WL 1274392 (Trial Motion, Memorandum and Affidavit) Argument and Memorandum, in Support of River Bend Motion for Summary Judgment (Apr. 06, 2004)
• 2002 WL 1011781 () (May. 13, 2002)
• 2002 WL 32156880 (Trial Motion, Memorandum and Affidavit) Firestone's Reply Memorandum in Support of Its Motion for Protective Order as to the Deposition of Dr. Dennis Guenther (May. 09, 2002)
• 2002 WL 32515064 (Trial Pleading) Second Amended Complaint (Apr. 30, 2002)
• 2002 WL 32156877 (Trial Motion, Memorandum and Affidavit) Ford Motor Company's Opposition to Class Plaintiffs' Motion to Compel Certain Profit-Related Documents (Apr. 24, 2002)
• 2002 WL 32156878 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Support of Motion to Compel Production of Information Provided to Witnesses Who May Offer Expert or Other Opinion Testimony and to Bar Opinion Testimony By Any Witness for Which Such Information is Not Produced (Apr. 2002)
• 2002 WL 32156896 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Consolidated Response to the Defendants' ""Response to Order to Show Cause on Remaining Forum Non Conveniens Cases" (Apr. 2002)
• 190 F.Supp.2d 1125 () (Mar. 25, 2002)
• 2002 WL 32156875 (Trial Motion, Memorandum and Affidavit) Ford Motor Company's Memorandum in Opposition to Plaintiffs' Motion to Compel Production of Documents Based on the Crime-Fraud Exception to the Attorney-Client Privilege (Mar. 18, 2002)
• 2002 WL 32156872 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply to Non-Party Alliance of Automobile Manufacturers' Response to

Plaintiffs' Motion to Compel Production of Documents (Mar. 07, 2002)
• 2002 WL 32156874 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply to Defendant Bridgestone/Firestone North American Tire L.L.C.'s Response to Plaintiffs' Motion to Compel Production of Documents by Non-Parties Akron Rubber Development Laboratory, Inc., Axel Products, Inc., Smithers Scientific Serv ices, Inc., and Standards Testing Labs (Mar. 07, 2002)
• 2002 WL 32150575 (Trial Filing) Class Plaintiffs' Reply to Defendants' Response to Plaintiffs' Proposed Notice to Class Members and Proposed Method and Schedule for Dissemination of Class Notice (Mar. 04, 2002)
• 2002 WL 32156876 (Trial Motion, Memorandum and Affidavit) First Entry Regarding Plaintiffs' Motion to Compel Production of Documents by Ford Motor Company on Ground of Waiver (Mar. 2002)
• 2002 WL 32156873 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply to ford Motor Company's Memorandum in Oppostiton to Plaintiffs' Motion to Compel Production of Documents on Ground of Waiver (Feb. 21, 2002)
• 2002 WL 32156871 (Trial Motion, Memorandum and Affidavit) Ford Motor Company's Memorandum in Opposition to Plaintiffs' Motion to Compel Production of Documents on Ground of Waiver (Feb. 19, 2002)
• 2002 WL 32156870 (Trial Motion, Memorandum and Affidavit) Memorandum of Third-Party Alliance of Automobile Manufacturers in Opposition to Plaintiffs' Motion to Compel Production of Documents (Feb. 15, 2002)
• 2002 WL 32156869 () (Feb. 05, 2002)
• 2002 WL 32150516 (Trial Pleading) Defendants' Response to Plaintiffs' Proposed Notice to Class Members and Proposed Method for Disseminating Class Notice (Feb. 04, 2002)
• 2002 WL 32150515 (Trial Pleading) Answer of Defendant Ford Motor Company to Plaintiffs' Master Complaint (Jan. 30, 2002)
• 2002 WL 32150517 (Trial Pleading) Answer and Affirmative Defenses of Bridgestone/Firestone, Inc. (Jan. 30, 2002)
• 2002 WL 32156867 () (Jan. 28, 2002)
• 2002 WL 32150514 (Trial Pleading) Class Plaintiffs' Submission of Proposed Notice to Class

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 34136016 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d)**

Members and Proposed Method and Schedule for Dissemination of Class Notice (Jan. 16, 2002)
• 2002 WL 32156866 (Trial Motion, Memorandum and Affidavit) Ford Motor Company's Memorandum of Points and Authorities in Support of Motion for Protective Order (Jan. 10, 2002)
• 2002 WL 32156865 (Trial Motion, Memorandum and Affidavit) Entry on Ford's Motion for Protective Order (Jan. 2002)
• 2001 WL 34134339 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Motion of Bridgestone Corporation for Reconsideration of the Court's %7F%7FEntry on Defendant Bridgestone Corporation's Motion to Dismiss Master Complaint%7D%7D or, Alternatively, Certification for Appeal (Dec. 27, 2001)
• 2001 WL 34136041 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Bridgestone/Firestone, Inc.'s Motion for Reconsideration (Dec. 05, 2001)
• 2001 WL 34136039 (Trial Motion, Memorandum and Affidavit) Bridgestone/Firestone, Inc.'s Memorandum in Opposition to Ford Motor Company's Motion to Compel Bridgestone/Firestone, Inc. to Produce Documents in Response to Ford's Request for Production (Dec. 04, 2001)
• 2001 WL 34136042 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Bridgestone/Firestone, Inc.'s Motion to Maintain Confidentiality of Documents Filed Under Seal (Dec. 04, 2001)
• 2001 WL 34136044 (Trial Motion, Memorandum and Affidavit) Entry on Ford's Motion to Reconsider and Clarify the Court's December 3, 2001, Entry on Plaintiffs' Motion to Compel (Dec. 2001)
• 2001 WL 34134338 (Trial Motion, Memorandum and Affidavit) Brief in Support of Motion of Bridgestone Corporation for Reconsideration of the Court's %7F%7FEntry on Defendant Bridgestone Corporation's Motion to Dismiss Master Complaint%7D%7D or, Alternatively, Certification for Appeal (Nov. 30, 2001)
• 2001 WL 34136040 (Trial Motion, Memorandum and Affidavit) Bridgestone/Firestone's Reply in Support of its Motion to Maintain Confidentiality of Documents Filed Under Seal (Nov. 30, 2001)
• 2001 WL 34136043 (Trial Motion, Memorandum

and Affidavit) Plaintiffs' Memorandum in Opposition to Ford's Motion to Strike Claims for Punitive Damages (Nov. 30, 2001)
• 2001 WL 34136037 (Trial Motion, Memorandum and Affidavit) Response and Memorandum of Law of Interyenor Bloomburg L.P. in Opposition to November 15 Motions of Defendants to Maintain Confidentiality of Court Documents (Nov. 21, 2001)
• 2001 WL 34136038 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Support of Plaintiffs' Motion to Enforce the Court's Entries Regarding Production of Ford Databases (Nov. 14, 2001)
• 2001 WL 34136034 (Trial Motion, Memorandum and Affidavit) Bridgestone/Firestone, Inc.'s Reply in Support of its Motion to Compel Production of Documents by Ford Motor Company in Response to First Set of Requests (Oct. 24, 2001)
• 2001 WL 34136035 (Trial Motion, Memorandum and Affidavit) Ford Motor Company's Opposition to Bridgestone/Firestone, Inc.'s Motion to Compel (Oct. 24, 2001)
• 2001 WL 34136036 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Consolidated Memorandum in Response to the Motions of Defendants Bridgestone/Firestone and Ford Motor Co. to Dismiss the Venezuelan and Colombian Accident Lawsuits on the Ground of Forum Non Conveniens (Oct. 22, 2001)
• 2001 WL 34136032 (Trial Motion, Memorandum and Affidavit) Defendants Bridgestone/Firestone's and Ford's Motion to Dismiss Mexican, Argentinean, Costa Rican, Australian, Qatarian and British Cases on Forum Non Conveniens Grounds (Oct. 17, 2001)
• 2001 WL 34136033 (Trial Motion, Memorandum and Affidavit) Defendants Firestone's and Ford's Second Supplemental Motion to Dismiss on Forum Non Conveniens Grounds (Venezuelan Cases) (Oct. 17, 2001)
• 2001 WL 34136031 (Trial Motion, Memorandum and Affidavit) Class Plaintiffs' Final Response to Bridgestone Corporation's Motion to Dismiss the Master Complaint (Oct. 01, 2001)
• 2001 WL 34136028 (Trial Motion, Memorandum and Affidavit) Ford Motor Company's Reply in Support of Objections to Magistrate Judge's "Entry Regarding Motion to Compel Deposition of William Clay Ford, Jr." (Sep. 17, 2001)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 11

Not Reported in F.Supp.2d, 2001 WL 34136016 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d)**

• 2001 WL 34136029 (Trial Motion, Memorandum and Affidavit) Plaintiffs Memorandum of Law in Response to Bridgestone/Firestone, Inc.'s Motion for Protective Order Regarding Plaintiffs' Ninth Request for Production of Documents (Sep. 14, 2001)

• 2001 WL 34136026 (Trial Motion, Memorandum and Affidavit) Bridgestone/Firestone, Inc.'s Reply Memorandum Relating to Plaintiffs' Opposition to Ford's Motion for Reconsideration (Sep. 13, 2001)

• 2001 WL 34136021 () (Sep. 06, 2001)

• 2001 WL 34136022 (Trial Motion, Memorandum and Affidavit) Bridgestone/Firestone, Inc.'s Supplemental Reply Memorandum in Opposition to Class Certification (Sep. 06, 2001)

• 2001 WL 34136023 (Trial Motion, Memorandum and Affidavit) Defendant Ford Motor Company's Supplemental Reply Memorandum in Opposition to Class Certification (Sep. 06, 2001)

• 2001 WL 34136077 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Ford Motor Company's Objections to Magistrate Judge's Order Compelling the Deposition of William Clay Ford Jr. (Sep. 05, 2001)

• 2001 WL 34136024 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Bridgestone/Firestone, Inc.'s Motion for 28 U.S.C. | 1292 Certification (Aug. 30, 2001)

• 2001 WL 34136017 (Trial Motion, Memorandum and Affidavit) Opposition of ford Motor Company and Bridgestone/Firestone, Inc. to Plaintiffs' Motion for Reconsideration of Certain Aspects of July 27 Order Pertaining to Michigan and Tennessee Consumer Protection Acts (Aug. 23, 2001)

• 2001 WL 34152435 (Trial Motion, Memorandum and Affidavit) Opposition of Ford Motor Company and Bridgestone/Firestone, Inc. to Plaintiffs' Motion for Reconsideration of Certain Aspects of July 27 Order Pertaining to Michigan and Tennessee Consumer Protection Acts (Aug. 23, 2001)

• 2001 WL 34136020 (Trial Motion, Memorandum and Affidavit) Plaintiffs Memorandum in Opposition to Defendant Bridgestone/Firestone S Motion for 28 U.S.C. | 1292 Certification (Aug. 22, 2001)

• 2001 WL 34136019 (Trial Motion, Memorandum and Affidavit) Ford Motor Company's Objections to Magistrate Judge's ""Entry Regarding Motion to Compel Deposition of William Clay Ford, Jr."

(Aug. 20, 2001)

• 2001 WL 34136018 (Trial Motion, Memorandum and Affidavit) Defendant Ford Motor Company's Memorandum in Opposition to Bridgestone/Firestone, Inc.'s Objection to Ford's Adjustment Data Designee (Aug. 17, 2001)

• 2001 WL 34136013 (Trial Motion, Memorandum and Affidavit) Defendants' Supplemental Memorandum in Opposition to Class Certification (Aug. 14, 2001)

• 2001 WL 34136014 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Motion for 28 U.S.C. | 1292 Certification (Aug. 13, 2001)

• 153 F.Supp.2d 935 () (Jul. 27, 2001)

• 2001 WL 34136003 (Trial Motion, Memorandum and Affidavit) Ford Motor Company's Opposition to Plaintiffs' Motion to Compel Production of Documents by Defendant Ford Motor Company (Jul. 06, 2001)

• 2001 WL 34136009 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Plaintiffs Motion for Injunctive Relief Against Ford Motor Company (Jul. 06, 2001)

• 2001 WL 34136001 (Trial Motion, Memorandum and Affidavit) Ford Motor Company's Opposition to Plaintiffs' Motion to Compel Production of Documents by Defendant Ford Motor Company (Jun. 28, 2001)

• 2001 WL 34135993 (Trial Motion, Memorandum and Affidavit) Defendants' Supplemental Briefing on Class Remand Motions (Jun. 04, 2001)

• 2001 WL 34135992 (Trial Motion, Memorandum and Affidavit) Opposition to Class Plaintiffs' Motion for Leave to Submit Additional Expert Declarations in Support of Motion for Class Certification (Jun. 01, 2001)

• 2001 WL 34135987 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Defendants' Motion to Strike the Declarations of Samuel Issacharoff and E. Hunter Taylor (May. 25, 2001)

• 2001 WL 34135988 (Trial Motion, Memorandum and Affidavit) Plaintiffs Opposition to Defendants Motion to Strike the Declarations of Samuel Issacharoff and E. Hunter Taylor (May 2001)

• 2001 WL 34135989 (Trial Motion, Memorandum and Affidavit) Class Plaintiffs Addendum to Motion for Preliminary Injunctive Relief, Request for Expedited Hearing and Determination of Class

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 34136016 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d)**

Injunctive Issues; and Request for Order to Show Cause Why Ford S Announced Recall Should Not Be Subject to Judicial Appro val, Supervision, and Enforcement (May 2001)
• 2001 WL 34135990 (Trial Motion, Memorandum and Affidavit) Entry on Plaintiffs' Motion to Compel Production of Electronic Adjustment Data (May 2001)
• 2001 WL 34135985 (Trial Motion, Memorandum and Affidavit) Firestone's Brief in Opposition to Plaintiffs' Motion to Compel Production of Electronic Adjustment Data (Apr. 27, 2001)
• 2001 WL 34135986 (Trial Motion, Memorandum and Affidavit) Plaintiffs Motion to Compel Production of Electronic Adjustment Data (Apr. 24, 2001)
• 2001 WL 34131171 (Trial Motion, Memorandum and Affidavit) Bridgestone Corporation's Response to Class Plaintiffs' Submission of Supplemental Authority in Opposition to Bridgestone Corporations's Motion to Dismiss for Lack of Personal Jurisdiction (Apr. 09, 2001)
• 2001 WL 34135984 (Trial Motion, Memorandum and Affidavit) Memorandum In Opposition to Plaintiffs' Motion for Class Certification (Apr. 03, 2001)
• 2001 WL 34136836 (Trial Motion, Memorandum and Affidavit) Brief in Reply to Class Plaintiffs' (1) Response to Bridgestone Corporation's Motion for Protective Order: and (2) Supplemental Response to Bridgestone Corporation's Motion to Dismiss for Lack of Personal Jurisdiction (Mar. 27, 2001)
• 2001 WL 34131170 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Opposition to %7F%7FClass%7D%7D Plaintiffs' Motion for Preliminary Injunction (Mar. 19, 2001)
• 2001 WL 34874187 (Trial Motion, Memorandum and Affidavit) Reply Brief I Reply Memorandum in Support of Defendants' Motion to Dismiss: Reasons to Dismiss all Claims of Plaintiffs who Have not Alleged Injury, and Reasons to Dismiss Plaintiffs' Claims for a Court-Ordered Recall (Count VIII) (Mar. 19, 2001)
• 2001 WL 34874188 (Trial Motion, Memorandum and Affidavit) Reply Brief II Reply Memorandum in Support of Defendants' Motion to Dismiss: Reasons to Dismiss Plaintiffs' Rico Claims (Counts II-VII) (Mar. 19, 2001)
• 2001 WL 34131167 (Trial Motion, Memorandum

and Affidavit) Brief in Reply to Class Plaintiffs' Preliminary Response to Defendant Bridgestone Corporation's Motion to Dismiss Master Complaint for Lack of Personal Jurisdiction (Mar. 13, 2001)
• 2001 WL 228442 () (Mar. 07, 2001)
• 2001 WL 99695 () (Feb. 02, 2001)
• 129 F.Supp.2d 1207 () (Jan. 30, 2001)
• 2001 WL 34874179 (Trial Motion, Memorandum and Affidavit) Brief II Memorandum in Support of Defendants' Motion to Dismiss: Reasons to Dismiss Plaintiffs' Rico Claims (Counts II-VII) (Jan. 29, 2001)
• 128 F.Supp.2d 1196 () (Jan. 12, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2001 WL 34136021 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, S.D. Indiana,
Indianapolis Division.
In re: BRIDGESTONE/FIRESTONE, INC., ATX,
ATX II and Wilderness Tires Products Liability
Litigation.
This Document Relates to Master Complaint.
**No. IP 00-9373-C-B/S, MDL No. 1373.**

September 6, 2001.

Trial Order

Reply Memorandum in Support of Plaintiffs Motion
for Reconsideration of Ruling on the Scope of
Tcpa/Mcpa in July 27 Order Granting in Part and
Denying in Part the Motion to Dismiss the Master
Complaint

Before the Honorable Sarah Evans Barker.

I. *INTRODUCTION*

*\*1* Plaintiffs have respectfully requested the Court
to reconsider its July 27, 2001 *Order Granting in
Part and Denying in Part the Motion to Dismiss the
Master Complaint* (the *Order*), insofar as the *Order*
dismissed in part Plaintiffs Consumer Protection
Act claims based on (1) the inability to maintain a
class action under the Tennessee Consumer
Protection Act, Tenn. Code Ann. § 48-18-104 (
TCPA ); (2) the unavailability of the class action
mechanism to non-Michigan residents and injurees
under the Michigan Consumer Protection Act,
Mich. Comp. Laws § 445.911 ( MCPA ); and (3)
Plaintiffs failure to plead individual reliance. This
brief replies to Defendants arguments in opposition
to Plaintiffs request.

II. *ARGUMENT*

A. *The Court Should Grant Plaintiffs Motion and
Reconsider the Availability of the Class Action
Mechanism to Non-Michigan Residents and
Injurees.*

This Court held that Plaintiffs may be able to
maintain individual consumer protection claims
against Ford under the MCPA, regardless of their
state of residence or injury. *Order* at 59. Thus, the
substantive right to proceed under the MCPA has
already been recognized. The only question then is
whether the distinction between having a single
class action versus a multitude of individual actions
is a matter of substance or procedure. Simply put,
the focus is not now *whether* Plaintiffs can proceed,
but *how* they can proceed. The issue of how is a
matter of procedure. Accordingly, Federal Rule of
Civil Procedure 23, not state law, governs the grant
and scope of class certification of Plaintiffs MCPA
claims.

The MCPA simultaneously grants a consumer the
right to sue and sets forth the mechanisms by which
that right can be effectuated. Mich. Comp. Laws §
445.911. One mode of enforcing the substantive
right to sue for an MCPA violation is the class
action device. *See id.* Whether a plaintiff may use
the class action device to sue on behalf of herself
and for all others similarly situated is a procedural
question. *See Grigg v. Michigan Nat. Bank,* 274
N.W.2d 752, 759 (Mich. 1979).

Defendants cite *Mace v. Van Ru Credit Corp.,* 109
F.3d 338 (7th Cir. 1997) for the proposition that the
class action procedure enunciated in the MCPA is
substantive rather than procedural because it is
contained within the MCPA. *See* Def. Mem. at 3-4.
In *Mace,* the Seventh Circuit vacated the district
court s order denying certification of a class of
credit card holders in a predatory lending action
under the Wisconsin consumer protection statute.
*See id.* at 346. The district court found the 30-day
notice provision required before commencing a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2

Not Reported in F.Supp.2d, 2001 WL 34136021 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d)**

class action in the Wisconsin consumer protection act to be an integral part of [the] state substantive statute and, therefore, plaintiff s failure to comply with the notice provision meant that the plaintiff did not have a substantive right to bring a class action suit. *See id.* at 345-46. The Seventh Circuit reversed based on precisely the reasoning employed by Plaintiffs here, recognizing that the notice provision did not grant or deny a substantive right, but rather set forth a requirement on how that substantive right was to be effectuated. *See id.* at 346. In this case, the MCPA s limitation of class actions to Michigan residents and injurees does not grant or deny a substantive right, but rather affects how that right can be exercised. Contrary to Defendants suggestion, and as the *Mace v. Van Ru* decision demonstrates, the specific enumeration of the procedural device within the language of the consumer protection act does not transmute the procedural device into a substantive right.

**\*2** Moreover, in *Mace v. Van Ru,* the Seventh Circuit confirmed that when (as here) the underlying substantive right is one already vested in a consumer or a class of consumers, state procedural requirements running contrary to the Federal Rules of Civil Procedure must give way. *See id.* at 346 ( Whether the start of Mace s lawsuit was delayed by thirty days (under the [Wisconsin consumer protection act]) or not at all (under Rule 23) is a matter of procedure, not substance. The application of Rule 23 does not abridge, enlarge or modify any substantive right. ). Here, the substantive right of all Plaintiffs to sue Ford in Michigan under the MCPA is available regardless of where any individual Plaintiff resides. *See Order* at 59. Consequently, the MCPA, which procedurally limits how a Plaintiff would effectuate that right, conflicts with Rule 23. Therefore, Rule 23 prevails, and Rule 23 provides the only relevant framework for this Court s determination of the nature and scope of any Class(es) on whose behalf Plaintiffs may assert MCPA claims. *See Hanna v. Plumer,* 380 U.S. 460, 468, 471, 473-74 (1965); *Burlington N. R.R. Co. v. Woods,* 480 U.S. 1, 7-8 (1987).

Defendants other authorities are similarly inapposite. The district court in *In re Diet Drugs*

*Liab. Litig.,* No. MDL 1203, Civ. A 98-202594, 1999 U.S. Dist. LEXIS 14881 (E.D. Pa. Sept. 27, 1999), did *not* address the situation presented here in which a group of individuals, all seeking enforcement of the same substantive right under the law of a single state, sought class action status under Rule 23. Similarly, Defendants citation to the unpublished opinion in *Murray v. Manville Corp. Asbestos Comp. Fund,* 1990 U.S. Dist. LEXIS 17510 (N.D. Ill. Dec. 21, 1990), offers little because the court did not conduct an analysis of the issues at bar. In contrast, Plaintiffs have pointed this Court to relevant federal authorities which applied Rule 23 class action procedures to effectuate a state substantive right notwithstanding state law restrictions to the contrary. *See* Plfs. Mem. at 6-7 (citing *Kristiansen v. John Mullins & Sons, Inc.,* 59 F.R.D. 99, 108-10 (E.D.N.Y. 1973), *Briskin v. Glickman,* 267 F. Supp. 600, 602-05 (S.D.N.Y. 1967), *Oskoian v. Canuel,* 269 F.2d 311 (1st Cir. 1959), and *Paul Revere Life Ins. Co. v. Brock,* 931 F.2d 56, 1991 WL 59941, \*1 (6th Cir. 1991)).

**\*3** Defendants argue that permitting Plaintiffs to pursue their rights under the MCPA through the use of a nationwide class would constitute an enlargement of the substantive rights set forth in the statute. *See* Def. Mem. at 6. Defendants position is premised on the assumption that applying Rule 23 creates a new right to sue that the MCPA does not afford. *See id.* This assumption is false. Following the logic enunciated in *Nesbitt v. American Community Mut. Ins. Co.,* 600 N.W.2d 427, 433 (Mich. Ct. App. 1999), consumers throughout the nation are already protected by the MCPA. In granting Plaintiffs motion, the Court would not be creating a new right to sue. On the contrary, applying Rule 23 would enable the Court to capitalize on the judicial economy afforded by the class action device to manage the claims of a large number of aggrieved non-Michigan consumers who fall under this Court s jurisdiction for the resolution of claims rooted in the intentional acts performed by Ford in Michigan.

    **B.** *This Court Should Defer to Tennessee State Court Decisions and the Intent of the Tennessee Legislature that the TCPA Permits Class Actions.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 3

Not Reported in F.Supp.2d, 2001 WL 34136021 (S.D.Ind.)
(Cite as: Not Reported in F.Supp.2d)

Federal courts should defer to a state court s interpretation of the provisions of its own state s statutes. *See, e.g., Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938) (as a general rule a federal court should defer to a state court s interpretation of a state statute); *Williams v. Duckworth,* 738 F.2d 828 (7th Cir. 1984) (in general a federal court must defer to a state court s interpretation of the state s statute ); *United States ex rel. Burnett v. People of the State of Illinois,* 619 F.2d 668 (7th Cir. 1980), *cert. denied,* 449 U.S. 880 (1980) (same). Tennessee state courts have uniformly treated the TCPA, as amended in 1991, as allowing class actions. *See, e.g., Carter v. First Tennessee Bank,* No. 3894 (Fayette Cty. Cir. Ct., Jan 8, 2001); *Robinson v. EMI Music Dist.,* 1996 WL 495551 (Tenn. Cir. Ct. 1996); *Crump v. Worldcom, Inc.,* 128 F.Supp.2d 549 (W.D. Tenn 2001) (remanding TCPA class action back to Tennessee state court, which had previously entered an order conditionally certifying the class).

In fact, Defendants fail to cite a single case in which a Tennessee state or federal court (or *any* court) has denied plaintiffs the ability to bring a class action under the TCPA since its amendment in 1991. Defendants also fail to distinguish the Tennessee state court cases cited by Plaintiffs which permit class actions under the TCPA, and instead dismiss these cases as unreliable. *See* Def. Mem. at 10. These cases are reliable and properly considered controlling authority. *See West v. American Tel. & Tel. Co.,* 311 U.S. 223, 237 (1940) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938) for proposition that "[A] federal court is not free to reject the state rule merely because it has not received the sanction of the highest state court, even though it thinks the rule is unsound in principle or that another is preferable."); *Finch v. Mississippi Med. Assoc. Inc.,* 594 F.2d 163, 165 (1979) (" Although the decision of a state trial court might not be controlling because it is not an opinion of the highest state court, we are obliged to give it proper regard" (internal quotations and citations omitted)). Defendants also argue that the TCPA class certification cases cited by Plaintiffs contain no evidence that the issue of whether class actions are permitted under the TCPA was ever addressed by the state court. This simply underscores the point

that Tennessee lawyers and courts accept their legislature s intent in amending the TCPA to allow class actions as settled law, and do not consider the ability to bring TCPA class actions post-1991 to be an open issue. Defendants citation to an unpublished Tennessee appellate court decision that simply says that the issue [of whether the TCPA permits class actions] is not presently before this Court, and we therefore express *no judgment or opinion regarding it,* indicates the weakness of their position. *See Chaffin v. Norwegian Cruise Line Ltd.,* No. 02A01-9803-CH-00080, 1999 Tenn. App. LEXIS 231, at *6 n.1 (Tenn Ct. App. Apr. 7, 1999) (emphasis added).

**\*4** Failing to find any Tennessee law that supports their position, Defendants are left with a single argument: that the word individually as used in the TCPA so clearly and unambiguously prohibits class actions as to inhibit this Court s consideration of the amendment and legislative history of the statute, which make clear that the explicit intent of the Tennessee Legislature in its 1991 amendment of the TCPA was to permit class actions which were previously barred by the language of the statute. *See* Johnston Decl., ¶¶ 3-5, Exhs. A & B.

Defendants spend two pages discussing *ATS Southeast, Inc. v. Carrier Corp.,* 18 S.W.3d 626 (Tenn. 2000), *D. Canale & Co. v. Celauro,* 765 S.W.2d 736 (Tenn. 1989), and some Seventh Circuit cases for the unremarkable proposition that when the language contained within the four corners of a statute is plain, clear, and unambiguous the court should obey it without turning to legislative history. *ATS,* 18 S.W.3d at 629-30. They then attempt to rewrite the language of the statute to actually make it unambiguous by stating that the statute, as it stands today, permits a person to bring *only* an action individually. Def. Mem. at 12 (emphasis added). The statute says no such thing. Defendants essentially concede that the statute as written (and as interpreted in Tennessee) allows class actions by having to add the word only to the statute in order to give the unambiguous meaning they urge upon this Court.

Although the 1991 amendment s language clearly allows individual actions, it no longer expressly

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 34136021 (S.D.Ind.)
(Cite as: Not Reported in F.Supp.2d)

prohibits representative actions. Under these circumstances, it is appropriate for the Court to turn to the amendment and legislative history of the statute. This legislatively history, as more fully discussed in Plaintiffs opening brief, states that the purpose of the 1991 amendment deleting the language but not in a representative capacity was to allow[] persons who suffer loss due to deceptive practices to bring an action in [a] representative capacity and should reduce the number of individual cases brought in courts and reduce the clogging of the courts by separate cases. Johnston Decl., ¶ 5 & Exh. B. The Tennessee Legislature intended for the TCPA to allow class actions.

Given the uniform approval of class actions thereafter by Tennessee state courts under the TCPA, and the clear and unambiguous intent of the Legislature to permit class actions under the TCPA in enacting the 1991 amendment, this Court should grant Plaintiffs motion and defer to Tennessee law as it is understood and applied by Tennessee s elected representatives and courts. [FN1]

> FN1. Defendants argue, in a footnote, that if this Court decides to permit class actions under the TCPA, it must limit the class to Tennessee residents in order to avoid the extraterritorial application of a Tennessee statute. Defendants appear to misunderstand the concept of extraterritorial application and the Due Process, Commerce, and Full Faith and Credit Clauses. Their argument may have merit if Firestone was not a Tennessee-based business, had no contacts with Tennessee, did not conduct any business with Tennessee residents, none of the events occurred in Tennessee, and this Court were attempting to apply Tennessee law to it. That is not the case. Where Firestone is a Tennessee based business and Plaintiffs claim that many of the events which form the basis of this litigation occurred in Tennessee, Firestone cannot claim that the application of Tennessee law to it by non-Tennessee residents is an extraterritorial application of the law. The

very cases cited by Defendants make clear that the extraterritorial application issue depends on the person or entity to which the law is being applied (i.e. the Defendant Firestone) and the law being applied to it (i.e. Tennessee law ). *See, e.g., Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 822 (1985). The residence of the plaintiff is irrelevant to the analysis. Therefore, no limitation of the class to Tennessee residents is warranted.

### C. *Plaintiffs Need Neither Plead Nor Prove Individual Reliance under the TCPA or MCPA.*

**\*5** Defendants attempts to show that Plaintiffs must plead and prove [FN2] individual reliance under the Tennessee and Michigan consumer protection statutes are unavailing.

> FN2. Of course, in the context of a motion to dismiss based on the pleadings, the question of how Plaintiffs can or will prove their consumer protection claims is not relevant to whether those claims are properly alleged. However, as shown in Plaintiffs opening, reply, and supplemental submissions in support of class certification, Plaintiffs are not asking this Court to engage in an exercise in futility: Plaintiffs consumer protection claims can and will be proven on a class-wide basis, and are therefore appropriate for class treatment.

First, with respect to the MCPA, Defendants effort to distinguish this case from *Dix v. American Bankers Life Assurance Co.,* 415 N.W.2d 206 (Mich. 1987), and *Gasperoni v. Metabolife, Int l Inc.,* 2000 WL 33365948 (E.D. Mich. Sept. 27, 2000), falls flat. Defendants claim that the Michigan Supreme Court s holding in *Dix,* 415 N.W.2d at 209, that members of a class proceeding under the Consumer Protection Act need not individually prove reliance, is confined to the securities context. However, the Michigan federal courts application of *Dixs* holding in *Gasperoni,* a products liability case, readily disposes of that argument. *Gasperoni,* 2000

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 5

Not Reported in F.Supp.2d, 2001 WL 34136021 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d)**

WL 33365948 at * 1 ( This is a products liability case. ).[FN3] Defendants next claim that neither *Dix* nor *Gasperoni* apply because those cases involved a single type of policy and common pattern of misrepresentation (*Dix*), and uniform labeling ( *Gasperoni*). However, this case involves both tires and vehicles of common design; a common pattern of fraudulent concealment and omissions; and advertising that uniformly failed to disclose the tires and vehicles known defects. Accordingly, Defendants can point to no principled distinction between this case, and *Dix* and *Gasperoni.* Finally, Defendants resort to arguing that, reliance aside, the issue of causation under the MCPA, which requires that plaintiffs suffer loss as a result of a violation of this act, raises a wholly separate question. But it is precisely the MCPA s as a result of language that Defendants wish to have this Court interpret as an individual reliance requirement over *Dix* s holding to the contrary. Any attempt to split this statutory language into two elements for purposes of defeating class certification is pure invention.

> FN3. As explained in Plaintiffs August 30, 2000, Supplemental Memorandum in Support of Class Certification, *Gasperoni* specifically cited *Dix* as controlling, and rejected the defendants attempts to distinguish or limit *Dix,* as Defendants attempt to do here. 2000 U.S. Dist. Lexis 20879, *20-21; accord, *Van Vels v. Premier Athletic Center of Plainfield, Inc.,* 182 F.R.D. 500, 508 (W.D. Mich. 1998) (consumer class action against health club chain: unlike common law fraud, misrepresentation claims under the MCPA do not require proof of individual reliance, citing *Dix*); *Gilkey v. Central Clearing Co.,* 2001 U.S. Dist. Lexis 11881 (E.D. Mich. July 30, 2001) (certifying MCPA claim: actual damages not dependent upon plaintiffs showing individual reliance, and characterizing small damages consumer claim as classic Rule 23(b)(3) case).

**\*6** Defendants efforts to impose an individual reliance requirement on Plaintiffs TCPA claims are also meritless. The Defendants position that individual reliance is required despite its judicially-recognized absence from the plain language of the TCPA[FN4] cannot be reconciled with their argument that this Court must consider the TCPA s plain language alone in determining whether that statute permits class actions.[FN5] Defendants cannot have it both ways: as Plaintiffs have previously explained, TCPA plaintiffs need only plead and prove, through the use of extrinsic evidence, that their losses were *proximately caused* by Defendants deceitful conduct, an element the Tennessee courts in *Ganzevoort* and *Harvey* have held is *not* equivalent to individual, subjective reliance, and which does not preclude class treatment of TCPA claims. *See* Pls. Aug. 6, 2001 Mem. ISO Mot. for Reconsideration at pp. 9-12; Pls. Aug. 30, 2001 Supp. Mem. ISO Class Certification at pp. 15-17. Defendants insistence that individual reliance is required under *Ganzevoort* and *Harvey,* [w]hatever one wants to call it, ignores this distinction and, accordingly, misses the mark.

> FN4. *Ganzevoort v. Russell,* 1995 WL 623047, *2 (Tenn. Ct. App. Oct. 15, 1995) ( [R]eliance is not part of the cause of action, simply because the Act does not require it.... [The TCPA] does not mention reliance, and the whole tenor of the act makes it clear that the technical requirements of a cause of action for fraud and deceit are not a part of the cause of action under the act. ), *judgment affirmed,* 949 S.W.2d 293 (Tenn. 1997); *accord, Harvey v. Ford Motor Credit Co.,* 1999 WL 486894, *2 (Tenn. Ct. App. July 13, 1999) ( The Tennessee Consumer Protection Act does not require reliance. We elect to follow this Court s reasoning in *Ganzevoort,* although not specifically addressed by the Supreme Court. First, the Act contains no express requirement of reliance. Second, the Act is to be liberally construed to protect consumers. Finally, this Court has noted that state consumer protection acts generally do not require reliance. ); *see Lien v. Couch,* 993 S.W.2d 53, 57 (Tenn. Ct. App. 1998), *appeal denied,* May 10, 1999 ( [T]he common-law

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 6

Not Reported in F.Supp.2d, 2001 WL 34136021 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d)**

causes of action ... are not comparable to those available under the Tennessee Consumer Protection Act. Consumer protection acts and deceptive trade practices statutes are intended to provide broader remedies than those available under the common law. They generally dispense with the element of actual reliance required by common-law actions, and they also provide for a broader range of remedies. ) (footnote omitted).

FN5. As Plaintiffs have shown, the TCPA s legislative history and amendment in 1991 demonstrate that the term individually cannot on its face be read to preclude class actions, and does not in fact preclude class treatment of TCPA claims. *Johnston Decl.; see Califano v. Yamasaki,* 442 U.S. 682, 700 (1979) ( a wide variety of federal jurisdictional provisions speak in terms of individual plaintiffs, but class relief has never been thought to be unavailable under them ). Moreover, under *Erie, Hanna,* and progeny, Federal Rule of Civil Procedure 23 governs the procedural issue of class certification in this case, regardless of whether TCPA class actions are permitted in Tennessee state courts.

III. *CONCLUSION*

*7 Plaintiffs respectfully request that the Court reconsider its dismissal of Plaintiffs statutory consumer protection claims against Firestone and Ford insofar as those claims seek relief for all others similarly situated and do not individually allege reliance, and amend its *Order* to deny Defendants Motion to Dismiss the Tenth Claim for Relief in its entirety.

S.D.Ind. 2001.
In re: BRIDGESTONE/FIRESTONE, INC., ATX, ATX II and Wilderness Tires Products Liability Litigation. This Document Relates to Master Complaint.
Not Reported in F.Supp.2d, 2001 WL 34136021 (S.D.Ind.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 740176 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Defendant's Motion to Dismiss for Forum Non Conveniens (Feb. 03, 2005)
• 2004 WL 1274393 (Trial Motion, Memorandum and Affidavit) River-Bend's Reply Memorandum and Brief to Ford Motor Company's Reply to River-Bend's Motion for Summary Judgment (Apr. 29, 2004)
• 2004 WL 1274390 (Trial Motion, Memorandum and Affidavit) Reply Brief and Memorandum in Opposition to Ford Motor Company's Motion for Summary Judgment (Apr. 06, 2004)
• 2004 WL 1274392 (Trial Motion, Memorandum and Affidavit) Argument and Memorandum, in Support of River Bend Motion for Summary Judgment (Apr. 06, 2004)
• 2002 WL 32156880 (Trial Motion, Memorandum and Affidavit) Firestone's Reply Memorandum in Support of Its Motion for Protective Order as to the Deposition of Dr. Dennis Guenther (May. 09, 2002)
• 2002 WL 32515064 (Trial Pleading) Second Amended Complaint (Apr. 30, 2002)
• 2002 WL 32156877 (Trial Motion, Memorandum and Affidavit) Ford Motor Company's Opposition to Class Plaintiffs' Motion to Compel Certain Profit-Related Documents (Apr. 24, 2002)
• 2002 WL 32156878 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Support of Motion to Compel Production of Information Provided to Witnesses Who May Offer Expert or Other Opinion Testimony and to Bar Opinion Testimony By Any Witness for Which Such Information is Not Produced (Apr. 2002)
• 2002 WL 32156896 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Consolidated Response to the Defendants' ""Response to Order to Show Cause on Remaining Forum Non Conveniens Cases" (Apr. 2002)
• 2002 WL 32156875 (Trial Motion, Memorandum and Affidavit) Ford Motor Company's Memorandum in Opposition to Plaintiffs' Motion to Compel Production of Documents Based on the Crime-Fraud Exception to the Attorney-Client Privilege (Mar. 18, 2002)
• 2002 WL 32156872 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply to Non-Party

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2001 WL 34136021 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d)**

Alliance of Automobile Manufacturers' Response to Plaintiffs' Motion to Compel Production of Documents (Mar. 07, 2002)
• 2002 WL 32156874 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply to Defendant Bridgestone/Firestone North American Tire L.L.C.'s Response to Plaintiffs' Motion to Compel Production of Documents by Non-Parties Akron Rubber Development Laboratory, Inc., Axel Products, Inc., Smithers Scientific Serv ices, Inc., and Standards Testing Labs (Mar. 07, 2002)
• 2002 WL 32156876 (Trial Motion, Memorandum and Affidavit) First Entry Regarding Plaintiffs' Motion to Compel Production of Documents by Ford Motor Company on Ground of Waiver (Mar. 2002)
• 2002 WL 32156873 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply to ford Motor Company's Memorandum in Opposttion to Plaintiffs' Motion to Compel Production of Documents on Ground of Waiver (Feb. 21, 2002)
• 2002 WL 32156871 (Trial Motion, Memorandum and Affidavit) Ford Motor Company's Memorandum in Opposition to Plaintiffs' Motion to Compel Production of Documents on Ground of Waiver (Feb. 19, 2002)
• 2002 WL 32156870 (Trial Motion, Memorandum and Affidavit) Memorandum of Third-Party Alliance of Automobile Manufacturers in Opposition to Plaintiffs' Motion to Compel Production of Documents (Feb. 15, 2002)
• 2002 WL 32150516 (Trial Pleading) Defendants' Response to Plaintiffs' Proposed Notice to Class Members and Proposed Method for Disseminating Class Notice (Feb. 04, 2002)
• 2002 WL 32150515 (Trial Pleading) Answer of Defendant Ford Motor Company to Plaintiffs' Master Complaint (Jan. 30, 2002)
• 2002 WL 32150517 (Trial Pleading) Answer and Affirmative Defenses of Bridgestone/Firestone, Inc. (Jan. 30, 2002)
• 2002 WL 32150514 (Trial Pleading) Class Plaintiffs' Submission of Proposed Notice to Class Members and Proposed Method and Schedule for Dissemination of Class Notice (Jan. 16, 2002)
• 2002 WL 32156866 (Trial Motion, Memorandum and Affidavit) Ford Motor Company's Memorandum of Points and Authorities in Support of Motion for Protective Order (Jan. 10, 2002)

• 2002 WL 32156865 (Trial Motion, Memorandum and Affidavit) Entry on Ford's Motion for Protective Order (Jan. 2002)
• 2001 WL 34134339 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Motion of Bridgestone Corporation for Reconsideration of the Court's %7F%7FEntry on Defendant Bridgestone Corporation's Motion to Dismiss Master Complaint%7D%7D or, Alternatively, Certification for Appeal (Dec. 27, 2001)
• 2001 WL 34136041 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Bridgestone/Firestone, Inc.'s Motion for Reconsideration (Dec. 05, 2001)
• 2001 WL 34136039 (Trial Motion, Memorandum and Affidavit) Bridgestone/Firestone, Inc.'s Memorandum in Opposition to Ford Motor Company's Motion to Compel Bridgestone/Firestone, Inc. to Produce Documents in Response to Ford's Request for Production (Dec. 04, 2001)
• 2001 WL 34136042 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Bridgestone/Firestone, Inc.'s Motion to Maintain Confidentiality of Documents Filed Under Seal (Dec. 04, 2001)
• 2001 WL 34136044 (Trial Motion, Memorandum and Affidavit) Entry on Ford's Motion to Reconsider and Clarify the Court's December 3, 2001, Entry on Plaintiffs' Motion to Compel (Dec. 2001)
• 2001 WL 34134338 (Trial Motion, Memorandum and Affidavit) Brief in Support of Motion of Bridgestone Corporation for Reconsideration of the Court's %7F%7FEntry on Defendant Bridgestone Corporation's Motion to Dismiss Master Complaint%7D%7D or, Alternatively, Certification for Appeal (Nov. 30, 2001)
• 2001 WL 34136040 (Trial Motion, Memorandum and Affidavit) Bridgestone/Firestone's Reply in Support of its Motion to Maintain Confidentiality of Documents Filed Under Seal (Nov. 30, 2001)
• 2001 WL 34136043 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to Ford's Motion to Strike Claims for Punitive Damages (Nov. 30, 2001)
• 2001 WL 34136037 (Trial Motion, Memorandum and Affidavit) Response and Memorandum of Law of Interyenor Bloomburg L.P. in Opposition to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 34136021 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d)**

November 15 Motions of Defendants to Maintain Confidentiality of Court Documents (Nov. 21, 2001)
• 2001 WL 34136038 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Support of Plaintiffs' Motion to Enforce the Court's Entries Regarding Production of Ford Databases (Nov. 14, 2001)
• 2001 WL 34136034 (Trial Motion, Memorandum and Affidavit) Bridgestone/Firestone, Inc.'s Reply in Support of its Motion to Compel Production of Documents by Ford Motor Company in Response to First Set of Requests (Oct. 24, 2001)
• 2001 WL 34136035 (Trial Motion, Memorandum and Affidavit) Ford Motor Company's Opposition to Bridgestone/Firestone, Inc.'s Motion to Compel (Oct. 24, 2001)
• 2001 WL 34136036 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Consolidated Memorandum in Response to the Motions of Defendants Bridgestone/Firestone and Ford Motor Co. to Dismiss the Venezuelan and Colombian Accident Lawsuits on the Ground of Forum Non Conveniens (Oct. 22, 2001)
• 2001 WL 34136032 (Trial Motion, Memorandum and Affidavit) Defendants Bridgestone/Firestone's and Ford's Motion to Dismiss Mexican, Argentinean, Costa Rican, Australian, Qatarian and British Cases on Forum Non Conveniens Grounds (Oct. 17, 2001)
• 2001 WL 34136033 (Trial Motion, Memorandum and Affidavit) Defendants Firestone's and Ford's Second Supplemental Motion to Dismiss on Forum Non Conveniens Grounds (Venezuelan Cases) (Oct. 17, 2001)
• 2001 WL 34136031 (Trial Motion, Memorandum and Affidavit) Class Plaintiffs' Final Response to Bridgestone Corporation's Motion to Dismiss the Master Complaint (Oct. 01, 2001)
• 2001 WL 34136028 (Trial Motion, Memorandum and Affidavit) Ford Motor Company's Reply in Support of Objections to Magistrate Judge's "Entry Regarding Motion to Compel Deposition of William Clay Ford, Jr." (Sep. 17, 2001)
• 2001 WL 34136029 (Trial Motion, Memorandum and Affidavit) Plaintiffs Memorandum of Law in Response to Bridgestone/Firestone, Inc.'s Motion for Protective Order Regarding Plaintiffs' Ninth Request for Production of Documents (Sep. 14, 2001)

• 2001 WL 34136026 (Trial Motion, Memorandum and Affidavit) Bridgestone/Firestone, Inc.'s Reply Memorandum Relating to Plaintiffs' Opposition to Ford's Motion for Reconsideration (Sep. 13, 2001)
• 2001 WL 34136022 (Trial Motion, Memorandum and Affidavit) Bridgestone/Firestone, Inc.'s Supplemental Reply Memorandum in Opposition to Class Certification (Sep. 06, 2001)
• 2001 WL 34136023 (Trial Motion, Memorandum and Affidavit) Defendant Ford Motor Company's Supplemental Reply Memorandum in Opposition to Class Certification (Sep. 06, 2001)
• 2001 WL 34136030 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Ford Motor Company's Objections to Magistrate Judge's Order Compelling the Deposition of William Clay Ford Jr. (Sep. 05, 2001)
• 2001 WL 34136024 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Bridgestone/Firestone, Inc.'s Motion for 28 U.S.C. | 1292 Certification (Aug. 30, 2001)
• 2001 WL 34136017 (Trial Motion, Memorandum and Affidavit) Opposition of ford Motor Company and Bridgestone/Firestone, Inc. to Plaintiffs' Motion for Reconsideration of Certain Aspects of July 27 Order Pertaining to Michigan and Tennessee Consumer Protection Acts (Aug. 23, 2001)
• 2001 WL 34152435 (Trial Motion, Memorandum and Affidavit) Opposition of Ford Motor Company and Bridgestone/Firestone, Inc. to Plaintiffs' Motion for Reconsideration of Certain Aspects of July 27 Order Pertaining to Michigan and Tennessee Consumer Protection Acts (Aug. 23, 2001)
• 2001 WL 34136020 (Trial Motion, Memorandum and Affidavit) Plaintiffs Memorandum in Opposition to Defendant Bridgestone/Firestone S Motion for 28 U.S.C. | 1292 Certification (Aug. 22, 2001)
• 2001 WL 34136019 (Trial Motion, Memorandum and Affidavit) Ford Motor Company's Objections to Magistrate Judge's ""Entry Regarding Motion to Compel Deposition of William Clay Ford, Jr." (Aug. 20, 2001)
• 2001 WL 34136018 (Trial Motion, Memorandum and Affidavit) Defendant Ford Motor Company's Memorandum in Opposition to Bridgestone/Firestone, Inc.'s Objection to Ford's Adjustment Data Designee (Aug. 17, 2001)
• 2001 WL 34136013 (Trial Motion, Memorandum

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 9

Not Reported in F.Supp.2d, 2001 WL 34136021 (S.D.Ind.)
**(Cite as: Not Reported in F.Supp.2d)**

and Affidavit) Defendants' Supplemental Memorandum in Opposition to Class Certification (Aug. 14, 2001)
• 2001 WL 34136014 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Motion for 28 U.S.C. | 1292 Certification (Aug. 13, 2001)
• 2001 WL 34136016 () (Aug. 06, 2001)
• 2001 WL 34136009 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Plaintiffs Motion for Injunctive Relief Against Ford Motor Company (Jul. 2001)
• 2001 WL 34135993 (Trial Motion, Memorandum and Affidavit) Defendants' Supplemental Briefing on Class Remand Motions (Jun. 04, 2001)
• 2001 WL 34135992 (Trial Motion, Memorandum and Affidavit) Opposition to Class Plaintiffs' Motion for Leave to Submit Additional Expert Declarations in Support of Motion for Class Certification (Jun. 01, 2001)
• 2001 WL 34135987 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Defendants' Motion to Strike the Declarations of Samuel Issacharoff and E. Hunter Taylor (May. 25, 2001)
• 2001 WL 34135988 (Trial Motion, Memorandum and Affidavit) Plaintiffs Opposition to Defendants Motion to Strike the Declarations of Samuel Issacharoff and E. Hunter Taylor (May 2001)
• 2001 WL 34135989 (Trial Motion, Memorandum and Affidavit) Class Plaintiffs Addendum to Motion for Preliminary Injunctive Relief, Request for Expedited Hearing and Determination of Class Injunctive Issues; and Request for Order to Show Cause Why Ford S Announced Recall Should Not Be Subject to Judicial Appro val, Supervision, and Enforcement (May 2001)
• 2001 WL 34135990 (Trial Motion, Memorandum and Affidavit) Entry on Plaintiffs' Motion to Compel Production of Electronic Adjustment Data (May 2001)
• 2001 WL 34135985 (Trial Motion, Memorandum and Affidavit) Firestone's Brief in Opposition to Plaintiffs' Motion to Compel Production of Electronic Adjustment Data (Apr. 27, 2001)
• 2001 WL 34135986 (Trial Motion, Memorandum and Affidavit) Plaintiffs Motion to Compel Production of Electronic Adjustment Data (Apr. 24, 2001)
• 2001 WL 34131171 (Trial Motion, Memorandum

and Affidavit) Bridgestone Corporation's Response to Class Plaintiffs' Submission of Supplemental Authority in Opposition to Bridgestone Corporations's Motion to Dismiss for Lack of Personal Jurisdiction (Apr. 09, 2001)
• 2001 WL 34135984 (Trial Motion, Memorandum and Affidavit) Memorandum In Opposition to Plaintiffs' Motion for Class Certification (Apr. 03, 2001)
• 2001 WL 34136836 (Trial Motion, Memorandum and Affidavit) Brief in Reply to Class Plaintiffs' (1) Response to Bridgestone Corporation's Motion for Protective Order: and (2) Supplemental Response to Bridgestone Corporation's Motion to Dismiss for Lack of Personal Jurisdiction (Mar. 27, 2001)
• 2001 WL 34131170 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum in Opposition to %7F%7FClass%7D%7D Plaintiffs' Motion for Preliminary Injunction (Mar. 19, 2001)
• 2001 WL 34874187 (Trial Motion, Memorandum and Affidavit) Reply Brief I Reply Memorandum in Support of Defendants' Motion to Dismiss: Reasons to Dismiss all Claims of Plaintiffs who Have not Alleged Injury, and Reasons to Dismiss Plaintiffs' Claims for a Court-Ordered Recall (Count VIII) (Mar. 19, 2001)
• 2001 WL 34874188 (Trial Motion, Memorandum and Affidavit) Reply Brief II Reply Memorandum in Support of Defendants' Motion to Dismiss: Reasons to Dismiss Plaintiffs' Rico Claims (Counts II-VII) (Mar. 19, 2001)
• 2001 WL 34131167 (Trial Motion, Memorandum and Affidavit) Brief in Reply to Class Plaintiffs' Preliminary Response to Defendant Bridgestone Corporation's Motion to Dismiss Master Complaint for Lack of Personal Jurisdiction (Mar. 13, 2001)
• 2001 WL 34874179 (Trial Motion, Memorandum and Affidavit) Brief II Memorandum in Support of Defendants' Motion to Dismiss: Reasons to Dismiss Plaintiffs' Rico Claims (Counts II-VII) (Jan. 29, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Unpublished Cases – Part 3**

Westlaw.

Not Reported in F.Supp.2d                                    Page 1

Not Reported in F.Supp.2d, 2004 WL 2967069 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

H

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
    United States District Court,N.D. Illinois, Eastern
                        Division.
   Jessica LOY, f/ka/ Jessica Vincer, individually and
   on behalf of all other Motorola employees similarly
                     situated, Plaintiff,
                            v.
     MOTOROLA, INC., a corporation, Defendant.
                    No. 03-C-50519.

                     Nov. 23, 2004.

George S. Bellas, Clifford Law Offices, P.C.,
Chicago, IL, Paul R. Cicero, Cicero & France,
Rockford, IL, Brian J. Wanca, Anderson & Wanca,
Rolling Meadows, IL, Peter Thomas Shovlain,
Peter T. Shovlain & Associates, Gurnee, IL, for
Plaintiffs.
Michael A. Warner, Joan E. Gale, Scott A. Carlson,
Christopher Lawrence Casazza, Seyfarth Shaw,
Chicago, IL, for Defendant.

        *MEMORANDUM OPINION AND ORDER*
MAHONEY, Magistrate J.
*1 Jessica Loy ("Plaintiff") filed a two count
Amended Complaint against Motorola, Inc. ("
Defendant") individually and on behalf of all other
Motorola employees similarly situated, on April 15,
2004. Plaintiff filed her Amended Complaint
pursuant to the Family and Medical Leave Act of
1993 ("FMLA"), Section 107(a)(2)(B), 29 U.S.C. §
2601, et. seq., and in the alternative, pursuant to
Fed.R.Civ.P. 23(b)(3).[FN1] Currently, no motions to
certify a class or collective action have been filed in
this case. This matter is now before the court on
Defendant's Renewed Motion for a Protective Order
relating to Plaintiff's First Request for Production
and certain depositions sought by Plaintiff. For the
reasons stated below, Defendant's Motion for a
Protective Order is denied.

    FN1. The case was originally filed on
    December 2, 2003, on behalf of
    twenty-three Motorola employees, but the
    original complaint was voluntarily
    dismissed by the Plaintiffs.

                    *I. Background*

For the limited purposes of this motion, the court
accepts as true the background facts relayed in
Plaintiff's Response to Defendant's Motion for a
Protective Order. By doing so, the court makes no
judgment about the actual truth or accuracy of the
facts alleged. Plaintiff worked in the Login
Department at Motorola's Rockford facility from
April, 2001, to April, 2002. While working for
Defendant, Plaintiff was granted medical leave
under the FMLA from December 4, 2001, through
December 9, 2001, and intermittent leave thereafter.
Allegedly, Plaintiff's FMLA leave time was used to
calculate her employee production average, thereby
lowering her average and denying her the
opportunity to participate in various
benefits/incentive programs. On April 22, 2002,
Plaintiff was told that she was being terminated for
tardiness and attendance issues.

Plaintiff asserts that the alleged inclusion of FMLA
leave time into her productivity average was a
violation of the FMLA. In addition, Plaintiff alleges
that Defendant calculated other Motorola
employees' productivity without regard to the
FMLA's requirement of excluding leave time under
the Act. Thus, Plaintiff brings this action as an
individual and on behalf of other employees
similarly situated pursuant to Section 107(a)(2)(B)
of the FMLA, and in the alternative, Fed.R.Civ.P. 23
.

On or about June 8, 2004, Plaintiff served her First
Request for Production of Documents on
Defendant. Defendant did produce materials
responsive to Plaintiff's request, in particular in
regard to the original twenty-three Plaintiffs.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                              Page 2

Not Reported in F.Supp.2d, 2004 WL 2967069 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

Plaintiff, however, contends that outstanding materials have not been turned over, including various employee files and information on how Motorola calculated productivity rates at times relevant to her lawsuit. As part of her precertification discovery, Plaintiff also seeks to depose Motorola employees who are knowledgeable about Defendant's FMLA policies and practices and productivity tracking customs.

Defendant first moved for a protective order relating to Plaintiff's discovery on August 12, 2004. Defendant's motion was denied on August 18, 2004. Since then, Defendant has taken the deposition of the Plaintiff, and has renewed its Motion for a Protective Order based on information discovered at the deposition that convinced Defendant that Plaintiff is not an appropriate representative for additional individuals who may have claims against Motorola under the FMLA regarding productivity practices. Because of this, Defendant seeks to limit Plaintiff's broad discovery generally allowed under Fed.R.Civ.P. 23(b)(3).

*2 Underlying Defendant's Motion for a Protective Order is the issue of whether Plaintiff can proceed under Fed.R.Civ.P. 23(b)(3) as Plaintiff asserts, or whether FMLA class violations must be treated as collective actions under the Fair Labor Standards Act ("FSLA"), 29 U.S.C. § 216(b), as Defendant asserts. Claims filed under § 216(b) are different than Rule 23 class actions because § 216(b) collective actions require parties to "opt in" to be bound, while under Rule 23, parties must "opt out" not to be bound. *See Woods v. New York Life Ins. Co.,* 686 F.2d 578 (7th Cir.1982); *Mielke v. Laidlaw Transit, Inc.,* 313 F.Supp.2d 759 (N.D.Ill.2004). Class based discovery under Rule 23 is generally broader than in § 216(b) collective actions as well.

*II. Discussion*

Whether or not Plaintiff's case can proceed as a class or collective action is not the issue currently before the court, nor is it normally a decision for the Magistrate Judge to make. However, whether Plaintiff proceeds under the FLSA or Rule 23

impacts Defendant's Motion for a Protective Order so the Magistrate must reach that issue.

Defendant argues that alleged class violations of the FMLA must be treated as collective actions under the FLSA, 29 U.S.C. § 216(b). Defendant bases its argument on the statutory language of the FMLA, stating that the language of the enforcement provision of the FMLA, 29 U.S.C. § 2617(a)(2) mirrors that of the FLSA, 29 U.S.C. § 216(b). Further, Defendant quotes FMLA legislative history that suggests the enforcement scheme of the FMLA was intended to be identical to that of the FSLA:
[The FMLA's] enforcement scheme is modeled on the enforcement scheme of the FLSA, which has been in effect since 1938. Thus the FMLA creates no new agency or enforcement procedures, but instead relies on the time-tested FLSA procedures already established by the Department of Labor.... The Relief provided in the FMLA also parallels the provisions of the FLSA.

S.Rep. No. 103-3, at 35 (1993). Defendant also compares the FMLA with the Age Discrimination in Employment Act ("ADEA") because actions brought under ADEA have been treated as opt-in collective actions under the FLSA, not Rule 23. Defendant finally notes that courts interpreting the FMLA frequently track FLSA interpretations on collateral issues such as damages [FN2] and jury trials.[FN3]

> FN2. *See Thorson v. Gemini, Inc.,* 96 F.Supp.2d 882, 890 (N.D.Iowa 1999).

> FN3. *See McNeela v. United Air Lines, Inc.,* 1999 WL 987096, *5 (N.D.Ill. Oct.28, 1999).

Plaintiff, on the other hand, argues that class violations of the FMLA must be treated as opt-out actions under the FMLA, 29 U.S.C. § 2617(a)(2) and pursuant to Fed.R.Civ.P. 23(b)(3). In support of her argument, Plaintiff states that the statutory language of the FMLA § 2617(a)(2) clearly does not incorporate the express "consent" and "opt-in" language of the FLSA, which provides in § 216(b) that no person may be bound by, or benefit from, a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 3

Not Reported in F.Supp.2d, 2004 WL 2967069 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

judgment unless the person has filed a written consent to become a party. This is, of course, in direct contrast to Rule 23, which binds absent parties who fall within a certified class unless they opt out.

**\*3** Plaintiff also points out that when other statutes, like the ADEA, incorporate the "opt-in" enforcement procedures of § 216(b), they do so expressly. For example, Section 7(b) of the ADEA specifically directs that "provisions of this Chapter shall be enforced in accordance with the powers, remedies, and procedures provided in Sections ... 216 of this title." 29 U.S.C. § 626(b).[FN4] Plaintiff asserts that the FMLA contains no such provision, and absent a contrary intent of Congress, Fed.R.Civ.P. 23 is the appropriate enforcement mechanism. Plaintiff also analogizes the FMLA with class claims brought under Title VII and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, because these class claims, likewise, do not incorporate the FLSA, and are subject to certification by the court pursuant to Rule 23.[FN5]

> FN4. *See also King v. Gen. Elec. Co.,* 960 F.2d 617, 621 (7th Cir.1992)(citing *LaChapelle v. Owens-Illinois, Inc.,* 413 F.2d 286, 289 (5th Cir.1982)(finding that because ADEA § 7(b) "incorporates the enforcement provisions of the Fair Labor Standards Act, 29 U.S.C. § 216, by reference" the class action procedure under Fed.R.Civ.P. 23 is pre-empted).

> FN5. *See, e.g., Bowe v. Colgate-Palmolive Co.,* 416 F.2d 711, 719 (7th Cir.1965).

In *Califano v. Yamasaki,* the Supreme Court held that "[i]n the absence of a direct expression by Congress of its intent to depart from the usual course of trying 'all suits of a civil nature' under the Rules established for that purpose, class relief is appropriate." 442 U.S. 682, 700, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)(quoting Fed.R.Civ.P. 1). Because the plain language of the FMLA is silent as to the appropriate vehicle for an action to proceed on the behalf of others, this court is inclined to

apply Fed.R.Civ.P. 23 as it moves with this case through its discovery stages. While Defendant argues that FMLA claims are highly factual, and thus inappropriate for a class context, Defendant has not pointed to any inconsistency between the FMLA and the procedures of Rule 23. Thus, this court finds that Rule 23 class action rules are appropriate to apply in this case.[FN6]

> FN6. Defendant cites the court to one reported decision where an FMLA class claim was brought under Rule 23. *See Bond v. Abbott Labs.,* 7 F.Supp.2d 967 (N.D.Ohio 1998).

Accordingly, this court turns to Defendant's Motion for a Protective Order. Under Rule 26(c), it is clear that "for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... (1) that the disclosure or discovery not be had." Fed.R.Civ.P. 26(c)(1). The district court has discretion to decide when a protective order is appropriate and what degree of protection is required. *Seattle Times Co., v. Rhinehart,* 467 U.S. 20, 36, 104, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984). Only good cause is required in determining whether or not to issue a protective order. *Id.* at 37. In deciding whether good cause exists, the district court must balance the interests of the parties, taking into account the harm to the party seeking the protective order and the importance of the disclosure to the non-moving party. *Wiggins v. Burge,* 173 F.R.D. 226, 229 (N.D.Ill.1997). The party seeking the protective order has the burden of showing that good cause exists by alleging particular and specific facts. *See Gulf Oil Co. v. Bernard,* 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981).

Further, courts have considerable discretion in deciding whether, and to what degree discovery in regards to class certification issues should go forward. Typically, discovery is permitted to allow Plaintiff to show the existence of a class. Specifically, discovery is allowed where there is a need to determine whether Rule 23 requirements are

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                        Page 4

Not Reported in F.Supp.2d, 2004 WL 2967069 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

met and whether the action fits in one of the Rule 23(b) categories. Discovery must be sufficiently broad to give the plaintiff a realistic opportunity to meet the requirements of class certification, but at the same time, a defendant should be protected from overly burdensome or irrelevant discovery. *See McCray v. Standard Oil Co.,* 76 F.R.D. 490 (N.D.Ill.1977). Rule 26(c) provides courts the authority to limit the scope of discovery generally, and Rule 26(c)(4) allows the court to circumscribe discovery of irrelevant matters.

**\*4** While Defendant does argue that further production and depositions under Plaintiff's requests would be burdensome, Defendant does not lay out what its burden would be to produce under Plaintiff's request other than concluding that Plaintiff's discovery is "inappropriate, vexatious, and completely unnecessary." Instead, Defendant's central argument is that it should not be required to submit further discovery because Plaintiff cannot possibly be a proper class representative under Rule 23. Defendant maintains that it has turned over all materials relating to Plaintiff's individual claim, and that any other discovery is irrelevant and excessive in scope because Plaintiff seeks information beyond what Defendant characterizes as a "simple" claim regarding Plaintiff's termination for instances of tardiness that possibly should have been excused time under the FMLA. (Def.'s Mot., p. 7).

Defendant vehemently argues that Plaintiff's deposition testimony illustrates that she cannot connect her FMLA claims to productivity, and thus, there is no basis for her class claim challenging Defendant's productivity practices under the FMLA because she cannot be a proper class representative. Defendant quotes excerpts from Plaintiff's deposition transcript in support of its argument. Most of the excerpts go to showing that Plaintiff's claim is unrelated to productivity. For example, Defendant cites Plaintiff's statement that she was not terminated for poor productivity, and that Plaintiff does not know if any of her FMLA leave time days were included in Motorola's productivity calculations; she just thought they were "kind of off. " Defendant also notes that different employee teams used different productivity tracking systems, and that Plaintiff only knows about her own team.

Finally, Defendant downplays Plaintiff's assertion that employees who took FMLA leave time were penalized by being refused time-off incentives because Plaintiff could not state which weeks she thinks she did not get a bonus of getting off early on Fridays because she took FMLA leave time.

Plaintiff argues, with equal confidence, that she has connected her claim for a violation of the FMLA to production average issues, maintaining that adverse employment actions were taken against her due to the inclusion of FMLA leave time in her productivity averages, *despite the fact that* other alleged FMLA violations ultimately resulted in her employment termination. Plaintiff asserts that her deposition testimony bears out her productivity claim, and she also presents the declarations of twenty other present and former Motorola employees who also claim FMLA leave time was used to lower their productivity averages.

Plaintiff cites excerpts from her deposition in support of her argument. She notes that she testified that "if she took the total of her productivity for the week and divided that number by the actual number of hours/days that she worked, her weekly production average was higher than the production average reported by Motorola. Further, if she divided her weekly production by 5 days (even if she worked less than 5 days), she would get the same exact weekly production average as determined by Motorola." (Pl.'s Resp., p. 3). Plaintiff also cites to her testimony that "employees who met their daily production quotas for each work day during that work week were permitted to leave work early on the last work day of that week. However, if an employee missed a day of work for any reason, including FMLA leave, that employee was not permitted to leave work early ... even if that employee had met his or her production quota." (*Id.* ).

**\*5** The court has reviewed Plaintiff's deposition for evidence of a productivity related claim, and has considered both parties' arguments on this issue. At this time, the court finds that Defendant has failed to meet its burden to show that discovery sought by Plaintiff is either unreasonably burdensome or irrelevant. Plaintiff has connected her FMLA claims

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                        Page 5

Not Reported in F.Supp.2d, 2004 WL 2967069 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

to productivity by alleging adverse employment actions taken against her due to the incorporation of FMLA leave time into her productivity average. While Plaintiff may also have other FMLA related claims against Defendant, it does not change the fact that Plaintiff has alleged wrongful productivity practices taken by Defendant, much the same as the other twenty employees that filed their declarations with the court.

Plaintiff's First Production Request also does not strike the court as overly broad. Plaintiff requests personnel and occupational health resources files for approximately 25 individuals, and productivity related documents for approximately 200 named individuals, with the team position of each individual already listed. Defendant does not specify its burden to produce these documents, and the court finds that Plaintiff's request falls in the amount and type of discovery necessary for Plaintiff to show that a class exists and that she is an appropriate representative. Plaintiff's requests for FMLA leave logs and documents related to FMLA compliance generated by six named individuals also are relevant to whether a class should be certified and the proper scope of the class action.

Plaintiff's proposed depositions of Michael Davies, Drew Williams, and Robert White, and further deposition of Krista Meyer, also do not appear beyond the scope of Plaintiff's complaint. Krista Meyer ran Motorola's FMLA program in Rockford. According to Plaintiff, Michael Davies submitted a Declaration that he has personal knowledge of the methods used to track production at Motorola's Rockford facility. Drew Williams was an IT expert at Motorola's Rockford facility and possesses information with regard to the computer programs used to track productivity. Robert White developed the software program that was used to track productivity at the Rockford plant. Because the court does not accept Defendant's assertion that Plaintiff cannot assert a claim of productivity at this time, the court finds no reason why Plaintiff should not be able to proceed with her deposition of persons knowledgeable of Defendant's productivity programs.

*III. Conclusion*

For the foregoing reasons, the court finds that Plaintiff is entitled to proceed with discovery to determine if a class should be certified under Rule 23. Defendant's Motion for a Protective Order is denied.

N.D.Ill.,2004.
Loy v. Motorola, Inc.
Not Reported in F.Supp.2d, 2004 WL 2967069 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 3707525 (Trial Pleading) Defendant's Answer and Affirmative Defenses to Plaintiff's Second Amended Class Action Complaint (Jan. 4, 2005)
• 2004 WL 3721466 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response to Defendant's Request for Reconsideration by the District Court Judge of the Magistrate Judge's Order Denying Defendant's Renewed Motion for A Protective Order and Finding Rule 23 to be Applicable to the Class Claims (Dec. 20, 2004)
• 2004 WL 3678300 (Trial Pleading) Second Amended Class Action Complaint (Dec. 14, 2004)
• 2004 WL 3721465 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum of Law on Class Claims and Oppositionc to Defendant's Renewed Motion for A Protective Order (Nov. 17, 2004)
• 2004 WL 3721464 (Trial Motion, Memorandum and Affidavit) Defendant's Memorandum of Law on the Class Claims and Defendant's Renewed Motion for a Protective Order (Nov. 15, 2004)
• 2004 WL 3721463 (Trial Motion, Memorandum and Affidavit) Defendant's Renewed Motion for A Protective Order Relating to Plaintiff's First Request for Production of Documents and Depositions Sought By Plaintiff (Nov. 1, 2004)
• 2004 WL 3721462 (Trial Motion, Memorandum and Affidavit) Plaintiff's Opposition to Defendant's Motion to Compel and Defendant's Motion For Protective Order (Aug. 17, 2004)
• 2004 WL 3678299 (Trial Pleading) Defendant's Answer and Affirmative Defenses to Plaintiff's First Amended Class Action Complaint (May 5, 2004)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 6

Not Reported in F.Supp.2d, 2004 WL 2967069 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

• 2004 WL 3721461 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendant's Motion to Dismiss (May 2, 2004)
• 2004 WL 3678298 (Trial Pleading) First Amended Class Action Complaint (Apr. 15, 2004)
• 2003 WL 24280021 (Trial Motion, Memorandum and Affidavit) Emergency Motion For Protective Order (Dec. 10, 2003)
• 2003 WL 24247520 (Trial Pleading) Complaint At Law (Dec. 2, 2003)
• 3:03cv50519 (Docket) (Dec. 02, 2003)
• 2003 WL 24280022 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response to Defendant's Renewed Motion for A Protective Order Relating to Plaintiff's First Request for Production of Documents and Depositions Sought By Plaintiff (2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                 Page 1

Not Reported in F.Supp.2d, 2000 WL 1774091 (N.D.Ill.), 142 Lab.Cas. P 34,179
**(Cite as: Not Reported in F.Supp.2d)**

▷

Briefs and Other Related Documents

United States District Court, N.D. Illinois, Eastern
Division.
Sean LADEGAARD, individually and on behalf of
a class of employees, similarly situated, Plaintiff,
v.
HARD ROCK CONCRETE CUTTERS, INC., et
al. Defendants.
**No. 00 C 5755.**

Dec. 1, 2000.

MEMORANDUM OPINION AND ORDER

LEFKOW, J.
**\*1** Plaintiff, Sean Ladegaard ("Ladegaard"), filed
this putative class action against defendants Hard
Rock Concrete Cutters, Inc. ("Hard Rock"), and its
principals, James M. Dvoratchek and Peter M.
Held, in the Circuit Court of Cook County, Illinois,
alleging violations of the Illinois Minimum Wage
Law ("IMWL"), 820 ILCS 105/1 *et seq.,* the
Illinois Wage Payment and Collection Act ("IWPCA
"), 820 ILCS 115/1 *et seq.,* and the Fair Labor
Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*
After defendants removed the case to federal court,
plaintiff filed this motion for class certification of
the state law claims.[FN1] For the following reasons,
plaintiff Ladegaard's motion for class certification is
granted.

> FN1. Plaintiff's motion for class
> certification only specifically mentions the
> Illinois Minimum Wage Act claim.
> However, plaintiff's complaint and reply
> brief suggest that he is requesting class
> certification for both the IMWL and
> IWPCA state law claims. The court has
> evaluated the motion as applying to both
> claims.

PROCEDURAL BACKGROUND

Plaintiff is a former employee of defendant Hard
Rock, an Illinois corporation. He seeks certification
of a class of former and current employees who
have worked for Hard Rock during the period
August 1, 1997 to the present and who were not
paid for hours worked and overtime compensation.
The complaint and motion for class certification
were filed August 15, 2000. On September 18,
2000, defendants removed the case to federal court.
On September 25, defendants filed their answer and
affirmative defenses.

Plaintiff renewed his motion for class certification
in federal court on September 27, 2000, and a few
days later, on October 3, he moved for immediate
certification of the class and to restrain defendants'
communications with class members, as well as to
begin notice to members of the plaintiff class on the
FLSA claims. The motion for immediate
certification asserted that defendants had provided
every member of the proposed class who is
currently working for Hard Rock with a release
which they could exchange for a check and which,
plaintiff asserts, carried the threat that they would
no longer be working with the company if they did
not sign.[FN2] At a hearing on October 5, the court
resolved the emergency motions by the following
agreement: "Pending disposition of the motion for
class certification, defendants represent on the
record that they will not contact potential class
members with respect to any matter relating to this
suit."

> FN2. Plaintiff's reply to defendants'
> response to plaintiff's motion for class
> certification notes that because defendants
> had not yet responded to discovery the
> means Hard Rock used to obtain the
> releases is unknown.

On October 16, 2000, defendants filed their

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 2

Not Reported in F.Supp.2d, 2000 WL 1774091 (N.D.Ill.), 142 Lab.Cas. P 34,179
**(Cite as: Not Reported in F.Supp.2d)**

consolidated response to plaintiff's motions for class certification; immediate certification of class and to restrain defendants' communications with class members; and to begin notice to members of the plaintiff class [hereafter "Def.'s Consol. Response" ]. The defendants attached a copy of an example of a release, which purported to release the FLSA, IMWL and IWPCA claims (but no other claims against the company). The attached release had redacted the name of the employee and sum that the employee would receive (within 14 days of signing the release). It was signed by the employee on September 27, 2000 and by the company on September 28, 2000.

### STANDARDS

"The Federal Rules of Civil Procedure ("the Rules" ) provide the federal district courts with 'broad discretion' to determine whether certification of a class-action lawsuit is appropriate." *Keele v. Wexler,* 149 F.3d 589, 592 (7 th Cir.1998). Under the Rules, a determination of class certification requires a two-step analysis. First, the named plaintiff must demonstrate that his action satisfies the four threshold requirements of Rule 23(a): *2 (1) numerosity (the class must be so large 'that joinder of all members is impracticable'); (2) commonality (there must exist 'questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical ... of the class'); and (4) adequacy of representation (the representative must be able to 'fairly and adequately protect the interests of the class').

*Id.* at 594; Fed.R.Civ.P. 23(a). Failure to establish any one of these prerequisites precludes class certification. *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7 th Cir.1993). Additionally, the action must "qualify under one of the three subsections of Rule 23(b)." *Hardin v. Harshbarger,* 814 F.Supp. 703, 706 (N.D.Ill.1993); Fed.R.Civ.P. 23(b). In this case, plaintiff seeks certification under subsections 23(b)(2) and (b)(3). Rule 23(b)(2) provides that an action may be maintained as a class action if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making

appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Rule 23(b)(3) provides that an action may be maintained as a class action if "the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FN3 When evaluating a motion for class certification, the court accepts as true the allegations made in support of certification, and does not examine the merits of the case. *Hardin,* 814 F.Supp. at 706, *citing, inter alia, Eisen v.. Carlisle & Jacquelin,* 417 U.S. 156, 177-78, 94 S.Ct. 2140, 2152-53, 40 L.Ed.2d 732 (1974). The party seeking class certification bears the burden of showing that the requirements for class certification have been met. *Id., citing, inter alia, General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982).

> FN3. The effect of Rule 23(b)(2) certification as opposed to Rule 23(b)(3) certification is that under 23(b)(3) the court is required to inform the members of the right to opt-out, whereas under 23(b)(2) it is not. *Compare* Fed.R.Civ.P. 23(c)(2) and 23(c)(3).

### DISCUSSION

As set out above, plaintiff asks this court to certify a class of former and current employees who have worked for Hard Rock during the period August 1, 1997 to the present and who were not paid for hours worked, including overtime compensation. Specifically, plaintiff alleges that from August 1, 1997 to the present, plaintiff and the class he seeks to represent have not been paid for time loading and unloading trucks and driving to the work site at the beginning of the work day, time spent driving from the job site back to the yard and loading and unloading equipment at the end of the work day, and time spent attending mandatory monthly safety meetings, as required by law.

First, defendants object to plaintiff's motion on the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                        Page 3

Not Reported in F.Supp.2d, 2000 WL 1774091 (N.D.Ill.), 142 Lab.Cas. P 34,179
**(Cite as: Not Reported in F.Supp.2d)**

ground that it was brought under the Illinois Rules of Civil Procedure as opposed to the federal Rules. Plaintiff admits that his renewed motion (which was originally brought in Illinois state court) relied on Illinois procedure but asserts that the Illinois requirements for class certification are similar to the four prerequisites of Rule 23(a). The court agrees that plaintiff's motion for class certification should have been brought under the federal Rules. Nevertheless, this defect is not fatal because, when taken together, the allegations in the complaint, the motion for class certification, and plaintiff's reply memorandum adequately address the requirements for class certification under the federal Rules. It would be a waste of time to require plaintiff to file a slightly different motion seeking the same relief.

### A. The Requirements of Rule 23(a)

*3 Next, defendants argue that plaintiff's motion does not meet the requirements of Rule 23. Concerning the Rule 23(a) requirements, defendants' main objection is that plaintiff has failed to establish the numerosity requirement of Rule 23(a)(1). Defendants also make tangential arguments regarding the other 23(a) requirements. The court finds that plaintiff has satisfied his burden under Rule 23(a).

### 1. Numerosity-Rule 23(a)(1)

To meet the numerosity requirement, the class must be so large "that joinder of all members is impracticable." *Keele*, 149 F.3d at 594; Fed. R. Civ. Pro. 23(a)(1). Plaintiff asserts that the class of driver-operators and helpers that he seeks to represent is so numerous that joinder of all members is impracticable. Plaintiff estimates that the class has at least 50 members, judging from the number of trucks Hard Rock has, and defendants state that "[a]ccording to Defendants' records there are a total of 60 individuals who have been employed by Hard Rock as driver-operators or helpers since August 15, 1997." In order to establish numerosity, plaintiff need not allege the exact number of members of the proposed class. *Johnson v. Rohr-Ville Motors, Inc.*, 189 F.R.D.

363, 368 (N.D.Ill.1999). Generally, where the membership of the proposed class is at least 40, as is likely the case here, joinder is impracticable and the numerosity requirement is met. *Id .*, citing *Swanson v. American Consumer Indus., Inc.*, 415 F.2d 1326, 1333 (7 th Cir.1969).

Defendants argue that the class size should be eleven because "all but eleven signed agreements releasing their claims." *See* Def.'s Consol. Response, at 7. Because the propriety of a class action is basically a procedural question, it is inappropriate at the class certification stage to resolve issues such as the validity of releases, which go to the merits of the case. *See, e.g., Dubin v. E.F. Hutton Group Inc.*, No. 88 CIV. 0876(PKL), 1990 WL 105757, at *4 n. 4 (S.D.N.Y. July 20, 1990) (" On the present record, the Court is unable to determine the effect, if any, of these alleged releases on the numerosity of the putative class. Furthermore, it is inappropriate for the Court to resolve this substantive issue at this time."); *Fraley v. Williams Ford Tractor and Equip. Co.*, 5 S.W.3d 423, 431 (Ark.1999) (citing, *inter alia*, treatises and federal cases, and reversing determination that numerosity requirement had not been met where many putative class members had signed releases because the determination of the validity of the releases prematurely intruded on the merits of case). While the court is aware of authority in which courts have denied certification or reduced the class size where a significant portion of the potential class had signed releases,[FN4] the instant case is distinguishable in that defendants' method of obtaining the releases may have intruded on the court's authority to oversee the notice to class members in the class certification process in a fair manner.[FN5] In such a case, it is even more imperative that a court not consider the releases at the certification stage. *Fraley*, 5 S.W.3d at 437; *see also* 1 Newberg on Class Actions, § 15.19 (3d ed.1992) [hereafter "Newberg"] ("Though the law has long favored settlements, releases from liability or exclusions from a class obtained by the defendant through misrepresentations or the coercive threat of economic sanctions will not receive judicial approval when challenged.").

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 4

Not Reported in F.Supp.2d, 2000 WL 1774091 (N.D.Ill.), 142 Lab.Cas. P 34,179
(Cite as: Not Reported in F.Supp.2d)

FN4. *See, e.g., Melong v. Micronesian Claims Comm'n,* 643 F.2d 10, 14 (D.C.Cir.1980) (denying on grounds of typicality and adequacy of representation); *Caspar v. Cunard Line, Ltd.,* 560 F.Supp. 240, 243 (E.D.Pa.1983) (evaluating numerosity excluding released plaintiffs); *but see Korn v. Franchard Corp.,* 456 F.2d 1206, 1212 (2d Cir.1972); *Meyer v. Stevenson, Bishop, McCredie, Inc.,* No. 74 Civ. 5274, 1976 WL 7888, at *3 (S.D.N.Y. May 11, 1976) (suggested conditionally granting class status and if the releases are determined to be valid, the court could entertain a motion to decertify the class for failure to satisfy the requirement of numerosity).

FN5. The court cannot determine on the record before it how many or even if releases were signed by potential class members. Notably, the one release provided by the defendants was dated September 27, 2000, the day plaintiff filed its motion for class certification in this court.

*4 Defendants also attempt to narrow the class by asserting that the potential class should be divided into two sub-classes: 41 "driver-operators" who claim to be owed compensation for travel time to and from the yard and for time spent attending safety meetings and the remaining 19 who worked only as "helpers" and who claim compensation only for time spent attending safety meetings. Plaintiff disputes this characterization claiming that helpers also are entitled to travel pay to and from the yard. For purposes of this motion, the court takes plaintiff's allegations as true, and therefore, rejects defendants' attempt to reduce the class in this manner.

Finally, defendants argue that even if the proposed class size is 60, the court should evaluate other factors and determine that in light of these factors the class size is not so numerous that joinder is impracticable. Where the class size is relatively small, courts do consider other factors such as judicial economy by avoiding a multiplicity of

actions, the size of individual claims, the financial resources of class members, the ability of the claimants to bring individual lawsuits and geographic dispersement. *See* Newberg, § 3.06; *Gaspar v. Linvatec Corp.,* 167 F.R.D. 51, 56 (N.D.Ill.1996) (citing cases where classes as small as 13 to 20 were certified). However, the consideration of other factors is usually necessary only where the proposed class size is smaller than 40. *Rohr-Ville Motors, Inc.,* 189 F.R.D. at 368; *Wood River Area Devel. Corp. v. Germania Fed. Savings and Loan Assoc.,* 198 Ill.App.3d 445, 450-52, 555 N.E.2d 1150, 1153-54 (Ill.App.Ct.1990) (if a class has more than 40 people numerosity is satisfied and if between 25 and 40 other factors become relevant). Even considering such factors, however, the court would conclude that joinder is impracticable here. Defendants do not dispute that the proposed class members have limited financial resources to bring individual actions and that their claims will likely be small. *See* Newberg, at § 3.06 (noting that "permissive joinder presupposes 'a group of economically powerful parties who are obviously able and willing to take care of their own interests.' "). The possibility of retaliation is also a factor when considering whether joinder is impracticable, *see id.; Rodriguez v. Berrybrook Farms, Inc.,* 672 F.Supp. 1009, 1014 (W.D.Mich.1987), and plaintiff has asserted that current employees may feel inhibited to sue making joinder unlikely. Although there is only plaintiff's suggestion of intimidation in this instance, the nature of the economic dependency involved in the employment relationship is inherently inhibiting. Further, the court does not agree with defendants' assertion that the availability of the FLSA action cures these problems.

2. Commonality-Rule 23(a)(2)

To meet the commonality requirement, "there must exist 'questions of law or fact common to the class." ' *Keele,* 149 F.3d at 594; Fed. R. Civ. Pro. 23(a)(2) . "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Id.* (quotation omitted). A common nucleus of operative fact exists where "defendants have engaged in standardized conduct towards

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                              Page 5

Not Reported in F.Supp.2d, 2000 WL 1774091 (N.D.Ill.), 142 Lab.Cas. P 34,179
**(Cite as: Not Reported in F.Supp.2d)**

members of the proposed class." *Id.* "[T]he commonality requirement has been characterized as a 'low hurdle' easily surmounted." *Scholes v. Stone, McGuire & Benjamin,* 143 F.R.D. 181, 185 (N.D.Ill.1992). Immaterial factual differences among the class member's claims "will not defeat a class action." *See id.* Although there will be differences in the details of class members' claims, the essence of them all will be the alleged unlawful failure of Hard Rock to pay for certain categories of work performed during a particular period of time. The commonality requirement is satisfied.

### 3. Typicality-Rule 23(a)(3)

*\*5* To meet the typicality requirement, the named plaintiff's claims or defenses must be "typical ... of the class." *Keele,* 149 F.3d at 594; Fed. R. Civ. Pro. 23(a)(3). The typicality requirement, although closely related to the commonality question, focuses on the class representative. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Id.; De La Fuente v. Stoekly-Van Camp, Inc.,* 713 F.2d 225, 232 (7 th Cir.1983). "Typical does not mean identical, and the typicality requirement is liberally construed." *Gaspar,* 167 F.R.D. at 57. The presence of defenses against some class members and not others does not defeat typicality. *Wagner v. NutraSweet Co.,* 95 F.3d 527, 534 (7 th Cir.1996) ("NutraSweet's defense based on the releases went too far. Typicality under Rule 23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members."). Plaintiff's and the class members' claims arise out of the same allegedly unlawful conduct-defendants' failure to pay wages for hours worked and overtime rates. Indeed, plaintiff's specific claims are as broad as the claims that he is asserting on behalf of the class. He states:
plaintiff and the class represents [sic] were not paid for all hours worked in that they were not paid for unloading and loading truck in the morning and for the first hour spent driving to the first job site at the beginning of their work day and also they were not

paid for the first hour of driving the truck back to the yard at the end of their shift from the job site to the yard and the unloading and loading of the equipment and supplies at the yard and were not paid for attendance at monthly mandatory safety meetings.

Complaint, ¶ 7. Thus, the typicality requirement is satisfied.[FN6]

> FN6. Defendants indirectly argue that because the named plaintiff, Ladegaard, is a former employee, his request for relief is not typical of the purported class, which includes current employees. Defendants cite to no case law in support of this proposition. This argument goes to Ladegaard's standing to raise the claims in the complaint, which the court addresses under the adequacy of representation requirement, below.

### 4. Adequacy of Representation-Rule 23(a)(4)

To meet the adequacy of representation requirement, "the representative must be able to ' fairly and adequately protect the interests of the class." ' *Keele,* 149 F.3d at 594; Fed. R. Civ. Pro. 23(a)(4). Under Rule 23(a)(4), the adequacy of representation determination "is composed of two parts: 'the adequacy of the named plaintiff's counsel, and the adequacy of protecting the different, separate, and distinct interest' of the class members." *Retired Chicago Police Ass'n,* 7 F.3d at 598 (quotation omitted). Defendants do not contest the adequacy of plaintiff's counsel. Plaintiff asserts that his counsel, Jac Cotiguala and Luanne Galovich, are experienced and recognized in wage and hour law and have been designated as class counsel in other class actions in state and federal court and he cites to these cases. The fact that attorneys have been found adequate in other cases is "is persuasive evidence that they will be adequate again." *Gomez v. Illinois State Bd. of Ed.,* 117 F.R.D. 394, 401 (N.D.Ill.1987). Plaintiff also notes that Mr. Cotiguala has handled cases under the IMWL and is current Chair of the National Employment Lawyers Association Wage and Hour

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 6

Not Reported in F.Supp.2d, 2000 WL 1774091 (N.D.Ill.), 142 Lab.Cas. P 34,179
**(Cite as: Not Reported in F.Supp.2d)**

Committee and past Chair of the CBA Labor and Employment Committee.

**\*6** As to the second factor, the class representative must not have "antagonistic or conflicting claims" with the members of the purported class. *Gammon v. GC Servs. Ltd. Partnership,* 162 F.R.D. 313, 317 (N.D.Ill.1995), *citing Rosario v. Livaditis,* 963 F.2d 1013 (7 th Cir.1992). Plaintiff is qualified to represent the class "only if his 'interest in proving his claim[s] will lead him to prove the claims of the remainder of his class." ' *Haraco, Inc. v. American Nat'l Bank and Trust Co. of Chicago,* 121 F.R.D. 664, 670 (N.D.Ill.1988) (quotation omitted). Plaintiff asserts that he will fairly and adequately protect the interests of the class because he was a driver-operator employed by defendants and worked with helpers on a frequent basis. Further, he asserts that as a former employee he is owed a substantial amount of money in overtime wages and has an incentive to request back wages.

Defendants argue, without citation to any authority, that because plaintiff does not currently work for defendant he has no standing to seek injunctive or declaratory relief and thus cannot fairly and adequately protect the interests of the class under Rule 23(a)(4). *See* Def.'s Consol. Response, at 4 n. 1. Defendants' contention is, in essence, an argument that because Ladegaard is a former employee his claims conflict with the claims of current employees. This argument lacks merit. While a named plaintiff "who is unable to secure standing for himself is certainly not in a position to ' fairly insure the adequate representation' of those alleged to be similarly situated," *Mintz v. Mathers Fund, Inc.,* 463 F.2d 495, 499 (7 th Cir.1972), to have standing to sue, the named representative " must possess the same interest and suffer the same injury shared by all members of the class he represents." *Keele,* 149 F.3d at 592-93. The court finds that Ladegaard, the named plaintiff, possesses the same interest and has suffered the same injury as the other class proposed class members, whether former or current. He alleges he was deprived of wages for hours worked and for overtime and he requests a declaration, an accounting and back pay to remedy this. He alleges the same violation and remedy for the rest of the class.[FN7] *See Becher v.*

*Long Island Lighting Co.,* 164 F.R.D. 144, 152 (E.D.N.Y.1994) ("All participants seek the same ' make-whole' relief claimed by the named plaintiffs.. .. [A]ccordingly, ... this Court finds the distinction between active and retired employees insufficient to bar certification."). The adequacy of representation requirement is satisfied.

> FN7. Plaintiff does note that injunctive relief is possible under the IMWL, at least, and the title of his complaint includes injunctive relief as part of the relief sought. However, plaintiff does not identify the injunctive relief requested. Presumably, any injunctive relief would rest on a finding of unlawful failure to pay one or more types of wages sought and would require merely future obedience to the law in those respects. Although Ladegaard, as the named plaintiff, would not benefit from injunctive relief of that sort, he has no disincentive to ask for it on behalf of the class, and counsel for the class, as well, is undoubtedly cognizant of plaintiff's responsibility to adequately represent the class with respect to injunctive relief.

### B. Requirements of Rule 23(b)

Plaintiff seeks certification under both 23(b)(2) and 23(b)(3). Defendants argue that 23(b)(2) is not applicable and that plaintiff's motion fails to meet the requirement of 23(b)(3).

### 1. Rule 23(b)(2)

Rule 23(b)(2) provides that an action may be maintained as a class action if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Rule 23(b)(2) is generally "invoked in cases where injunctive or declaratory relief is the primary or exclusive relief sought." *Byucks-Robertson v. Citibank Fed. Sav. Bank,* 162 F.R.D. 322, 335 (N.D.Ill.1995); *Doe v. Guardian*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2000 WL 1774091 (N.D.Ill.), 142 Lab.Cas. P 34,179
**(Cite as: Not Reported in F.Supp.2d)**

*Life Ins. Co. of America,* 145 F.R.D. 46, 477 (N.D.Ill.1992) ("the primary limitation on the use of Rule 23(b)(2) is the requirement that injunctive or declaratory relief be the predominant remedy requested for the class members"). Moreover, "[t]he declaratory judgment sought must correspond to injunctive relief, or serve as the basis for future injunctive relief." *Roman v. Korson,* 152 F.R.D. 101, 111 (W.D.Mich.1993); Newberg, at § 4.11 (same). Although the title of plaintiff's complaint indicates that he seeks injunctive relief, the complaint itself does not identify the injunctive relief he seeks.[FN8] The court agrees with defendants that plaintiff's complaint primarily requests a monetary remedy for himself and the class, back pay, and that the declaratory judgment requested would, if granted in plaintiff's favor, serve as a basis for a monetary award and the injunctive relief, if any, would be essentially a corollary to the principal relief obtained. *See Gaspar,* 167 F.R.D. at 59 (finding 23(b)(2) not applicable because request for benefits under retirement and severance plans " would be in the form of monetary relief, rather than the injunctive or declaratory relief required by Rule 23(b)(2)"). While 23(b)(2) certification has been granted where damages would flow from declaratory relief,[FN9] the court finds that another compelling reason not to certify plaintiff's class under 23(b)(2) in the instant case, is that the FLSA claim and the state law claims overlap. Because the potential class members have to opt in to the former suit, it is more consistent to permit them the opportunity to opt out of the state claims, an option not automatically provided under the notice rules for 23(b)(2). Therefore, the court finds that Rule 23(b)(2) is inapplicable for certification of this class action.

FN8. In Count I, the Illinois Overtime Wage Payment, plaintiff requests: "a judgment for all back wages due," " prejudgment interest on the back wages," " punitive damages of 2% per months on the underpayments," "reasonable attorney's fees and costs of this action," "that the court determine the rights of the parties and direct the defendants to account for all hours worked and wages paid to the class

members during the temporality of the class," and "such other and further relief as the Court may deem just and equitable." Complaint, ¶¶ A-E. In Count II, the Illinois Wage Payment and Collection Act, plaintiff requests "the court order defendants to make an accounting of all hours worked and wages paid to the plaintiff and to each and every class member he represents for the period August 1, 1997 to the present," "judgment in favor of the plaintiff and the class he represents ... for back wages due, plus prejudgment interest at the statutory rate" and "[s]uch other and further relief as may be just in law and equity." Complaint, ¶¶ A-C.

FN9. *See Gammon,* 162 F.R.D. at 321 (reasoning that 23(b)(2) certification was appropriate because plaintiff requested declaratory relief under the Fair Debt Collection Act and such relief was appropriate to settle the issue of the legality of defendant's behavior with respect to the entire class and if plaintiff prevailed on the issue of liability, statutory damages would flow directly from the declaratory judgment and damages would be readily calculable on a classwide basis).

2. Rule 23(b)(3)

*7 Rule 23(b)(3) provides that a class can be maintained if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and ... a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

a. Predominance of Common Questions

Defendants do not contend that predominance is not satisfied. In any event, the court already found with respect to commonality under Rule 23(a)(2) and typicality under Rule 23(a)(3) that questions of fact and law common to plaintiff's proposed class exist,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 8

Not Reported in F.Supp.2d, 2000 WL 1774091 (N.D.Ill.), 142 Lab.Cas. P 34,179
**(Cite as: Not Reported in F.Supp.2d)**

and that plaintiff's and the other class members' claims arose from the same course of conduct of the defendants. Although 23(b)(3) requires a more searching inquiry as to whether the common questions predominate over any questions affecting only individual members, the court concludes that the questions of defendants' liability for back wages and overtime predominates over any individualized questions of defenses or damages. *See Gaspar,* 167 F.R.D. at 60.

b. Superiority of Class Action Method

Defendants contend that because of the availability of the FLSA collective action claim, the class action would not be a superior method of resolving the controversy. Defendants assert that the FLSA provides relief similar to the state claims and that it would be confusing for the class members to receive notice from the court about their choices to " opt-in" to the FLSA action and "opt-out" of the state actions under Rule 23(b)(3).

In determining whether a class action is superior to other methods for resolving a controversy, pertinent findings include
(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*See* Fed.R.Civ.P. 23(b)(3). In evaluating these factors, the court finds that a class action is a superior method of adjudicating the state claims. The court has not been informed by either party of any pending suits brought by individual class members, other than plaintiff's. Thus, there does not appear to be an interest of individual members in controlling the prosecution of the state claims. The fact that the named plaintiff has instituted a federal claim-the FLSA action-does not alter this conclusion. The presence of both FLSA and state claims has not prevented courts from certifying the

state claims under Rule 23(b). *See Brzychnalski v. Unesco, Inc.,* 35 F.Supp.2d 351, 354 (S.D.N.Y.1999) (granting authorization to pursue collective action for FLSA claims and class certification under Rule 23(b)(3) for New York Minimum Wage Act claims finding that under 23(b)(3) "a class action is superior to other methods for the fair and efficient adjudication of the claims in question"); *see also Ramirez,* 1996 WL 529413, at *3 (granting class certification under 23(b)(3) for common law breach of contract claims where plaintiff had also brought FLSA claims); *Leyva v. Buly,* 125 F.R.D. 512, 514 (E.D.Wash.1989) (granting class certification to agricultural workers on state wage and contract law claims where plaintiffs had also sued for wage violations under the FLSA). Moreover, even with the presence of the FLSA action, individual plaintiffs could bring an action in state court on the state claims. To avoid this result, and to further judicial economy, it is desirable to concentrate the litigation in one forum. Finally, there are not likely to be great difficulties in the management of this class action. The class is a manageable size and plaintiff will likely not have problems contacting the potential members. Although defendants have suggested confusion will result from notice to class members of their right to "opt-in" to the FLSA action and "opt-out" of the Rule 23 state claims, plaintiff has indicated that this will not be a major obstacle because his attorneys have drafted such joint notices (supervised by other courts in this district) in the past. Further, any issues specific to individual members, such as damages ( *see* Def.'s Consol. Response, at 6 n. 3) or defenses, can be determined through a separate motion or hearing.

CONCLUSION

*8 Because plaintiff has satisfied the necessary elements of Rule 23(a) and Rule 23(b)(3), he may bring his action as a class action. The court defines the class as former and current driver-operators and helpers who have not been paid for wages and overtime for time loading and unloading trucks and driving to the work site at the beginning of the work day, time spent driving from the job site back to the yard and loading and unloading equipment at the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 9

Not Reported in F.Supp.2d, 2000 WL 1774091 (N.D.Ill.), 142 Lab.Cas. P 34,179
**(Cite as: Not Reported in F.Supp.2d)**

end of the work day, and time spent attending mandatory monthly safety meetings for the period of August 15, 1997 to the present.[FN10]

>    FN10. Although plaintiff has used the August 1, 1997 date as the beginning date for the temporality of the class, both parties appear to agree that the pertinent time of the class begins three years prior to the date that suit was filed. Because the specific filing date is August 15, 2000, the court adopts August 15, 1997 as the beginning date of the class period.

N.D.Ill.,2000.
Ladegaard v. Hard Rock Concrete Cutters, Inc.
Not Reported in F.Supp.2d, 2000 WL 1774091 (N.D.Ill.), 142 Lab.Cas. P 34,179

Briefs and Other Related Documents (Back to top)

• 2001 WL 34670831 (Trial Pleading) Third Amended Class Action Complaint for Injunction, Accounting and Judgment for Overtime and Back Wages (Apr. 24, 2001)
• 1:00CV05755 (Docket) (Sep. 19, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSSETTS

|  |  |
|---|---|
| DEBBIE L. TREZVANT, TIMOTHY CAHILL, DEBORAH CHERYL ARCH, and MARY-CATHERINE PICHE, each of them individually and on behalf of all others similarly situated and similarly situated current and former employees of Defendant | Case No.  05-10673 (WGY) |

Plaintiffs,

v.

FIDELITY EMPLOYER SERVICES
CORPORATION, FIDELITY
EMPLOYER SERVICES COMPANY,
LLC, and FMR CORP.,

Defendants.

---

**PLAINTIFFS' MEMORANUM IN SUPPORT OF THEIR REQUEST
TO CERTIFY QUESTIONS OF STATE LAW TO THE NEW HAMPSHIRE
SUPREME COURT AND FOR A STAY OF THEIR CLAIMS IN THIS COURT
UNTIL THE STATE COURT HAS RESOLVED OR OTHERWISE DISPOSED
OF THE CERTIFIED QUESTIONS**

Plaintiffs, Debbie L. Trezvant, Timothy Cahill and Deborah Cheryl Arch

(collectively, "Plaintiffs") respectfully submit this memorandum of law in support of

their request that this Court certify the following unresolved questions of state law to the

New Hampshire Supreme Court: (i) Whether a cause of action or claim for relief under

New Hampshire Revised Statutes § 275:43 ("Section 275:43") for wages due may

include unpaid federally required overtime wages; and (ii) Whether the New Hampshire

legislature directly expressed an intent to prohibit opt-out class actions for causes of

action or claims for relief brought pursuant to Section 275:43 for wages due (questions (i)

and (ii) together, the "Certified Questions").[1] Plaintiffs also request a stay of the

proceedings in this Court until the New Hampshire Supreme Court has resolved or

otherwise disposed of the Certified Questions in order to preserve the state court's

jurisdiction to answer those questions and so as not to unfairly prejudice Plaintiffs and/or

the proposed class.

## BACKGROUND

Plaintiffs are former employees of Fidelity Employer Services Corporation,

Fidelity Employer Services Company LLC and/or FMR (collectively, "Defendants" or

"Fidelity"). On April 5, 2005, Plaintiffs sued to recover unpaid overtime compensation

for themselves and current and former employees of Defendants by bringing a collective

---

[1]    After sincere attempts at reaching an agreement regarding the wording of the questions
posed for certification to the New Hampshire Supreme Court, the parties have opted to
submit their own proposed questions.

Defendants have proposed the following questions, which Plaintiffs find inappropriate:
(i) Whether the term "wages," as defined in N.H. Rev. Stat. Ann. §275:42(III), includes
overtime compensation that an employer is required to pay pursuant to the Fair Labor
Standards Act, 29 U.S.C. § 207, where the employer has made no voluntary agreement to
pay overtime compensation and the employee has no right to overtime pay under New
Hampshire's overtime statute, N.H. Rev. Stat. Ann. § 279:21(VIII); and (ii) Whether the
New Hampshire statute authorizing civil actions to recover unpaid wages and liquidated
damages, N.H. Rev. Stat. Ann. § 275:53(I), allows a plaintiff to assert claims on behalf of
employees of the defendant who have not brought claims on their own behalf, have not
designated the plaintiff as their agent or representative to maintain such action, and have
not otherwise consented to participate in the litigation.

Defendants' first proposed question focuses too narrowly on the definition of "wages"
under section 275:42(III) of the New Hampshire Revised Statutes and fails to reach the
real issue presented by Plaintiffs' state law cause of action, which is whether a claim may
be made pursuant to Section 275:43 for federally mandated overtime pay. Defendants'
second proposed question rests upon the wrong legal standard. The question is not
whether section 275:53 allows a plaintiff to bring a class action, but whether the New
Hampshire legislature has expressed a specific prohibition to such. Thus, Plaintiffs
respectfully urge this Court to adopt the phrasing they have proposed.

However, Plaintiffs do not intend their framing of these questions to restrict either this
Court or the New Hampshire Supreme Court's consideration of any issues that either
determines to be relevant. Plaintiffs also understand that either this Court or the New
Hampshire Supreme Court may in its discretion reformulate the questions.

action pursuant to 29 U.S.C. § 216(b) alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA").

On June 22, 2005, Plaintiffs amended their complaint to add a second cause of action based on New Hampshire law, N. H. Rev. St. §§ 275:42, *et seq.*, and sought to bring that claim on behalf of themselves and other similarly situated persons pursuant to Federal Rule of Civil Procedure 23(b) ("Count II"). On October 26, 2005, the Court granted Plaintiffs' Motion for Conditional Collective Certification, allowing Plaintiffs to provide opt-in notice to potential class members in their FLSA cause of action.

On August 26, 2005, Defendants moved to dismiss Count II and/or strike Plaintiffs' class allegations with respect to Count II. On February 14, 2006, after hearing oral argument, the Court declared that it would consider whether to certify two questions to the Supreme Court of New Hampshire. *See* Order, dated February 14, 2006. However, the Court also stated that it would allow Defendants' motion to dismiss with respect to Count II, which would render moot any determination by the New Hampshire Supreme Court regarding the Certified Questions.

On April 21, 2006, the parties stipulated to the decertification of the FLSA collective action and the joining of the eleven opt-ins as plaintiff parties to the action. The parties entered this stipulation with the intent that it would allow for a more expeditious resolution of Plaintiffs FLSA claim.

Plaintiffs are hereby requesting that this Court (1) submit the proposed Certified Questions to the New Hampshire Supreme Court and (2) stay all proceedings in this Court until the New Hampshire Supreme Court has answered or otherwise resolved the Certified Questions in order to maintain the New Hampshire Supreme Court's

jurisdiction to consider the state issues, promote judicial economy and so as not to

deprive Plaintiffs and the proposed class members of their claims under New Hampshire

law.

## ARGUMENT

**I.    CERTIFICATION IS WARRANTED HERE BECAUSE THE CERTIFIED QUESTIONS ARE DISPOSITIVE AND HAVE NOT BEEN ADDRESSED BY THE NEW HAMPSHIRE COURTS.**

At the suggestion of this Court, Plaintiffs have posed two questions for review by

the New Hampshire Supreme Court.  The first question is whether Plaintiffs may bring a

cause of action or claim for relief under Section 275:43 for wages due that includes

unpaid federally required overtime wages.  The second is whether the New Hampshire

legislature directly expressed an intent to prohibit opt-out class actions for causes of

action or claims for relief brought pursuant to Section 275:43 for wages due.  These

questions are well suited for certification to the New Hampshire Supreme Court: they are

novel, the statutes at issue are arguably ambiguous, there is no controlling caselaw, and

their resolution will determine the disposition of Plaintiffs' state law claim.

Certifying questions of law to the New Hampshire Supreme Court is appropriate

"[w]hen a dispositive legal question is novel and the state's law in the area is unsettled."

*Therrien v. Sullivan*, No. Civ. 04-31-SM, 2005 WL 589425, at *7 (D.N.H. Mar. 14,

2005); *see* N.H. Sup. Ct. R. 34 ("This court may answer questions of law certified to it . .

. questions of law . . . which may be determinative of the cause then pending in the

certifying court and as to which it appears to the certifying court there is no controlling

precedent in the decisions of this court.").  Certification is all the more appropriate when

the ambiguity or uncertainty arises from the interpretation of a state statute, an area

properly within the [purview] of the state's courts.  *See, e.g., Acadia Ins. Co. v. McNeil*,

116 F.3d 599, 604 (1st Cir. 1997) ("Because the answer to this question is not obvious to us, and because New Hampshire's highest court is the final arbiter of the meaning of a statute of that state, we believe that we should certify this question."); *Chroniak v. Golden Inv. Corp.*, 887 F.2d 361 (1st Cir. 1989) ("We are unable to find any New Hampshire cases construing the statute. Accordingly, we certify two questions to the Supreme Court of New Hampshire.").

### A.    First Question:  Whether a cause of action or claim for relief under New Hampshire Revised Statutes § 275:43 for wages due may include unpaid federally required overtime wages?

Plaintiffs' second cause of action states that Defendants were required to pay the proposed class members overtime, but that Defendants misclassified them as ineligible for overtime pay. Thus, because Defendants never paid Plaintiffs for time worked in excess of forty hours per week, Defendants necessarily violated Section 275:43, which provides that "all wages due" must be paid within certain stated periods of time.[2] N.H. Rev. Stat. Ann. § 275:43.

Without wholly repeating their arguments made in opposition to Defendants' motion to dismiss, Plaintiffs reassert that the New Hampshire Legislature intended for New Hampshire employees seeking state and/or federally mandated overtime pay from their employers to be permitted to bring a claim under Section 275:43. The New Hampshire Supreme Court has held that, generally, chapter 275 must be construed so as to "effectuate the broad purpose of protecting employees." *Galloway v. Chicago-Soft,*

---

[2]     Section 275:43 provides in relevant part: "Every employer shall pay all wages due to employees within 8 days including Sunday after expiration of the week in which the work is performed, except when permitted to pay wages less frequently as authorized by the commissioner pursuant to paragraph II, on regular paydays designated in advance by the employer." N.H. Rev. Stat. Ann. § 275:43.

*Ltd.*, 142 N.H. 752, 759, 713 A.2d 982, 986 (N.H. 1998). "[W]e are guided by the fact that the statutory chapter in question is entitled 'Protective Legislation,' so that we are obligated to construe it to give effect to the legislature's remedial purpose." *Ives v. Manchester Subaru, Inc.*, 126 N.H. 796, 804, 498 A.2d 297, 303 (N.H. 1985) (internal citation omitted).

However, despite the holding of New Hampshire's highest court that Section 275:43 be read broadly to best protect employees, Defendants argue for a very narrow reading of "all wages due" that would exclude everything but compensation owed pursuant to a contract or agreement between an employer and its employees. Thus, contend Defendants, "federally mandated overtime is not 'wages' for purposes of New Hampshire's payment of wages statute." Defendants' Memorandum In Support of Their Motion to Dismiss ("Def. Br.") at 2-3. However, none of the cases cited by Defendants holds that contractual wages are the only ones that may be pursued under Section 275:43 or that the term "**all** wages due" excludes federally mandated overtime pay. *See id.* (emphasis added)

In contrast, Plaintiffs' contention that the term "all wages due" necessarily includes FLSA overtime pay is fully consistent with both the accompanying regulations and the statute's legislative history, particularly in light of the New Hampshire Supreme Court's requirement that chapter 275 be interpreted to give effect to its broad remedial purpose. The obvious purpose of Section 275:43 is to ensure that employees receive timely compensation for the hours they work. It should go without saying that compensation for hours worked necessarily includes compensation for hours worked in excess of forty hours. Indeed, the accompanying regulations to Section 275:43

6

specifically refers to the Code of Federal Regulations (the "CFR") that includes the

overtime wage requirements of the FLSA.

> For the purpose of determining 'all wages due' for hours worked in
> accordance with RSA 275:43, the department of labor, under the
> authority provided by RSA 275:54, incorporates the 'Wage and
> Hour Publication 1312, Title 29 Part 785 of the Code of Federal
> Regulations, United States Department of Labor.

N.H. Code Admin. R. Ann. Lab. 803.05 (2005). Regulation 803.05 refers to the section

of the CFR that explains that "[t]he amount of money an employee should receive cannot

be determined without knowing the number of hours worked," and provides guidance as

to how to determine the number of hours worked. *See* 29 C.F.R. § 785.1; *see generally*

29 C.F.R. § 785. That very same section also states that "persons may not be employed

for more than a stated number of hours a week without receiving at least one and one-half

times their regular rate of pay for the overtime hours." 29 C.F.R. § 785.1.

Defendants' proposition that regulation 803.05 somehow refers only to the CFR's

definition of "hours worked" while ignoring any references to overtime hours worked is

illogical. Under both New Hampshire and federal law, employees are owed overtime

compensation for hours worked in excess of forty hours per week (apart from certain

exemptions that Plaintiffs contend do not apply here). There is no basis in law or logic

for Defendants' contention that the New Hampshire Legislature intended that the term

"'**all** wages due' for hours worked" include severance pay, personal days, holiday pay,

sick pay and payment of employee expenses, but that it somehow excludes compensation

for hours worked in excess of forty hours a week.[2] (emphasis added)

---

[2]    In other contexts, the New Hampshire Supreme Court has stated that the general
understanding of the term "wages" includes "overtime" pay. *See, e.g., In re Appeal of
Berlin Educ. Ass'n, NHEA/NEA*, 125 N.H. 779, 783-84, 485 A.2d 1038, 1041 (N.H.
1984) ("'[C]ourts have rather consistently held that such items as overtime pay, . . . are

While Defendants have focused their argument on excluding federally mandated overtime pay, there is nothing to prevent their reasoning from also applying to overtime compensation required under New Hampshire law. According to Defendants, Section 275:43 only permits employees to recover compensation owed pursuant to some pre-arrangement between employee and employer; it does not include any amounts that are statutorily required. *See* Def. Br. at 4. Thus, pursuant to Defendant's logic, as long as a New Hampshire employer has not specifically agreed in advance to comply with statutory – federal or state – overtime requirements, the employer may withhold overtime payments from their employees' final paychecks – apparently indefinitely – without the employee having any recourse under Section 275:43. Defendants' theory turns the intended broad remedial purpose of chapter 275 on its head.

One of the intended benefits to employees of Section 275:43 is the option of filing a claim with the New Hampshire Department of Labor rather than having to litigate the matter in court. *See* N.H. Rev. Stat. Ann. § 275:51. Defendants' restrictive interpretation of the term "all wages due" would virtually eliminate this benefit for any employee seeking overtime wages and vastly increase the difficulty of enforcing of wage-hour provisions in New Hampshire.

For example, under Defendants' interpretation, if a terminated employee seeks to recover monies wrongfully withheld by his or her employer and such sums include

---

mandatory subjects of [collective] bargaining encompassed within the term 'wages.'"); *Brampton Woolen Co. v. Local Union 112*, 95 N.H. 255, 257, 61 A.2d 796, 797 (N.H. 1948) (in determining arbitrability under a collective bargaining agreement, the court stated "[t]here can be little doubt that workers generally consider the money which comes to them as a result of their labors, whether it be regular pay, overtime or vacation pay as a part of their wages and courts have recognized this fact").

statutorily mandated overtime pay (under either federal or state law), that employee could file a claim with the Department of Labor to recoup wages for regularly scheduled time worked, vacation pay, severance pay, personal days, holiday pay, sick pay and/or payment of employee expenses – everything except overtime wages. That same employee would then have no choice but to file a complaint and litigate his or her overtime claim in court. In the case of overtime pay mandated under the FLSA, that employee would have to file his or her claim in federal court, which sits in only one location in the entire state – downtown Concord, or else risk the same result when the employer removed the overtime claim to federal court. Because there is no guarantee that the federal court hearing the overtime claim would exercise pendent jurisdiction over the state law claim, it is possible that employees would be forced to litigate two separate actions in two separate courts. The travel time and costs alone would impose significant hardships on employees, especially those suing to recover for only one pay period. These additional burdens on employees would likely deter them from pursuing any remedy at all. Such a result is squarely at odds with the intended broad remedial purpose of Section 275. *See Galloway*, 142 N.H. at 759, 713 A.2d at 986; *Ives*, 126 N.H. at 804, 498 A.2d at 303.

Moreover, any attempt by Defendants to argue that the New Hampshire legislature intended to exclude only FLSA overtime wages is wholly unsupported. First, it directly conflicts with the regulations' specific reference to the CFR and the FLSA for determining "all wages due." Second, it violates a basic rule of statutory construction: "*expressio unius est exclusio alterius:* 'Normally the expression of one thing in a statute implies the exclusion of another.'" *St. Joseph Hosp. of Nashua v. Rizzo*, 141 N.H. 9, 11-

12, 676 A.2d 98, 100 (N.H. 1996).  The legislature could have explicitly excluded federally required overtime wages from Section 275:43 claims.  Clearly, it knew how to do so given that the legislature specifically excluded employers covered by the FLSA from New Hampshire's overtime statute.  *See* N.H. Rev. Stat. Ann. § 279:21(VIII)(b). As the legislature did not express such a limitation for Section 275:43, logic and statutory construction dictate that it did not intend restrict the "all wages due" statute in such a manner.

Neither Plaintiffs nor Defendants have been able to find any case directly on point regarding this question.  In the absence of any specific guidance from New Hampshire courts on the matter, the question of whether Plaintiffs can sue for federally mandated overtime under Section 275:43 is prime for certification.

> **B.    Second Question:  Whether the New Hampshire legislature directly expressed an intent to prohibit opt-out class actions for causes of action or claims for relief brought pursuant to Section 275:43 for wages due?**

In general, whenever a federal district court exercises jurisdiction over a claim arising under state law, the court must employ state substantive law and federal procedural law.  *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938) ("except in matters governed by the Federal Constitution or by Acts of Congress, the [substantive] law to be applied in any case is the law of the state"); *Hanna v. Plumer,* 380 U.S. 460 (1965) (conflicts between state procedural rules and the Federal Rules of Civil Procedure must be resolved in favor of use of the Federal Rules).  Thus, Plaintiffs contend that Rule 23 governs their ability to bring Count II as a class action on behalf of all other similarly situated Fidelity employees.  Defendants counter that the language in New Hampshire

Revised Statutes section 275:53[3] should be read restrictively -- as permitting only opt-in actions.

As a long-standing general rule, Rule 23 of the Federal Rules of Civil Procedure permits class actions in *all* civil actions filed in federal court – including state law claims – unless there has been a "direct expression" of legislative intent to depart from that typical course. *See*, Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss or Strike Count II of the First Amended Complaint, at 7-10 (citing *Califano v. Yamasaki*, 442 U.S. 682, 699-700 (1979) ("In the absence of a direct expression by Congress of its intent to depart from the usual course of trying 'all suits of a civil nature' under the Rules established for that purpose, class relief is appropriate in civil actions brought in federal court."); *Accounting Outsourcing, LLC. v. Verizon Wireless Pers. Communications, L.P.*, 329 F. Supp. 2d 789, 802-803 (M.D. La. 2004) (permitting Rule 23 class action for violations of the state and federal statutes despite fact that state statute did not specifically provide for class relief)).[4]

In fact, federal courts typically have disregarded even express restrictions in state

---

[3]     Section 275:53 provides:

> Action by an employee to recover unpaid wages and/or liquidated damages may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves, or such employee or employees may designate an agent or representative to maintain such action.

N.H. Rev. Stat. Ann. § 275:53(I).

[4]     *See also In re Charter Co.*, 876 F.2d 866, 872 (11th Cir. 1989) (applying *Califano*), *cert. dismissed*, 496 U.S. 944 (1990); *Ashby v. Farmers Ins. Co. of Or.*, No. CV 01-1446-BR, 2004 WL 2359968, at *8 (D. Or. Oct. 18, 2004) (same); *Core Funding Group, LLC v. Young*, 792 N.E.2d 547 (Ind. Ct. App. 2003) (where statute does not "expressly exclude class actions," class action is "presumably available as a method for redressing violations") (dicta).

11

procedural rules against class treatment of claims, where the substantive state law

contains no such ban. *See, e.g., Oskoian v. Canuel,* 269 F.2d 311 (1st Cir. 1959) (pre-

*Hanna* and pre-Rule 23.2 affirmance of district court's certification of Rule 23 class of

labor union members, despite a prohibition on such binding class actions under state

court procedure); *O'Keefe v. Mercedes-Benz USA, LLC,* 214 F.R.D. 266, 285-86 (E.D.

Pa. 2003) (bar to bringing state claim as a class action in state court would not "prevent a

federal court from grouping the . . . plaintiffs into a class action in order to conserve

federal court resources"); *In re Bridgestone/ Firestone, Inc.,* No. IP 00-9373-C-B/S, 2001

WL 34136016, *3 (S.D. Ind. Aug. 6, 2001) (permitting Rule 23 class action despite

presence of "state law restrictions that would have prohibited the action from proceeding

on a class basis had it been pending in state court").

> Plaintiffs are . . . not foreclosed from pursuing their [state law]
> claims on a class basis because of perceived procedural restrictions
> under the state laws . . . . Instead, in this federal court, Federal Rule
> of Civil Procedure 23 displaces any state law to the contrary, and
> provides the only relevant framework for this Court's determination
> of the nature and scope of any Class(es) on whose behalf Plaintiffs
> may assert [their state law] claims.

*Id. See In re Bridgestone/ Firestone, Inc.,* No. IP 00-9373-C-B/S, MDL No. 1373, 2001

WL 34136021, *4 (S.D. Ind. Sept. 6, 2001) ("*Bridgestone II*") ("[U]nder *Erie, Hanna,*

and progeny, Federal Rule of Civil Procedure 23 governs the procedural issue of class

certification in this case, regardless of whether . . . class actions are permitted in . . . state

courts.").

Thus, the question for the New Hampshire Supreme Court is not whether an

action under Section 275:43 could be brought as a class action in a state court, but

whether the state legislature intended to specifically and completely prohibit plaintiffs

from pursuing such a claim as an opt-out class. *See Califano,* 442 U.S. 682; *In re*

12

*Bridgestone*, 2001 WL 34136016, at *3; *O'Keefe,* 214 F.R.D. at 285-86.

Defendants are unable to point to a single provision in New Hampshire law that expressly precludes Plaintiffs from bringing Count II as a class action. Instead, Defendants proffer their misplaced reliance on the absence of an express invitation to bring a class action under Section 275:53. As pointed out in Plaintiffs' earlier papers, this argument flies in the face of established precedent. As the Supreme Court stated in *Califano,*

> The fact that the statute speaks in terms of an action brought by "any individual" or that it contemplates case-by-case adjudication does not indicate that the usual Rule providing for class actions is not controlling, where under that Rule certification of a class action otherwise is permissible.

442 U.S. at 700; *see Loy v. Motorola, Inc.*, No. 03-C-50519, 2004 WL 2967069, at *2-3 (N.D. Ill. Nov. 23, 2004) (applying Rule 23 and rejecting defendant's contention that the statute at issue should be read as only permitting opt-in classes because its language "mirrore[d]" that of the FLSA and the statute's legislative history suggested that "the enforcement scheme . . . was intended to be identical to that of the FSLA [sic]" because "the plain language of the [statute was] silent as to the appropriate vehicle for an action to proceed on the behalf of others), *reconsideration denied,* 2005 WL 61464 (Jan. 10, 2005); *Bridgestone II,* 2001 WL 34136021, at *4 (rejecting the defendants' argument that "that the word individually as used in the [state statute] clearly and unambiguously prohibits class actions").

However, there is no New Hampshire case law directly addressing this question. Thus, Plaintiffs seek the guidance of the New Hampshire Supreme Court in determining whether there is any expressed intention on the part of the state legislature to prohibit claims pursuant to Section 275:43 from being brought as a class action.

13

II.     **THE COURT SHOULD STAY PLAINTIFFS' CLAIMS UNTIL THE NEW HAMPSHIRE SUPREME COURT HAS RESOLVED OR OTHERWISE DISPOSED OF THE CERTIFIED QUESTIONS.**

A. **The Court Should Stay Any Decision On Count II Pending An Answer To The Certified Questions.**

Although the Court stated its intention to dismiss Count II, Plaintiffs respectfully submit that dismissal of their state law claim at this point would deprive the New Hampshire Supreme Court of jurisdiction to consider the proposed Certified Questions. N.H. Sup. Ct. R. 34 ("This court may answer questions of law . . . when requested by the certifying court if there are involved in any proceeding before it questions of law of this State which may be determinative of the cause *then pending* in the certifying court"). *See Panto v. Moore Bus. Forms, Inc.*, 130 N.H. 730, 732, 547 A.2d 260, 262 (N.H. 1988) (determining the relevance of its answers to proceedings in federal court before answering questions certified to it) (emphasis added). "Without an underlying case in which to apply the answer from the state supreme court, certification can never be warranted." *Brown v. Argosy Gaming Co.*, 384 F.3d 413, 416 (7th Cir. 2004). *See, e.g., Panto v. Moore Bus. Forms, Inc.*, 676 F. Supp. 412, 416 (D.N.H. 1988) (staying all further proceedings until such time as the New Hampshire Supreme Court has resolved or otherwise disposed of the certified questions").

In *Migliori v. Airborne Freight Corp.*, this Court read a Massachusetts statute as not supporting plaintiff's stated cause of action. 952 F.Supp. 38, 44 (D. Mass. 1997) (Young, J.). However, the Court ultimately concluded, "[i]n light both of the scarcity of Massachusetts case law applying the . . . doctrine [at issue]" and the important policy considerations, it would certify the state law issue to the Supreme Judicial Court of Massachusetts. *Id.* Thus, although the Court entered an order granting the defendants'

motion for summary judgment, it conditioned that order upon "the receipt of the decision of the Supreme Judicial Court." The Court also "administratively closed" the case "pending the receipt of such opinion." *Id.*

Thus, to preserve these questions for the New Hampshire Supreme Court, Plaintiffs request that this Court similarly reserve its decision on Defendants' motion to dismiss until the state court has had the opportunity to address the Certified Questions.

### B.    The Court Should Stay Plaintiffs' FLSA Claim Pending Decision On The Certified Questions.

Again, a refusal to stay Plaintiffs' FLSA claim will likely deprive the New Hampshire Supreme Court of jurisdiction to consider the Certified Questions. If Plaintiffs were to proceed under the current litigation schedule, particularly in light of the parties' recent stipulation to decertify the collective action class and a currently scheduled trial date of November 2006 – it is very likely that Plaintiffs' FLSA case will be resolved before the New Hampshire Supreme Court has had the opportunity even to consider the Certified Questions. Thus, the Certified Questions would be moot.

If Plaintiffs have concluded their FLSA case, the state court's answers to the Certified Questions will have no relevance. There will be no case pending and no named plaintiff to which to apply the New Hampshire court's holding. Thus, as a practical matter, ordering Plaintiffs to proceed solely on their federal claim forces them effectively to abandon their state cause of action. Moreover, even if the Certified Questions were not deemed moot and the New Hampshire Supreme Court were to resolve the Certified Questions in Plaintiffs' favor, there would be no class representative to pursue Count II on behalf of a class.

Further, dispossessing Plaintiffs of their state law cause of action would prejudice

them in a variety of additional ways. First, the named plaintiffs are currently set to proceed as individual claimants solely on their FLSA claim. This means they will be foreclosed from benefiting from the enhanced fee typically available for representative plaintiffs in class actions. *See, e.g., Relafen Antitrust Litig.,* 231 F.R.D. 52, 82 (D. Mass. 2005) (Young, J.).

Also, the FLSA statute of limitations requirements are different than those of the New Hampshire statute. The FLSA generally provides a period of two years "after the cause of action accrued" in which to file a complaint. 29 U.S.C.A. § 255(a). The FLSA limitations period is extended to three years only if plaintiffs can successfully prove that the violation was willful. *Id.* New Hampshire law, however, carries a three-year limitations period regardless of whether plaintiffs are able to prove willfulness. *See* N.H. Rev. Stat. Ann. § 275:43; *Rosenzweig v. Morton,* 144 N.H. 9, 737 A.2d 650 (1999).

Furthermore, even if Plaintiffs have not yet concluded their FLSA case by the time the New Hampshire court has addressed the Certified Questions, discovery in the FLSA case will be well underway if not completed. If the New Hampshire Supreme Court determines that Plaintiffs may bring their state law claim as a class action, the parties will be forced to redo depositions and seek additional document discovery. While the factual underpinnings of Plaintiffs' state law claim are the same as for their FLSA cause of action, there will be a need for both sides to conduct additional discovery regarding class certification.

The most efficient use of judicial resources is for Plaintiffs' state law claim to be brought simultaneously with their FLSA claim. The two causes of action arise from identical facts, and pendent jurisdiction would conserve judicial resources. *McLaughlin*

16

*v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304 (D. Mass. 2004) (a class action in state court involving similar issue a pending FLSA collective action "would not be a superior means of adjudication."); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 C 5755, 2000 WL 1774091 (N.D. Ill. Dec. 1, 2000) (same). Nor is it fair at this juncture to force Plaintiffs to choose one cause of action over the other.

Thus, Plaintiffs request that the Court stay all of their claims until the New Hampshire Supreme Court has resolved or otherwise disposed of the Certified Questions.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court certify the following unresolved questions of state law to the New Hampshire Supreme Court: (i) Whether a cause of action or claim for relief under Section 275:43 for wages due may include unpaid federally required overtime wages; and (ii) Whether the New Hampshire legislature directly expressed an intent to prohibit opt-out class actions for causes of action or claims for relief brought pursuant to Section 275:43 for wages due. Plaintiffs further request that this Court stay all their claims pending a decision or other disposition by the New Hampshire Supreme Court, in order to preserve the state court's jurisdiction over the Certified Questions.

Respectfully submitted,

DEBBIE L. TREZVANT, TIMOTHY CAHILL, DEBORAH CHERYL ARCH, and MARY-CATHERINE PICHE, each of them individually and on behalf of all others similarly situated and similarly situated current and former employees of Defendants,

17

By their attorneys,

_____/s/___Thomas E. Kenney_____
Thomas E. Kenney (BBO No. 516590)
Pierce & Mandell, P.C.
11 Beacon Street, Suite 800
Boston, MA 02108
(617) 720-2444

Michael Douglas Palmer
Joseph & Herzfeld LLP
757 Third Avenue, 25th Floor
New York, NY 10017

Ira Spiro (CA State Bar No. 67641)
Rebecca J Sobie (CA State Bar No. 179562)
Spiro Moss Barness Harrison & Barge LLP
11377 W. Olympic Blvd., 5th Floor
Las Angeles, CA 90063-1683
(310) 235-2468

Charles E. Joseph
Joseph & Herzfeld LLP
757 Third Avenue, 25th Floor
New York, NY 10017


Dated:    Boston, Massachusetts
          May 10, 2006